# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:

Diocese of Duluth,

      Debtor-in-Possession.

Bankruptcy Case No.:  15-50792

Chapter 11

---

Diocese of Duluth,

      Plaintiff,

v.

LIBERTY MUTUAL GROUP, a Massachusetts
Corporation; CATHOLIC MUTUAL RELIEF
SOCIETY OF AMERICA, a Nebraska
corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California
corporation; CHURCH MUTUAL
INSURANCE COMPANY, a Wisconsin
corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois
corporation,

      Defendants.

Adversary Proceeding No.: 16-05012

---

## NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING THE EXISTENCE OF THE GREAT AMERICAN INSURANCE POLICY

---

TO:    THE DEFENDANTS AND OTHER ENTITIES SPECIFIED IN LOCAL RULE 9013-3.

      1.      The Diocese of Duluth through its undersigned attorneys, respectfully moves the

Court for the relief request below and gives notice of hearing.

2.      The Court will hold a hearing on this motion on **January 26, 2017 at 10:30 a.m.**,
or as soon thereafter as counsel can be heard, before the Honorable Robert J. Kressel, in
Courtroom 8 West, 300 South Fourth Street, Minneapolis, MN 55415.

3.      Local Rule 9006-1(c) provides deadlines for responses to this motion.  **Any
response to this motion must be filed and delivered not later than  January 20, 2017**, which
is five (5) days prior to the time set for the hearing including Saturdays, Sundays and holidays.
**UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT
MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and
1334, Fed. R. Bank. P. 5005, and Local Rule 1071-1.  This is a core proceeding.

5.      The petition commencing this chapter 11 case was filed on December 7, 2015.
This case is currently pending before this Court.  The complaint commencing this adversary
proceeding was filed on June 24, 2016.

6.      The motion arises under Federal Rule of Civil Procedure 56, made applicable to
this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.  This motion is filed
under Federal Rule of Bankruptcy Procedure 9014 and Local Rules 7007-1, 9013-1, 9013-2,
9006-1 and 9017-1.

WHEREFORE, the Diocese of Duluth respectfully moves the Court for an Order
granting partial summary judgment in favor of the Diocese of Duluth and holding that the
Diocese of Duluth proved the existence of a Great American Insurance Company liability
insurance policy that provides bodily injury coverage to the Diocese of Duluth from 1964 to
1967 and a $1 million per occurrence limit of liability.

Dated:   New York, New York
          December 19, 2016

Respectfully submitted,

**BLANK ROME LLP**

By:   /s/ *James R. Murray*
James R. Murray (admitted *pro hac vice*)
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-3409
Facsimile: (202) 420-2201
jmurray@blankrome.com

Jared Zola (admitted *pro hac vice*)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5209
Facsimile: (917) 591-8538
jzola@blankrome.com

-and-

**GRAY PLANT MOOTY**
 **MOOTY & BENNETT, P.A.**

By:   /s/ *Phillip L. Kunkel*
Phillip L. Kunkel (#058981)
Nicholas N. Nierengarten (#079169)
1010 West Germain Street, Suite 500
Saint Cloud, MN 56301
Telephone: (320) 202-5335
Facsimile: (320) 252-4482
Phillip.kunkel@gpmlaw.com
Nicholas.nierengarten@gpmlaw.com

*Counsel for the Diocese of Duluth*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

___

In re:                                          Bankruptcy Case No.:  15-50792

Diocese of Duluth,                              Chapter 11

      Debtor-in-Possession.

___

Diocese of Duluth,

      Plaintiff,

                            Adversary Proceeding No.: 16-05012

v.

LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

      Defendants.

___

### DECLARATION OF JARED ZOLA IN SUPPORT OF
### PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
### MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
### THE EXISTENCE OF THE GREAT AMERICAN INSURANCE POLICY

___

      Jared Zola, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the

following is true and correct:

      1.      I am a partner with Blank Rome LLP, counsel for plaintiff Diocese of Duluth

("Diocese") in this adversary proceeding.  I am familiar with the facts and circumstances of this

action by virtue of my involvement in this matter and review of the case files and believe that the

information provided herein is true and correct to the best of my knowledge.  I submit this

declaration in support of the Diocese's Motion for Partial Summary Judgment.

2.       On August 4, 2016, my colleague, James R. Murray, conducted the deposition of

Erin Elaine Dickie at the Law Offices of Stinson Leonard Street, 1625 North Waterfront

Parkway, Suite 300, in the City of Wichita, County of Sedgwick, and State of before a court

reporter, who transcribed and prepared a transcription of Ms. Dickie's testimony.  Attached as

**Exhibit A** is a true and correct copy of certain pages of the transcript of Ms. Dickie's deposition.

3.       Attached hereto as **Exhibit B** is a true and correct copy as produced by the

Diocese to the insurance company defendants in this adversary proceeding of the declarations

page of an Agricultural Insurance Company ("Liberty Mutual") insurance policy for the 1964 to

1967 policy period.

Dated:  December 16, 2016


                              By:   _/s/ *Jared Zola*_____
                                    Jared Zola (admitted *pro hac vice*)


2

# EXHIBIT A

```
 1    .

 2              UNITED STATES BANKRUPTCY COURT

 3              FOR THE DISTRICT OF MINNESOTA

 4    .

 5    IN RE:            Bankruptcy Case No.: 15-50792

 6    Diocese of Duluth            Chapter 11

 7         Debtor-in-Possession.

 8    _____

 9    Diocese of Duluth,

10         Plaintiff,

11                              Adversary Proceeding

12    v.                   No.:   16-05012

13    LIBERTY MUTUAL GROUP, a

14    Massachusetts corporation;

15    CATHOLIC MUTUAL RELIEF SOCIETY

16    OF AMERICA, a Nebraska corporation;

17    FIREMAN'S FUND INSURANCE COMPANY,

18    a California corporation; CHURCH

19    MUTUAL INSURANCE COMPANY, a Wisconsin

20    corporation and THE CONTINENTAL

21    INSURANCE COMPANY, an Illinois corporation,

22         Defendants.

23                   DEPOSITION OF

24                   ERIN DICKIE,

25    .
```



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

DD_INS_00912

1    taken on behalf of the Plaintiff pursuant to the

2    Kansas Code of Civil Procedure before Rachelle

3    Smith, a Certified Shorthand Reporter of Kansas,

4    at the Law Offices of Stinson Leonard Street, 1625

5    North Waterfront Parkway, Suite 300, in the City

6    of Wichita, County of Sedgwick, and State of

7    Kansas, on August 4, 2016 at 1:02 p.m.

8    .

9    .

10   .

11   .

12   .

13   .

14   .

15   .

16   .

17   .

18   .

19   .

20   .

21   .

22   .

23   .

24   .

25   .



800 E. 1ʳᵗ Street, Suite 305     5111 SW 21ˢᵗ Street     6420 W. 95ᵗʰ Street, Suite 101
Wichita, KS 67202                Topeka, KS 66604         Overland Park, KS 66212
316-201-1612                     785-273-3063             913-383-1131
                                 www.appinobiggs.com

```
 1                         APPEARANCES

 2       .

 3       .

 4    ON BEHALF OF THE PLAINTIFF:

 5       .

 6          Mr. James R. Murray

 7          Blank Rome, LLP.

 8          1825 Eye Street NW

 9          Washington, DC   20006

10          202-420-2200

11          jmurray@blankrome.com

12       .

13       .

14    ON BEHALF OF THE DEFENDANT LIBERTY MUTUAL GROUP:

15       .

16          Ms. Nancy D. Adams

17          Mintz Levin Cohn Ferris Glovsky & Popeo, P.C.

18          One Financial Center

19          Boston, Massachusetts   02111

20          617-542-6000

21          ndadams@mintz.com

22       .

23       .

24       .

25       .
```



800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                        785-273-3063                913-383-1131
                                    www.appinobiggs.com

DD_INS_00914

```
 1                              INDEX

 2    .

 3    .

 4   Certificate ------------------------------ 93

 5    .

 6    .

 7                             WITNESS

 8   ON BEHALF OF THE PLAINTIFF:            PAGE

 9   ERIN DICKIE

10   DIRECT EXAMINATION BY MR. MURRAY        6

11   CROSS EXAMINATION BY MS. ADAMS         82

12   REDIRECT EXAMINATION BY MR. MURRAY     85

13    .

14    .

15                            EXHIBITS

16   DICKIE DEPO EXHIBIT NO.:              MARKED

17   No 1 Sept 30, 2005 Letter             34

18   No 2 Invoice Recap from Great American

19       Insurance Company                 45

20   No 3 Sept 20, 2005 Letter             51

21   No 4 Email                            54

22   No 5 Email                            56

23   No 6 Release of all Claims            69

24   No 7 Sept 5, 2006 Letter              71

25    .
```



Appino Biggs Reporting Service Inc.

Technology Specialists • bring Compers Together

800 E. 1st Street, Suite 305        3111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                        785-273-3063               913-383-1131
                                    www.appinobiggs.com

DD_INS_00915

```
 1    No 8 Great American Insurance Company -

 2         Select Liability Policy              72

 3    No 9 Great American Insurance Company -

 4         Select Liability Policy              74

 5    No 10 March 18, 2015 Letter               76

 6    No 11 Copy of Check                       77

 7    No 12 Comprehensive Liability Policy      78

 8    No 13 General - Automobile Liability

 9         Policy                               79

10    .

11    .

12    .

13    .

14    .

15    .

16    .

17    .

18    .

19    .

20    .

21    .

22    .

23    .

24    .

25    .
```



Appino & Biggs Reporting Service, Inc.
Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

DD_INS_00916

```
1                          ERIN DICKIE,

2    was thereupon called as a witness herein, and

3    after having first been duly sworn to testify to

4    the truth, the whole truth and nothing but the

5    truth, was examined and testified as follows:

6              MS. ADAMS:   Objections are reserved

7    except as to form?

8              MR. MURRAY:   Sure.

9         DIRECT EXAMINATION

10        BY MR. MURRAY:

11        Q.   Could you state your full name for the

12   record.

13        A.   Erin Elaine Dickie.

14        Q.   Erin, have you been deposed before?

15        A.   No.

16        Q.   If I ask you a question and you don't

17   understand it, just tell me that and I will

18   rephrase it, okay?

19        A.   Okay.

20        Q.   And if at any time you need a break tell

21   me and we'll take a break, except when the

22   questions are pending, okay?

23        A.   Okay.

24        Q.   Is there any reason you can't give a full

25   and truthful testimony today?
```



Appino Biggs Reporting Services, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                        785-273-3063               913-383-1131
                                    www.appinobiggs.com

DD_INS_00917

```
 1        A.   No.

 2        Q.   I want to go quickly through your

 3   background and then I might focus in on a few

 4   things.  Can you start with high school.  When did

 5   you graduate from high school?

 6        A.   What year?  Seriously?

 7        Q.   This a confidential deposition.

 8        A.   '86, '87.  Somewhere in there.

 9        Q.   From where?

10        A.   Newark High School.

11        Q.   Where?

12        A.   Newark, Ohio.

13        Q.   What did you do out of high school?

14        A.   Went on to college and joined the Army.

15        Q.   So in '86 you went in to college?

16        A.   Yes.  Went to University of Pennsylvania,

17   my father was a professor there.

18        Q.   Did you graduate?

19        A.   From Ohio State, I switched.

20        Q.   What year did you graduate?

21        A.   '91?

22        Q.   What was your degree?

23        A.   Communication.

24        Q.   And you said you went in the army.  Was

25   that in the middle?
```



Appino & Biggs Reporting Service, Inc.

Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305          5111 SW 21st Street          6420 W. 95th Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

DD_INS_00918

1        A.    I suppose I could call Great American.

2        Q.    Okay.  I think you said you thought it

3    might be in March, could it have been later in the

4    year?

5        A.    They, I mean, I remember it being

6    somewhere around St. Patty's day, that's why I am

7    saying that.

8        Q.    That's fair.  Generally, in your

9    experience, on historical occurrence based

10   policies is defense in addition to the limits?

11            MS. ADAMS:  Objection to form.

12            MR. MURRAY:  Strike that.

13       BY MR. MURRAY:

14       Q.    Do you recall any situation in your

15   career where you paid a settlement that was in

16   excess of limits, barring a finding?

17       A.    No.

18       Q.    Would you have ever recommended on a

19   claim to pay more limits than were required under

20   the policy?

21       A.    No.

22            (THEREUPON, Deposition Exhibit No 6 was

23   marked for identification by the Reporter;

24   WHEREUPON, a short off-the-record discussion was

25   held.)



Appino Biggs Reporting Service, Inc.
Technology Specialists in Today's Complex Litigation

800 E. 1st Street, Suite 305      5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                 Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                      785-273-3063               913-383-1131
                                  www.appinobiggs.com

DD_INS_00980

1        A.    No.

2        Q.    You would report to her orally or by E-

3    mail? How?

4        A.    I don't recall.  I believe we did both.

5        Q.    In the 2005 and '06 timeframe, at least

6    when you were there, who would have had the level

7    of approval on a settlement payment of $250,000?

8        A.    I don't recall.

9        Q.    If you had still been there at that time

10   would you have had that approval level?

11       A.    I do not believe so, I don't recall.

12            MR. MURRAY:  Let's take a short break.  I

13   think I am almost done.

14            MS. ADAMS:  Okay.

15            (THEREUPON, at 3:05p.m., a recess was

16   taken, after which, 3:09 p.m., the following

17   proceedings were held:)

18            MR. MURRAY:  Back on the record.  Just a

19   few more questions.

20       BY MR. MURRAY:

21       Q.    Exhibit 3, your letter.  So again

22   referencing Dickie Exhibit 3, I just want it make

23   sure I understand and close the loop on the

24   information contained in this letter as far as you

25   know, it would have been either from the adjuster,



800 E. 1ᵗ Street, Suite 305          5111 SW 21ᵗ Street          6420 W. 95ᵗ Street, Suite 101
Wichita, KS 67202                Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                     785-273-3063                913-383-1131
                                 www.appinobiggs.com

DD_INS_00992

```
 1    who was your predecessor, Mr. Moriarty?

 2         A.   McGillroy.

 3         Q.   McGillroy.  Or it would have been from

 4    the person who was outside coverage counsel who

 5    was assisting you on this?

 6         A.   Correct.

 7         Q.   Is there any other option or alternative

 8    of where the information would have come from that

 9    you can think of?

10         A.   Not that I can think of, no.

11              MR. MURRAY:  Counsel, we had a discussion

12    earlier, can we agree, not on the record, but at

13    some point you will give me the name of coverage

14    counsel?

15              MS. ADAMS:  We'll figure that out.

16              MR. MURRAY:  Other than factual

17    information.

18              MS. ADAMS:  Uh-huh.

19              MR. MURRAY:  That's a nod of the head.

20              MS. ADAMS:  That's a yes.  I am sorry.

21              MR. MURRAY:  Miss Dickie, thank you very

22    much for your time today.

23              MS. ADAMS:  Actually I have a few

24    questions.

25         CROSS EXAMINATION
```



Appino Biggs Reporting Service, Inc.
Technology Specialists in Today's Complex Litigation

800 E. 1ˢᵗ Street, Suite 305
Wichita, KS 67202
316-201-1642

5111 SW 21ˢᵗ Street
Topeka, KS 66604
785-273-3063
www.appinobiggs.com

6420 W 95ᵗʰ Street, Suite 101
Overland Park, KS 66212
913-383-1131

DD_INS_00993

1    the agricultural policy was expired, meaning it

2    didn't take affect in the second term in '67, you

3    wouldn't have any knowledge on that?

4        A.    No.

5        Q.    If we could look at Exhibit 9, which is a

6    Great American policy, select policy format.

7    Let's go to Page 3, Bates stamped 29.

8        A.    Yes.

9        Q.    Provision 12 is Other Insurance.  Do you

10    see that?

11        A.    12?

12        Q.    Provision 12 on Page 3.

13        A.    Yes.

14        Q.    And have you seen Other Insurance clauses

15    before?

16        A.    Yes.

17        Q.    This says:  If at the time of an

18    occurrence there is any valid and collectible

19    insurance, whether on a primary, excess or

20    contingent basis, available to the insured (in

21    this or any other carrier), except insurance

22    purchased to apply in excess of the limits of

23    liability of this policy, there shall be no

24    insurance afforded hereunder as respect such

25    occurrence; except, that if the applicable limit



800 E. 1ˢᵗ Street, Suite 305          5111 SW 21ˢᵗ Street          6420 W. 95ᵗʰ Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604            Overland Park, KS 66212
316-201-1612                          785-273-3063                913-383-1131
                                      www.appinobiggs.com

DD_INS_00998

1   of liability of this policy is in excess of the

2   applicable limit of liability provided by the

3   other insurance, this policy shall afford excess

4   insurance over and above such other insurance in

5   an amount sufficient to afford the insured a

6   combined limit of liability equal to the

7   applicable limit of liability afforded by this

8   policy.  Insurance under this policy shall not be

9   construed to be concurrent or contributing to any

10  other insurance that is available to the other

11  insured.

12       So based on your experience of handling

13  claims and other insurance policies and insurance

14  clauses, what this means is if there is a million

15  dollar policy, and also a $50,000 policy, this

16  policy still provides $950,000 of coverage; is

17  that correct?  So you get the bigger of the limit?

18       A.   The bigger of the limit.

19            MS. ADAMS:  Objection to form.

20            MR. MURRAY:  I have nothing further.

21            MS. ADAMS:  That's all.  She will read

22  and sign.  Send it to me.

23            THE REPORTER:  What format do you want

24  your transcripts?

25            MS. ADAMS:  Regular.



800 E. 1st Street, Suite 305        5111 SW 21st Street        6420 W. 95th Street, Suite 101
Wichita, KS 67202                   Topeka, KS 66604           Overland Park, KS 66212
316-201-1612                        785-273-3063               913-383-1131
                                    www.appinobiggs.com

DD_INS_00999

```
 1            MR. MURRAY:  Regular.

 2            (THEREUPON, the deposition concluded at

 3    3:20 p.m.)

 4    .

 5    .

 6    .

 7    .

 8    .

 9                        SIGNATURE

10    .

11         The deposition of ERIN DICKIE was taken

12    in the matter, on the date, and at the time and

13    place set out on the title page hereof.

14    .

15         It was requested that the deposition be

16    taken by the reporter and that same be reduced to

17    typewritten form.

18    .

19         It was agreed by and between counsel and

20    the parties that the deponent will read and sign

21    the transcript of said deposition.

22    .

23    .

24    .

25    .
```



800 E. 1ˢᵗ Street, Suite 305          5111 SW 21ˢᵗ Street          6420 W. 95ᵗʰ Street, Suite 101
Wichita, KS 67202                     Topeka, KS 66604             Overland Park, KS 66212
316-201-1612                          785-273-3063                 913-383-1131
                                      www.appinobiggs.com

DD_INS_01000

# EXHIBIT B

Eastern Division, Watertown, New York

Western Division, St. Paul 14, Minnesota

## No. CLA 770553

| Prepaid | Audit Basis |
| :---: | :--- |
| ☒ | ANNUAL |
| Auto.<br>Instal. | Bill Ann. Prem. on |
| ☐ | |

Renewal of:       NEW

### DECLARATIONS

**AGRICULTURAL INSURANCE COMPANY**
NAME OF COMPANY



Agricultural Insurance Group

**Item 1.** Named
Insured:       DIOCESE OF DULUTH AND

CHURCHES NAMED ON CERTIFICATES

Address:
       No. Street       Town       County       State

**Item 2. Policy Period:**
From  FEBRUARY 1, 1964  To  FEBRUARY 1, 1967
12:01 A.M. Standard time at the address of the named insured as stated herein:

**COMPREHENSIVE LIABILITY POLICY**
**(GENERAL - AUTOMOBILE)**

Locations of all premises owned, rented
or controlled by named insured

Interest of named insured
in such premises       ENTER "OWNER," "OWNER-LESSEE" OR "TENANT"       CORPORATION

ENTER "NAME" IF SAME LOCATION AS ABOVE ADDRESS
Part occupied by
named insured

The named insured is

Business of the named insured is       INDIVIDUAL, CORPORATION OR PARTNERSHIP       SEE CERTIFICATES

**Item 3.**  The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | COVERAGES | LIMITS OF LIABILITY | | ADVANCE PREMIUMS |
| :---: | :--- | :--- | :--- | :--- |
| A | Personal Injury Liability—Automobile | $ 50,000.<br>$100,000. | each person<br>each occurrence | $    SEE CERTIFICATES |
| B | Personal Injury Liability—<br>Except Automobile | $ 50,000.<br>$100,000.<br>$NOT COVERED | each person<br>each occurrence<br>aggregate products | $    SEE CERTIFICATES |
| C | Property Damage Liability—Automobile | $  5,000. | each occurrence | $    SEE CERTIFICATES |
| D | Property Damage Liability—<br>Except Automobile | $  5,000.<br>$ 25,000.<br>$ 25,000.<br>$NOT COVERED<br>$ 25,000. | each occurrence<br>aggregate operations<br>aggregate protective<br>aggregate products<br>aggregate contractual | $    SEE CERTIFICATES |

Endorsements forming a part
of the policy upon issuance: (Identify by Form Number)       26619, 26525, L6354A, 24369, 26603, 32637B       $

Total Advance Premium       $    SEE CERTIFICATES

**Item 4.**  The declarations are completed on attached schedules.

**Item 5.**  Unless otherwise stated herein, the schedules (a) disclose all hazards insured hereunder known to exist at the effective date of this policy; (b) contain a complete list of all automobiles and trailers owned by the named insured at the effective date of this policy and the purposes of use thereof; (c) contain a complete list of all persons within the definition of Class I persons, at the effective date of this policy.

Exception, if any, to (a), (b) or (c):*

**Item 6.**  During the past three years no insurer has canceled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:*

Counter-
signed at  DULUTH, MINNESOTA       on   JANUARY 17, 1964       by _____
       Authorized Representative

THESE DECLARATIONS TOGETHER WITH FORM J-  26555A, DATED   2-63    CLA SERIES, CONSTITUTE THE ABOVE NUMBERED POLICY.

Form D-26555  1-61  CLA Series       *Absence of an entry means "No Exceptions."

DD_INS_00174

# UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MINNESOTA

---

In re:                                           Bankruptcy Case No.:  15-50792
Diocese of Duluth,                               Chapter 11

        Debtor-in-Possession.

---

Diocese of Duluth,

        Plaintiff,

                                  Adversary Proceeding No.: 16-05012

v.

  LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,
Defendants.

---

## AFFIDAVIT OF JOHN D. KELLY, ESQ.

---

        John D. Kelly, Esq., duly affirmed, deposes and says:

    1.      I am a member of the law firm Hanft Fride in its Duluth, Minnesota office.

    2.      I have over 30 years of experience as a trial lawyer, was admitted to the

Minnesota State Bar in 1974 and to the State Bar of Wisconsin in 1985, and am admitted to

practice in the United States District Court for the District of Minnesota and the United States

Circuit Court of Appeals, Eighth Circuit.

3.      I was defense counsel to the Diocese of Duluth in connection with a lawsuit filed by a plaintiff identified as John Doe 65, who was named ⟨REDACTED⟩

4.      In connection with the John Doe 65 lawsuit, I was copied on a letter dated September 20, 2005 from Erin Dickie at Great American Insurance Company to the Diocese of Duluth. Attached hereto as Exhibit A is a true and correct copy of that letter.

5.      I executed a letter dated September 30, 2005 addressed from me to Erin Dickie at Great American Insurance Company, which discussed the John Doe 65 lawsuit. Attached hereto as Exhibit B is a true and correct copy of that letter.

6.      In connection with the John Doe 65 lawsuit, I received a letter dated September 5, 2006 from Ohio Casualty Group enclosing a check in the amount of $250,000. Attached hereto as Exhibit C is a true and correct copy of that letter.

7.      The Diocese of Duluth resolved the John Doe 65 lawsuit for $250,000, which is reflected in a release dated September 14, 2006. Attached hereto as Exhibit D is a true and correct copy of that release.

8.      In connection with a separate sexual abuse claim against the Diocese of Duluth, I received a letter dated August 11, 2009 from Ohio Casualty enclosing a settlement check numbered 86080583 and dated August 10, 2009. Attached hereto as Exhibit E is a true and correct copy of that letter and the enclosed check.

John D. Kelly

Affirmed before me, this 15th day

of December 2016

DOROTHY ANN RUHNKE
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2020

2

200947.00001/104258263v.1

# EXHIBIT A

September 20, 2005

Mr. Mary Hudhto
Diocese of Duluth
215 West Fourth Street
Duluth, Minnesota 55806

Re:    John Doe 65 vs. Diocese of Duluth, St. Rose Catholic Church in Proctor, Minnesota
Claim No. 593000010
Policy No. XOV 0770553
Our File No.:  5089-533

Dear Ms. Hudhto:

This letter pertains to *John Doe 65 vs. Diocese of Duluth, St. Rose Catholic Church in Proctor,
Minnesota*, the state court litigation venued in St. Louis County District Court.  As you know,
Great American Insurance Company ("Great American") has provided a defense to the Diocese
of Duluth ("Diocese") under a reservation of rights in accordance with the terms of the above-
referenced contract of insurance between Great American and the Diocese.

On January 27, 2004, the claims against the Diocese alleging vicarious liability for the conduct
of Father Nicholson were previously dismissed by the trial court.  Plaintiff John Doe 65 has now
filed a motion to reinstate those claims, premised on the Minnesota Supreme Court's decision of
*D.M.S. v. Barber*.  John Doe 65's position is the *Barber* case holds that the statute of limitations
for the vicarious liability claims against the Diocese is subject to the same "delayed discovery"
rule as claims against the abuser himself, overruling prior precedent to the contrary.  The
plaintiff has scheduled a motion to reinstate the vicarious liability claims for September 29,
2005, before Honorable Judge John T. Oswald.  Trial is scheduled to commence on October 17,
2005.  Given the unique procedural posture and the possibility of the reinstatement of the
vicarious liability claims against the Diocese, Great American wishes to
reaffirm its position set forth in its earlier letter confirming its agreement to defend the Diocese
under a complete reservation of rights.

## II. AGREEMENT TO DEFEND UNDER A COMPLETE RESERVATION OF RIGHTS.

The captioned law suit was commenced by John Doe 65 on or about September 30, 2002, and
alleges the following causes of action:

Count I - Negligence
Count II - Vicarious Liability
Count III - Negligent Retention
Count IV - Negligent Supervision
Count V - Negligence - St. Rose Church

DEPOSITION
EXHIBIT
3
Dickie

DD_INS_00031

Ms. Mary Hudlito
September 20, 2005
Page 2

> Count VI - Vicarious Liability - St. Rose Church
> Count VII - Negligent Retention - St. Rose Church
> Count VIII - Negligent Supervision - St. Rose Church

Great American has provided a defense to the Diocese in the John Doe 65 litigation subject to a complete reservation of all rights and defenses under the referenced insurance contract.  In pertinent part, the policy includes select liability coverage for "bodily injury liability - except automobile."  The policy contains the following provisions:

### A.    Insuring Agreement

In pertinent part, the policy's insuring agreement provides as follows:

Great American Insurance Companies agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and subject to the limits of liability, exclusions, conditions and other terms of this policy:

### INSURING AGREEMENT

**I. Coverage B - Bodily Injury Liability - Except, Automobile.**  To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence.

**II. Defense, Settlement.**  The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

Also, the following definitions apply to the provisions above:

**17. Definitions.**

(b)    "Bodily Injury" means bodily injury, sickness or disease sustained by any person.

(c)    "Damages" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage.

(g)    "Insured" means the named insured and:

DD_INS_00032

Ms. Mary Hudbto
September 20, 2005
Page 3

(3) if the named insured is designated in the declarations as a corporation, any executive officer thereof while acting within the scope of his duties as such.[1]

(4) if the named insured is a corporation, any director or stockholder thereof while acting within the scope of his duties as such;

(9) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under ... (3) [or] (4) above ....

(i) **"Occurrence"** means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured. For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of once occurrence.

First, in pertinent part, Coverage B provides that Great American will pay those sums that "the insured" is liable to pay as damages because of bodily injury. Furthermore, in pertinent part, the policy's declarations page identifies "the insured" as **"DIOCESE OF DULUTE."** Great American reserved its right to limit or deny coverage and/or a defense to the extent that the allegations do not involve an "insured" under the policy. This includes both claims for actual, independent conduct against the Diocese as well as those alleging vicarious liability. Without limitation, such allegations might include (1) allegations that did not arise out of the course and scope of duties of Father Nicholson or any other executive officer, director, or stockholder of the Diocese of Duluth, and/or (2) allegations that do not arise from conduct at St. Rose Church.

Second, in pertinent part, Coverage B provides that Great American will pay those sums that the insured is liable to pay as "damages" because of "bodily injury" as defined in the policy. Thus, Great American reaffirms its reservation of right to limit or deny coverage and/or a defense to the extent that any plaintiff is not seeking "damages" as defined in the policy, and/or is not seeking damages for "bodily injury" as defined in the policy.

Third, in pertinent part, Coverage B provides that Great American will pay those sums that the insured is liable to pay as damages because of bodily injury "caused by an occurrence." Furthermore, the policy defines "occurrence" as "an accident ... which results, during the policy period, in bodily injury ... neither expected nor intended from the standpoint of the insured." Thus, Great American reserves its right to limit or deny coverage and/or a defense to the extent that there was not an "occurrence" as defined in the policy. Particularly, without limitation, Great American reaffirms its reservation of right to limit or deny coverage and/or a defense to the extent that (1) there was not an accident, (2) "bodily injury" did not occur during the policy period, and/or (3) the insured seeking coverage expected and/or intended the "bodily injury."

---

[1] This section reads as modified by the Executive Officers as Insured Endorsement.

DD_INS_00033

Ms. Mary Hudhto
September 20, 2005
Page 4

**B.    Policy Limits**

In pertinent part, Coverage B provides for the following limitations:

1.    Limits of Liability. Entry in the declarations of dollar amount of limits of liability shall designate the Limits Plan applicable.

### (a) Multiple Limits Plan

(i) Limits of Liability - Coverages A and B: The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as a result of anyone occurrence, the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person. the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence.

Furthermore, in pertinent part, the declarations page provides for (1) a multiple limit plan, (2) bodily injury liability limits of $1,000,000 ($1 million) per person, and (3) bodily injury liability limits of $1,000.000 ($1 million) per occurrence.

**C.    Conditions**

The policy also includes the following conditions:

### CONDITIONS

(Unless otherwise noted, the conditions apply to all coverages.)

5. Notice of Occurrence. When an occurrence takes place, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses. Knowledge of an occurrence by any agent or employee of the insured shall not constitute knowledge by the insured unless the insured individual, a partner of the insured partnership, an executive officer of the insured corporation or a member of the insured joint venture shall have received notice of such occurrence from such agent or employee.

6. Assistance and Cooperation of the Insured. The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury ... with respect to which insurance is afforded under this policy .... The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than first aid to others at the time of

DD_INS_00034

Ms. Mary Hudhto
September 20, 2005
Page 5

occurrence. The named insured shall promptly take at his own expense all reasonable steps to prevent additional bodily injury ... arising out of the same or similar conditions; provided (1) that a failure to take such preventative measures shall not constitute a breach of this condition unless the company has requested the named insured in writing to undertake such preventative measures, and (2) such expense shall not be recoverable under this policy.

8. Subrogation. In the event of any payment under this policy, the company shall be subrogated to the insured's rights of recovery therefore against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

12. Other Insurance. If at the time of an occurrence there is any valid and collectible insurance, whether on a primary, excess or contingent basis, available to the insured (in this or any other carrier), except insurance purchased to apply in excess of the limits of liability of this policy, there shall be no insurance afforded hereunder as respects such occurrence; except, that if the applicable limit of liability of this policy is in excess of the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured.

13. Notice of Claim or Suit. If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

Great American reaffirms its reservation of right to limit or deny coverage and/or a defense to the extent that the Diocese failed to notify Great American about an "occurrence" as provided in condition 5.

Second, Great American reserved its right to limit or deny coverage and/or a defense to the extent that the Diocese fails to assist and/or cooperate with Great American as provided in condition 6. Likewise, Great American reserves its right to limit or deny coverage under condition 6 for "voluntary payments" and/or "voluntary obligations" that the Diocese has incurred.

Third, Great American reaffirms its reservation of right to limit or deny coverage and/or a defense to the extent that the Diocese in any way prejudices Great American's right of subrogation and/or contribution as provided in condition 8.

Fourth, Great American reaffirms its reservation of right to limit or deny coverage and/or a defense to the extent that "other insurance" is available as provided in condition 12.

## GENERAL RESERVATION / CONCLUSION

DD_INS_00035

Ms. Mary Hudhto
September 20, 2005
Page 6

In light of the recent unique procedural developments pertaining to the potential reinstatement of
the vicarious liability causes of action against the Diocese, Great American is simply reaffirming
its earlier reservation of all rights and defenses under the policy and applicable law. Nothing in
this letter should be construed as a waiver of any of Great American's rights, whether
specifically referenced in this letter. If you have any questions about anything in this letter or if
you take issue with any of the facts and/or analysis in this letter, please feel free to contact me at
the number listed below.

Thank you.

Erin Dickie
Senior Litigation Specialist
Great American Insurance Company
(513) 412-4307

cc:    John Kelley, Esq.
553989.wpd

DD_INS_00036

# EXHIBIT B

# HANFT FRIDE
## A PROFESSIONAL ASSOCIATION

1000 U.S. BANK PLACE
130 WEST SUPERIOR STREET
DULUTH, MINNESOTA 55802-2094
TELEPHONE 218/722-4766
FAX: 218/529-2401

September 30, 2005

WRITER'S DIRECT DIAL
218/529-2437
WRITER'S E-MAIL
Jdk@hanftlaw.com

GILBERT W. HARRIES*
WILLIAM M. BURNS
RICHARD R. BURNS*
JOHN D. KELLY*
FREDERICK A. DUDDERAR, JR.
TIM A. STROM*
R. THOMAS TORGERSON*
CHERYL M. PRINCE*
ROBIN C. MERRITT*
JENNIFER L. CAREY*
KATHLEEN S. BRAY*
MARK D. PILON*
FAYE M. WITT*
JACOB J. BAKER
KENNETH A. KIMBER

*ALSO ADMITTED IN WISCONSIN

Ms. Erin Dickie
Great American Insurance Company
P.O. Box 5432
Cincinnati, OH 45201

Re:  Insured:    Diocese of Duluth
     Claim No.:   593-000010
     Claimant:    John Doe 65
     Our File No.: 26133.001

Dear Ms. Dickie:

The following is my updated trial report.

### I.    Summary of facts that give rise to litigation

The plaintiff, REDACTED as that he was sexually abused in 1966 and 1967 by Father John Nicholson, his parish priest. He claims that he repressed the memories of that abuse until 1996. He alleges that both the defendant Diocese and the defendant Parish were negligent in permitting Father Nicholson to serve in the capacity of pastor and in failing to adequately supervise him. Due to the alleged abuse, the plaintiff claims that he became an alcoholic and abused himself physically, resulting in a significant chronic back problem which, in turn, led to his retirement from his railroad employment with a disability.

### II.   Parties involved and status

The plaintiff REDACTED he defendants are the Diocese of Duluth and St. Rose Church (The Parish of St. Rose).

### III.  Triable issues of fact and law

REDACTED

ATTORNEYS & COUNSELORS SINCE 1899

DEPOSITION
EXHIBIT
Dickie

DD_INS_00069

To:  Ms. Erin Dickie
September 30, 2005
Page 2

REDACTED

IV.    Evaluation of Judge, Plaintiff Lawyer, & Jurisdiction

REDACTED

V.    Evaluation of witnesses and key testimony

REDACTED

DD_INS_00070

To: Ms. Erin Dickie
September 30, 2005
Page 3

REDACTED

DD_INS_00071

To: Ms. Erin Dickie
September 30, 2005
Page 4

REDACTED

## VI. Evaluation of insured's and plaintiff's testimonies

REDACTED

## VII. Motion in Limine and effect

REDACTED

## VIII. Evaluation of jury instructions and verdict form

REDACTED

## IX. Evaluation of jury verdict & settlement authority

REDACTED

DD_INS_00072

To: Ms. Erin Dickie
September 30, 2005
Page 5

REDACTED

**X.**   **Status of current settlement activity and recommendations**

REDACTED

**XI.**   **Evaluation of trial outcome**

REDACTED

**XII.**   **Expected length of trial and cost**

REDACTED

Please let me know if you have any questions in regard to any of the foregoing.

Sincerely yours,

John D. Kelly

JDK/kan
c: Reverend Dale Nau w/enclosure

DD_INS_00073

# EXHIBIT C



**OHIO CASUALTY GROUP**

Dan Fleming, CPCU, AIC, Senior Litigation Specialist-Specialized Claims Litigation
SPECIAL CLAIMS HANDLING UNIT

DOC 65

September 5, 2006

John D. Kelly
Hanft Fride
1000 U.S. Bank Place
130 W. Superior Street
Duluth, MN 55802-2094

RE:   Insured:   **Diocese of Duluth**
      Claim #:   **GA 802529**

Dear John:

In accordance with your request enclosed is our check in the amount of $250,000.

Thanks for your efforts in getting this resolved.

Best Regards,

Dan Fleming, CPCU
Senior Litigation Specialist
Ohio Casualty Insurance Company

DEPOSITION
EXHIBIT
7
Dickie

9450 Seward Road, Fairfield, OH 45014          Telephone:   513.603.7132 .     Fax:    513.881.1279

# EXHIBIT D

Doc 65

## Release of all Claims

REDACTED            In consideration of payment of the sum of $250,000, the receipt of which is hereby acknowledged, hereby fully and forever releases, acquits, and discharges the Diocese of Duluth and St. Rose Catholic Church in Proctor, Minnesota, their insurers, their heirs, executors, administrators, successors and assigns, from any and all liability, now or hereafter accrued, for injury or damage of any kind arising out of or in any way related to alleged acts or omissions of Father John Nicholson, The Diocese of Duluth and/or St. Rose Church in Proctor, during the time that Father John Nicholson was assigned to St. Rose Parish from 1966 to 1970.

Releasor hereby acknowledges and assumes all risk, chance or hazard that said damage or loss may become progressive, greater, or more extensive than is now known, anticipated or expected. No promise or inducement which is not herein expressed has been made to releasor, and in executing this release, releasor does not rely upon any statement or representation made by any person, firm or corporation hereby released, or any agent or representative of any of them concerning the nature, extent or duration of said damage or loss, or the legal liability therefor.

Releasor understands that this settlement is in compromise of a doubtful and disputed claim, and that the payments and transfers above recited are not to be construed as an admission of liability on the part of the persons, firms and/or corporations hereby released, by whom liability is expressly denied.

*Releasor further acknowledges that certain medical and other benefits have been paid to him,* or in his behalf, by persons or entities that have claimed or may claim a lien against the proceeds of this settlement. Releasor assumes the duty and obligation of settling and satisfying all such claims or liens out of the settlement funds paid in consideration of this Release, agrees to indemnify and hold harmless Releasees against all such claims or liens and agrees that this is a material provision of

DEPOSITION
EXHIBIT
6
Dickie

DD_INS_00045

this settlement agreement. Finally, Releasor agrees to provide releasees with proof of the settlement or satisfaction of any such claims or liens.

This release contains the entire agreement between the parties hereto, and the terms of this release are contractual and not a mere recital.

Releasor further states that he has carefully read the foregoing release, knows the contents thereof, and signs the same as his free act and deed.

IN WITNESS WHEREOF, he has hereunto set his hand this _14th_ day of _September_, 2006.

WITNESSES:

REDACTED

REDACTED

2

DD_INS_00046

# EXHIBIT E



**Ohio
Casualty.**

Member of Liberty Mutual Group

Dan Fleming, CPCU, AIC, SCLA
Technical Claim Consultant
Special Claims Unit

9450 Seward Road
Fairfield, OH 45014

(513)603.7132
(603)430-0586

John.Fleming@libertyMutual.com

August 11, 2009

John Kelly
Hanft Fride
1000 U.S. Bank Place
130 West Superior Street
Duluth, MN 55802

RE:     Insured:     Diocese of Duluth
        Claim #:     GA 802799

Dear John:

Enclosed is our check in the amount of $5000.

Thanks for your efforts in getting this resolved.

Best Regards,

Dan Fleming

Ohio Casualty™ member underwriting companies:
American Fire and Casualty Company, Consolidated Insurance Company, Excelsior
Insurance Company, Indiana Insurance Company, Mid-American Fire & Casualty
Company, The Midwestern Indemnity Group, Montgomery Mutual Insurance Company,
The Netherlands Insurance Company,
The Ohio Casualty Insurance Company, Ohio Security Insurance Company,
Peerless Indemnity Insurance Company, Peerless Insurance Company, West American
Insurance Company
(Not all companies may be licensed in all states.)



## UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF MINNESOTA

_____

In re:                                        Bankruptcy Case No.:  15-50792
Diocese of Duluth,                            Chapter 11

           Debtor-in-Possession.

_____

Diocese of Duluth,

         Plaintiff,

                                   Adversary Proceeding No.: 16-05012
v.

  LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,
Defendants.

_____

## AFFIDAVIT OF FRANZ HOEFFERLE

_____

       Franz Hoefferle, duly affirmed, deposes and says:

       1.      I am the Chief Financial Officer for the Diocese of Duluth (the "Diocese").

       2.      I submit this Affidavit based upon personal knowledge and information I obtained

from reviewing the Diocese's historical insurance files.

       3.      I performed a diligent and thorough search of the Diocese's historical insurance

files for insurance policies providing liability coverage to the Diocese in response to claims made

against it for alleged negligence involving alleged acts of sexual abuse perpetrated by priests
who formerly served in the Diocese.

4.      I searched for a copy of Great American Policy No. XOV0770553, which policy
was referenced in certain documents I reviewed in the Diocese's historical insurance files.

5.      Despite a diligent search, I did not find a copy of Great American Policy
No. XOV0770553.

Franz Hoefferle



Affirmed before me, this _15_ day

of _December_ 2016

SHAWNA MARIE HANSEN
COMM. #31067914
Notary Public
State of Minnesota
My Commission Expires 1/31/2020

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF MINNESOTA

_____

In re:                                          Bankruptcy Case No.:  15-50792
Diocese of Duluth,                              Chapter 11

        Debtor-in-Possession.

_____

Diocese of Duluth,

        Plaintiff,

                                   Adversary Proceeding No.: 16-05012
v.

  LIBERTY MUTUAL GROUP, a Massachusetts
  corporation; CATHOLIC MUTUAL RELIEF SOCIETY
  OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
  INSURANCE COMPANY, a California corporation;
  CHURCH MUTUAL INSURANCE COMPANY,
  a Wisconsin corporation and THE CONTINENTAL
  INSURANCE COMPANY, an Illinois corporation,
  Defendants.

_____

## AFFIDAVIT OF HENRY R. BOOTH LL. B.

_____


      Henry R. Booth LL.B., duly affirmed, deposes and says:


    1.     I am Managing Director of R. M. Fields of West Chester, Pennsylvania.


    2.     R. M. Fields is a leading specialist in the field of Insurance Archeology.

Conceived in 1981 in response to the first wave of asbestos claims, Insurance Archaeology - the

reconstruction and analysis of old insurance coverage - has developed into a specialized area of

insurance consulting which now provides assistance to clients in every industry segment in the
United States, Canada, the United Kingdom, Europe and Australia.

3.      I submit this Affidavit based upon personal knowledge and information I obtained
reviewing certain historical insurance files of the Diocese of Duluth, as well as my 30 plus years
of experience in insurance archeology generally and with religious order client policyholders in
particular.

4.      The Diocese of Duluth retained me in 2015 in connection with the reconstruction
of their historical liability insurance program in response to claims made against it for alleged
negligence involving alleged acts of sexual abuse perpetrated by priests who served in the
Diocese of Duluth.

5.      Most of the claims allege abuse that took place decades ago.  Accordingly, much
of the insurance relevant to these claims was placed in the 1960s and 1970s.

6.      My engagement involved the review and analysis of Diocesan insurance files,
such as a policies and other compelling evidence, as well as secondary evidence of coverage.

7.      During my efforts for the Diocese of Duluth, I also utilized R. M. Fields' internal
data to supplement the results of the research of the Diocese of Duluth's records.  Over the last
30 plus years, R.M. Fields has invested heavily in building up historical insurance coverage data.
As a result we can tap a resource that is unique in its content and accessibility.

8.      Pursuant to my review of the records described above, I determined that the
Diocese of Duluth's historical insurance coverage program was comprised of three-year policies
from 1958 to 1985, with a three month "stub policy" in 1973 that transitioned coverage issued by
two different insurance companies.

9.      During this time period, three year policies were sold as a matter of custom and practice of the insurance industry.

10.     I searched for a copy of Great American Policy No. XOV0770553, which policy was referenced in certain secondary information I reviewed, including a letter dated 9/20/2005 from Ms. Erin Dickie, Senior Litigation Specialist with Great American Insurance Company to the Diocese. While I did not find a copy of Great American Policy No. XOV0770553, our database of policies included two Great American Specimen policies from the relevant time frame that were originally obtained by R.M. Fields LP from the University of Utah, Marriott Library, Manuscripts Division.

11.     I reviewed the terms and conditions of the Great American specimen form and compared them to those set out in Ms. Dickie's letter. They were substantively identical.

12.     Attached hereto as Exhibit A is a true and correct copy of a Great American Specimen Policy, with a policy period of April 30, 1970 to April 30, 1973.

_____

Henry R. Booth

Affirmed before me, this /4 day

of _December_ 2016

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
John Sloan, Notary Public
Cain Twp., Chester County
My Commission Expires Nov. 21, 2019
MEMBER, PENNSYLVANIA ASSOCIATION OF NOTARIES

# EXHIBIT A

**Great American Insurance Companies**

GREAT AMERICAN INSURANCE COMPANY
AMERICAN NATIONAL FIRE INSURANCE COMPANY
99 JOHN STREET; NEW YORK, N. Y. 10038
(Each a capital stock corporation, herein called the company)

# SELECT LIABILITY POLICY

## DECLARATIONS

POLICY NUMBER SLP

| | | | Previous Policy |
|---|---|---|---|
| Item 1. | NAMED INSURED | (AS PER ENDORSEMENT ATTACHED) | SLP |

Address (Number, Street, Town, County, State, Zip)

SALT LAKE CITY, UTAH

Item 2.    Policy Period:    From  4/30/70    To  4/30/73
12:01 A.M. standard time, at the address of the named insured as stated herein.

Agent                    Sub-Producer        Code No.

EASTMAN HATCH & CO
SALT LAKE CITY, UTAH                        863633

Insurance is afforded
by Company initialed:

☒ G = GREAT AMERICAN INSURANCE COMPANY
☐ A = AMERICAN NATIONAL FIRE INSURANCE COMPANY

Item 3. Entry of amounts of Limits of Liability designates the LIMITS PLAN applicable.
The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges.
The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

### (a) MULTIPLE LIMITS PLAN

| | COVERAGES | LIMITS OF LIABILITY | | ADVANCE PREMIUMS |
|---|---|---|---|---|
| A | Bodily Injury Liability — Automobile | $ 250 ,000 | each person | |
| | | $ 1,000 ,000 | each occurrence | $ 1,909. |
| B | Bodily Injury Liability — Except Automobile | $ 250 ,000 | each person | |
| | | $ 1,000 ,000 | each occurrence | |
| | | $ 500 ,000 | aggregate products and completed operations | $ 2,081. |
| C | Property Damage Liability — Automobile | $ 100 ,000 | each occurrence | $ 890. |
| D | Property Damage Liability — Except Automobile | $ 100 ,000 | each occurrence | |
| | | $ 100 ,000 | aggregate operations | |
| | | $ 100 ,000 | aggregate protective | |
| | | $ 100 ,000 | aggregate products and completed operations | |
| | | $ 100 ,000 | aggregate contractual | $ 1,990. |

### (b) SINGLE LIMIT PLAN

| | | | | |
|---|---|---|---|---|
| A&C | Bodily Injury and Property Damage — Automobile | $ ,000 | each occurrence | $ |
| B&D | Bodily Injury and Property Damage — Except Automobile | $ ,000 | each occurrence | $ |

| | | | |
|---|---|---|---|
| Automobile Physical Damage | Per Supplement | | $ 1,613. |
| | Total Advance Premium | | $ 8,483. |

If policy period is more than one year, the premium is payable:  $  8,483.  on effective date of the policy:

$  4,071.    *1st anniversary:  $  4,071.    *2nd anniversary.
*The 2nd and 3rd year premiums do not include the premiums for the automobile coverages which shall be computed annually.

Item 4. During the past three years no insurer has canceled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:

Item 5. The named insured is  CORPORATION
(INDIVIDUAL, CORPORATION, PARTNERSHIP, TRUSTEE OR ESTATE)

Item 6. Business of the named insured is

Form numbers of endorsements attached to policy at issue:  F.21007A;21009B;20109121017B;21015E;SF 0056;30128A;
20032A;30846;20025;SF 002)

RQ/IL/GC-1 5/22/70

Countersigned by ................................
Authorized Representative

F. 21001A-4-69

DEPOSITION
EXHIBIT
9
Dickie
PENGAD 800-631-6989

DD_INS_00026



**Great American Insurance Companies**

GREAT AMERICAN INSURANCE COMPANY
AMERICAN NATIONAL FIRE INSURANCE COMPANY
99 JOHN STREET, NEW YORK, N. Y. 10038
(Each a capital stock corporation, herein called the company)

# SELECT LIABILITY POLICY

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## INSURING AGREEMENTS

**I Coverage A—Bodily Injury Liability—Automobile.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence and arising out of the ownership, maintenance or use including loading and unloading of any automobile.

**Coverage B—Bodily Injury Liability—Except Automobile.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence.

**Coverage C—Property Damage Liability—Automobile.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage caused by an occurrence and arising out of the ownership, maintenance or use including loading and unloading of any automobile.

**Coverage D—Property Damage Liability—Except Automobile.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of property damage caused by an occurrence.

**II Defense, Settlement.** The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after

the applicable limit of the company's liability has been exhausted by payment of judgments or settlements.

**III Supplementary Payments.** The company will pay, in addition to the applicable limit of liability:

(a) all expenses incurred by the company, all costs taxed against the insured in any suit defended by the company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the company's liability thereon;

(b) premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured during the policy period, not to exceed $250 per bail bond, but the company shall have no obligation to apply for or furnish any such bonds;

(c) expenses incurred by the insured for first aid to others at the time of an occurrence;

(d) reasonable expenses incurred by the insured at the company's request, including actual loss of wages or salary (but not loss of other income) not to exceed $25 per day because of his attendance at hearings or trials at such request.

## EXCLUSIONS

This policy does not apply:

(a) to liability assumed by the insured under any Labor Union Contract or any other contract or agreement not in writing; but this exclusion does not apply to a warranty of fitness or quality of this named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner;

(b) to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(c) to bodily injury to any employee of the insured arising out of and in the course of his employment by the insured, but this exclusion does not apply (1) to any such injury arising out of and in the course of domestic employment by the insured unless benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law, or (2) to liability assumed by the insured under a written contract other than an agreement between the insured and any employee or his representative;

(d) under Coverages B and D to bodily injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of (1) any automobile or aircraft owned or operated by or rented or loaned to the named insured, or (2) any other automobile or aircraft operated by any person in the course of his employment by the named insured; but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the named insured or the ways immediately adjoining, if such automobile is not owned by or rented or loaned to the named insured;

(e) under Coverage C, to property damage to (1) property owned or being transported by the insured, or (2) property rented to or in the care, custody or control of the insured, or as to which the insured is for any purpose exercising physical control, other than property damage to a residence or private garage by a private passenger automobile covered by this policy;

(f) under Coverage D, (1) to property damage to property owned or occupied by or rented to the insured, or except with respect to the use of elevators, to property held by the insured for sale or entrusted to the insured for storage or safekeeping, (2) except with respect to liability under a written sidetrack agreement or the use of elevators, to property damage to (i) property while on premises owned by or rented to the insured for the purpose of having operations performed on such property by or on behalf of the insured, provided, however, that this section (i) shall not apply to property damage to such property not exceeding $5,000 per occurrence subject to a deductible of $100 per occurrence, (ii) tools or equipment while being used by the

insured in performing his operations, (iii) property in the custody of the insured which is to be installed, erected or used in construction by the insured, (iv) that particular part of any property not at premises owned by or rented to the insured, (a) upon which operations are being performed by or on behalf of the insured at the time of the property damage arising out of such operations, (b) out of which any property damage arises, (c) the restoration, repair or replacement of which has been made or is necessary by reason of faulty workmanship thereon by or on behalf of the insured, or (3) with respect to the completed operations hazard, to property damage to work performed by the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(g) under Coverage. D, to property damage to premises alienated by the named insured arising out of such premises or any part thereof;

(h) under Coverage D, to property damage to the named insured's products out of work or out of such products or any part of such products;

(i) under Coverage D, to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(j) to bodily injury or property damage due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing with respect to (1) liability assumed by the insured under any contract or agreement, or (2) expenses for first aid under Insuring Agreement III, Supplementary Payments;

(k) under Coverages B and D, to bodily injury or property damage resulting from the failure of the named insured's products or work completed by or for the named insured to perform the function or serve the purpose intended by the named insured, if such failure is due to a mistake or deficiency in any design, formula, plan, specifications, advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to bodily injury or property damage resulting from the active malfunctioning of such products or works;

(l) under Coverages B and D, to bodily injury or property damage for which the insured or his indemnitee may be held liable, as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, by reason of the selling, serving or giving of any alcoholic beverage (1) in violation of any statute, ordinance or regulation, (2) to a minor, (3) to a person under the influence of alcohol, or (4) which causes or contributes to the intoxication of any person, or as an owner or lessor of premises used for the business of manufacturing, distributing, selling or serving alcoholic beverages for which such owner or lessor may be held liable under any statute, ordinance or regulation;

F. 21000A 6-69

DD_INS_00027

(m) under Coverages B and D, to bodily injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the named insured;

(n) under Coverages B and D, to damages claimed for the withdrawal,

inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

## CONDITIONS
(Unless otherwise noted, the conditions apply to all coverages)

**1. Limits of Liability.** Entry in the declarations of dollar amount of limits of liability shall designate the Limits Plan applicable.

**(a) Multiple Limits Plan**

(i) Limits of Liability—Coverages A and B: The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages because of bodily injury sustained by one person as the result of any one occurrence, the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence. (ii) Limits of Liability—Coverages C and D: The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of the company's liability for all damages because of all property damage sustained by one or more persons or organizations, as the result of any one occurrence. (iii) Limits of Liability—Coverages B and D—Products Hazard and Completed Operations Hazard: Subject to the limit of liability with respect to "each occurrence" the limits of bodily injury liability, and property damage liability stated in the declarations as "aggregate products and completed operations" are the total limits of the company's liability for all damages arising out of the products and completed operations hazards. (iv) Limits of Liability—Coverage D: Subject to the limit of liability with respect to "each occurrence", the limit of property damage liability stated in the declarations as "aggregate operations" is the total limit of the company's liability for damages because of all property damage arising out of premises or operations rated on a remuneration premium basis or contractor's equipment rated on a receipts premium basis. Subject to the limit of liability with respect to "each occurrence", the limit of property damage liability stated in the declarations as "aggregate protective" is the total limit of the company's liability for damages because of all property damage arising out of and occurring in the course of operations performed for the named insured by independent contractors and general supervision thereof by the named insured, except (a) maintenance and repairs at premises owned by or rented to the named insured and (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures. Subject to the limit of liability with respect to "each occurrence" the limit of property damage liability stated in the declarations as "aggregate contractual" is the total limit of the company's liability for damages because of all property damage arising out of liability assumed by the insured under contracts covered by this policy in connection with operations for which there is an "aggregate operations" limit of property damage liability stated in the declarations. The limits of property damage liability stated in the declarations as "aggregate operations", "aggregate protective" and "aggregate contractual" apply separately to each project with respect to operations being performed away from premises owned by or rented to the named insured.

**(b) Single Limit Plan**

(i) Limit of Liability—Coverages A and C. The limit of liability expressed in the declarations as applicable to "each occurrence"—Coverages A and C Bodily Injury and Property Damage—Automobile is the total limit of the company's liability under Coverage A and C combined for all damages as a result of any one occurrence. (ii) Limit of Liability—Coverages B and D. The limit of liability expressed in the declarations as applicable to "each occurrence"—Coverages B and D Bodily Injury and Property Damage—Except Automobile is the total limit of the company's liability under Coverages B and D combined for all damages as a result of any one occurrence provided:

(1) With respect to the products and the completed operations hazards, such limit of liability shall be the total limit of the company's liability during each annual policy period.

(2) With respect to damages because of all property damage, such limit of liability shall be the total limit of the company's liability during each annual policy period as the result of one or more than one occurrence, but said limit of liability shall apply separately to each project with respect to operations being performed away from premises owned by or rented to the named insured.

(iii) Limits of Liability—Coverages A, B, C and D. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such limit of liability shall be applied to provide the separate limits required by such law for bodily injury liability and property damage liability to the extent of the coverage required by such law. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**2. Policy Period; Territory.** This policy applies to occurrences taking place anywhere during the policy period; provided, however, that (1) resulting claims are asserted within the United States of America, its possessions, or Canada, and (2) it shall apply to suits and judgments for damages resulting therefrom only if suit is commenced in a court in the United States of America, its possessions or in Canada.

**3. Inspection and Audit.** The company shall be permitted but not obligated to inspect the named insured's property and operations at any time. Neither the company's right to make inspections nor the making thereof nor any report thereon shall constitute an undertaking, on behalf of or for the benefit of the named insured or others, to determine or warrant that such property or operations are safe. The company may examine and audit the named insured's books and records at any time during the policy period and extensions thereof and within one year after the final termination of the policy, as far as they relate to the subject matter of this insurance.

**4. Severability of Interests.** The term "the insured" is used severally and not collectively. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the company's liability.

**5. Notice of Occurrence.** When an occurrence takes place, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses. Knowledge of an occurrence by any agent or employee of the insured shall not constitute knowledge by the insured unless the insured individual, a partner of the insured partnership, an executive officer of the insured corporation or a member of the insured joint venture shall have received notice of such occurrence from such agent or employee.

**6. Assistance and Cooperation of the Insured.** The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution of indemnity against any person or organization who may be liable to the insured because of bodily injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than first aid to others at the time of occurrence. The named insured shall promptly take at his own expense all reasonable steps to prevent additional bodily injury or property damage from arising out of the same or similar conditions; provided, (1) that a failure to take such preventive measures shall not constitute a breach of this condition unless the company has requested the named insured in writing to undertake such preventive measures, and (2) such expense shall not be recoverable under this policy.

**7. Action Against Company.** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company. Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the company as a party to any action against the insured to determine the insured's liability, nor shall the company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**8. Subrogation.** In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights.

**9. Cancellation.** This policy may be cancelled by the named insured by surrender thereof to the company or any of its authorized agents or by mailing to the company written notice stating when thereafter such cancellation shall be effective. This policy may be cancelled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than thirty days thereafter such cancellation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing.

Page 2

DD_INS_00028

If the named insured cancels, earned premium shall be computed in accordance with the customary short rate table and procedure. If the company cancels, earned premium shall be computed pro rata. Premium adjustment may be made either at the time cancellation is effected or as soon as practicable thereafter, but payment or tender of unearned premium is not a condition of cancellation.

**10. Assignment.** Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon; if, however, the named insured shall die, such insurance as is afforded by this policy shall apply (1) to the named insured's legal representative, as the named insured, but only while acting within the scope of his duties as such, and (2) with respect to the property of the named insured, including any owned automobile or hired automobile, to the person having proper temporary custody thereof, as insured, but only until the appointment and qualification of the legal representative; provided that notice of cancellation addressed to the insured named in the declarations and mailed to the address shown in this policy shall be sufficient notice to effect cancellation of this policy.

**11. Changes.** Notice to any agent or knowledge possessed by any agent or by any other person shall not effect a waiver or a change in any part of this policy or estop the company from asserting any right under the terms of this policy; nor shall the terms of this policy be waived or changed, except by endorsement issued to form a part of this policy;

**12. Other Insurance.** If at the time of an occurrence there is any valid and collectible insurance, whether on a primary, excess or contingent basis, available to the insured for this or any other carrier, except insurance purchased to apply in excess of the limits of liability of this policy, there shall be no insurance afforded hereunder as respects such occurrence; except, that if the applicable limit of liability of this policy is in excess of the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured.

**13. Notice of Claim or Suit.** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

**14. Three Year Policy.** A policy period of three years is comprised of three consecutive annual periods. Rates for the automobile hazards are subject to amendment for the second and third annual periods in accordance with the company's rules and rating plans. Computation and adjustment of rates and earned premium shall be made at the end of each annual period. Aggregate limits of liability as stated in this policy shall apply separately to each annual period.

**15. Financial Responsibility Laws.**—When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**16. Liberalization Clause.** If while this policy is in force, or within 45 days prior to the inception date thereof, there be adopted and published for use by this company any forms, endorsements or rules by which this insurance could be extended or broadened without additional premium charge, then, as to loss occurring during the policy period and after the effective date of such adoption and publication, such extended or broadened insurance shall inure to the benefit of the insured hereunder as though such endorsement or substitution of form had been made.

**17. Definitions.**

(a) "Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, (including any machinery or apparatus attached thereto) but does not include mobile equipment:

   (1) Owned Automobile means an automobile owned by or leased under contract for one year or more to the named insured.

   (2) Hired Automobile means an automobile not owned by the named insured which is used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by, leased under contract for one year or more, or registered in the name of (a) a partner or executive officer of the named insured, or (b) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile.

   (3) Non-Owned Automobile means an automobile which is neither an owned automobile nor a hired automobile.

   (4) Private Passenger Automobile means a four wheel private passenger or station wagon type automobile.

   (5) Two or More Automobiles. The terms of this policy apply separately to each automobile insured hereunder, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability.

(6) Automobile Business means the business or occupation of selling, repairing, servicing, storing or parking automobiles.

(b) "Bodily Injury" means bodily injury, sickness or disease sustained by any person.

(c) "Damages" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage.

(d) "Products Hazard" includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation of warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others.

(e) "Named Insured's Products" means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, including any container thereof (other than a vehicle), but "named insured's products" shall not include a vending machine or any property other than such container, rented to or located for use of others but not sold.

(f) "Completed Operations Hazard" includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

   (1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

   (2) when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

   (3) when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete shall be deemed completed.

The completed operations hazard does not include bodily injury or property damage arising out of

   (a) operations in connection with the transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

   (b) the existence of tools, uninstalled equipment or abandoned or unused materials, or

   (c) operations for which the classification stated in the company's manual specifies "including completed operations".

(g) "Insured" means the named insured and:

   (a) if the named insured is an individual, the spouse of such named insured if a resident of the same household;

   (b) if the named insured is a partnership, any partner and the spouse of such partner if a resident of the same household;

   (c) if the named insured is a corporation, any executive officer and the spouse of such executive officer if a resident of the same household;

   (d) if the named insured is a corporation, any director or stockholder thereof while acting within the scope of his duties as such;

   (e) if the named insured is a joint venture, any member and the spouse of such member if a resident of the same household;

   (f) any person (other than an employee of the named insured) or organization while acting as real estate manager for the named insured;

   (7) with respect to animals and watercraft owned by any insured, any person or organization legally responsible therefor, except a person using or having custody of any such animal or watercraft without the permission of the owner;

   (8) any other person while using an owned automobile or a hired automobile with the permission of the named insured, provided his actual operations or (if he is not operating) his other actual use thereof is within the scope of such permission, but with respect to bodily injury or property damage arising out of the loading or unloading thereof, such other person shall be an insured only if he is:

     (a) a lessee or borrower of the automobile, or

     (b) an employee of the named insured or of such lessee or borrower;

   (9) any other person or organization but only with respect to his or its liability because of acts or omissions of an insured under (1), (2), (3), (4), (5), (6), (7) or (8) above;

   (10) with respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,

DD_INS_00029

(a) an employee of the named insured while operating any such equipment in the course of his employment, and

(b) any other person while operating with the permission of the named insured any such equipment registered in the name of the named insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization;

provided that no person or organization shall be an insured under this paragraph (10) with respect to:

(i) bodily injury to any fellow employee of such person injured in the course of his employment, or

(ii) property damage to property owned by, rented to, in charge of or occupied by the named insured or the employer of any person described in subparagraph (b).

Such insurance as is afforded with respect to any person or organization other than the named insured does not apply to:

(a) any person while engaged in the business of his employer with respect to bodily injury to any fellow employee of such person injured in the course of his employment;

(b) the owner or lessee (of whom the named insured is a sub-lessee) of a hired automobile, or the owner of a non-owned automobile, or any agent or employee of any such owner or lessee;

(c) any person while employed in or otherwise engaged in duties in connection with an automobile business, other than an automobile business operated by the named insured.

(h) "Domestic Employee" means an employee of the insured performing duties not connected with the insured's business.

(i) "Occurrence" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured. For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

(j) "Property Damage" means injury to or destruction of tangible property.

(k) "Elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery, but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

(l) "Mobile Equipment" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, (2) maintained for use exclusively on premises owned by or rented to the named insured, including the ways immediately adjoining, (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit type); graders, scrapers, rollers and other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment. Mobile equipment shall include unregistered automobiles on premises owned by, rented to or controlled by the named insured including the ways immediately adjoining.

18. Nuclear Exclusion. This policy does not apply:

I. Under any Liability Coverage, to bodily injury or property damage

(a) with respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

(b) resulting from the hazardous properties of nuclear material and with respect to which (1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or (2) the insured is, or had this policy not been issued would be, entitled to indemnity from the United

States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

II. Under any Medical Payments Coverage, or under any Supplementary Payments provision relating to first aid, to expenses incurred with respect to bodily injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

III. Under any Liability Coverage, to bodily injury or property damage resulting from the hazardous properties of nuclear material, if:

(a) the nuclear material (1) is at any nuclear facility owned by, or operated by or on behalf of, an insured, or (2) has been discharged or dispersed therefrom;

(b) the nuclear material is contained in spent fuel or waste at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

(c) the bodily injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c) applies only to property damage to such nuclear facility and any property thereat.

IV. As used herein:

"hazardous properties" include radioactive, toxic or explosive properties;

"nuclear material" means source material, special nuclear material or byproduct material;

"source material", "special nuclear material", and "byproduct material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof;

"spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor;

"waste" means any waste material (1) containing byproduct material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (a) or (b) thereof;

"nuclear facility" means

(a) any nuclear reactor,

(b) any equipment or device designed or used for (1) separating the isotopes of uranium or plutonium, (2) processing or utilizing spent fuel, or (3) handling, processing or packaging waste,

(c) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(d) any structure, basin, excavation, premises, or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations;

"nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material;

"property damage" includes all forms of radioactive contamination of property.

19. Premium. The advance premium stated in the declarations is an estimated premium only. Upon termination of this policy, the earned premium shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceeds the estimated advance premium paid, the named insured shall pay the excess to the company; if less, the company shall return to the named insured the unearned portion paid by such insured. The named insured shall maintain records of such information as is necessary for premium computation, and shall send copies of such records to the company at the end of the policy period and at such times during the policy period as the company may direct.

20. Conformity with Statute. The terms of this policy and forms attached hereto which are in conflict with the statutes of the state wherein this policy is issued are hereby amended to conform to such statutes.

IN WITNESS WHEREOF, the company has caused this policy to be signed by its president and secretary, but this policy shall not be valid unless completed by the attachment hereto of a Declarations page countersigned by a duly authorized agent of the company.

L. A. Bishop        Secretary

     President

Page 4

THIS MATERIAL MAY BE PROTECTED BY COPYRIGHT LAW

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

_____

In re:                                         Bankruptcy Case No.:  15-50792

Diocese of Duluth,                             Chapter 11

      Debtor-in-Possession.

_____

Diocese of Duluth,

      Plaintiff,

                        Adversary Proceeding No.: 16-05012

v.

LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

      Defendants.

_____

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
## MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING
## THE EXISTENCE OF THE GREAT AMERICAN INSURANCE POLICY
_____

        Plaintiff Diocese of Duluth submits this memorandum of law in support of its motion for

partial summary judgment regarding the existence of the Great American Insurance Company[1]

_____

[1] Liberty Mutual Group ("Liberty Mutual") through a corporate transaction between Great
American Insurance Company ("Great American") and Ohio Casualty Company, acquired
responsibility for insurance policies issued to the Diocese in Minnesota by the Great American
Insurance Company, Agricultural Insurance Company and American Empire Insurance
Company for certain time frames during which the underlying claimants allege abuse.

insurance policy that provides bodily injury coverage to the Diocese from 1964 to 1967 (the

"Great American Policy").

## INTRODUCTION

The Diocese faces potential liability arising from negligence claims asserted by

125 claimants who allege bodily injuries resulting from sexual abuse that allegedly took place

many years ago at the hands of priests within the Diocese.  In light of the Diocese's financial

condition, assets available to compensate the alleged victims are almost entirely insurance

proceeds from the insurance companies that sold the Diocese liability insurance providing

coverage in the years of alleged abuse.  Liberty Mutual is one of the Diocese's historical liability

insurers.  The parties do not dispute that Liberty Mutual's predecessor, Agricultural Insurance

Company, sold the Diocese three consecutive three-year policies from 1964 to 1973.  Liberty

Mutual fails to acknowledge, however, the existence of an insurance policy that another of its

predecessors, Great American, sold to the Diocese from 1964 to 1967 that provides $1 million of

coverage per occurrence.  Liberty Mutual's attempt to deprive the victims access to these

significant insurance proceeds fails as a matter of Minnesota law.

Under Minnesota law, an original document is not required, and other evidence of a

writing is admissible proof of a missing document, unless the proponent lost or destroyed it in

bad faith.  Unless Liberty Mutual can show that the Diocese lost or destroyed the original Great

American Policy documents in bad faith, secondary evidence of the writing is sufficient to prove

the Diocese's *prima facie* case that the policy exists.  The Diocese has no incentive to destroy

evidence of its most prized assets and, rather, every incentive to locate the policy documents.

Liberty Mutual cannot and will not come forward with any proof to the contrary.

2

The Diocese conducted a diligent search for the Great American Policy—even hiring an insurance archaeologist to assist—to no avail.  During its search for the policy documents, the Diocese located contemporaneous writings from Great American, including a letter in which Great American reserved its right to deny coverage based on language quoted directly from the Great American Policy.  The language on which Great American relied at the time is sufficient, as a matter of law, to establish the terms of the Great American Policy, including its limits.  Additionally, the Diocese located documents from Great American confirming that it paid a $250,000 claim against the Diocese alleging abuse in the years for which the Great American Policy provides the Diocese coverage.  Liberty Mutual attempts to rewrite history and asserts that the only policy in existence at the time of this alleged abuse was an Agricultural Insurance Company policy that provided a $50,000 per person and $100,000 per occurrence limit of liability.  Great American's claims handler at the time conceded under oath that she would never have paid more than the policy's limit.

Great American's contemporaneous evidence debunks Liberty Mutual's newly concocted theory as a matter of law.

## **STATEMENT OF FACTS**

A claimant identified as "John Doe 65" filed a lawsuit against the Diocese alleging, among other things, negligent retention and negligent supervision as against the Diocese arising from alleged sexual abuse occurring in 1966 and 1967.  *See* Affidavit of John D. Kelly, Esq. dated December 15, 2016 ("Kelly Aff."), Ex. B at DD_INS_00069.  The Diocese tendered the John Doe 65 claim to Great American for coverage and, on September 20, 2005, received in response a 6-page reservation of rights letter from Erin Dickie, Senior Litigation Specialist, Great American Insurance Company.  *See* Kelly Aff., Ex. A (the "Great American Letter").  The

3

subject line of the Great American Letter states that the applicable policy number pursuant to

which Great American was handling the claim is:  "Policy No.: XOV 0770553."  *See id.* at

DD_INS_00031.  The Great American Letter states that the declarations page of Policy No.

XOV 0770553, the Great American Policy, provides the Diocese the following limits of liability

for the allegations set forth in John Doe 65's sexual abuse lawsuit:  "bodily injury liability limits

of $1,000,000 ($1 million) per person" and "bodily injury liability limits of $1,000,000

($1 million) per occurrence."  *See id.* at DD_INS_00034.

The Diocese performed a diligent and thorough search of its historical insurance files for

insurance policies providing liability coverage to the Diocese in response to claims made against

it for alleged negligence involving alleged acts of sexual abuse perpetrated by priests who

formerly served in the Diocese.  *See* Affidavit of Franz Hoefferle dated December 15, 2016

("Hoefferle Aff.") ¶ 3.  The Diocese also retained an insurance archeologist named Henry Booth,

the Managing Director at R.M. Fields, in connection with the reconstruction of their historical

liability insurance program in response to the claims made against the Diocese.  *See* Affidavit of

Henry R. Booth dated December 14, 2016 ("Booth Aff.") ¶¶ 4, 11.

The Diocese and Mr. Booth conducted a diligent search for the Great American Policy.

*See* Booth Aff. ¶ 10; Hoefferle Aff. ¶ 4.  Mr. Booth reviewed and analyzed Diocesan insurance

files, including policies and other compelling evidence, as well as secondary evidence of

coverage.  *See* Booth Aff. ¶ 6.  He also utilized R. M. Fields' internal data to supplement the

results of the research of the Diocese's records.  *See id.* ¶ 7.  Over the last 30 plus years,

R.M. Fields has invested heavily in building up historical insurance coverage data that is unique

in its content and accessibility.  *See id.* ¶ 7.

4

Despite their efforts, neither the Diocese nor Mr. Booth located a copy of the Great

American Policy.  *See* Booth Aff. ¶ 10; Hoefferle Aff. ¶¶ 4, 5.  R. M. Fields' database of policies

included Great American Specimen policies from the relevant time frame that were originally

obtained from the University of Utah, Marriott Library, Manuscripts Division.  *See* Booth Aff. ¶

10, Ex. A.  Mr. Booth reviewed the terms and conditions of a Great American specimen form

with a policy period of April 30, 1970 to April 30, 1973 and compared them to those set out in

the Great American Letter.  *See* Booth Aff. ¶ 11.  They were substantively identical.  *Compare*

Kelly Aff., Ex. A, *with* Booth Aff., Ex. A.

The following chart compares the language Great American quoted in its letter to the

Diocese and the language it sold at the time:

| Specimen Great American Policy | Great American Letter |
|---|---|
| Great American Insurance Companies agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and subject to the limits of liability, exclusions, conditions and other terms of this policy:<br><br>**INSURING AGREEMENT**<br><br>**I.  Coverage B - Bodily Injury Liability - Except, Automobile**.  To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence. | Great American Insurance Companies agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and subject to the limits of liability, exclusions, conditions and other terms of this policy:<br><br>**INSURING AGREEMENT**<br><br>**I.  Coverage B - Bodily Injury Liability - Except, Automobile**.  To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury caused by an occurrence. |
| **II. Defense, Settlement**.  The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but | **II. Defense, Settlement**.  The company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but |

5

| | |
|---|---|
| the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements. | the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements. |
| **17. Definitions.**<br><br>     (b) "**Bodily Injury**" means bodily injury, sickness or disease sustained by any person.<br><br>     (c) "**Damages**" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage.<br><br>     (g) ''**Insured**" means the named insured and: . . .<br><br>     (i) "**Occurrence**" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.  For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence. | **17. Definitions.**<br><br>     (b) "**Bodily Injury**" means bodily injury, sickness or disease sustained by any person.<br><br>     (c) "**Damages**" includes damages for death and for care and loss of services resulting from bodily injury and damages for loss of use of property resulting from property damage.<br><br>     (g) ''**Insured**" means the named insured and: . . .<br><br>     (i) "**Occurrence**" means an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured.  For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of once [sic] occurrence. |
| **1.     Limits of Liability**.  Entry in the declarations of dollar amount of limits of liability shall designate the Limits Plan applicable.<br><br>**(a) Multiple Limits Plan**<br><br>     (i) **Limits of Liability - Coverages A and B**:  The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's | **1.     Limits of Liability**.  Entry in the declarations of dollar amount of limits of liability shall designate the Limits Plan applicable.<br><br>**(a) Multiple Limits Plan**<br><br>     (i) **Limits of Liability - Coverages A and B**:  The limit of bodily injury liability stated in the declarations as applicable to "each person" is the limit of the company's |

| | |
|---|---|
| liability for all damages because of bodily injury sustained by one person as a result of anyone occurrence, the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence. | liability for all damages because of bodily injury sustained by one person as a result of anyone occurrence, the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all damages because of bodily injury sustained by two or more persons as the result of any one occurrence. |
| **CONDITIONS** | **CONDITIONS** |
| (Unless otherwise noted, the conditions apply to all coverages.) | (Unless otherwise noted, the conditions apply to all coverages.) |
| **5.  Notice of Occurrence**.  When an occurrence takes place, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable.  Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses. Knowledge of an occurrence by any agent or employee of the insured shall not constitute knowledge by the insured unless the insured individual, a partner of the insured partnership, an executive officer of the insured corporation or a member of the insured joint venture shall have received notice of such occurrence from such agent or employee. | **5.  Notice of Occurrence**.  When an occurrence takes place, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable.  Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of the occurrence, the names and addresses of the injured and of available witnesses. Knowledge of an occurrence by any agent or employee of the insured shall not constitute knowledge by the insured unless the insured individual, a partner of the insured partnership, an executive officer of the insured corporation or a member of the insured joint venture shall have received notice of such occurrence from such agent or employee. |
| **6.  Assistance and Cooperation of the Insured**.  The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury ... with respect to which insurance is afforded under this policy.... The insured shall not, except at | **6.  Assistance and Cooperation of the Insured**.  The insured shall cooperate with the company and, upon the company's request, assist in making settlements, in the conduct of suits and in enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury ... with respect to which insurance is afforded under this policy.... The insured shall not, except at |

7

his own cost, voluntarily make any payment, assume any obligation or incur any expense other than first aid to others at the time of occurrence.  The named insured shall promptly take at his own expense all reasonable steps to prevent additional bodily injury ... arising out of the same or similar conditions; provided (l) that a failure to take such preventative measures shall not constitute a breach of this condition unless the company has requested the named insured in writing to undertake such preventative measures, and (2) such expense shall not be recoverable under this policy.

**8.  Subrogation**.  In the event of any payment under this policy, the company shall be subrogated to the insured's rights of recovery therefore against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights.  The insured shall do nothing after loss to prejudice such rights.

**12. Other Insurance**.  If at the time of an occurrence there is any valid and collectible insurance, whether on a primary, excess or contingent basis, available to the insured (in this or any other carrier), except insurance purchased to apply in excess of the limits of liability of this policy, there shall be no insurance afforded hereunder as respects such occurrence; except, that if the applicable limit of liability of this policy is in excess of the applicable limit of liability provided by the other insurance, this policy shall afford excess insurance over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy.  Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured.

8

| | |
|---|---|
| **13.**  **Notice of Claim or Suit**.  If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative. | **13.**  **Notice of Claim or Suit**.  If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative. |

Great American's conclusion with respect to the John Doe 65 claim, as stated in the Great American Letter, was "reaffirming its earlier reservation of all rights and defenses ***under the policy*** and applicable law."  *See* Kelly Aff., Ex. A at DD_INS_00036 (emphasis added).  Great American told the Diocese in 2005 that it reserved its rights to deny coverage based on the policy language quoted in the Great American Letter that is identical to the language of a Great American specimen policy sold during that time.

In response to the Great American Letter, counsel for the Diocese wrote a letter dated September 30, 2005 to Great American regarding the John Doe 65 lawsuit.[2]  *See* Kelly Aff., Ex. B at DD_INS_00069.  Great American, through its successor in interest,[3] paid $250,000 to resolve John Doe 65's claim against the Diocese.  The contemporaneous evidence of Great American's payment includes:  (1) a September 5, 2006 letter from Great American's successor in interest stating that it enclosed a check for $250,000, Kelly Aff., Ex. C at DD_INS_00044; and (2) a release of all Claims against the Diocese that John Doe 65 executed on September 14,

---

[2] Portions of the John Doe 65 documents are redacted to protect the claimant's identity and privacy.  The Defendants possess unredacted copies of these documents and the Diocese will make them available to the Court, upon request.

[3] Ohio Casualty Insurance Company acquired the assets of Great American commercial lines division. http://www.propertyandcasualty.com/doc/ohio-casualty-group-closes-acquisition-of-gre-0001 (last visited December 16, 2016).  Liberty Mutual then acquired Ohio Casualty Insurance Company.  http://www.insurancejournal.com/news/national/2007/05/07/79471.htm (last visited December 16, 2016).

9

2006 in consideration of the payment of $250,000, the receipt of which he acknowledged in the release document.  *See* Kelly Aff. ¶ 7, Ex. D at DD_INS_00045-46.

In August 2016, the Diocese deposed Erin Dickie, the Great American claims professional who is identified as the signatory on the Great American Letter.  Ms. Dickie purportedly did not populate the insurance policy terms, policy number and limits of liability stated in the Great American Letter.  She testified that her predecessor, or claims counsel with her approval, wrote the Great American Letter.  *See* Declaration of Jared Zola dated December 16, 2016 ("Zola Decl."), Ex. A at 81:21-82:10.  Regardless, someone with the authority to reserve Great American's rights to deny coverage and transmit this coverage position to its insured, the Diocese, wrote a six page letter quoting verbatim the Great American Policy.

Liberty Mutual contends that the sole insurance policy for which it is responsible to the Diocese during the 1964 to 1967 policy period is Agricultural Insurance Company policy numbered CLA 770553, which provides $50,000 per person and $100,000 per occurrence limits of liability.  *See* Zola Decl., Ex. B.[4]  Ms. Dickie, however, was unable to refute that ***Great American paid $250,000*** to resolve John Doe 65's claim against the Diocese.  She testified as follows:

> Q. Do you recall any situation in your career where you paid a settlement
>
> that was in excess of limits, barring a finding?

---

[4] The Great American Policy addresses the manner in which the limits of liability apply in the case of dual applicable policies during the same time period.  The Great American Policy's "other insurance" provision states, and Ms. Dickie concurred during her deposition, the insured is entitled to the larger of the two limits of liability, minus the smaller of the two limits of liability.  *See* Booth Aff., Ex. A, Provision 12 at DD_INS_00029; *see also* Zola Decl., Ex. A at 87:5-88:18.  For example, if a policy with a $1 million per occurrence limit of liability (the Great American Policy) and a separate policy with a $100,000 per occurrence limit of liability (the Agricultural Insurance policy) insure the Diocese for the same time period, the Diocese is covered for $900,000 per occurrence.  *See id.*

10

A. No.

Q. Would you have ever recommended on a claim to pay more limits than were required under the policy?

A. No.

*See* Zola Decl., Ex. A at 69:14-21.

Great American's claims professional confirmed the obvious—if the sole policy for which Liberty Mutual is responsible to the Diocese for the 1964 to 1967 policy period had a $50,000 per person and $100,000 per occurrence limit of liability, Great American would not have paid $250,000 toward John Doe 65's claim alleging abuse in 1966 and 1967.  As Great American admits in the Great American Letter, it paid John Doe 65's claim pursuant to the Great American Policy, which provided the Diocese with $1,000,000 of coverage per occurrence.

Separate and apart from John Doe 65's claim, other contemporaneous evidence confirms the existence of, and policy period of, the Great American Policy.  For example, an August 10, 2009 check from Ohio Casualty made payable to "Jeff Anderson & Associates Trust," states that the insured is the "Diocese of Duluth," the policy number is "XOV 00770553" and lists a "Loss Date: 1/31/1967."  *See* Kelly Aff. ¶ 8, Ex. E.  This document that Great American created prior to the inception of this adversary proceeding confirms:  (1) the Great American Policy number, (2) Great American's successor in interest paid claims alleging sexual abuse on the Diocese's behalf pursuant to the Great American Policy, and (3) Great American's successor in interest paid a sexual abuse claim alleging a January 31, 1967 date of loss on the Diocese's behalf pursuant to the Great American Policy.

11

The Diocese's historical liability insurance coverage program is comprised entirely of three-year policies from 1958 to 1985.[5]  *See* Booth Aff. ¶ 8.  Three-year policies were sold during this time period as a matter of custom and practice of the insurance industry.  *See id.* ¶ 9.  The Great American Policy provided coverage to the Diocese for John Doe 65's claim, which alleged abuse in 1966 and 1967.  *See* Kelly Aff., Ex. A at DD_INS_00069.  It also provided coverage to the Diocese for a sexual abuse claim alleging a January 31, 1967 date of loss.  *See* Kelly Aff., Ex. E.  Thus, the Great American Policy provided coverage to the Diocese for a three-year period from 1964 to 1967.

## ARGUMENT

### I.   SUMMARY JUDGMENT STANDARD

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

### II.   MINNESOTA LAW IMPOSES A LIGHT STANDARD OF PROVING THE EXISTENCE OF A MISSING INSURANCE POLICY

The standard for proving missing insurance policies is not onerous.  Under Minnesota law, an original document is not required, and other evidence of a writing is admissible, when "all originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."  Minn. R. Evid. 1004.  Unless Liberty Mutual can show that the Diocese lost or destroyed

---

[5] The sole exception is a three month "stub" policy from February to April 1974 that transitions coverage issued by two different insurance companies.  *See* Booth Aff. ¶ 8.

12

the original Great American Policy in bad faith, "'secondary evidence of [an original writing] is
admissible in the absence of any showing that the loss or destruction occurred through the fraud
of the party offering secondary evidence.'"  *State v. Mack*, No. A04-2013, 2006 WL 91314, *4
(Minn. Ct. App. Jan. 17, 2006) (quoting *State v. Dienger*, 286 Minn. 436, 438-39 (1970)); *see
also Aesoph v. Golden*, 367 N.W.2d 639, 642 (Minn. Ct. App. 1985) (relying on a blank
promissory note to prove the existence and terms of a missing promissory note that was written
on identical terms).

Minnesota courts have concluded that secondary evidence of an insurance policy is
sufficient to prove a party's *prima facie* case that it is more likely than not that a policy exists
when it offers evidence that the policy was issued, as well as evidence of the policy period and
limits.  In *American States Insurance Co. v. Mankato Iron & Metal, Inc.*, 848 F. Supp. 1436 (D.
Minn. 1993), the insured "offered evidence of the policy terms of the missing policies by
offering the coverage clause that has appeared without substantial variation in CGL policies for
four consecutive years."  *Id.* at 1440.  The court held that "the insured's establishment through
circumstantial evidence of the terms of missing policies, not rebutted by the insurer, is sufficient
to survive a motion for summary judgment."  *Id.*  The court held as much even though neither
party "produced either the policies or specimens of CGL policies that [the insurer] issued for the
period between July 1, 1978 and August 31, 1983."  *Id.*

In *Bell Lumber & Pole Co. v. U.S. Fire Insurance Co.*, 847 F.Supp. 738 (D. Minn. 1994),
the insurer claimed that the insured Bell Lumber failed to provide the existence, terms and
coverage of a lost policy, which allegedly provided CGL coverage from 1972 until 1975.  *See id.*
at 740.  Bell Lumber "offered evidence that a CGL policy was issued by [the insurer] as well as
evidence of the policy limits" and "the policy number and the dates of coverage."  *See id.* at 743.

13

Based on this secondary evidence, the Court held that Bell Lumber provided sufficient evidence

that the policy existed.  *Id.*

### III.    THE DIOCESE MEETS ITS BURDEN OF PROVING THE POLICY

Here, Liberty Mutual cannot show that the Diocese lost or destroyed the original Great

American Policy documents in bad faith.  Quite to the contrary, the Diocese undertook a diligent

search for the Great American Policy because finding it benefits the Diocese, as well as the

victims.  The secondary evidence that the Diocese offers is not only sufficient to prove the

contract exists under the standard espoused in *Mankato* and *Bell Lumber*, but also the Diocese's

evidence is comprised entirely of contemporaneous evidence obtained ***from Great American***.

Great American contemporaneously admitted that it issued the Great American Policy

by:  (1) reserving its rights to deny the Diocese coverage via the Great American Letter, which

quotes extensively from the Great American Policy and uses language that mirrors the terms and

conditions as stated in a specimen Great American sold at the time; (2) stating to the Diocese in

the Great American Letter the Policy number and the Policy's $1 million per occurrence limits of

liability; (3) paying $250,000 to resolve the John Doe 65 claim, which exceeds the per

occurrence limits provided to the Diocese in the Agricultural Insurance Company policy that was

in place at the same time[6]; and (4) paying an unrelated claim against the Diocese with a check

that states the Policy number and the 1967 covered date of loss, which evidence the policy's

effective dates.  More recently, Great American's claims professional who handled the John

Doe 65 claim testified that she would never recommend on a claim to pay more limits than were

required under the policy.

---

[6] Great American's payment exceeds the Agricultural Insurance Company policy's limit of
liability even assuming that the alleged abuse constitutes a separate occurrence in each of the two
years of alleged abuse.

14

## CONCLUSION

The Diocese has offered sufficient secondary evidence to prove the existence of the Great

American Policy as a matter of law.  The Court should grant partial summary judgment in the

Diocese's favor.

Dated:  December 19, 2016

Respectfully submitted,

**BLANK ROME LLP**

By:    /s/ *James R. Murray*
James R. Murray (admitted *pro hac vice*)
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-3409
Facsimile: (202) 420-2201
jmurray@blankrome.com

Jared Zola (admitted *pro hac vice*)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5209
Facsimile: (917) 591-8538
jzola@blankrome.com

-and-

**GRAY PLANT MOOTY**
 **MOOTY & BENNETT, P.A.**

By:    /s/ *Phillip L. Kunkel*
Phillip L. Kunkel (#058981)
Nicholas N. Nierengarten (#079169)
1010 West Germain Street, Suite 500
Saint Cloud, MN 56301
Telephone: (320) 202-5335
Facsimile: (320) 252-4482
Phillip.kunkel@gpmlaw.com
Nicholas.nierengarten@gpmlaw.com

*Counsel for the Diocese of Duluth*

15

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:                                              Bankruptcy Case No.:  15-50792

Diocese of Duluth,                                  Chapter 11

       Debtor-in-Possession.

Diocese of Duluth,

       Plaintiff,

                            Adversary Proceeding No.: 16-05012

v.

  LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

       Defendants.

      I, Abigail M. McGibbon, hereby certify that on the 19th day of December 2016, I caused

a true and correct copy of the foregoing *Notice of Motion and Motion For Partial Summary*

*Judgment regarding the Existence of the Great American Insurance Policy, Memorandum of*

*Law and Proposed Order* to be served on the following parties in the manner indicated below.

**VIA US Mail**
**Catholic Mutual Relief Society of America**
Everett J. Cygal
233 South Wacker Drive
Suite 600
Chicago, IL 60606
ecygal@shiffhardin.com

**VIA US Mail**
**The Continental Insurance Company**
Laura McNally
2321 North Clark Street
Suite 2300
Chicago, IL 60654
lmcnally@loeb.com

**VIA US Mail**
**Liberty Mutual Group**
Nancy Adams
One Financial Center
Boston, MN 02111
nadams@mintz.com

**VIA US Mail**
**Church Mutual Insurance Company**
Christian A. Preus
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
cpreus@bassford.com

**VIA US Mail**
**Fireman's Fund Insurance Company**
Charles E. Jones
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
Charles.jones@lawmoss.com

Dated: December 19, 2016

/s/ Abigail M. McGibbon_____
Abigail M. McGibbon (#393263)
80 South 8th Street, STE 500
Minneapolis, MN 55402
Telephone: 612-632-3009
Fax: 612-632-4009
Abigail.mcgibbon@gpmlaw.com

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | |
| | Bankruptcy Case No.:  15-50792 |
| Diocese of Duluth, | |
| | Chapter 11 |
| Debtor-in-Possession. | |

| | |
|---|---|
| Diocese of Duluth, | |
| Plaintiff, | |
| v. | Adversary Proceeding No.: 16-05012 |
| LIBERTY MUTUAL GROUP, a Massachusetts Corporation; CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA, a Nebraska corporation; FIREMAN'S FUND INSURANCE COMPANY, a California corporation; CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin corporation and THE CONTINENTAL INSURANCE COMPANY, an Illinois corporation, | |
| Defendants. | |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

This case is before the Court on the motion of the Diocese of Duluth for summary

judgment.

Based in the motion and file,

IT IS ORDERED:

1. The Diocese of Duluth's motion for partial summary judgment is granted; and

2. The Diocese of Duluth proved the existence of a Great American Insurance Company

   liability insurance policy that provides bodily injury coverage to the Diocese of Duluth

   from 1964 to 1967 and a $1 million per occurrence limit of liability.


_____

United States Bankruptcy Judge