**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

---

In re:

                                  Bankruptcy Case No.:  15-50792

Diocese of Duluth,

                                  Chapter 11

       Debtor-in-Possession.

---

Diocese of Duluth,

       Plaintiff,

v.                                       Adversary Proceeding No.: 16-05012

LIBERTY MUTUAL GROUP, a Massachusetts
Corporation; CATHOLIC MUTUAL RELIEF
SOCIETY OF AMERICA, a Nebraska
corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California
corporation; CHURCH MUTUAL
INSURANCE COMPANY, a Wisconsin
corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois
corporation,

       Defendants.

---

**NOTICE OF MOTION AND MOTION FOR PARTIAL SUMMARY JUDGMENT
THAT THE PROFESSIONAL SERVICES EXCLUSION IN LIBERTY MUTUAL
POLICIES' EXCLUSION OF MEDICAL PAYMENTS FOR STUDENTS
ENDORSEMENT DOES NOT APPLY TO THE DIOCESE'S CLAIMS FOR
COVERAGE**

---

TO:    THE DEFENDANTS AND OTHER ENTITIES SPECIFIED IN LOCAL RULE 9013-3.

       1.      The Diocese of Duluth through its undersigned attorneys, respectfully moves the

Court for the relief request below and gives notice of hearing.

2.      The Court will hold a hearing on this motion on **January 26, 2017 at 10:30 a.m.**, or as soon thereafter as counsel can be heard, before the Honorable Robert J. Kressel, in Courtroom 8 West, 300 South Fourth Street, Minneapolis, MN 55415.

3.      Local Rule 9006-1(c) provides deadlines for responses to this motion.  **Any response to this motion must be filed and delivered not later than January 20, 2017**, which is five (5) days prior to the time set for the hearing including Saturdays, Sundays and holidays. **UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.**

4.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334, Fed. R. Bank. P. 5005, and Local Rule 1071-1.  This is a core proceeding.

5.      The petition commencing this chapter 11 case was filed on December 7, 2015. This case is currently pending before this Court.  The complaint commencing this adversary proceeding was filed on June 24, 2016.

6.      The motion arises under Federal Rule of Civil Procedure 56, made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7056.  This motion is filed under Federal Rule of Bankruptcy Procedure 9014 and Local Rules 7007-1, 9013-1, 9013-2, 9006-1 and 9017-1.

WHEREFORE, the Diocese of Duluth respectfully moves the Court for an Order granting partial summary judgment in favor of the Diocese of Duluth and holding that the professional services exclusion in the 1967 to 1970 and 1970 to 1973 Agricultural Insurance Company (Liberty Mutual) policies' Exclusion Of Medical Payments For Students Endorsement does not apply to the Diocese of Duluth's claims for coverage.

Dated:    New York, New York                   Respectfully submitted,
          December 19, 2016

                                                **BLANK ROME LLP**

                                          By:   /s/ *James R. Murray*
                                                James R. Murray (admitted *pro hac vice*)
                                                1825 Eye Street NW
                                                Washington, DC 20006
                                                Telephone: (202) 420-3409
                                                Facsimile: (202) 420-2201
                                                jmurray@blankrome.com

                                                Jared Zola (admitted *pro hac vice*)
                                                The Chrysler Building
                                                405 Lexington Avenue
                                                New York, New York 10174
                                                Telephone: (212) 885-5209
                                                Facsimile: (917) 591-8538
                                                jzola@blankrome.com

                                                -and-

                                                **GRAY PLANT MOOTY**
                                                 **MOOTY & BENNETT, P.A.**

                                          By:   /s/ *Phillip L. Kunkel*
                                                Phillip L. Kunkel (#058981)
                                                Nicholas N. Nierengarten (#079169)
                                                1010 West Germain Street, Suite 500
                                                Saint Cloud, MN 56301
                                                Telephone: (320) 202-5335
                                                Facsimile: (320) 252-4482
                                                Phillip.kunkel@gpmlaw.com
                                                Nicholas.nierengarten@gpmlaw.com

                                                *Counsel for the Diocese of Duluth*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:                                              Bankruptcy Case No.:  15-50792

Diocese of Duluth,                                  Chapter 11

       Debtor-in-Possession.

---

Diocese of Duluth,

       Plaintiff,

                                  Adversary Proceeding No.: 16-05012

v.

    LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

       Defendants.

---

## DECLARATION OF JAMES R. MURRAY IN SUPPORT OF PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE PROFESSIONAL SERVICES EXCLUSION IN LIBERTY MUTUAL POLICIES DOES NOT APPLY TO THE SEXUAL ABUSE ALLEGATIONS AGAINST THE DIOCESE

---

      James R. Murray, declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, that

the following is true and correct:

      1.      I am a partner with Blank Rome LLP, counsel for plaintiff Diocese of Duluth

("Diocese") in this adversary proceeding.  I am familiar with the facts and circumstances of this

action by virtue of my involvement in this matter and review of the case files and believe that the

information provided herein is true and correct to the best of my knowledge.  I submit this

declaration in support of the Diocese's Motion for Partial Summary Judgment.

2.      The Diocese conducted a diligent search for its historical liability insurance

policies and located policy forms from Agricultural Insurance Company ("Liberty Mutual").

3.      Attached hereto as **Exhibit A** is a true and correct copy as produced by the

Diocese to the insurance company defendants in this adversary proceeding of certain Liberty

Mutual insurance policy forms for the 1967 to 1970 policy period.

4.      Attached hereto as **Exhibit B** is a true and correct copy as produced by the

Diocese to the insurance company defendants in this adversary proceeding of certain Liberty

Mutual insurance policy forms for the 1970 to 1973 policy period.

5.      Attached hereto as **Exhibit C** is a true and correct copy as produced by the

Diocese to the insurance company defendants in this adversary proceeding of certain Liberty

Mutual insurance policy forms for the 1964 to 1967 policy period.

Dated:  December 16, 2016

By:   _/s/ James R. Murray_____
James R. Murray (admitted *pro hac vice*)

2

# EXHIBIT A

Part Two. This Declarations page and Coverage
Part(s) with "Policy Provisions-Part One"
completes the below numbered

| EXPIRED UP REINSTATED NO | AUDIT BASIS |
|---|---|
| CLA 770553 GM | ANNUAL |

## GENERAL—AUTOMOBILE
## LIABILITY POLICY

[XX] **A**GRICULTURAL INSURANCE CO.
[ ] **A**MERICAN EMPIRE INS. CO.

COVERAGE is provided
in Company Checked

| Item | DECLARATIONS | POLICY NUMBER 3GA 26 24 22 |
|---|---|---|
| 1. | *Named Insured* | DIOCESE OF DULUTH AND CHURCHES NAMED ON CERTIFICATES |

ADDRESS:
(Number & Street, Town, County, State & Zip No.)

| 2. | Policy Period— From: | FEBRUARY 1, 1967 To: FEBRUARY 1, 1970 |
|---|---|---|
| | REPRESENTATIVE: Agent or Broker | F.I. SALTER AGENCY, INC. |
| | Office Address | 812 ALWORTH BUILDING |
| | Town and State | DULUTH, MINNESOTA |
| | | 171900 |

**A**GRICULTURAL INSURANCE CO.

HOME OFFICE
215 WASHINGTON STREET
WATERTOWN, NEW YORK 13601

**A**MERICAN EMPIRE INS. CO.
SIOUX FALLS, S.D. of South Dakota

BUSINESS OFFICE
15 WASHINGTON STREET
WATERTOWN, NEW YORK 13601

3. The insurance afforded is only with respect to such of the following Parts designated by an "X" in [2] and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto

| | | | | ADVANCE PREMIUM |
|---|---|---|---|---|
| Comprehensive General Liability Insurance .... [XX] | | LIMITS OF LIABILITY | | |
| Owners', Landlords' and Tenants' Liability Insurance .. [ ] | | | | |
| Manufacturers' and Contractors' Liability Insurance [ ] | | | | |
| Contractual Liability Insurance ............ [ ] | | | | |
| Completed Operations and Products Liability Insurance .. [ ] | EACH PERSON | EACH OCCURRENCE | AGGREGATE | |
| Bodily Injury Liability | $ 50,000. | $ 100,000. | $ 100,000. | |
| Property Damage Liability | XXXXXX | $ 5,000. | $ 25,000. | |
| | EACH PERSON | | EACH ACCIDENT | |
| Premises Medical Payments Insurance | $ 250.00 | | $ 10,000.00 | |
| Comprehensive Personal Insurance .. [ ] | EACH | EACH | EACH | |
| Farmer's Comprehensive Personal Insurance [ ] | PERSON | OCCURRENCE | ACCIDENT | |
| Personal Liability | XXXXXX | $ | XXXXXX | |
| Personal Medical Payments | $ | XXXXXX | $ | |
| Physical Damage to Property | XXXXXX | $ | XXXXXX | |
| Animal Collision | Market value not exceeding $300 each animal | | | |
| Comprehensive Automobile Liability Insurance ......... [XX] | EACH PERSON | | EACH OCCURRENCE | |
| EMPLOYERS NON-OWNERSHIP Bodily Injury Liability ONLY | $ 50,000.00 | | $ 100,000.00 | |
| Property Damage Liability | XXXXXX | | $ 5,000.00 | |
| | EACH PERSON | | EACH ACCIDENT | |
| Automobile Medical Payments Insurance .............. [ ] | $ | | XXXXXX | |
| Uninsured Motorists Insurance ..................... [ ] | $ | | $ | |
| Garage Insurance ..................................... [ ] | See Coverage Part for Limits of Liability | | | |
| Automobile Physical Damage Insurance (Non-Fleet) ...... [ ] | See Coverage Part for Limits of Liability | | | |
| Automobile Physical Damage Insurance (Fleet Automatic). [ ] | | | | |

Endorsements and Additional Coverage Parts # 26620-26628-26626-24369-L9141-32637B
(IDENTIFY BY FORM NUMBERS)

†If Policy Period more than one year and the premium is to be paid in installments, premium is payable: On effective date of policy $
Audit Period: Annual, unless otherwise stated.**

| 4. | The named insured is: Individual | ; | partnership | ; | corporation | XXXX |;
|---|---|---|---|---|---|---|
| | joint venture | ; | other | | | |

5. During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:**

**ABSENCE OF AN ENTRY MEANS "NO EXCEPTION".**
† Not applicable in Texas

Countersigned by *Leonard R. Kozarek*
Authorized Representative

Form 026616 Ed. 10-1-66

DD_INS_00183

## PREMISES MEDICAL PAYMENTS INSURANCE COVERAGE PART



**AGRICULTURAL INSURANCE CO.**
**AMERICAN EMPIRE INS. CO.**

| SCHEDULE | | General—Automobile Liability Policy No. 3GA | |
|---|---|---|---|
| | **COVERAGE** | | **ADVANCE PREMIUM** |
| (a) Premises and operations | See attached certificates | | $ |
| (b) Elevators | | | $ |
| (c) Sports activities | | | $ |
| | | Total Advance Premium | $ |

### I.  COVERAGE E—PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the insured premises or (b) operations with respect to which the named insured is afforded coverage for bodily injury liability under this policy.

**Exclusions**

This insurance does not apply:

(a) to bodily injury

(1). arising out of the ownership, maintenance, operation, use, loading or unloading of any elevator unless a premium charge is entered for elevators in the policy with respect to Premises Medical Payments Coverage;

(2) arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any automobile or aircraft owned or operated by or rented or loaned to the named insured, or

(ii) any other automobile or aircraft operated by any person in the course of his employment by the named insured;

but this exclusion does not apply to the parking of an automobile on the insured premises, if such automobile is not owned by or rented or loaned to the named insured;

(3) arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if the bodily injury occurs away from the insured premises; or

(4) arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the named insured;

(b) to bodily injury

(1) included within the completed operations hazard or the products hazard;

(2) arising out of operations performed for the named insured by independent contractors other than (i) maintenance and repair of the insured premises or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person; but this exclusion (b) (3) applies only if the named insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or is an owner or lessor of premises used for such purposes;

(4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to bodily injury

(1) to the named insured, any partner therein, any tenant or other person regularly residing on the insured premises or any employee of any of the foregoing if the bodily injury arises out of and in the course of his employment therewith;

(2) to any other tenant if the bodily injury occurs on that part of the insured premises rented from the named insured or to any employee of such a tenant

if the bodily injury occurs on the tenant's part of the insured premises and arises out of and in the course of his employment for the tenant;

(3) to any person while engaged in maintenance and repair of the insured premises or alteration, demolition or new construction at such premises;

(4) to any person if any benefits for such bodily injury are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sport activities in the policy with respect to Premises Medical Payments Coverage;

(d) to any medical expense for services by the named insured, any employee thereof or any person or organization under contract to the named insured to provide such services.

### II.  LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the declarations as applicable to "each person" is the limit of the company's liability for all medical expense for bodily injury to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all medical expense for bodily injury to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the declarations as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

### III.  ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"insured premises" means all premises owned by or rented to the named insured with respect to which the named insured is afforded coverage for bodily injury liability under this policy, and includes the ways immediately adjoining on land;

"medical expense" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

### IV.  POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

### V.  ADDITIONAL CONDITION

**Medical Reports; Proof and Payment of Claim**

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

PM



# ENDORSEMENT

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

EXCLUSION OF MEDICAL PAYMENTS FOR STUDENTS ENDORSEMENT

In consideration of the premium at which this policy is written:

It is understood and agreed that coverage provided by the "Medical Payments Coverage Part" shall not apply to or for pupils of the insured while such pupils are in or upon the school premises:

It is further understood and agreed that the coverage afforded by this policy as respects the insured's school includes (A) the use of bicycles on school business, and (B) the transportation hazard on other vehicles, including watercraft, not owned or hired by or for the insured, any member of the teaching, supervising or administrative staff, officer or employee of the insured:

It is further understood and agreed that no coverage is afforded by this policy for claims due to the rendering of any professional service or omission thereof.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

LIABILITY

6 304

### EXCLUSION
(Completed Operations Hazard and Products Hazard)

L 9141
(Ed. 7-66)

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

### COMPREHENSIVE GENERAL LIABILITY INSURANCE

This endorsement, effective _____ (12:01 A. M., standard time) , forms a part of policy No. _____

issued to

by

_____
Authorized Representative

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.

AUTHENTICO

# EXHIBIT B

Part Two.) This Declarations page and Coverage Part(s) with "Policy Provisions-Part One" completes the below numbered

| EXPIRED OR REPLACED NO. | AUDIT BASIS |
|---|---|
| 3GA262422 | Annual |

**GENERAL—AUTOMOBILE LIABILITY POLICY**

☒ **AGRICULTURAL INSURANCE CO.**
☐ **AMERICAN EMPIRE INS. CO.** of South Dakota

COVERAGE is provided in Company Checked

POLICY NUMBER 3GA 29 96 59

| Item | DECLARATIONS | |
|---|---|---|
| 1. | *Named Insured* | DIOCESE OF DULUTH AND CHURCHES NAMED ON CERTIFICATES |
| | ADDRESS: (Number & Street, Town, County, State & Zip No.) | |
| 2. | Policy Period: From: (12:01 A. M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN.) February 1, 1970   To: February 1, 1973 | |
| | REPRESENTATIVE: Agent or Broker / Office Address / Town and State | F. I. Salter Agency, Inc. 812 Alworth Building Duluth, Minnesota   171900 |

**AGRICULTURAL INSURANCE CO.**

HOME OFFICE
215 WASHINGTON STREET
WATERTOWN, NEW YORK 13801

**AMERICAN EMPIRE INS. CO.**
SIOUX FALLS, S. D.

BUSINESS OFFICE
215 WASHINGTON STREET
WATERTOWN, NEW YORK 13801

3. The insurance afforded is only with respect to such of the following Parts designated by an "X" in ☒ and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | EACH PERSON | EACH OCCURRENCE | AGGREGATE | ADVANCE PREMIUM |
|---|---|---|---|---|
| Comprehensive General Liability Insurance ........... ☒ | | | | |
| Owners', Landlords' and Tenants' Liability Insurance .... ☐ | | LIMITS OF LIABILITY | | |
| Manufacturers' and Contractors' Liability Insurance .... ☐ | | | | |
| Contractual Liability Insurance ....................... ☐ | | | | |
| Completed Operations and Products Liability Insurance .. ☐ | EACH PERSON | EACH OCCURRENCE | AGGREGATE | $ |
| Bodily Injury Liability | $ 50,000. | $ 100,000. | $ 100,000. | $ |
| Property Damage Liability | XXXXXX | $ 5,000. | $ 25,000. | $ |
| | EACH PERSON | | EACH ACCIDENT | |
| Premises Medical Payments Insurance ................. ☒ | $ 250. | | $ 10,000. | $ |
| Comprehensive Personal Insurance ................... ☐ | EACH PERSON | EACH OCCURRENCE | EACH ACCIDENT | |
| Farmer's Comprehensive Personal Insurance ........... ☐ | | | | |
| Personal Liability | XXXXXX | $ | XXXXXX | |
| Personal Medical Payments | $ | XXXXXX | $ | $ |
| Physical Damage to Property | XXXXXX | $ | XXXXXX | $ |
| (Applicable to Farmer's Comprehensive Personal Insurance only) Animal Collision | Market value not exceeding $300 each animal | | | $ |
| Comprehensive Automobile Liability Insurance .......... ☒ | EACH PERSON | | EACH OCCURRENCE | |
| Bodily Injury Liability | $ 50,000. | | $ 100,000. | $ |
| Property Damage Liability | XXXXXX | | $ 5,000. | $ |
| | EACH PERSON | | EACH ACCIDENT | |
| Automobile Medical Payments Insurance ............... ☐ | $ | | XXXXXX | $ |
| Uninsured Motorists Insurance ...................... ☐ | | | $ | $ |
| Garage Insurance .................................. ☐ | See Coverage Part for Limits of Liability | | | $ |
| Automobile Physical Damage Insurance (Non-Fleet) ...... ☐ | See Coverage Part for Limits of Liability | | | $ |
| Automobile Physical Damage Insurance (Fleet Automatic). ☐ | | | | $ |
| Endorsements and Additional Coverage Parts # 26620 - 26626- 26628 - GU6831 - L9141 (IDENTIFIED BY FORM NUMBERS) | | | | $ |
| †If Policy Period more than one year and the premium is to be paid in installments, premium is payable: On effective date of policy $ ___ and Anniversary $ ___ | | | Total Advance Premium | $ |
| Audit Period: Annual, unless otherwise stated.** | | | | |

| 4. | The named Insured is: individual | partnership | corporation XX |
|---|---|---|---|
| | joint venture | other | |

5. During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:**

**ABSENCE OF AN ENTRY MEANS "NO EXCEPTION".

† Not applicable in Texas

Countersigned by _Bernard R Kozuck_

Authorized Representative

Form D26616  Ed. 10-1-55

DD_INS_00184

## PREMISES MEDICAL PAYMENTS INSURANCE COVERAGE PART



**AGRICULTURAL INSURANCE CO.**

**AMERICAN EMPIRE INS. CO.**

| SCHEDULE | | General—Automobile Liability Policy No. 3GA | |
|---|---|---|---|
| | **COVERAGE** | | **ADVANCE PREMIUM** |
| (a) Premises and operations | See attached certificates | | $ |
| (b) Elevators | | | $ |
| (c) Sports activities | | | $ |
| | | Total Advance Premium | $ |

### I. COVERAGE E—PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the insured premises or (b) operations with respect to which the named insured is afforded coverage for bodily injury liability under this policy.

**Exclusions**

This insurance does not apply:

(a) to bodily injury

(1). arising out of the ownership, maintenance, operation, use, loading or unloading of any elevator unless a premium charge is entered for elevators in the policy with respect to Premises Medical Payments Coverage;

(2) arising out of the ownership, maintenance, operation, use, loading or unloading of

(i) any automobile or aircraft owned or operated by or rented or loaned to the named insured, or

(ii) any other automobile or aircraft operated by any person in the course of his employment by the named insured;

but this exclusion does not apply to the parking of an automobile on the insured premises, if such automobile is not owned by or rented or loaned to the named insured;

(3) arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if the bodily injury occurs away from the insured premises; or

(4) arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the named insured;

(b) to bodily injury

(1) included within the completed operations hazard or the products hazard;

(2) arising out of operations performed for the named insured by independent contractors other than (i) maintenance and repair of the insured premises or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person; but this exclusion (b) (3) applies only if the named insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or is an owner or lessor of premises used for such purposes;

(4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to bodily injury

(1) to the named insured, any partner therein, any tenant or other person regularly residing on the insured premises or any employee of any of the foregoing if the bodily injury arises out of and in the course of his employment therewith;

(2) to any other tenant if the bodily injury occurs on that part of the insured premises rented from the named insured or to any employee of such a tenant

if the bodily injury occurs on the tenant's part of the insured premises and arises out of and in the course of his employment for the tenant;

(3) to any person while engaged in maintenance and repair of the insured premises or alteration, demolition or new construction at such premises;

(4) to any person if any benefits for such bodily injury are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sport activities in the policy with respect to Premises Medical Payments Coverage;

(d) to any medical expense for services by the named insured, any employee thereof or any person or organization under contract to the named insured to provide such services.

### II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the declarations as applicable to "each person" is the limit of the company's liability for all medical expense for bodily injury to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all medical expense for bodily injury to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the declarations as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

### III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"insured premises" means all premises owned by or rented to the named insured with respect to which the named insured is afforded coverage for bodily injury liability under this policy, and includes the ways immediately adjoining on land;

"medical expense" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

### IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

### V. ADDITIONAL CONDITION

**Medical Reports; Proof and Payment of Claim**

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.



# ENDORSEMENT

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

EXCLUSION OF MEDICAL PAYMENTS FOR STUDENTS ENDORSEMENT

In consideration of the premium at which this policy is written:

It is understood and agreed that coverage provided by the "Medical Payments Coverage Part" shall not apply to or for pupils of the insured while such pupils are in or upon the school premises:

It is further understood and agreed that the coverage afforded by this policy as respects the insured's school includes (A) the use of bicycles on school business, and (B) the transportation hazard on other vehicles, including watercraft, not owned or hired by or for the insured, any member of the teaching, supervising or administrative staff, officer or employee of the insured:

It is further understood and agreed that no coverage is afforded by this policy for claims due to the rendering of any professional service or omission thereof.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

**LIABILITY**

G 304

**EXCLUSION**

(Completed Operations Hazard and Products Hazard)

L B141
(Ed. 7-66)

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

This endorsement, effective _____ (12:01 A. M., standard time) _____ , forms a part of policy No. _____

issued to

by

Authorized Representative

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.



# EXHIBIT C



**FORM J-26555A 2-63 CLA SERIES**

# AGRICULTURAL INSURANCE COMPANY
### (A STOCK INSURANCE COMPANY, HEREIN CALLED THE COMPANY)

Agrees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits of liability, exclusions, conditions and other terms of this policy:

## INSURING AGREEMENTS

**I. COVERAGE A. PERSONAL INJURY LIABILITY—AUTOMOBILE.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury, including death at any time resulting therefrom, sustained by any person, caused by an occurrence as defined herein and arising out of the ownership, maintenance or use of any automobile.

**COVERAGE B. PERSONAL INJURY LIABILITY—EXCEPT AUTOMOBILE.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury, including death at any time resulting therefrom sustained by any person and caused by an occurrence as defined herein.

**COVERAGE C. PROPERTY DAMAGE LIABILITY—AUTOMOBILE.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of property, including the loss of use thereof, caused by an occurrence as defined herein, and arising out of the ownership, maintenance or use of any automobile.

**COVERAGE D. PROPERTY DAMAGE LIABILITY—EXCEPT AUTOMOBILE.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of injury to or destruction of tangible property, including the loss of use thereof,

**II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.** With respect to such insurance as is afforded by this policy, the company shall:

(a) defend any suit against the insured alleging such personal injury, death or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) (1) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, the cost of bail bonds required of the insured in the event of automobile accident or automobile traffic law violation during the policy period, not to exceed $100 per bail bond, but without any obligation to apply for or furnish any such bonds;

(2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(3) pay expenses incurred by the insured for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence;

DD_INS_00172

# COMPREHENSIVE LIABILITY POLICY
## [GENERAL - AUTOMOBILE]

... and not
to increase

... is certified
motor vehicle
orded by this
with the pro-
arising out of
red hereunder,
· no event in
... the con-

upon the basis of which premium credit is given.

15. SUBROGATION. In the event of any payment under this policy, the company sh
rogated to all the insured's rights of recovery therefor against any person or organiz
the insured shall execute and deliver instruments and papers and do whatever else is
to secure such rights. The insured shall do nothing after loss to prejudice such right

16. THREE YEAR POLICY. A policy period of three years is comprised of three c
annual periods. Rates for hazards are subject to amendment for the second and t
periods in accordance with the company's rules and rating plans. Amended rat
stated by endorsement issued to form a part of the policy. Computation and

(4) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;

and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

III. DEFINITION OF INSURED. The unqualified word "insured" includes the named insured and also includes (1) under Coverages B and D, any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the named insured, and if the named insured is a partnership, the unqualified word "insured" also includes any partner therein but only with respect to his liability as such, and (2) under coverages A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured.

IV. USE OF OTHER AUTOMOBILES--SPOUSE. If the named insured is described in item 1 of the declarations as an individual and if the named insured and spouse are residents of the same

household, such insurance as is afforded by this policy under Coverages A and C applies, with respect to non-owned automobiles, to the spouse of such named insured as insured and to any other person or organization legally responsible for the use by such spouse of an automobile not owned or hired by such other person or organization.

This insuring agreement does not apply:

(a) with respect to any automobile owned by such spouse or a member of the household of such spouse other than a private chauffeur or domestic servant of such spouse;

(b) with respect to any automobile while used in the business or occupation of such spouse except an automobile operated or occupied by such spouse, chauffeur, or domestic servant;

(c) with respect to any occurrence arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place.

V. POLICY PERIOD, TERRITORY. This policy applies only to occurrences which take place during the policy period within North America or any possession of the United States wherever located, and with respect to automobiles, also while the automobile is on a vessel between ports within said territory.

## EXCLUSIONS

THIS POLICY DOES NOT APPLY:

(a) to liability assumed by the insured under any contract or agreement except under Coverages B and D, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products;

(b) to personal injury, death or destruction due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing, with respect to (1) liability assumed by the insured under any contract or agreement or (2) expenses under Insuring Agreement II (b) (3);

(c) under Coverages B and D, to any obligation for which the insured may be held liable in an action on a contract or an agreement by a person not a party thereto;

(d) under Coverages B and D, except with respect to operations performed by independent contractors and except with respect to liability assumed by the insured under a contract as defined herein, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured, except insofar as this part of this exclusion is stated in the declarations to be inapplicable, (2) automobiles if the occurrence happens away from such premises or the ways immediately adjoining, or (3) aircraft;

(e) to liability imposed upon the insured or any indemnitee, as a person or organization engaged in the business of manufacturing, selling or distributing alcoholic beverages, or as an owner or lessee of premises used for such purposes, arising out of the sale, gift, or distribution of any alcoholic beverage;

(f) under Coverages A and B, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(g) under Coverages A and B, except with respect to liability assumed by the insured under a contract as defined herein, to personal injury to or death of any employee of the insured arising out of and in the course of his employment by the insured, other than a domestic employee whose injury arises out of an automobile covered by this policy and for whose injury benefits in whole or in part are not payable or required to be provided under any workmen's compensation law;

(h) under Coverage C, to injury to or destruction of property owned or transported by the insured, or property rented to or in charge of the insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy;

(i) under Coverage D, to injury to or destruction of (1) property owned or occupied by or rented to the insured, or (2) except with respect to liability under sidetrack agreements covered by this policy, property used by the insured, or (3) except with respect to liability under such sidetrack agreements or the use of elevators or escalators at premises owned by, rented to or controlled by the named insured, property in the care, custody or control of the insured or property

as to which the insured for any purpose is exercising physical control, or (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, or work completed by or for the named insured, out of which the occurrence arises;

(j) under Coverage D, to injury to or destruction of buildings or property therein, wherever occurring, arising out of any of the following causes, if such cause occurs on or from premises owned by or rented to the named insured: (1) the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating or air-conditioning systems, standpipes for fire hose, or industrial or domestic appliances, or any substance from automatic sprinkler systems, (2) the collapse or fall of tanks or the component parts or supports thereof which form a part of automatic sprinkler systems, or (3) rain or snow admitted directly to the building interior through defective roofs, leaders or spouting, or open or defective doors, windows, skylights, transoms or ventilators; but this exclusion does not apply to loss due to fire, to the use of elevators or escalators or to operations performed by independent contractors;

(k) under Coverages A, B, C and D, to personal injury, or death or damage to property caused intentionally by or at the direction of the insured;

(l) under division (2) of INSURING AGREEMENT III,
   (1) with respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company; or with respect to a trailer while used with any automobile or hired by the insured and not covered by like insurance in the company;
   (2) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place with respect to any occurrence arising out of the operation thereof, but this provision does not apply to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of such resident or partnership;
   (3) to any employee with respect to personal injury to or death of another employee of the same employer injured in the course of such employment in an occurrence arising out of the maintenance or use of an automobile in the business of such employer;
   (4) with respect to any hired automobile, to the owner, or a lessee thereof other than the named insured, or to any agent or employee of such owner or lessee;
   (5) with respect to any non-owned automobile, to any executive officer, if such automobile is owned by him or a member of the same household;

(m) under Coverage D, to damage caused by smoke, soot, fumes, and gases emitted from chimneys, stacks, or exhaust piping; pollution of waters, or damage to sewers, waste pipes, or drains, unless there be coincident with such damage a sudden, fortuitous, unexpected event identifiable in time and place.

DD_INS_00173

Eastern Division, Watertown, New York

Western Division, St. Paul 14, Minnesota

## No. CLA 770553

| Prepaid | Audit Basis |
|---|---|
| ☒ | ANNUAL |
| Auto. Instal. ☐ | Bill Ann. Prem. on |

Renewal of:        NEW

DECLARATIONS

Item 1. Named Insured:   DIOCESE OF DULUTH AND

CHURCHES NAMED ON CERTIFICATES

Address:
No. Street    Town    County    State

Item 2. Policy Period:

From FEBRUARY 1, 1964 To FEBRUARY 1, 1967

12:01 A.M. Standard time at the address of the named insured as stated herein:

### AGRICULTURAL INSURANCE COMPANY
NAME OF COMPANY



Agricultural
Insurance Group

### COMPREHENSIVE LIABILITY POLICY
(GENERAL – AUTOMOBILE)

Locations of all premises owned, rented
or controlled by named insured

Interest of named insured
in such premises

The named insured is   ENTER "OWNER." "GENERAL AGENT" OR "TENANT"   **CORPORATION**
INDIVIDUAL, CORPORATION OR PARTNERSHIP

Business of the named insured is   SEE CERTIFICATES

ENTER "NAME" IF NAME LOCATION AS ABOVE ADDRESS
Part occupied by
named insured

Item 3.  The insurance afforded is only with respect to such and so many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | COVERAGES | LIMITS OF LIABILITY | | ADVANCE PREMIUMS |
|---|---|---|---|---|
| A | Personal Injury Liability—Automobile | $ 50,000. | each person | |
| | | $100,000. | each occurrence | $ SEE CERTIFICATES |
| B | Personal Injury Liability— Except Automobile | $ 50,000. | each person | |
| | | $100,000. | each occurrence | |
| | | $NOT COVERED | aggregate products | $ SEE CERTIFICATES |
| C | Property Damage Liability—Automobile | $ 5,000. | each occurrence | $ SEE CERTIFICATES |
| D | Property Damage Liability— Except Automobile | $ 5,000. | each occurrence | |
| | | $ 25,000. | aggregate operations | |
| | | $ 25,000. | aggregate protective | |
| | | $NOT COVERED | aggregate products | |
| | | $ 25,000. | aggregate contractual | $ SEE CERTIFICATES |

Endorsements forming a part
of the policy upon issuance: (Identify by Form Number)   26619, 26525, L6354A, 24369, 26603, 32637B

$

Total Advance Premium  | $  SEE CERTIFICATES

Item 4.  The declarations are completed on attached schedules.

Item 5.  Unless otherwise stated herein, the schedules (a) disclose all hazards insured hereunder known to exist at the effective date of this policy; (b) contain a complete list of all automobiles and trailers owned by the named insured at the effective date of this policy and the purposes of use thereof; (c) contain a complete list of all persons within the definition of Class I persons, at the effective date of this policy.

Exception, if any, to (a), (b) or (c):*

Item 6.  During the past three years no Insurer has canceled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:*

Counter-
signed at   DULUTH, MINNESOTA   on   JANUARY 17, 1964   by _____
Authorized Representative

THESE DECLARATIONS TOGETHER WITH FORM J. 26555A, DATED 2-63 CLA SERIES, CONSTITUTE THE ABOVE NUMBERED POLICY.

Form D-26553 1-61 CLA Series   *Absence of an entry means "No Exceptions."

DD_INS_00174

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

In re:                                                    Bankruptcy Case No.:  15-50792

Diocese of Duluth,                                        Chapter 11

      Debtor-in-Possession.

---

Diocese of Duluth,

      Plaintiff,

                                    Adversary Proceeding No.: 16-05012

v.

    LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

      Defendants.

---

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR
PARTIAL SUMMARY JUDGMENT THAT THE PROFESSIONAL SERVICES
EXCLUSION IN LIBERTY MUTUAL'S POLICIES' EXCLUSION OF MEDICAL
PAYMENTS FOR STUDENTS ENDORSEMENT DOES NOT APPLY TO THE
DIOCESE'S CLAIMS FOR COVERAGE**

---

      Plaintiff Diocese of Duluth ("Diocese") submits this memorandum of law in support of

its motion for partial summary judgment that the professional services exclusion in the 1967 to

1970 and 1970 to 1973 Agricultural Insurance Company ("Liberty Mutual")[1] insurance policies

---

[1] Liberty Mutual Group through a corporate transaction between Great American Insurance
Company and Ohio Casualty Company, acquired responsibility for insurance policies issued to
the Diocese in Minnesota by the Great American Insurance Company, Agricultural Insurance

(the "Policies") do not apply to the Diocese's claims for coverage under the Policies' Bodily

Injury Liability Coverage.

## INTRODUCTION

The Diocese faces potential liability arising from negligence claims asserted by

125 claimants who allege bodily injuries resulting from sexual abuse that allegedly took place

many years ago at the hands of priests within the Diocese.  In light of the Diocese's financial

condition, assets available to compensate the alleged victims are almost entirely insurance

proceeds from the insurance companies that sold the Diocese liability insurance providing

coverage in the years of alleged abuse.  Liberty Mutual is one of the Diocese's historical liability

insurers.  The parties do not dispute that Liberty Mutual's predecessor, Agricultural Insurance

Company, sold the Diocese three consecutive three-year policies from 1964 to 1973 (the

"Liberty Mutual Policies").  Liberty Mutual contends, however, that it does not owe the Diocese,

and, as a result, the victims, a single dollar of insurance proceeds from its Policies because they

include a professional services exclusion.[2]  Liberty Mutual is wrong.

The professional services exclusion does not apply to the Diocese's claims for coverage

under the Policies' Bodily Injury Liability Coverage for two reasons.  First, the exclusion

appears as the last sentence of the Policies' Exclusion of Medical Payments For Students

Endorsement.  That endorsement, by its plain terms, applies solely to claims made for coverage

pursuant to the Policies' Premises Medical Payments Insurance Coverage Part.  The Diocese's

_____

Company and American Empire Insurance Company for certain time frames during which the
underlying claimants allege abuse.

[2] The Diocese does not believe that Liberty Mutual is asserting that a professional services
exclusion exists in its 1964 to 1967 policy. To the extent it does, any such exclusion is
inapplicable to the Diocese's claims for the same reasons as set forth in this memorandum of law
and supporting motion papers.

2

claim at issue in this adversary proceeding do not seek coverage for medical payments under the

Policies' Premises Medical Payments Insurance Coverage Part.  Rather, the Diocese seeks

coverage under the Policies' Bodily Injury Liability Coverage.  The professional services

exclusion has no bearing on the Diocese's claim for coverage under the Policies' Bodily Injury

Liability Coverage.

Second, even assuming *arguendo* that the professional services exclusion applies to the

Policies' Bodily Injury Liability Coverage, the Diocese's claims are not due to the rendering of a

professional service or omission thereof.  Minnesota case law is in accord with the ordinary

meaning of the undefined term "professional services" and persuasive case law from across the

country, holding that professional services are a service requiring specialized knowledge and

skill usually of a mental or intellectual nature and usually requiring a license, certification, or

registration.  The allegedly perpetrating priests are not "professionals" as that term is ordinarily

understood.  They do not possess specialized skills of the nature intended to be addressed by the

term "professional services," such as a doctor or nurse.  Indeed, there exists no circumstance in

which the Diocese or the allegedly perpetrating priests require sexual contact to perform their

intended duties.  Accordingly, as a matter of law, the Diocese's claim is not "due to" the

rendering of professional services or omission thereof.

3

## <u>STATEMENT OF FACTS</u>

The Diocese purchased three separate three-year insurance policies from Liberty

Mutual's predecessor that provide bodily injury coverage to the Diocese from 1964 to 1967,

1967 to 1970, and 1970 to 1973.  The Policies provide the Diocese with Bodily Injury Liability

Coverage, as noted on the Policies' respective declaration pages.  *See* Declaration of James R.

Murray dated December 16, 2016 ("Murray Decl."), Ex. A at DD_INS_00183; Murray Decl.,

Ex. B at DD_INS_00184.  The declarations pages for the Policies state as follows:

> The insurance afforded is only with respect to such of the following Parts
> designated by an "X" in [×] and Coverages therein as are indicated in
> specific premium charge or charges. The limit of the company's liability
> against each such Coverage shall be stated herein, subject to all the terms of
> this policy having reference thereto.
>
> *Id.* at DD_INS_00183; DD_INS_00184.

The Policies designate with an "X" coverage for "Comprehensive General Liability

Insurance" including "Bodily Injury Liability" coverage, with the limits of liability stated on the

declarations pages of both Policies.  *Id.*  The standard insuring agreement for bodily injury

liability coverage, including the coverage as stated in the 1964 to 1967 Agricultural Insurance

Company policy that the Policies renew, agree "[t]o pay on behalf of the insured all sums which

the insured shall be legally obligated to pay as damages because of [bodily] injury, including

death at any time resulting therefrom sustained by any person and caused by an occurrence as

defined herein."  *See id.*, Ex. C at DD_INS_00172.

The Policies' declaration pages also designate with an "X" coverage for "Premises

Medical Payments Insurance" and state that they are comprised of certain forms including forms

4

numbered "26628" and "L9141." *Id.* Form 26628 included in the Policies is captioned Premises

Medical Payments Insurance Coverage Part and states, in pertinent part, as follows:

> **COVERAGE E—PREMISES MEDICAL PAYMENTS**
>
> The company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the insured premises, or (b) operations with respect to which the named insured is afforded coverage for bodily injury under this policy.
>
> *See id.*, Exs. A and B at DD_INS_00193.

The Policies' Premises Medical Payments Insurance Coverage Part set forth on form

26628 also includes the following definitions.

> **ADDITIONAL DEFINITIONS**
>
> When used in reference to this insurance (including endorsements forming a part of the policy):
>
> "insured premises" means all premises owned by or rented to the named insured with respect to which the named insured is afforded coverage for bodily injury liability under this policy and includes the ways immediately adjoining land;
>
> "medical expense" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.
>
> *See id.*, Exs. A and B at DD_INS_00193.

The Policies also include form L9141, which is an endorsement modifying the Policies, as follows:

---

**ENDORSEMENT**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

**EXCLUSION OF MEDICAL PAYMENTS FOR STUDENTS
ENDORSEMENT**

In consideration of the premium at which this policy is written:

It is understood and agreed that coverage provided by the "Medical Payments Coverage Part" shall not apply to or for pupils of the insured while such pupils are in or upon the school premises:

It is further understood and agreed that the coverage afforded by this policy as respects the insured's school includes (A) the use of bicycles on school business, and (B) the transportation hazard on other vehicles, including watercraft not owned or hired by or for the insured, any member of the teaching, supervising or administrative staff, officer or employee of the insured:

It is further understood and agreed that no coverage is afforded by this policy for claims due to the rendering of any professional service or omission thereof.

*See id.*, Exs. A and B at DD_INS_00194.

---

The Exclusion of Medical Payments For Students Endorsement limits in part, and expands in part, the "medical payments" that Liberty Mutual agreed to pay in the Premises Medical Payments Insurance Coverage Part.  It does not address or limit the separate coverage grant for "all sums which the insured shall be legally obligated to pay as damages because of bodily injury," that Liberty Mutual agreed to pay in the Bodily Injury Liability Coverage Part.

6

# ARGUMENT

## I. GOVERNING LEGAL PRINCIPLES

### A. Summary Judgment Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

### B. Interpretation of Insurance Contracts Under Minnesota Law

"Interpretation of an insurance policy is a question of law[.]" *Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006) (citing *Thommes v. Milwaukee Ins. Co.*, 641 N.W.2d 877, 879 (Minn. 2002)).  "If the language of an insurance contract is unambiguous, it must be given its plain and ordinary meaning." *Bloomington Steel*, 718 N.W.2d at 894.  "But if the language is ambiguous, it will be construed against the insurer, as drafter of the contract." *Id.* (citing *Progressive Specialty Ins. Co. v. Widness*, 635 N.W.2d 516, 518 (Minn. 2001)).  "[C]overage provisions are construed according to the expectations of the insured and exclusions are construed narrowly." *Am. Family Ins. Co. v. Walser*, 628 N.W.2d 605, 609 (Minn. 2001) (citing *Atwater Creamery Co. v. W. Nat'l Mut. Ins. Co.*, 366 N.W.2d 271, 276-77 (Minn. 1985)); *see also Glarner v. Time Ins. Co.*, 465 N.W.2d 591, 596 (Minn. Ct. App. 1991) ("Likewise, exclusions in insurance contracts are read narrowly against the insurer."). "An insurer has the burden of proving that a policy exclusion applies." *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986).

7

An insurance policy is ambiguous "if it is susceptible to two or more reasonable interpretations." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008). Ambiguous terms are construed against the insurer, as the drafter of the contract, and Minnesota courts "construe such terms in favor of providing coverage to the insured." *Eng'g & Const. Innovations, Inc. v. LH Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013) (citing *Jenoff, Inc. v. N.H. Ins. Co.*, 558 N.W.2d 260, 262 (Minn. 1997)). Minnesota courts read the terms of an insurance contract "in the context of the entire contract," and do not construe terms so strictly "as to lead to a harsh and absurd result." *Emp'rs Mut. Liab. Ins. Co. of Wis. v. Eagles Lodge of Hallock, Minn.*, 165 N.W.2d 554, 556 (Minn. 1969). Minnesota courts will not adopt a "construction of an insurance policy which entirely neutralizes one provision . . . if the contract is susceptible of another construction which gives effect to all its provisions and is consistent with the general intent." *Wyatt v. Wyatt*, 58 N.W.2d 873, 875 (Minn. 1953); *L.H. Bolduc Co.*, 825 N.W.2d at 705.

## II.   THE PROFESSIONAL SERVICES EXCLUSION DOES NOT APPLY TO THE BODILY INJURY LIABILITY COVERAGE

The Policies limit coverage for "claims due to the rendering of professional services or omission thereof" in only one respect—claims seeking coverage under the Premises Medical Payments Insurance Coverage Part. The endorsement in which the professional services exclusionary language appears is titled the "Exclusion of Medical Payments For Students Endorsement." *See* Murray Decl., Exs. A and B at DD_INS_00194.

The Diocese seeks coverage from Liberty Mutual pursuant to the Policies' Bodily Injury Liability Coverage, which the Diocese purchased in the Policies.[3]  *See id.*, Ex. A at

---

[3] If Liberty Mutual contends that the Bodily Injury Liability Coverage insuring agreement language is unknown because the Diocese and Liberty Mutual have not located complete copies

8

DD_INS_00183, Ex. B at DD_INS_00184.  There is no dispute that the allegations pled in the

underlying complaints trigger the Policies' Bodily Injury Liability Coverage.  The Diocese does

not seek coverage from Liberty Mutual under the Policies' Premises Medical Payments

Insurance Coverage Part.

   The coverage afforded by the Premises Medical Payments Insurance Coverage Part is

narrow.  It is restricted to the following:

> (1) "Reasonable medical expenses," which means "expenses for necessary medical,
> surgical, x-ray and dental services, including prosthetic devices, and necessary
> ambulance, hospital, professional nursing and funeral services,"
>
> (2) Which are "incurred within one year from the date of the accident,"
>
> (3) If the injury happens on the "insured premises" or arises out of its "operations."

*See id.*, Exs. A and B at DD_INS_00193.

   The Exclusion of Medical Payments For Students Endorsement then expands the

available medical payment coverage by extending that coverage for the Diocese's schools

beyond the spatial limits of the "insured premises" when using "bicycles on school business" and

---

of the policies, they are wrong as a matter of law.  The Policies both state on their declarations
pages that they replace the immediately prior expiring policy.  *See* Murray Decl., Ex. A at
DD_INS_00183, Ex. B at DD_INS_00184.  Accordingly, each Liberty Mutual policy renews the
prior policy, which courts across the country have held are presumptively renewed on the same
terms and conditions as the expiring policy, absent an agreement to the contrary.  On this basis,
Liberty Mutual has paid defense costs incurred by the Diocese for bodily injury coverage
involving claims alleging injury from 1967 to 1973, subject to a reservation of rights.  "The
renewal agreement is presumed to adopt and have reference to the terms of the existing or
expiring policy."  *Westchester Fire Ins. Co. v. Tantalo,* 273 F. Supp. 7, 17 (D. Conn. 1967); *see,
e.g., Elson v. State Farm Fire & Cas. Co.,* 295 Ill. App. 3d 1, 7 (1998) (renewal of insurance
"unless otherwise expressed, is on the same terms and conditions as were contained in the
original policy"); *Wynn v. Avemco Ins. Co.*, 963 P.2d 572, 574 (Okla. 1998) ("it is presumed,
unless a contrary intention appears, that the parties intended that the renewal policy cover the
same terms, conditions, and exceptions as the original"); *L. Lewitt & Co., Inc. v. Jewelers Safety
Fund Soc.,* 249 N.Y. 217, 222 (N.Y. Ct. App. 1928) ("An agreement to renew a policy implies
that the terms of the existing policy are to be continued ... in the absence of evidence, that a
change was intended").

9

other "transportation hazards." *See id.*, Exs. A and B at DD_INS_00194.  The Exclusion of

Medical Payments For Students Endorsement also *lin i s*the available medical payment coverage

by excluding coverage for pupils on the "school premises" and for "claims due to the rendering

of any professional service or omission thereof."[4]  *Id.*

The Exclusion of Medical Payments For Students Endorsement does no more and no less.

In short, Liberty Mutual agreed to provide coverage for this narrow category of medical

expenses without converting the Policies into medical malpractice policies.  The plain language

does not support interpreting the last sentence of the Exclusion of Medical Payments For

Students Endorsement as excluding claims for coverage under the Bodily Injury Liability

Coverage.  Liberty Mutual cannot meet its burden of proving that the Exclusion of Medical

Payments For Students Endorsement excludes claims for coverage under the Bodily Injury

Liability Coverage.  *See Henning*, 383 N.W.2d at 652 (it is an insurer's burden to prove an

exclusion applies).  Any such interpretation would belie the entire nature of the endorsement and

cannot be squared with a plain reading or the Diocese's reasonable expectations.  Rather, the

exclusionary language must, as a matter of Minnesota law, be read narrowly.  *Walser*, 628

N.W.2d at 609 ("[C]overage provisions are construed according to the expectations of the

insured and exclusions are construed narrowly.").  Adopting Liberty Mutual's interpretation

would lead to an impermissibly "harsh and absurd result."  *Eagles Lodge of Hallock*, 165

N.W.2d at 556.

Even the punctuation that Liberty Mutual used in the Policies' Exclusion of Medical

Payments For Students Endorsement evidence the drafter's intent for the endorsement to apply to

the Premises Medical Payments Insurance Coverage Part.  Each provision in the endorsement is

---

[4] The latter limitation is referred to herein as the professional services exclusion.

separated by a colon and not a period.  The Merriam Webster Dictionary defines a colon as:  "a punctuation mark : used mostly to call attention to what follows (as a list, explanation, or quotation)."  *See* "Colon." *Merriam-Webster.com.* Merriam-Webster, n.d. Web. 9 Dec. 2016. Indeed, the drafter used colons to set forth of list of three provisions, each applicable to the Premises Medical Payments Insurance Coverage Part.

At best for Liberty Mutual, its strained interpretation creates an ambiguity by attempting to expand the Exclusion of Medical Payments For Students Endorsement beyond claims seeking coverage under the Premises Medical Payments Insurance Coverage Part by applying it to claims seeking coverage under the Bodily Injury Liability Coverage Part.  The drafter knew how to unambiguously state that an endorsement is meant to apply to the Bodily Injury Liability Coverage.  On the same page as the Exclusion of Medical Payments For Students Endorsement, the Policies include by endorsement an exclusion for Completed Operations Hazard and Product Hazard, which states, as follows:

> It is agreed that such *insurance as is afforded by the Bodily Injury Liability Coverage* and Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.

*See* Murray Decl., Exs. A and B at DD_INS_00194 (emphasis added).  The ordinary meaning is underscored by the drafter's failure to state that the Exclusion of Medical Payments For Students Endorsement applies to the Bodily Injury Liability Coverage, like it did with regard to the exclusion for Completed Operations Hazard and Product Hazard.  Accordingly, the ambiguity must be construed in favor of coverage and against Liberty Mutual, as drafter of the contract. *Bloomington Steel*, 718 N.W.2d at 894.

### III.    THE DIOCESE IS NOT ASSERTING A COVERAGE CLAIM DUE TO THE RENDERING OF PROFESSIONAL SERVICES OR OMISSION THEREOF

11

## A.  The Exclusionary Language Does Not Bar Coverage

Even assuming *arguendo* that the Exclusion of Medical Payments For Students Endorsement applies to claims that do not seek coverage under the Premises Medical Payments Insurance Coverage Part, the Diocese is not asserting any coverage "claims ***due to*** the rendering of ***professional service*** or omission thereof."  *See* Murray Decl., Exs. A and B at DD_INS_00194 (emphasis added).  Accordingly, the exclusionary language in the endorsement is inapposite to the Diocese's coverage claims against Liberty Mutual.  It is an inapt exclusion on its face.

Liberty Mutual does not define any of the words that Liberty Mutual used in the professional services exclusionary sentence in the Exclusion of Medical Payments For Students Endorsement.  When, as here, an insurance policy does not define a term, it must be given its "ordinary meaning."  To determine that meaning, it is proper "to consider the dictionary meaning of the word."  *E.g., Grinnell Mut. Reins. Co. v. Villanueva*, 37 F. Supp. 3d 1043, 1050 (D. Minn. 2014) (quoting *Aetna Ins. Co. v. Getchell Steel Treating Co.*, 395 F.2d 12, 16 n.4 (8th Cir. 1968)).

The Merriam-Webster Dictionary defines the phrase "due to" as:  "resulting from." *See* "Due to." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 8 Dec. 2016. It also defines the phrase "professional services" as:   "a service requiring specialized knowledge and skill usually of a mental or intellectual nature and usually requiring a license, certification, or registration."  *See* "Professional Service." *Merriam-Webster.com*. Merriam-Webster, n.d. Web. 9 Dec. 2016.  Additionally, Minnesota courts have addressed the term professional services as used in insurance policies.  Liberty Mutual chose not to define that term as do many of the policies examined in the following cases.  As a matter of law, the words must be given their ordinary

12

meaning and strictly construed against the insurer because they are set forth in an exclusionary

provision.

Additionally, Liberty Mutual's interpretation of what would amount to an absolute

exclusion in the two Policies is directly at odds and cannot be reconciled with the fact that not a

single one of the Diocese's other liability insurers' policies—not even the 1964 to 1967 Liberty

Mutual policy—include professional services exclusions.  This underscores the Diocese's

expectation that the exclusionary language in the Policies' medical endorsement was never

intended to carve out an entire area of tort liability.  *Walser*, 628 N.W.2d at 609 ("[C]overage

provisions are construed according to the expectations of the insured and exclusions are

construed narrowly.").

### B.  Minnesota Law Rejects Liberty Mutual's Position

*Smith v. St. Paul Fire & Marine Insurance Co.*, 353 N.W.2d 130 (Minn. 1984), is the

seminal Minnesota case addressing professional services with respect to insurance coverage

cases involving underlying allegations of sexual abuse.  There, victims of sexual abuse settled

with the perpetrator and, as part of the settlement, the perpetrator physician assigned the victims

his coverage rights under a professional liability insurance policy.  *See id.* at 131.  The policy

provided, as follows:  "Your professional liability protection covers you for damages resulting

from:  1. Your providing or withholding of professional services."  *Id.* at 132.  Despite applying

a more lenient standard to the plaintiffs seeking to prove coverage under a policy that covers

professional services, rather than Liberty Mutual's heightened burden here to prove an exclusion,

the Supreme Court of Minnesota held that:

> It is undisputed that LeRud's acts of sexual contact were not part of
> medical treatment. The trial court found that LeRud's acts were
> "solely for the satisfaction of [his] prurient interests." We hold that the

13

> acts of sexual contact involved neither the providing nor withholding
> of professional services and, therefore, that the insurer's policy does
> not cover the damages sustained by plaintiffs.

*Id.*

Minnesota courts have held that within the meaning of an insurance exclusion, "[a] professional service is one calling for specialized skill and knowledge in an occupation or vocation.  The skill required to perform a professional service is predominantly intellectual or mental rather than physical."  *Ministers Life v. St. Paul Fire & Marine Ins. Co.*, 483 N.W.2d 88, 91 (Minn. App. 1992) (holding that an insurance broker's "decision to issue the notice and the contents of the notice constituted professional services calling for business and insurance expertise and judgment.").

Determining whether a particular act is a professional service turns not on the title or character of the party performing the act, but the act itself.  *See Shelter Ins. Co. v. Hildreth*, 255 F.3d 921, 925 (8th Cir. 2001).  In *Hildreth*, a professional services exclusion applied to an insured naprapath with a state license to practice and a four-year degree from an institution dedicated solely to teaching naprapathy.  *See id.* at 925.  The court held that the insured "evaluates his patients and based on those evaluations, employs various treatment alternatives." *Id.*  Additionally, his "patients clearly believe that he provides a professional service or treatment," and the "patients schedule appointments in advance and visit [the insured] to alleviate some infirmity or ailment."  *Id.* at 926.

The Diocese and its priests were not "professionals" as that term is described in Minnesota case law.  Moreover, Minnesota courts have held that an individual who is otherwise acting as a professional, ceases to engage in professional services when he or she decides to engage in sexual abuse.  *See, e.g.*, *Mork Clinic v. Fireman's Fund Ins. Co.*, 575 N.W.2d 598, 599

14

(Minn. Ct. App. 1998).  In *Mork*, a clinic sought coverage for alleged negligence in hiring,

retaining, or supervising an allergist employed by the clinic that allegedly abused patients during

the course of medical examinations.  The CGL policy contained an endorsement that excluded

from coverage bodily injury "'arising out of [t]he rendering or failure to render medical * *

*services.'"  *Id.* at 600 (alterations in original).

The *Mork* court found that the exclusion did not apply because "the sexual contact of

respondent's allergist was not required for the medical services he was rendering."  *Id.* at 602.

Since there was "no linkage whatsoever between the allergist's medical services and sexual

abuse," the claims against the clinic did "not fall within the medical services exclusion of its

commercial general liability policy."  *Id.* at 603.  Additionally, the court held that negligence of

the clinic was far "removed from treatment of the patient."  *Id.*[5]

Here, the Diocese's claim is not "due to" services that require specialized skill,

knowledge, learning, or attainments that it provided or failed to provide.  The alleged

perpetrating priests are not "professionals" as that term is ordinarily understood.  They do not

possess specialized skills of the nature intended to be addressed by the term "professional

services," such as a doctor or nurse.  The professional services exclusionary language in the

Policies would apply to claims for medical payments coverage where a claimant alleges that a

---

[5] The Diocese is aware of a line of inapposite Minnesota case law involving alleged sexual abuse
of adults during therapy and counseling sessions.  *See, e.g.*, *St. Paul Fire Marine Ins. Co. v.
Love*, 447 N.W.2d 5, 9 (Minn. Ct. App. 1989) (addressing professional services rendered by
"mental health therapists who mishandle transference" where it is the perpetrating therapist's
"mishandling of transference, and not the resulting sexual conduct, which gives rise to the
alleged malpractice"); *Houg v. State Farm Fire & Cas. Co.*, 509 N.W.2d 590, 592 (Minn. Ct.
App. 1994) (Lutheran church purchased optional clergy professional liability coverage for
"errors or omissions of the insured arising out of counseling activities" to protect liabilities
arising from its marital counseling services).  These cases address unique professional
psychological services that are not at issue in the Dioecse's claims.

nurse at a diocesan school negligently performed his or her duties when bandaging a wound, for

example.  That scenario is not at issue in the Diocese's present claims.  Indeed, there exists no

circumstance in which the Diocese or the alleged perpetrating priests require sexual contact to

perform their intended duties.  Accordingly, as a matter of law, the Diocese's claims are not "due

to" the rendering of professional services or omission thereof.

### C.  Persuasive Case Law From Across the Country Also Rejects Liberty Mutual's Position

Courts across the country apply the same reasoning as do Minnesota courts when

interpreting professional services in the insurance coverage context.  *See, e.g.*, *Harad v. Aetna*

*Cas. & Sur. Co.,* 839 F.2d 979, 984 (3d Cir. 1988) (a professional service is "[s]omething more

than an act flowing from mere employment or vocation . . . the act or service must be such as

exacts the use or application of special learning or attainments of some kind."); *see also Lane v.*

*Tishman Constr. Corp. of N.J.*, No. L-1846-03, 2007 WL 1062182, at *5 (N.J. Super. Ct. App.

Div. Apr. 11, 2007) (interpreting a policy without a definition of professional services, court held

that the professional services exclusion in a CGL policy did not bar coverage for bodily injuries

sustained during a construction accident allegedly caused by the negligent supervision by non-

engineers of construction equipment operations).

In *Charleston Area Medical Center, Inc. v. National Union Fire Insurance*, No. 2:09-cv-

00573, 2011 WL 2161534 (S.D. W. Va. June 1, 2011) ("*CAMC*"), the court held that a

professional services exclusion did not bar coverage for claims against a hospital arising out of

the negligent supervision of an employee that sexually molested patients at the hospital.  The

exclusion at issue in *CAMC* excluded coverage for claims "'alleging, arising out of, based upon

or attributable to the Insureds performance or rendering of or failure to perform or render

medical or other professional services or treatments for others.'"  *Id.* at *2.  The *CAMC* court

rejected the insurer's argument that the exclusion barred coverage for the negligent supervision,
even though "the patients received medical treatment while at CAMC and CAMC's employee
undoubtedly provided some of this treatment." *Id.* at *10.

The *CAMC* decision is not an outlier. *See Hirst v. St. Paul Fire & Marine Ins. Co.*, 683
P.2d 440, 444 (Idaho Ct. App. 1984) (physician who drugged patient seeking treatment for hand
injury in order to sexually abuse him is not "rendering professional service" so as to fall within
policy's coverage for rendering professional medical services; finding insurer nonetheless
breached its duty to defend allegations of negligence and malpractice); *Del. Ins. Guar. Ass'n v.
Birch*, No. 02C-05-026-RFS, 2004 Del. Super. LEXIS 251 (Del. Super. Ct. July 30, 2004) (as
confidential record keeping is part of many businesses, "it is not a 'medical incident' for the
purposes of the medical malpractice policy, nor is it a professional health or medical service for
the purposes of the general liability policy"); *St. Paul Ins. Co. v. Cromeans*, 771 F. Supp. 349,
353-54 (N.D. Ala. 1991) (sexual misconduct during medical examination not covered by
professional liability policy; Doctor's sexually abusive acts, including attempting to get patients
to remove their clothes, and filming them while they were naked, were not covered under
policy's "professional services" provisions); *St. Paul Fire & Marine Ins. Co. v. Quintana*, 419
N.W.2d 60, 62 (Mich. Ct. App. 1988) (medical technician's sexual assault on patient not covered
by professional liability policy); *Niedzielski v. St. Paul Fire & Marine Ins. Co.*, 589 A.2d 130,
131-32 (N.H. 1991) (sexual assault by dentist on patient during dental examination not a
professional liability claim); *Standard Fire Ins. Co. v. Blakeslee*, 771 P.2d 1172, 1176 (Wash. Ct.
App. 1989) (same); *Hirst*, 683 P.2d 440, 443 (sexual assault by doctor during medical
examination not professional services and thus not covered); *Am. Cas. Co. v. Hartford Ins. Co.*,

17

479 So. 2d 577 (La. App. Ct. 1985) (instructing patient to remove clothing and to climb onto examination table is purely ministerial involving no professional service).

## CONCLUSION

Based on the foregoing, the Court should hold, as a matter of law, that the professional services exclusion in the Policies' Exclusion of Medical Payments For Students Endorsement applies solely to claims made for coverage pursuant to the policies' Premises Medical Payments Insurance Coverage Part, and not the Diocese's claims for coverage under the Bodily Injury Liability Coverage.  Even if it does not, the Court should hold, as a matter of law, that the Diocese's claims are not due to the rendering of a professional service or omission thereof.  The Court should grant partial summary judgment in the Diocese's favor.

Dated:  December 19, 2016

Respectfully submitted,

**BLANK ROME LLP**

By:  /s/ *James R. Murray*
James R. Murray (admitted *pro hac vice*)
1825 Eye Street NW
Washington, DC 20006
Telephone: (202) 420-3409
Facsimile: (202) 420-2201
jmurray@blankrome.com

Jared Zola (admitted *pro hac vice*)
The Chrysler Building
405 Lexington Avenue
New York, New York 10174
Telephone: (212) 885-5209
Facsimile: (917) 591-8538
jzola@blankrome.com

-and-

18

**GRAY PLANT MOOTY**
**MOOTY & BENNETT, P.A.**

By:  /s/ *Phillip L. Kunkel*
      Phillip L. Kunkel (#058981)
      Nicholas N. Nierengarten (#079169)
      1010 West Germain Street, Suite 500
      Saint Cloud, MN 56301
      Telephone: (320) 202-5335
      Facsimile: (320) 252-4482
      Phillip.kunkel@gpmlaw.com
      Nicholas.nierengarten@gpmlaw.com

      *Counsel for the Diocese of Duluth*

19

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA**

---

In re:                                             Bankruptcy Case No.:  15-50792

Diocese of Duluth,                                 Chapter 11

        Debtor-in-Possession.

---

Diocese of Duluth,

        Plaintiff,

                                Adversary Proceeding No.: 16-05012

v.

  LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

        Defendants.

---

**CERTIFICATE OF SERVICE**

---

        I, Abigail M. McGibbon, hereby certify that on the 19th day of December 2016, I caused a true and correct copy of the foregoing *Notice of Motion and Motion For Partial Summary Judgment that the Professional Services Exclusion in Liberty Mutual Policies Exclusion of Medical Payments for Students Endorsement does not apply to the Diocese's Claims for Coverage, Declaration of James R. Murray, Memorandum of Law and Proposed Order* to be served on the following parties in the manner indicated below.

**VIA US Mail**
**Catholic Mutual Relief Society of America**
Everett J. Cygal
233 South Wacker Drive
Suite 600
Chicago, IL 60606
ecygal@shiffhardin.com

**VIA US Mail**
**The Continental Insurance Company**
Laura McNally
2321 North Clark Street
Suite 2300
Chicago, IL 60654
 lmcnally@loeb.com

**VIA US Mail**
**Liberty Mutual Group**
Nancy Adams
One Financial Center
Boston, MN 02111
nadams@mintz.com

**VIA US Mail**
**Church Mutual Insurance Company**
Christian A. Preus
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
cpreus@bassford.com

**VIA US Mail**
**Fireman's Fund Insurance Company**
Charles E. Jones
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
Charles.jones@lawmoss.com

Dated: December 19, 2016

/s/ Abigail M. McGibbon_____
Abigail M. McGibbon (#393263)
80 South 8th Street, STE 500
Minneapolis, MN 55402
Telephone: 612-632-3009
Fax: 612-632-4009
Abigail.mcgibbon@gpmlaw.com

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

---

In re:

Diocese of Duluth,

        Debtor-in-Possession.

Bankruptcy Case No.:  15-50792

Chapter 11

---

Diocese of Duluth,

        Plaintiff,

v.

LIBERTY MUTUAL GROUP, a Massachusetts
Corporation; CATHOLIC MUTUAL RELIEF
SOCIETY OF AMERICA, a Nebraska
corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California
corporation; CHURCH MUTUAL
INSURANCE COMPANY, a Wisconsin
corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois
corporation,

        Defendants.

Adversary Proceeding No.: 16-05012

---

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT

---

      This case is before the Court on the motion of the Diocese of Duluth for summary

judgment.

      Based in the motion and file,

      IT IS ORDERED:

   1.  The Diocese of Duluth's motion for partial summary judgment is granted; and

2.  That the professional services exclusion in the 1967 to 1970 and 1970 to 1973

   Agricultural Insurance Company (Liberty Mutual) policies' Exclusion Of Medical

   Payments For Students Endorsement does not apply to the Diocese of Duluth's claims for

   coverage.


_____

United States Bankruptcy Judge