# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re: | ) | Bankruptcy Case No.: 15-50792 |
| | ) | |
| Diocese of Duluth, | ) | Chapter 11 |
| | ) | |
|     Debtor-in-Possession | ) | |
| | ) | |
| Diocese of Duluth, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No.: 16-05012 |
| | ) | |
| LIBERTY MUTUAL GROUP, a | ) | |
| Massachusetts corporation; CATHOLIC | ) | |
| MUTUAL RELIEF SOCIETY OF | ) | |
| AMERICA, a Nebraska Corporation, | ) | |
| FIREMAN'S FUND INSURANCE | ) | |
| COMPANY, a California corporation; | ) | |
| CHURCH MUTUAL INSURANCE | ) | |
| COMPANY, a Wisconsin corporation and | ) | |
| THE CONTINENTAL INSURANCE | ) | |
| COMPANY, an Illinois corporation, | ) | |
| | ) | |
|     Defendants. | ) | |

# ANSWER AND COUNTERCLAIM OF
# LIBERTY MUTUAL INSURANCE COMPANY TO
# THE FIRST AMENDED COMPLAINT

Defendant Liberty Mutual Insurance Company ("Liberty Mutual"), incorrectly named as

Liberty Mutual Group, answers the First Amended Complaint ("Amended Complaint") as

follows:

## BACKGROUND

1.      Paragraph 1 of the Amended Complaint is an introductory paragraph to which no response is required.  To the extent a response is required, Liberty Mutual admits that Plaintiff is seeking declaratory relief with respect to certain alleged insurance policies and certificates that the Defendants allegedly sold or for which Defendants acquired responsibility.   Further answering, Liberty Mutual does not consent to the jurisdiction of the Bankruptcy Court.  Nor does Liberty Mutual consent to the Bankruptcy Court's issuance of findings of fact or conclusions of law on a final basis or its presiding over a jury trial.

2.      Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  Therefore, the allegations of this paragraph are denied.

3.      Liberty Mutual states that this paragraph contains legal conclusions, to which no response is required or necessary.   To the extent a response is required, Liberty Mutual admits the allegations in paragraph 3 of the Amended Complaint.

4.      Liberty Mutual states that this paragraph contains legal conclusions, to which no response is required or necessary.   To the extent a response is required,  Liberty Mutual admits the allegations in paragraph 4 of the Amended Complaint.

## THE PARTIES

5.      Upon information and belief, Liberty Mutual admits the allegations in paragraph 5 of the Amended Complaint.

6.      Liberty Mutual admits that it is a Massachusetts corporation with its principal place of business in Massachusetts.  Liberty Mutual also admits that it transacts business in Minnesota and that, as the result of a corporate transaction between Great American Insurance

Company and The Ohio Casualty Insurance Company, Liberty Mutual acquired responsibility

for the following four insurance policies that were allegedly issued to the Plaintiff by

Agricultural Insurance Company and American Empire Insurance Company:

- Policy Number CLA 770553 issued by Agricultural Insurance Company, with a policy period of February 1, 1964 to February 1, 1967;

- Policy Number 3GA 26 24 22 issued by Agricultural Insurance Company, with a policy period of February 1, 1967 to February 1, 1970;

- Policy Number 3GA 29 96 59 issued by Agricultural Insurance Company, with a policy period of February 1, 1970 to February 1, 1973; and

- Policy Number 4GA 12 60 79 issued by American Empire Insurance Company, with a policy period of February 1, 1973 to February 1, 1976 (cancelled April 24, 1973)

(collectively, the "Alleged Policies").

7.      Liberty Mutual is without knowledge or information sufficient to form a belief as

to the truth of the allegations of this paragraph.  Therefore, the allegations of this paragraph are

denied.

8.      Liberty Mutual is without knowledge or information sufficient to form a belief as

to the truth of the allegations of this paragraph.  Therefore, the allegations of this paragraph are

denied.

9.      Liberty Mutual is without knowledge or information sufficient to form a belief as

to the truth of the allegations of this paragraph.  Therefore, the allegations of this paragraph are

denied.

10.     Liberty Mutual is without knowledge or information sufficient to form a belief as

to the truth of the allegations of this paragraph.  Therefore, the allegations of this paragraph are

denied.

## JURISDICTION AND VENUE

11.     Upon information and belief, Liberty Mutual admits the allegations set forth in paragraph 11 of the Amended Complaint.

12.     Upon information and belief, Liberty Mutual admits the allegations set forth in paragraph 12 of the Amended Complaint.

13.     This paragraph states a legal conclusion, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual admits only that it is a resident of Massachusetts and that it transacts certain business in Minnesota.  As to the other Defendants, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  Further answering, Liberty Mutual does not consent to the jurisdiction of the Bankruptcy Court.  Nor does Liberty Mutual consent to the Bankruptcy Court's issuance of findings of fact or conclusions of law on a final basis or its presiding over a jury trial.

14.     This paragraph states a legal conclusion, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual admits that, as to Liberty Mutual, jurisdiction is proper pursuant to 28 USC § 1332.  As to the other Defendants, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  Further answering, Liberty Mutual does not consent to the jurisdiction of the Bankruptcy Court.  Nor does Liberty Mutual consent to the Bankruptcy Court's issuance of findings of fact or conclusions of law on a final basis or its presiding over a jury trial.

15.     This paragraph states a legal conclusion, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual denies the allegations of this paragraph.

16.     This paragraph states a legal conclusion, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual admits that, as to Liberty Mutual, venue in this District is proper pursuant to 28 U.S.C. §§ 1391(b).  As to the other Defendants, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  Further answering, Liberty Mutual does not consent to the jurisdiction of the Bankruptcy Court.  Nor does Liberty Mutual consent to the Bankruptcy Court's issuance of findings of fact or conclusions of law or its presiding over a jury trial.   As such, Liberty Mutual has filed a Motion to Transfer this action, which is currently pending.

## THE INSURANCE POLICIES AND CERTIFICATES

17.     Liberty Mutual admits that, through a corporate transaction between Great American Insurance Company and The Ohio Casualty Insurance Company, Liberty Mutual acquired responsibility for the Alleged Policies.  To the extent a further response is required, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph.  Therefore, the remaining allegations of this paragraph are denied.

18.     This paragraph states a legal conclusion, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual states that the information provided by Plaintiff concerning the Alleged Policies is limited, and that Plaintiff has failed to satisfy its burden of proof to demonstrate the terms and conditions of the Alleged Policies.

19.     This paragraph states a legal conclusion, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual states that the information provided by Plaintiff concerning the Alleged Policies is limited, and that Plaintiff has failed to satisfy its burden of proof to demonstrate the terms and conditions of the Alleged Policies. Further answering, Liberty Mutual states that, to the extent paragraph 19 alleges that the Alleged Policies provide coverage for expenses incurred by Plaintiff in connection with the investigation of the Underlying Actions and Claims, in the absence of any lawsuit, Liberty Mutual denies any such allegation.

20.     Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph. Therefore, the allegations of this paragraph are denied.

## THE UNDERLYING ACTIONS

21.     Upon information and belief, Liberty Mutual admits the allegations in paragraph 21 of the Amended Complaint.

22.     This paragraph contains legal conclusions, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual denies the allegations in this paragraph.

23.     This paragraph contains legal conclusions, to which no response is required or necessary.  To the extent a response is required, Liberty Mutual denies the allegations in this paragraph.

24.     Liberty Mutual admits that the availability of coverage under the Alleged Policies for the Underlying Actions and Claims is determined by the policies' terms, conditions, limitations, and exclusions.  Further answering, Liberty Mutual states that the information

provided by Plaintiff concerning the Alleged Policies is limited, and that Plaintiff has failed to satisfy its burden of proof to demonstrate the terms and conditions of the Alleged Policies.

25.    Liberty Mutual denies the allegations in this paragraph. To the extent the allegations in paragraph 25 relate to other insurers, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

26.    Liberty Mutual denies the allegations in this paragraph.  Further answering, Liberty Mutual states that, to the extent the allegations in this paragraph relate to other insurers, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

27.    Liberty Mutual denies that it has failed to fulfill its coverage obligations, if any, under the Alleged Policies.  Further answering, Liberty Mutual admits that an actual and justiciable controversy exists as to the existence (or non-existence) of coverage under the Alleged Policies for the Underlying Actions and Claims.  To the extent paragraph 27 is directed to insurers other than Liberty Mutual, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

28.    Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph. Therefore, the allegations of this paragraph are denied.

## COUNT I

### Declaratory Judgment Against All Insurers

29.    Liberty Mutual repeats and re-alleges its responses to paragraphs 1 through 28, above, as if fully set forth herein.

30.    This paragraph states a legal conclusion, to which no response is required or necessary. To the extent a response is required, Liberty Mutual admits that the Plaintiff is seeking a judicial determination of the rights and duties of the Plaintiff and its insurers.

31.    Liberty Mutual denies the allegations in this paragraph.  Further answering, Liberty Mutual states that, to the extent the allegations in this paragraph relate to other insurers, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

32.    Liberty Mutual denies the allegations in this paragraph.  Further answering, Liberty Mutual states that, to the extent the allegations in this paragraph relate to other insurers, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

33.    Liberty Mutual admits that Plaintiff disputes Liberty Mutual's coverage position with respect to subparagraphs a. through e. of paragraph 33.  Further answering, Liberty Mutual states that, to the extent the allegations in this paragraph relate to other insurers, Liberty Mutual is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

34.    Liberty Mutual admits that an actual controversy of a justiciable nature presently exists between Plaintiff and Liberty Mutual concerning the proper construction of the Alleged Policies and the parties' respective rights and obligations under the Alleged Policies, if any, with

respect to the Underlying Actions and Claims for which Plaintiff seeks coverage.  Further

answering, Liberty Mutual admits that the controversy justifies the issuance of a declaratory

judgment.  Liberty Mutual denies the remaining allegations in paragraph 34 of the Amended

Complaint.  Further answering, Liberty Mutual states that, to the extent the allegations in this

paragraph relate to other insurers, Liberty Mutual is without knowledge or information sufficient

to form a belief as to the truth of the allegations of this paragraph and therefore denies same.

35.	Upon information and belief, Liberty Mutual admits that the issuance of a

declaratory relief will terminate some or all of the existing controversy between the parties.

Further answering, Liberty Mutual does not consent to the jurisdiction of the Bankruptcy Court.

Nor does Liberty Mutual consent to the Bankruptcy Court's issuance of findings of fact or

conclusions of law on a final basis or its presiding over a jury trial.

## PRAYER FOR RELIEF

The paragraphs following paragraph 35 constitute Plaintiff's prayer for relief and jury

demand, to which no response is required or necessary.  To the extent some response is required,

Liberty Mutual denies that Plaintiff is entitled to the relief it is seeking.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Plaintiff's Amended Complaint fails to state a claim upon which relief can be granted.

### Second Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands.

### Third Affirmative Defense

Plaintiff has failed to mitigate, minimize, or avoid any of the loss or damage alleged in its Amended Complaint, and any recovery against Liberty Mutual must therefore be reduced by that amount.

### Fourth Affirmative Defense

Plaintiff has failed to satisfy its burden of proving the terms and conditions of the Alleged Policies.

### Fifth Affirmative Defense

To the extent Plaintiff proves the terms and conditions of the Alleged Policies, coverage for the Underlying Actions and Claims is otherwise barred, in whole or in part, by the terms, conditions, limitations, and exclusions, contained in the Alleged Policies.

### Sixth Affirmative Defense

To the extent there is coverage for the Underlying Claims under the Alleged Policies, Plaintiff's recovery is capped by the limits of insurance, including any applicable aggregate limits of liability and any reduction in the aggregate limits resulting from prior indemnity payments.

### Seventh Affirmative Defense

Liberty Mutual reserves its rights to assert other affirmative defenses based on further investigation and discovery.

### JURY DEMAND

Liberty Mutual demands a trial by jury.   Liberty Mutual does not consent to the jurisdiction of the Bankruptcy Court.  Nor does Liberty Mutual consent to the Bankruptcy Court's issuance of findings of fact or conclusions of law or its presiding over a jury trial.

## COUNTERCLAIM FOR DECLARATORY RELIEF

For its Counterclaim against Plaintiff, Liberty Mutual Insurance Company ("Liberty Mutual") states and alleges as follows:

### PARTIES

1.      Defendant and Plaintiff-in-Counterclaim Liberty Mutual Insurance Company ("Liberty Mutual") is a Massachusetts corporation with its principal place of business in Massachusetts.  As the result of a corporate transaction between Great American Insurance Company and The Ohio Casualty Insurance Company, Liberty Mutual acquired responsibility for the following four insurance policies allegedly issued to the "Diocese of Duluth and Churches Named on Certificates" by Agricultural Insurance Company and American Empire Insurance Company for policy periods spanning the time frame from February 1, 1964 to April 24, 1973:

- Policy Number CLA 770553 issued by Agricultural Insurance Company, with a policy period of February 1, 1964 to February 1, 1967, and with limits of liability in the amount of $50,000 per person and $100,000 per occurrence (the "1964-1967 Alleged Policy").  Attached hereto as **Exhibit A** is the policy information that Liberty Mutual has for the 1964-1967 Alleged Policy;

- Policy Number 3GA 26 24 22 issued by Agricultural Insurance Company, with a policy period of February 1, 1967 to February 1, 1970, and with limits of liability in the amount of $50,000 per person, $100,000 per occurrence and $100,000 in the aggregate (the "1967-1970 Alleged Policy").  Attached hereto as **Exhibit B** is the policy information that Liberty Mutual has for the 1967-1970 Alleged Policy;

- Policy Number 3GA 29 96 59 issued by Agricultural Insurance Company, with a policy period of February 1, 1970 to February 1, 1973, and with limits of liability in the amount of $50,000 per person, $100,000 per occurrence and $100,000 in the aggregate (the "1970-1973 Alleged Policy").  Attached hereto as **Exhibit C** is the policy information that Liberty Mutual has for the 1970-1973 Alleged Policy; and

- Policy Number 4GA 12 60 79 issued by American Empire Insurance Company, with a policy period of February 1, 1973 to February 1, 1976 (cancelled April 24, 1973),

and with limits of liability in the amount of $300,000 per occurrence and $300,000 in the aggregate (the "1973 Alleged Policy").  Attached hereto as **Exhibit D** is the policy information that Liberty Mutual has for the 1973 Alleged Policy;

(collectively, the "Alleged Policies").

2.       Upon information and belief, Plaintiff and Defendant-in-Counterclaim, the Diocese of Duluth ("Diocese"), is a diocesan religious corporation with its principal place of business in Minnesota.

### JURISDICTION AND VENUE

3.       This is a Counterclaim for declaratory relief pursuant to Title 28 of the United States Code, § 2201 *et seq*, to determine the scope of the respective rights, duties and obligations, if any, of the Diocese and Liberty Mutual under the Alleged Policies with respect to underlying claims for which the Diocese seeks coverage.

4.       Jurisdiction for this Counterclaim is proper in the federal court, pursuant to 28 U.S.C. § 1332(a)(1) and (c)(1), because the parties are citizens of different States and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.       Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to this Counterclaim occurred in this district.

6.       The Counterclaim is a non-core matter.

### FACTUAL BACKGROUND

**A.       The Underlying Claims**

7.       On June 26, 2013, the Diocese tendered to Liberty Mutual the lawsuit captioned *Doe 5 v. Diocese of Duluth*, Court File No. 69DU-CV-13-1654, Minnesota Sixth Judicial District Court, County of Saint Louis, which included allegations of sexual abuse.  By letter dated

12

February 4, 2014, Liberty Mutual agreed to defend the Diocese in connection with the *Doe 5* lawsuit under a full reservation of rights.

8.      On January 6, 2014, the Diocese tendered to Liberty Mutual the lawsuit captioned *Doe 28 v. Diocese of Duluth*, Minnesota Sixth Judicial District Court, County of Saint Louis, which included allegations of sexual abuse.  By letter dated February 4, 2014, Liberty Mutual agreed to defend the Diocese in connection with the *Doe 28* lawsuit under a full reservation of rights.

9.      On February 24, 2014, the Diocese tendered to Liberty Mutual the lawsuit captioned *Doe 30 v. Diocese of Duluth*, Minnesota Second Judicial District Court, County of Ramsey, which included allegations of sexual abuse.  By letter dated March 14, 2014, Liberty Mutual denied that it owed a duty to defend or indemnify the Diocese in connection with the *Doe 30* lawsuit, because the alleged sexual abuse did not occur during the policy period of any of the Alleged Policies.

10.     On December 4, 2014, the Diocese tendered to Liberty Mutual a "Notice of Claim of Ben Gustafson," which included allegations of sexual abuse.  On January 7, 2015, Liberty Mutual denied that it owed a duty to defend the Diocese in connection with the "Notice of Claim of Ben Gustafson," because Mr. Gustafson had not filed a lawsuit against the Diocese.

11.     On September 9, 2015, the Diocese tendered to Liberty Mutual the lawsuit captioned *Doe 68 v. Diocese of Duluth*, Minnesota Sixth Judicial District Court, County of Saint Louis, which included allegations of sexual abuse.  By letter dated October 21, 2015, Liberty Mutual agreed to defend the Diocese in connection with the *Doe 68* lawsuit under a full reservation of rights.

12.     On September 9, 2015, the Diocese tendered to Liberty Mutual the lawsuit captioned *Doe 70 v. Diocese of Duluth*, Minnesota Sixth Judicial District Court, County of Saint Louis, which included allegations of sexual abuse.  By letter dated October 21, 2015, Liberty Mutual agreed to defend the Diocese in connection with the *Doe 70* lawsuit under a full reservation of rights.

**B.      The Bankruptcy**

13.     On December 7, 2015, the Diocese filed a voluntary petition under Chapter 11 of the United States Bankruptcy Code, 11 U.S.C. §§ 101 *et seq.*

14.     Following the filing of the Diocese's voluntary petition under Chapter 11 of the United States Bankruptcy Code, 125 Sexual Abuse Proofs of Claim were filed in the bankruptcy action, *In re: Diocese of Duluth*, Case No.: 15-5079, which is pending in the United States Bankruptcy Court for the District of Minnesota.

15.     The lawsuits and claims referenced in paragraphs 7 through 12 of this Counterclaim, as well as the Sexual Abuse Proofs of Claim referenced in the preceding paragraph (collectively, the "Underlying Claims"), allege that the claimants ("Underlying Claimants") were sexually abused.

16.     The Diocese alleges that the Alleged Policies afford coverage for the Underlying Claims.

**C.      The Alleged Policies**

17.     The Diocese provided Liberty Mutual with limited information regarding the Alleged Policies.

18.     The Alleged Policies are incomplete.

19.     The Diocese bears the burden of proof to demonstrate the terms and conditions of

the Alleged Policies.

The 1964-1967 Alleged Policy

20.     Under the 1964-1967 Alleged Policy, the Insuring Agreement, entitled

"COVERAGE B.  PERSONAL INJURY LIABILITY – EXCEPT AUTOMOBILE," provides

that the insurer will pay

> on behalf of the insured all sums which the insured shall become legally
> obligated to pay as damages because of personal injury, including death at
> any time resulting therefrom sustained by any person and caused by an
> occurrence as defined herein.

21.     The 1964-1967 Alleged Policy defines the term "occurrence" to mean

> either an accident or a continuous or repeated exposure to conditions
> which result during the policy period in personal injury, including death at
> any time resulting therefrom, or injury to or destruction of tangible
> property, including the loss of use thereof, which is accidentally caused.
> All damages arising out of such exposure to substantially the same general
> conditions shall be considered as arising out of one occurrence.

22.     The Declarations Page of the 1964-1967 Alleged Policy provides that the limit of

liability under Coverage B is $50,000 "each person" and $100,000 "each occurrence."

23.     Section V. of the 1964-1967 Alleged Policy provides, in relevant part, that the

policy "applies only to occurrences which take place during the policy period . . ."

24.     Section II. of the 1964-1967 Alleged Policy provides, in relevant part, as follows:

> II.  DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS.  With
> respect to such insurance as is afforded by this policy, the company shall:

> (a)     defend any suit against the insured alleging such personal injury, death or
>          destruction and seeking damages on account thereof, even if such suit is
>          groundless, false or fraudulent; but the company may make such
>          investigation, negotiation and settlement of any claim or suit as it deems
>          expedient; . . .

25.     The 1964-1967 Alleged Policy contains an exclusion, which provides, in relevant part, as follows:

> THIS POLICY DOES NOT APPLY . . .
>
> (k) under Coverage[] . . . B . . . to personal injury, or death or damage to property caused intentionally by or at the direction of the insured;

(the "Intentional Acts Exclusion").

26.     The Declarations Page of the 1964-1967 Alleged Policy provides that the following forms and endorsements form a part of the 1964-1967 Alleged Policy: 26619, 26525, L6354A, 24369, 26603, 32637B, J-2655A ("1964-1967 Alleged Policy Endorsements").

27.     The Diocese has not provided Liberty Mutual with a complete copy of the 1964-1967 Alleged Policy.

28.     Liberty Mutual does not have a copy of the 1964-1967 Alleged Policy.

<u>The 1967-1970 Alleged Policy</u>

29.     The Declarations Page of the 1967-1970 Alleged Policy provides, in relevant part, as follows:

> The insurance afforded is only with respect to such of the following Parts designated by an "X" . . . and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be stated herein, subject to all the terms of this policy having reference thereto.

30.     The Declarations Page of the 1967-1970 Alleged Policy provides that the limits of liability for Bodily Injury Liability under the Comprehensive General Liability Insurance coverage part are $50,000 "each person," $100,000 "each occurrence," and $100,000 in the aggregate.

31.     In Item 3 of the Declarations Page of the 1967-1970 Alleged Policy, an "X"

appears in the box next to "Comprehensive General Liability Insurance."  No "X" appears in the

box next to "Completed Operations and Products Liability Insurance."

32.     The 1967-1970 Alleged Policy contains an exclusion, which provides, in relevant

part, as follows:

> It is further understood and agreed that no coverage is afforded by this
> policy for claims due to the rendering of any professional service or
> omission thereof.

("Professional Services Exclusion").

33.     The 1967-1970 Alleged Policy contains an exclusion that provides, in relevant

part, as follows:

EXCLUSION
(Completed Operations Hazard and Products Hazard)
. . .

> It is agreed that such insurance as is afforded by the Bodily Injury Liability
> Coverage and the Property Damage Liability Coverage does not apply to
> bodily injury or property damage included within the Completed Operations
> Hazard or the Products Hazard.

34.     For the 1967-1970 Alleged Policy to apply, the Diocese bears the burden of proof

to demonstrate that the alleged injury was caused by an occurrence or accident.

35.     For the 1967-1970 Alleged Policy to apply, the Diocese bears the burden of proof

to demonstrate that the alleged injury occurred during the policy period.

36.     For the 1967-1970 Alleged Policy to apply, there must be a lawsuit against the

Diocese.

37.     The Declarations Page of the 1967-1970 Alleged Policy provides that the

following endorsements and additional coverage parts form a part of the 1967-1970 Alleged

Policy: 26620, 26628, 26626, 24369, L9141, 32637B ("1967-1970 Alleged Policy

Endorsements").

38.     The Diocese has not provided Liberty Mutual with a complete copy of the 1967-

1970 Alleged Policy.

39.     Liberty Mutual does not have a copy of the 1967-1970 Alleged Policy.

<u>The 1970-1973 Alleged Policy</u>

40.     The Declarations Page of the 1970-1973 Alleged Policy provides, in relevant part,

as follows:

> The insurance afforded is only with respect to such of the following Parts
> designated by an "X" . . . and Coverages therein as are indicated by specific
> premium charge or charges. The limit of the company's liability against each
> such Coverage shall be stated herein, subject to all the terms of this policy
> having reference thereto.

41.     The Declarations Page of the 1970-1973 Alleged Policy provides that the limits of

liability for Bodily Injury Liability under the Comprehensive General Liability Insurance

coverage part are $50,000 "each person," $100,000 "each occurrence," and $100,000 in the

aggregate.

42.     In Item 3 of the Declarations Pages of the 1970-1973 Alleged Policy, an "X"

appears in the box next to "Comprehensive General Liability Insurance."  No "X" appears in the

box next to "Completed Operations and Products Liability Insurance."

43.     The 1970-1973 Alleged Policy contains an exclusion, which provides, in relevant

part, as follows:

> It is further understood and agreed that no coverage is afforded by this
> policy for claims due to the rendering of any professional service or
> omission thereof.

(the "Professional Services Exclusion").

18

44.     The 1970-1973 Alleged Policy contains an exclusion that provides, in relevant part, as follows:

EXCLUSION
(Completed Operations Hazard and Products Hazard)
. . .

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.

45.     For the 1970-1973 Alleged Policy to apply, the Diocese bears the burden of proof to demonstrate that the alleged injury was caused by an occurrence or accident.

46.     For the 1970-1973 Alleged Policy to apply, the Diocese bears the burden of proof to demonstrate that the alleged injury occurred during the policy period.

47.     For the 1970-1973 Alleged Policy to apply, there must be a lawsuit against the Diocese.

48.     The Declarations Page of the 1970-1973 Alleged Policy provides that the following endorsements and additional coverage parts form a part of the 1970-1973 Alleged Policy: 26620, 26626, 26628, GU6831, L9141 ("1970-1973 Alleged Policy Endorsements").

49.     The Diocese has not provided Liberty Mutual with a complete copy of the 1970-1973 Alleged Policy.

50.     Liberty Mutual does not have a copy of the 1970-1973 Alleged Policy.

The 1973 Alleged Policy

51.     The Declarations Page of the 1973 Alleged Policy provides, in relevant part, as follows:

The insurance afforded is only with respect to such of the following Parts designated by an "X" . . . and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each

19

such Coverage shall be stated herein, subject to all the terms of this policy having reference thereto.

52.    The Declarations Page of the 1973 Alleged Policy provides that the limits of liability for Bodily Injury Liability under the Comprehensive General Liability Insurance coverage part are $300,000 "each occurrence" and $300,000 in the aggregate.

53.    In Item 3 of the Declarations Page of the 1973 Alleged Policy, an "X" appears in the box next to "Comprehensive General Liability Insurance."  No "X" appears in the box next to "Completed Operations and Products Liability Insurance."

54.    For the 1973 Alleged Policy to apply, the Diocese bears the burden of proof to demonstrate that the alleged injury was caused by an occurrence or accident.

55.    For the 1973 Alleged Policy to apply, the Diocese bears the burden of proof to demonstrate that the alleged injury occurred during the policy period.

56.    For the 1973 Alleged Policy to apply, there must be a lawsuit against the Diocese.

57.    The Declarations Page of the 1973 Alleged Policy provides that the following endorsements and additional coverage parts form a part of the 1973 Alleged Policy: L9259, GU9490, AL9584, L9479, 26674 ("1973 Alleged Policy Endorsements").

58.    The 1973 Alleged Policy was cancelled effective April 24, 1973.  See **Exhibit E**, attached hereto.

59.    The Diocese has not provided Liberty Mutual with a complete copy of the 1973 Alleged Policy.

60.    Liberty Mutual does not have a copy of the 1973 Alleged Policy.

<u>The Alleged XOV Policy</u>

61.     The Diocese alleges that Great American Insurance Company ("Great American") issued policy number XOV 770553 with a policy period of 1964-1967 ("Alleged XOV Policy") to the Diocese.

62.     The Diocese has not provided Liberty Mutual with any policy documents or forms in connection with the Alleged XOV Policy.

63.     Liberty Mutual received documentation from the Diocese regarding Policy No. CLA 770553, effective February 1, 1964 to February 1, 1967, issued by Agricultural Insurance Company to the "Diocese of Duluth and Churches Named on Certificates" with personal injury liability limits of $50,000 per person and $100,000 per occurrence.

64.     A single policy was issued to the Diocese for 1964-1967 time period, policy number CLA 770553, which is the 1964-1967 Alleged Policy.

65.     XOV is not a Great American policy prefix.

66.     No policy exists with a policy number of XOV 770553.

## **COUNT I**
### **Declaratory Relief: 1964-1967 Alleged Policy**

67.     Liberty Mutual re-alleges and incorporates by reference Paragraphs 1-66 of its Counterclaim as though fully set forth herein.

68.     Because the Diocese has not proved the terms and conditions of the 1964-1967 Alleged Policy, including the terms and conditions of the 1964-1967 Alleged Policy Endorsements, Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims under the 1964-1967 Alleged Policy.

69.     There is no coverage for the Underlying Claims under the 1964-1967 Alleged Policy because the Underlying Claimants' alleged injuries were not caused by an "occurrence."

70.    There is no coverage for the Underlying Claims under the 1964-1967 Alleged Policy to the extent that bodily injury did not occur during the policy period.

71.    Absent the filing of a lawsuit against the Diocese, Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims.

72.    The Intentional Acts Exclusion in the 1964-1967 Alleged Policy bars coverage for the Underlying Claims.

73.    There is no duty to defend or duty to indemnify the Diocese under the 1964-1967 Alleged Policy for the Underlying Claims.

## COUNT II
### Declaratory Relief: 1967-1970 Alleged Policy

74.    Liberty Mutual re-alleges and incorporates by reference Paragraphs 1-73 of its Counterclaim as though fully set forth herein.

75.    Because the Diocese has not proved the terms and conditions of the 1967-1970 Alleged Policy, including the terms and conditions of the 1967-1970 Alleged Policy Endorsements, Liberty Mutual owes no duty to defend or indemnify the Diocese in connection with the Underlying Claims under the 1967-1970 Alleged Policy.

76.    There is no coverage for the Underlying Claims under the 1967-1970 Alleged Policy because the Underlying Claimants' alleged injuries were not caused by an occurrence or accident.

77.    There is no coverage for the Underlying Claims under the 1967-1970 Alleged Policy to the extent that bodily injury did not occur during the policy period.

78.    Absent the filing of a lawsuit against the Diocese, Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims.

79.     The Professional Services Exclusion in the 1967-1970 Alleged Policy bars coverage for the Underlying Claims.

80.     There is no duty to defend or duty to indemnify the Diocese under the 1967-1970 Alleged Policy for the Underlying Claims.

81.     Even if coverage were to exist for the Underlying Claims under the 1967-1970 Alleged Policy, which Liberty Mutual denies, the Diocese's maximum recovery would be subject to the Bodily Injury Liability limits of insurance, including the aggregate limit of $100,000 under the 1967-1970 Alleged Policy, less any impairment.

## COUNT III
### Declaratory Relief: 1970-1973 Alleged Policy

82.     Liberty Mutual re-alleges and incorporates by reference Paragraphs 1-81 of its Counterclaim as though fully set forth herein.

83.     Because the Diocese has not proved the terms and conditions of the 1970-1973 Alleged Policy, including the terms and conditions of the 1970-1973 Alleged Policy Endorsements, Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims under the 1970-1973 Alleged Policy.

84.     There is no coverage for the Underlying Claims under the 1970-1973 Alleged Policy because the Underlying Claimants' alleged injuries were not caused by an occurrence or accident.

85.     There is no coverage for the Underlying Claims under the 1970-1973 Alleged Policy to the extent that that the bodily injury did not occur during the policy period.

86.     To be afforded a defense under the 1970-1973 Alleged Policy, a lawsuit must be filed against the Diocese.

87.     The Professional Services Exclusion bars coverage for the Underlying Claims.

88.     There is no duty to defend or duty to indemnify the Diocese under the 1970-1973

Alleged Policy for the Underlying Claims.

89.     Even if coverage were to exist for the Underlying Claims under the 1970-1973

Alleged Policy, which Liberty Mutual denies, the Diocese's maximum recovery would be

subject to the Bodily Injury Liability limits of insurance, including the aggregate limit of

$100,000 under the 1970-1973 Alleged Policy, less any impairment.

## COUNT IV
### Declaratory Relief: 1973 Alleged Policy

90.     Liberty Mutual re-alleges and incorporates by reference Paragraphs 1-89 of its

Counterclaim as though fully set forth herein.

91.     Because the Diocese has not proved the terms and conditions of the 1973 Alleged

Policy, including the terms and conditions of the 1973 Alleged Policy Endorsements, Liberty

Mutual owes no duty to defend or indemnify the Diocese in connection with the Underlying

Claims under the 1973 Alleged Policy.

92.     There is no coverage for the Underlying Claims under the 1973 Alleged Policy

because the Underlying Claimants' alleged injuries were not caused by an occurrence or

accident.

93.     There is no coverage for the Underlying Claims under the 1973 Alleged Policy to

the extent that the bodily injury did not occur during the policy period.

94.     To be afforded a defense under the 1973 Alleged Policy, a lawsuit must be filed

against the Diocese.

95.     There is no duty to defend or duty to indemnify the Diocese under the 1973

Alleged Policy for the Underlying Claims.

24

96.    Even if coverage were to exist for the Underlying Claims under the 1973 Alleged Policy, which Liberty Mutual denies, the Diocese's maximum recovery would be subject to the Bodily Injury Liability limits of insurance, including the aggregate limit of $300,000 under the 1973 Alleged Policy, less any impairment.

## COUNT V
### Declaratory Relief: Alleged XOV Policy

97.    Liberty Mutual re-alleges and incorporates by reference Paragraphs 1-96 of its Counterclaim as though fully set forth herein.

98.    It is the Diocese's burden to demonstrate the existence, terms and conditions of the Alleged XOV Policy.

99.    The Diocese cannot demonstrate the existence, terms or conditions of the Alleged XOV Policy, because no such policy exists.

100.    Because the Alleged XOV Policy does not exist, there is no coverage for the Underlying Claims under the Alleged XOV Policy.

## PRAYER FOR RELIEF

WHEREFORE, Liberty Mutual seeks the following relief:

A.  With respect to the 1964-1967 Alleged Policy:

    a.    A declaration that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims because the Diocese has not proved the terms and conditions of the 1964-1967 Alleged Policy, including the terms and conditions of the 1964-1967 Alleged Policy Endorsements;

    b.    A declaration that there is no coverage for the Underlying Claims because the Underlying Claimants' alleged injuries were not caused by an "occurrence;"

    c.    A declaration that there is no coverage for the Underlying Claims to the extent that bodily injury did not occur during the policy period;

    d.    A declaration that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims, absent the filing of a lawsuit against the Diocese;

e. A declaration that the Intentional Acts Exclusion bars coverage for the Underlying Claims; and

f. A declaration that Liberty Mutual owes no duty to defend or duty to indemnify the Diocese for the Underlying Claims.

B. With respect to the 1967-1970 Alleged Policy:

a. A declaration that that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims because the Diocese has not proved the terms and conditions of the 1967-1970 Alleged Policy, including the terms and conditions of the 1967-1970 Alleged Policy Endorsements;

b. A declaration that there is no coverage for the Underlying Claims because the Underlying Claimants' alleged injuries were not caused by an occurrence or accident;

c. A declaration that there is no coverage for the Underlying Claims to the extent that bodily injury did not occur during the policy period;

d. A declaration that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims absent the filing of a lawsuit against the Diocese;

e. A declaration that the Professional Services Exclusion bars coverage for the Underlying Claims;

f. A declaration that Liberty Mutual owes no duty to defend or duty to indemnify the Diocese for the Underlying Claims; and

g. A declaration that, even if coverage were to exist for the Underlying Claims, the Diocese's maximum recovery would be subject to the Bodily Injury Liability limits of insurance, including the aggregate limit of $100,000 under the 1967-1970 Alleged Policy, less any impairment.

C. With respect to the 1970-1973 Alleged Policy:

a. A declaration that that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims because the Diocese has not proved the terms and conditions of the 1970-1973 Alleged Policy, including the terms and conditions of the 1970-1973 Alleged Policy Endorsements;

b. A declaration that there is no coverage for the Underlying Claims because the Underlying Claimants' alleged injuries were not caused by an occurrence or accident;

c. A declaration that there is no coverage for the Underlying Claims to the extent that that the bodily injury did not occur during the policy period;

26

    d.   A declaration that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims absent the filing of a lawsuit against the Diocese;

    e.   A declaration that the Professional Services Exclusion bars coverage for the Underlying Claims;

    f.   A declaration that Liberty Mutual owes no duty to defend or duty to indemnify the Diocese for the Underlying Claims; and

    g.   A declaration that, even if coverage were to exist for the Underlying Claims, the Diocese's maximum recovery would be subject to the Bodily Injury Liability limits of insurance, including the aggregate limit of $100,000 under the 1970-1973 Alleged Policy, less any impairment.

D.  With respect to the 1973 Alleged Policy:

    a.   A declaration that that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims, because the Diocese has not proved the terms and conditions of the 1973 Alleged Policy, including the terms and conditions of the 1973 Alleged Policy Endorsements;

    b.   A declaration that there is no coverage for the Underlying Claims because the Underlying Claimants' alleged injuries were not caused by an occurrence or accident;

    c.   A declaration that there is no coverage for the Underlying Claims to the extent that the bodily injury did not occur during the policy period;

    d.   A declaration that Liberty Mutual owes no duty to defend or indemnify the Diocese against the Underlying Claims, absent the filing of a lawsuit against the Diocese;

    e.   A declaration that Liberty Mutual owes no duty to defend or duty to indemnify the Diocese for the Underlying Claims; and

    f.   A declaration that, even if coverage were to exist for the Underlying Claims, the Diocese's maximum recovery would be subject to the Bodily Injury Liability limits of insurance, including the aggregate limit of $300,000 under the 1973 Alleged Policy, less any impairment.

E.  With respect to the Alleged XOV Policy:

    a.   A declaration that it is the Diocese's burden to demonstrate the existence, terms and conditions of the Alleged XOV Policy;

    b.   A declaration that the Diocese cannot demonstrate the existence, terms or conditions of the Alleged XOV Policy because no such policy exists; and

    c.   A declaration that there is no coverage for the Underlying Claims under the Alleged XOV Policy, because the Alleged XOV Policy does not exist.

F.   Liberty Mutual respectfully requests that this Court enter judgment in its favor and order any such further relief as the Court deems just and appropriate.

## JURY DEMAND

Liberty Mutual demands a trial by jury.   Liberty Mutual does not consent to the jurisdiction of the Bankruptcy Court.  Nor does Liberty Mutual consent to the Bankruptcy Court's issuance of findings of fact or conclusions of law on a final basis, or its presiding over a jury trial.

**LIBERTY MUTUAL INSURANCE COMPANY**
By its attorneys,

/s/ Teri Bentson  (Bar # 174543)
Law Offices of Thomas P. Stilp
701 Xenia Avenue South, Suite 220
Golden Valley, Minnesota 55416
T: 763-656-4691
F: 603-334-7164
Email: Teri.Bentson@LibertyMutual.com

*and*

/s/ Nancy D. Adams (*pro hac admission pending*)
Mintz, Levin, Cohn, Ferris,
   Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
T:  617-348-1865
F:  617-542-2241
Email: nadams@mintz.com

Dated:  December 19, 2016

## <u>VERIFICATION</u>

I, Teri Bentson, the attorney for the moving party named in the foregoing notice of hearing and motion, declare under penalty of perjury that the foregoing is true and correct according to the best of my knowledge, information and belief.

<u>/s/ Teri Bentson</u>

Executed on: December 19, 2016

65670943v.1

# Exhibit A

o. CLA 770553

| | Audit Basis |
|---|---|
| | ANNUAL |
| Auto. Instal. | Bill Ann. Prem. on |

owal of:  NEW

**AGRICULTURAL INSURANCE COMPANY**
NAME OF COMPANY

ECLARATIONS

1. Named Insured:  DIOCESE OF DULUTH AND

CHURCHES NAMED ON CERTIFICATES

Address: No. Street    Town    County    State

**Agricultural Insurance Group**

m 2. Policy Period:
From FEBRUARY 1, 1964 To FEBRUARY 1, 1967
12:01 A.M. Standard time at the address of the named insured as stated herein:

**COMPREHENSIVE LIABILITY POLICY**
**(GENERAL - AUTOMOBILE)**

Locations of all premises owned, rented or controlled by named insured

Interest of named insured in such premises  ENTER "OWNER" OR "OCCUPANT" OR "TENANT"

ENTER "SAME" IF SAME LOCATION AS ABOVE ADDRESS
Part occupied by named insured

The named insured is  INDIVIDUAL, CORPORATION OR PARTNERSHIP  **CORPORATION**

Business of the named insured is  SEE CERTIFICATES

Item 3. The insurance afforded is only with respect to such and to many of the following coverages as are indicated by specific premium charge or charges. The limit of the company's liability against each such coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | COVERAGES | LIMITS OF LIABILITY | | ADVANCE PREMIUM |
|---|---|---|---|---|
| A | Personal Injury Liability—Automobile | $ 50,000. | each person | $ SEE CERTIFICATES |
| | | $100,000. | each occurrence | |
| B | Personal Injury Liability— Except Automobile | $ 50,000. | each person | $ SEE CERTIFICATES |
| | | $100,000. | each occurrence | |
| | | $ NOT COVERED | aggregate products | |
| C | Property Damage Liability—Automobile | $ 5,000. | each occurrence | $ SEE CERTIFICATES |
| D | Property Damage Liability— Except Automobile | $ 5,000. | each occurrence | $ SEE CERTIFICATES |
| | | $ 25,000. | aggregate operations | |
| | | $ 25,000. | aggregate protective | |
| | | $ NOT COVERED | aggregate products | |
| | | $ 25,000. | aggregate contractual | |

Endorsements forming a part of the policy upon issuance: (Identify by Form Number)

26619, 26525, L6354A, 24369, 26603, 32637B

$

Total Advance Premium  $  SEE CERTIFICATES

Item 4.    The declarations are completed on attached schedules.

Item 5.    Unless otherwise stated herein, the schedules (a) disclose all hazards insured hereunder known to exist at the effective date of this policy; (b) contain a complete list of all automobiles and trailers owned by the named insured at the effective date of this policy and the purposes of use thereof; (c) contain a complete list of all persons within the definition of Class 1 persons, at the effective date of this policy.

Exception, if any, to (a), (b) or (c):*

Item 6.    During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:*

Counter-signed at  DULUTH, MINNESOTA    on    JANUARY 17, 1964    by  Leonard R. Kozuch
Authorized Representative

THESE DECLARATIONS TOGETHER WITH FORM J-  26555A, DATED  2-63  CLA SERIES, CONSTITUTE THE ABOVE NUMBERED POLICY.
*Absence of an entry means "No Exceptions."

Form D-26553  1-61  CLA Series



Agricultural Insurance Group

Insured  DIOCESE OF DULUTH
Policy No. CLA 770553
Page No. ___ #1

Hazards are listed by key numbers. Where hazard exists, classification, rating basis, code numbers, rates, payroll and estimated advance and minimum premiums will appear. When "no exposure at inception" exists, or hazard is "not covered," such is indicated after key number. If other insurance exists as respects exposure covered, the Company, policy number, limits, expiration, location or equipment covered will appear.

Key Numbers:
(1) Owners, Landlords, and Tenants. (2) Manufacturers and Contractors. (3) Unlicensed equipment. (4) Elevators. (5) Products. (6) Independent contractors. (7) Contractual. (8) Auto, (9) Personal Liability. (10) Employees' Liability.

## SCHEDULE OF HAZARDS

| Key No. | Exposure and Classification | Rating Basis | RATE Bod. Inj. | RATE Prop. Dam. | ADVANCE PREMIUM Bodily Inj. | ADVANCE PREMIUM Prop. Dam. |
|---|---|---|---|---|---|---|
| (1) | 215-19 WEST 4TH STREET, DULUTH, MINNESOTA BUILDINGS OR PREMISES - BANK OR OFFICE - N.O.C. | | | | THREE YEAR PREMIUMS | |
| | #178 | 5,760 | .615 | .020 | 106.26 | 3.45 |
| | MEDICAL PAYMENTS COVERAGE | | | | 20.85 | |
| | HOWARD GNESEN ROAD CEMETERIES - INCLUDING ALL BUILDINGS ON THE PROPERTY EXCEPT PRIVATE RESIDENCES. #348 | 70 | .395 | .024 | 82.95 | 10.14 |
| | MEDICAL PAYMENTS COVERAGE | | | | 16.26 | |
| | N½ OF NW 1/4 OF SE 1/4 OF SEC. 3, TWSP. 50, N., RGE. 14 & THE NE 1/4 OF SE 1/4 OF SEC. 3, TWSP. 50, N., RGE. 14, ST. LOUIS COUNTY, MINN. VACANT LAND IN HARTLEY FIELD DULUTH. REAL ESTATE DEVELOPMENT PROPERTY. #342 | 52 ACRES | | | | |
| | 1ST | 10 | 3.06 | .75 | 91.80 | 22.50 |
| | NEXT | 15 | 1.53 | .375 | 68.85 | 16.89 |
| | NEXT | 25 | .765 | .188 | 57.39 | 14.10 |
| | NEXT | 2 | .405 | .094 | 2.43 | .57 |
| | MEDICAL PAYMENTS COVERAGE | | | | 43.23 | |
| | 605-611 NO. CENTRAL AVE., DULUTH, MINNESOTA YOUTH CENTER - RATED AS: Y.M.C.A. AND Y.W.C.A. INSTITUTIONS - EXCLUDING AUTOMOBILE SCHOOLS - EXCLUDING GOODS OR PRODUCTS MANUFACTURED, SOLD, HANDLED OR DISTRIBUTED BY THE NAMED INSURED OR BY OTHERS TRADING UNDER HIS NAME AFTER POSSESSION OF SUCH GOODS OR PRODUCTS HAS BEEN RELINQUISHED TO OTHERS BY THE NAMED INSURED OR BY OTHERS TRADING UNDER HIS NAME. #162 | 3,150 | 1.166 | .013 | 110.19 | 30.39 |
| | MEDICAL PAYMENTS COVERAGE | | | | 75.00 | |
| | SWIMMING POOL. #332s | 1 | 42.66 | .668 | 127.98 | INCL. |
| | MEDICAL PAYMENTS COVERAGE | | | | 21.60 | |
| | PARKING LOT AT REAR OF YOUTH CENTER | | | | INCL | INCL |
| | PRIVATE RESIDENCES - N.O.C. ADDITIONAL RESIDENCE. UMD CAMPUS #770 | | | | 16.53 | 1.02 |
| | MEDICAL PAYMENTS COVERAGE | | | | 3.75 | |
| | PARKING RAMP AT REAR OF THE CHANCERY OFFICE. | | | | INCL | INCL |
| | 2215 E. 2ND STREET, DULUTH, MINNESOTA BISHOP'S RESIDENCE PRIVATE RESIDENCES - WITH INCIDENTAL OFFICE, PROFESSIONAL, PRIVATE SCHOOL OR STUDIO OCCUPANCY BY AN INSURED. ADDITONAL RESIDENCE. #773B | 1 | 10.10 | .68 | 30.30 | 2.04 |
| | MEDICAL PAYMENTS COVERAGE | | | | 3.75 | |

FORM 25705A  3-62



Insured  DIOCESE  OF  DULUTH
Policy No.  CLA 770553
Page No.      #1

Hazards are listed by key numbers. Where hazard exists, classification, rating basis, code numbers, rates, payroll and estimated advance and minimum premium will appear. When "no exposure at inception" exists, or hazard is "not covered," such is indicated after key number. If other insurance exists as respects exposure covered, the Company policy number, limits, expiration, location or equipment covered will appear.

Key Numbers:
(1) Owners, Landlords, and Tenants, (2) Manufacturers and Contractors, (3) Unlicensed equipment, (4) Elevators, (5) Products, (6) Independent contractors, (7) Contractual, (8) Auto, (9) Personal Liability, (10) Employers Liability.

## SCHEDULE OF HAZARDS

| Key No. | Exposure and Classification | Rating Basis | RATE Bod. Inj. | RATE Prop. Dam. | ADVANCE PREMIUM Bodily Inj. | ADVANCE PREMIUM Prop. Dam. |
|---|---|---|---|---|---|---|
| (1) | REAR OF 2215 E. 2ND STREET, DULUTH, MINNESOTA CARETAKER RESIDENCE AND GARAGE PRIVATE RESIDENCES – N.O.C. | | | | | |
| | ADDITIONAL RESIDENCES.    #770 | 1 | 5.51 | .34 | 16.53 | 1.02 |
| | MEDICAL PAYMENTS COVERAGE | | | | 3.75 | |
| | 1% SURCHARGE | | | | 8.97 | 1.02 |
| | GENERAL LIABILITY TOTALS | | | | 908.37 | 103.14 |
| (8) | AUTOMOBILE | | | | ONE YEAR PREMIUMS | |
| | EMPLOYER'S NON-OWNERSHIP | | | | | |
| | CLASS 1 | 4 | 6.50 | 2.50 | 26.00 | 10.00 |
| | CLASS 11 | IF ANY | .221 | .100 | | |
| | AUTOMOBILE LIABILITY TOTALS | | | | 26.00 | 10.00 |
| | TOTAL | | | | 1047.51 | |

FORM 26705A  3-12

COMPREHENSIVE LIABILITY SUR


Agricultural Insurance Group

Insured  DIOCESE OF DULUTH
Policy No.  CLA 770553
Page No.  #1

Hazards are listed by key numbers. Where hazard exists, classification, rating basis, code numbers, rates, payroll and estimated advance and minimum premiums will appear. When "no exposure at inception" exists, or hazard is "not covered," such is indicated after key number. If other insurance exists as respects exposure covered, the Company, policy number, limits, expiration, location or equipment covered will appear.

Key Numbers:
(1) Owners, Landlords, and Tenants, (2) Manufacturers and Contractors, (3) Unlicensed equipment, (4) Elevators, (5) Products, (6) Independent contractors, (7) Contractual, (8) Auto, (9) Personal Liability, (10) Employers Liability.

| Key No. | Exposure and Classification | Rating Basis | Bod. Inj. | Prop. Dam. | Bodily Inj. | Prop. Dam. |
|---|---|---|---|---|---|---|
| | **SCHEDULE OF HAZARDS** | | **RATE** | | **ADVANCE PREMIUM** | |
| 1) | 215-19 WEST 4TH STREET, DULUTH, MINNESOTA BUILDINGS OR PREMISES - BANK OR OFFICE - N.O.C. #178 | 5,760 | .615 | .020 | **THREE YEAR PREMIUMS** 106.26 | 3.45 |
| | MEDICAL PAYMENTS COVERAGE | | | | 20.85 | |
| | HOWARD GNESEN ROAD CEMETERIES - INCLUDING ALL BUILDINGS ON THE PROPERTY EXCEPT PRIVATE RESIDENCES. #348 | 70 | .395 | .024 | 82.95 | 10.14 |
| | MEDICAL PAYMENTS COVERAGE | | | | 16.26 | |
| | N½ OF NW 1/4 OF SE 1/4 OF SEC. 3, TWSP. 50, N., RGE. 14 & THE NE 1/4 OF SE 1/4 OF SEC. 3, TWSP. 50, N., RGE. 14, ST. LOUIS COUNTY, MINN. VACANT LAND IN HARTLEY FIELD DULUTH. REAL ESTATE DEVELOPMENT PROPERTY. #342 | 52 ACRES | | | | |
| | 1ST | 10 | 3.06 | .75 | 91.80 | 22.50 |
| | NEXT | 15 | 1.53 | .375 | 68.85 | 16.89 |
| | NEXT | 25 | .765 | .188 | 57.39 | 14.10 |
| | NEXT | 2 | .405 | .094 | 2.43 | .57 |
| | MEDICAL PAYMENTS COVERAGE | | | | 43.23 | |
| | 605-611 NO. CENTRAL AVE., DULUTH, MINNESOTA YOUTH CENTER - RATED AS: Y.M.C.A. AND Y.W.C.A. INSTITUTIONS - EXCLUDING AUTOMOBILE SCHOOLS - EXCLUDING GOODS OR PRODUCTS | | | | | |

( )MPREHENSIVE LIABILITY SU( )Y                    PAGE 2


Agricultural
Insurance Group

| | |
|---|---|
| Insured | DIOCESE OF DULUTH |
| Policy No. | CLA 770553 |
| Page No. | #1 |

Hazards are listed by key numbers. Where hazard exists, classification, rating basis, code numbers, rates, payroll and estimated advance and minimum premiums will appear. When "no exposure at inception" exists, or hazard is "not covered," such is indicated after key number. If other insurance exists as respects exposure covered, the Company, policy number, limits, expiration, location or equipment covered will appear.

Key Numbers:
(1) Owners, Landlords, and Tenants, (2) Manufacturers and Contractors, (3) Unlicensed equipment, (4) Elevators, (5) Products, (6) Independent contractors, (7) Contractual, (8) Auto, (9) Personal Liability, (10) Employers Liability.

| | | SCHEDULE OF HAZARDS | | RATE | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|---|
| Key No. | Exposure and Classification | Rating Basis | Bod. Inj. | Prop. Dam. | Bodily Inj. | Prop. Dam. |
| (1) | REAR OF 2215 E. 2ND STREET, DULUTH, MINNESOTA CARETAKER RESIDENCE AND GARAGE PRIVATE RESIDENCES - N.O.C. ADDITIONAL RESIDENCES. | #770 | 1 | 5.51 | .34 | 16.53 | 1.02 |
| | MEDICAL PAYMENTS COVERAGE | | | | | 3.75 | |
| | 1% SURCHARGE | | | | | 8.97 | 1.02 |
| | GENERAL LIABILITY TOTALS | | | | | 908.37 | 103.14 |
| 3) | AUTOMOBILE | | | | | ONE YEAR PREMIUMS | |
| | EMPLOYER'S NON-OWNERSHIP | | | | | | |
| | CLASS 1 | | 4 | 6.50 | 2.50 | 26.00 | 10.00 |
| | CLASS 11 | | IF ANY | .221 | .100 | | |
| | AUTOMOBILE LIABILITY TOTALS | | | | | 26.00 | 10.00 |
| | TOTAL | | | | | 1047.51 | |



CLA 770553

ol of:        NEW

LARATIONS
Named
Insured:   DIOCESE OF DULUTH AND

CHURCHES NAMED ON CERTIFICATES

Agent

| Prepaid | Audit Basis |
|---|---|
| X | ANNUAL |
| Auto. Instal. | Bill Ann. Prom. on |

AGRICULTURAL
INSURANCE COMPANY

WATERTOWN, NEW YORK

A CAPITAL STOCK COMPANY
CHARTERED 1853

COMPREHENSIVE LIABILITY POLICY
(GENERAL - AUTOMOBILE)

## Short Rate Cancelation Table
### For Term of One Year

Cancelation of policies issued for a term exceeding one year shall be subject to the following:
(a) When the policy has ten for less than a year, the earned premium shall be computed short rate.
(b) When the policy has a premium, earned premium shall be the first year's premium plus pro rata of the annual premium for the second year.

| Days in Force | Per Cent to be Charged or Retained % | Days in Force | Per Cent to be Charged or Retained % |
|---|---|---|---|
| 1 | 5 | 154-156 | 53 |
| 2 | 6 | 157-160 (5 mos.) | 54 |
| 3-4 | 7 | 161-164 | 55 |
| 5-6 | 8 | 165-167 | 56 |
| 7-8 | 9 | 168-171 | 57 |
| 9-10 | 10 | 172-175 | 58 |
| 11-12 | 11 | 176-178 | 59 |
| 13-14 | 12 | 179-182 (6 mos.) | 60 |
| 15-16 | 13 | 183-187 | 61 |
| 17-18 | 14 | 188-191 | 62 |
| 19-20 | 15 | 192-196 | 63 |
| 21-22 | 16 | 197-200 | 64 |
| 23-25 | 17 | 201-205 | 65 |
| 26-29 (1 mo.) | 18 | 206-209 | 66 |
| 30-32 | 19 | 210-214 (7 mos.) | 67 |
| 33-36 | 20 | 215-218 | 68 |
| 37-40 | 21 | 219-223 | 69 |
| 41-43 | 22 | 224-228 | 70 |
| 44-47 | 23 | 229-232 | 71 |
| 48-51 | 24 | 233-237 | 72 |
| 52-54 | 25 | 238-241 | 73 |
| 55-58 | 26 | 242-246 (8 mos.) | 74 |
| 59-62 (2 mos.) | 27 | 247-250 | 75 |
| 63-65 | 28 | 251-255 | 76 |
| 66-69 | 29 | 256-260 | 77 |
| 70-73 | 30 | 261-264 | 78 |
| 74-76 | 31 | 265-269 | 79 |
| 77-80 | 32 | 270-273 (9 mos.) | 80 |
| 81-83 | 33 | 274-282 | 81 |
| 84-87 | 34 | 279-282 | 82 |
| 88-91 (3 mos.) | 35 | 283-288 | 83 |
| 92-94 | 36 | 288-291 | 84 |
| 95-98 | 37 | 292-296 | 85 |
| 99-102 | 38 | 297-300 | 86 |
| 103-105 | 39 | 302-305 (10 mos.) | 87 |
| 106-109 | 40 | 306-310 | 88 |
| 110-113 | 41 | 311-314 | 89 |
| 114-116 | 42 | 315-319 | 90 |
| 117-120 (4 mos.) | 43 | 320-323 | 91 |
| 121-124 | 44 | 324-328 | 92 |
| 125-131 | 45 | 329-332 | 93 |
| 128-131 | 46 | 333-337 (11 mos.) | 94 |
| 132-135 | 47 | 338-342 | 95 |
| 136-138 | 48 | 343-346 | 96 |
| 139-142 | 49 | 347-355 | 97 |
| 143-145 | 50 | 356-360 | 98 |
| 147-149 | 51 | 356-360 | 99 |
| 150-153 (5 mos.) | 52 | 361-365 (12 mos.) | 100 |

JRM J-26555A 2-63 CLA SERIES

## AGRICULTURAL INSURANCE COMPANY
### (A STOCK INSURANCE COMPANY, HEREIN CALLED THE COMPANY)

grees with the insured, named in the declarations made a part hereof, in consideration of the payment of the premium and in reliance upon the statements in the declarations and subject to the limits f liability, exclusions, conditions and other terms of this policy:

## INSURING AGREEMENTS

**COVERAGE A. PERSONAL INJURY LIABILITY—AUTOMOBILE.** To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because f personal injury, including death at any time resulting therefrom, sustained by any person, aused by an occurrence as defined herein and arising out of the ownership, maintenance or se of any automobile.

**COVERAGE B. PERSONAL INJURY LIABILITY—EXCEPT AUTOMOBILE.** To pay on behalf f the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury, including death at any time resulting therefrom sustained by any erson and caused by an occurrence as defined herein.

**COVERAGE C. PROPERTY DAMAGE LIABILITY—AUTOMOBILE.** To pay on behalf of the nsured all sums which the insured shall become legally obligated to pay as damages because f injury to or destruction of property, including the loss of use thereof, caused by an occurence as defined herein, and arising out of the ownership, maintenance or use of any automobile.

**OVERAGE D. PROPERTY DAMAGE LIABILITY—EXCEPT AUTOMOBILE.** To pay on behalf f the insured all sums which the insured shall become legally obligated to pay as damages ecause of injury to or destruction of tangible property, including the loss of use thereof, aused by an occurrence as defined herein.

II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. With respect to such insurance as is afforded by this policy, the company shall:

(a)   defend any suit against the insured alleging such personal injury, death or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;

(b) (1) pay all premiums on bonds to release attachments for an amount not in excess of the applicable limit of liability of this policy, all premiums on appeal bonds required in any such defended suit, the cost of bail bonds required of the insured in the event of automobile accident or automobile traffic law violation during the policy period, not to exceed $100 per bail bond, but without any obligation to apply for or furnish any such bonds;

(2) pay all expenses incurred by the company, all costs taxed against the insured in any such suit and all interest accruing after entry of judgment until the company has paid or tendered or deposited in court such part of such judgment as does not exceed the limit of the company's liability thereon;

(3) pay expenses incurred by the insured for such immediate medical and surgical relief to others as shall be imperative at the time of the occurrence;

## COMPREHENSIVE LIABILITY POLICY

### (GENERAL - AUTOMOBILE)

... and not
to increase

... is certified
motor vehicle
orded by this
with the pro-
arising out of
ned hereunder,
no event in
the com-

upon the basis of which premium credit is given.

15. SUBROGATION. In the event of any payment under this policy, the company sh:
rogated to all the insured's rights of recovery therefor against any person or organi:
the insured shall execute and deliver instruments and papers and do whatever else is
to secure such rights. The insured shall do nothing after loss to prejudice such right

16. THREE  YEAR POLICY. A policy period of three years is comprised of three c:
annual periods. Rates for hazards are subject to amendment for the second and t
periods in accordance with the company's rules and rating plans. Amended rat:
stated by endorsement issued to form a part of the policy. Computation and

(4) reimburse the insured for all reasonable expenses, other than loss of earnings, incurred at the company's request;

and the amounts so incurred, except settlements of claims and suits, are payable by the company in addition to the applicable limit of liability of this policy.

III. DEFINITION OF INSURED. The unqualified word "insured" includes the named insured and also includes (1) under Coverages B and D, any executive officer, director or stockholder thereof while acting within the scope of his duties as such, and any organization or proprietor with respect to real estate management for the named insured, and if the named insured is a partnership, the unqualified word "insured" also includes any partner therein but only with respect to his liability as such, and (2) under coverages A and C, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured.

IV. USE OF OTHER AUTOMOBILES—SPOUSE. If the named insured is described in item 1 of the declarations as an individual and if the named insured and spouse are residents of the same

household, such insurance as is afforded by this policy under Coverages A and C applies, with respect to non-owned automobiles, to the spouse of such named insured as insured and to any other person or organization legally responsible for the use by such spouse of an automobile not owned or hired by such other person or organization.

This insuring agreement does not apply:

(a) with respect to any automobile owned by such spouse or a member of the household of such spouse other than a private chauffeur or domestic servant of such spouse;

(b) with respect to any automobile while used in the business or occupation of such spouse except an automobile operated or occupied by such spouse, chauffeur, or domestic servant;

(c) with respect to any occurrence arising out of the operation of an automobile repair shop, public garage, sales agency, service station or public parking place.

V. POLICY PERIOD, TERRITORY.  This policy applies only to occurrences which take place during the policy period within North America or any possession of the United States wherever located, and with respect to automobiles, also while the automobile is on a vessel between ports within said territory.

# EXCLUSIONS

THIS POLICY DOES NOT APPLY:

(a) to liability assumed by the insured under any contract or agreement except under Coverages B and D, (1) a contract as defined herein or (2) as respects the insurance which is afforded for the Products Hazard as defined, a warranty of goods or products;

(b) to personal injury, death or destruction due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing, with respect to (1) liability assumed by the insured under any contract or agreement or (2) expenses under Insuring Agreement II (b) (3);

(c) under Coverages B and D, to any obligation for which the insured may be held liable in an action on a contract or an agreement by a person not a party thereto;

(d) under Coverages B and D, except with respect to operations performed by independent contractors and except with respect to liability assumed by the insured under a contract as defined herein, to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from premises owned by, rented to or controlled by the named insured, except insofar as this part of this exclusion is stated in the declarations to be inapplicable, (2) automobiles if the occurrence happens away from such premises or the ways immediately adjoining, or (3) aircraft;

(e) to liability imposed upon the insured or any indemnitee, as a person or organization engaged in the business of manufacturing, selling or distributing alcoholic beverages, or as an owner or lessee of premises used for such purposes, arising out of the sale, gift, or distribution of any alcoholic beverage;

(f) under Coverages A and B, to any obligation for which the insured or any carrier as his insurer may be held liable under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(g) under Coverages A and B, except with respect to liability assumed by the insured under a contract as defined herein, to personal injury to or death of any employee of the insured arising out of and in the course of his employment by the insured, other than a domestic employee whose injury arises out of an automobile covered by this policy and for whose injury benefits in whole or in part are not payable or required to be provided under any workmen's compensation law;

(h) under Coverage C, to injury to or destruction of property owned or transported by the insured, or property rented to or in charge of the insured other than a residence or private garage injured or destroyed by a private passenger automobile covered by this policy;

(i) under Coverage D, to injury to or destruction of (1) property owned or occupied by or rented to the insured, or (2) except with respect to liability under sidetrack agreements covered by this policy, property used by the insured, or (3) except with respect to liability under such sidetrack agreements or the use of elevators or escalators at premises owned by, rented to or controlled by the named insured, property in the care, custody or control of the insured or property

as to which the insured for any purpose is exercising physical control, or (4) any goods, products or containers thereof manufactured, sold, handled or distributed or premises alienated by the named insured, if the accident occurs, or work completed by or for the named insured, out of which the occurrence arises;

(j) under Coverage D, to injury to or destruction of buildings or property therein, wherever occurring, arising out of any of the following causes, if such cause occurs on or from premises owned by or rented to the named insured:  (1) the discharge, leakage or overflow of water or steam from plumbing, heating, refrigerating or air-conditioning systems, standpipes for fire hose, or industrial or domestic appliances, or any substance from automatic sprinkler systems. (2) the collapse or fall of tanks or the component parts or supports thereof which form a part of automatic sprinkler systems, or (3) rain or snow admitted directly to the building interior through defective roofs, leaders or spouting, or open or defective doors, windows, skylights, transoms or ventilators; but this exclusion does not apply to loss due to fire, to the use of elevators or escalators or to operations performed by independent contractors;

(k) under Coverages A, B, C and D, to personal injury, or death or damage to property caused intentionally by or at the direction of the insured;

(l) under division (2) of INSURING AGREEMENT III,

(1) with respect to an automobile while used with any trailer owned or hired by the insured and not covered by like insurance in the company; or with respect to a trailer while used with any automobile or hired by the insured and not covered by like insurance in the company;

(2) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place with respect to any occurrence arising out of the operation thereof, but this provision does not apply to a resident of the same household as the named insured, to a partnership in which such resident or the named insured is a partner, or to any partner, agent or employee of such resident or partnership;

(3) to any employee with respect to personal injury to or death of another employee of the same employer injured in the course of such employment in an occurrence arising out of the maintenance or use of an automobile in the business of such employer;

(4) with respect to any hired automobile, to the owner, or a lessee thereof other than the named insured, or to any agent or employee of such owner or lessee;

(5) with respect to any non-owned automobile, to any executive officer, if such automobile is owned by him or a member of the same household;

(m) under Coverage D, to damage caused by smoke, soot, fumes, and gases emitted from chimneys, stacks, or exhaust piping; pollution of waters, or damage to sewers, waste pipes, or drains, unless there be coincident with such damage a sudden, fortuitous, unexpected event identifiable in time and place.



# ENDORSEMENT

GENERAL LIABILITY ADVANCE PREMIUM: $337.17

FIRST AND SECOND INSTALLMENT:    $337.17

AUTOMOBILE PORTION TO BE RATED ANNUALLY.

SUBJECT IN ALL OTHER RESPECTS TO THE LIMITS OF LIABILITY, EXCLUSIONS AND OTHER CONDITIONS OF THE POLICY. THIS ENDORSEMENT SHALL TAKE EFFECT ON THE INCEPTION DATE OF THE POLICY TO WHICH IT IS ATTACHED UNLESS OTHERWISE STATED BELOW. THE FOLLOWING SPACES ARE TO BE COMPLETED ONLY IF THIS ENDORSEMENT IS NOT ATTACHED TO THE POLICY WHEN ISSUED:

ISSUED TO _____ OF _____

EFFECTIVE DATE OF THIS ENDORSEMENT _____

COUNTERSIGNED AT _____ AGENT _____

OF THE _____
(INSERT NAME OF COMPANY)

ENDORSEMENT NO. _____ Cont.

POLICY NO. _____

AUTHORIZED REPRESENTATIVE

# AGRICULTURAL INSURANCE GROUP

Home Office, Watertown, New York

Western Division, St. Paul 14, Minnesota

FORM 32637B 8-63



## MEDICAL PAYMENTS ENDORSEMENT
### (General Liability)

The company agrees with the named insured to pay all reasonable expenses incurred within one year from the date of accident for necessary medical, surgical and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services, to or for each person who sustains bodily injury, sickness or disease, caused by accident and arising out of the ownership, maintenance or use of premises by the named insured and the ways immediately adjoining on land, or operations of the named insured, subject to the following provisions:

**Elevator Defined.**  The word "elevator" means any hoisting or lowering device to connect floors or landings at any building owned, rented or controlled by the named insured, unless the named insured owns, rents or controls only a part of the building and does not operate, maintain or control the elevator, whether or not such device is in service, and all appliances thereof, including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery. "Elevator" does not include a hoist outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property, or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

**Limits of Liability.**  The limit of liability stated in this endorsement as applicable to "each person" is the limit of the company's liability for all expenses incurred by or on behalf of each person who sustains bodily injury, sickness or disease, including death resulting therefrom, in any one accident; the limit of liability stated herein as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of the company's liability for all expenses incurred by or on behalf of two or more persons who sustain bodily injury, sickness or disease, including death resulting therefrom, in any one accident. The inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

**Exclusions.**  This insurance does not apply:

1. to elevators, unless medical payments coverage with respect to elevators is stated in the Description of Hazards and premium charged therefor;

2. to bodily injury, sickness, disease or death sustained by any person practicing, instructing or participating in any physical training, sport, athletic activity or contest, unless this exclusion is specifically stated to be inapplicable;

3. to bodily injury to or sickness, disease or death of

   a. the named insured, any partner therein, any tenant or other person regularly residing on premises owned by or rented to the named insured, or any employee of such insured, tenant or other person while engaged in the employment therewith;

   b. any other tenant of premises owned by or rented to the named insured, or any employee of such other tenant while engaged in the employment therewith, on that part of such premises rented to such other tenant;

   c. any person arising out of and in the course of his employment if benefits therefor are in whole or in part either payable or required to be provided under any workmen's compensation law;

   d. any person while engaged in maintenance, alteration, demolition or new construction operations for the named insured or for any lessee of the named insured or any lessor of premises rented to the named insured;

   e. any person while in a private apartment or on private residence, two family dwelling or farm premises, if on such premises because of a business, other than farming, conducted thereon or if such person injured by an accident arising out of such business or is engaged in work incidental to the maintenance or use of farm premises;

4. in connection with the ownership, maintenance or use of premises or operations of the named insured rated on a remuneration premium basis or contractor's equipment rated on a receipts premium basis, to bodily injury to or sickness, disease or death of any person, arising out of operations performed for the named insured by independent contractors and omissions or supervisory acts of the named insured in connection therewith, other than (a) maintenance and repairs at premises owned by or rented to the named insured and (b) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

5. in connection with the ownership, maintenance or use of premises or operations of the named insured rated on any premium basis other than as specified in exclusion 4, to bodily injury to or sickness, disease or death of any person, arising out of structural alterations which involve changing the size of or moving buildings or other structures, new construction or demolition operations, by the named insured or his contractors or their subcontractors;

6. to any expense for services by the named insured, any employee thereof, or any person or organization under contract to the named insured to provide such services;

FORM 26619   4—61
FORMERLY 1183-D

7. to the ownership, maintenance, operation, use, loading or unloading of (1) watercraft if the accident occurs away from the premises, or the ways immediately adjoining on land, owned by, rented to or controlled by the named insured, (2) automobiles if the accident occurs away from such premises or the ways immediately adjoining on land, or (3) aircraft;

8. to the products hazard as defined in the policy.

9. to injury, sickness, disease or death due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

10. to bodily injury to or sickness, disease or death of any person due to the sale, gift, distribution or use of any alcoholic beverage if the insured is a person or organization engaged in the business of manufacturing, selling or distributing alcoholic beverages or as an owner or lessor of premises used for such purposes.

**Conditions.**

1. **Policy Provisions.** None of the insuring agreements or conditions of the policy shall apply to the insurance afforded by this endorsement except "Policy Period, Territory," "Premium," the definitions of "Automobile" and the "Products Hazard," "Notice of Accident," "Changes," "Assignment," "Cancelation" and "Declarations".

2. **Medical Reports; Proof and Payment of Claim.** As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require.

The company may pay the injured person or any person or organization rendering the services and such payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute admission of liability of the insured or, except hereunder, of the company.

3. **Action Against Company.** No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all the terms of this policy, not until thirty days after the required proofs of claim have been filed with the company.

## SCHEDULE

| Description of Hazards | | Premium |
|---|---|---|
| SEE SCHEDULE | | THREE YEAR<br>188.19 CHARGED |
| Limits of Liability $ | 250. | each person |
| $ | 10,000. | each accident |
| | Total Premiums $ | 188.19 CHARGED |

Subject in all other respects to the limits of liability, exclusions, conditions and other terms of the policy. This endorsement shall take effect on the inception date of the policy to which it is attached unless otherwise stated below. The following spaces are to be completed only if this endorsement is not attached to the policy when issued:

Effective Date _____, 19___, Policy Number _____End. No. _____

of the _____

Insured _____

Agent _____                AUTHORIZED REPRESENTATIVE

Attach Declarations page a̶l̶o̶n̶g̶  any endorsements. This policy not complete unless such or  tions page is attached.
(Note: Attach Declarations pag̶  ̶  that top edge is flush with top edge of this jacket and le̶ edge is flush with fold)

# CONDITIONS

. PREMIUM.   Premium bases and rates for hazards to which the policy applies are those applicable in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance.

The premium stated in the declarations is a provisional premium only.   Upon termination of this policy or at the end of each annual period, the earned premium shall be computed in accordance with the company's rules, rates, rating plans, premiums and minimum premiums applicable to this insurance. If the earned premium thus computed exceeds the estimated advance premium paid, the insured shall immediately pay the excess to the company; if less, the company shall return the unearned portion to the insured.

The named insured shall maintain for each hazard records of the information necessary for premium computation.

. AUDIT.   The company shall be permitted to examine and audit the insured's books and records at any time during the policy period and any extension thereof and within three years after the final termination of this policy, as far as they relate to the premium bases or the subject matter of this insurance.

## DEFINITIONS.

) CONTRACT.   The word "contract" means a warranty of goods or products, or, if in writing, any contract or agreement of the named insured.   Except where stated to the contrary, all exclusions of the policy apply to contractual liability coverage.

) AUTOMOBILE.   Except where stated to the contrary, the word "automobile" means a land motor vehicle or trailer as follows:

(1) OWNED AUTOMOBILE.   An automobile owned by the named insured;

(2) HIRED AUTOMOBILE.   An automobile used under contract in behalf of, or loaned to, the named insured provided such automobile is not owned by or registered in the name of (a) the named insured or (b) an executive officer thereof or (c) an employee or agent of the named insured who is granted an operating allowance of any sort for the use of such automobile;

(3) NON-OWNED AUTOMOBILE.   Any other automobile.

he following described equipment shall be deemed an automobile while towed by or carried an automobile not so described, but not otherwise:  If of the crawler-type, any tractor, power ane or shovel, ditch or trench digger; any farm-type tractor; any concrete mixer other than of mix-in transit type, any grader, scraper, roller or farm implement; and,  if not subject to for vehicle registration, any other equipment not specified below, which is designed for use ncipally off public roads.

e following described equipment shall be deemed an automobile while towed by or carried on automobile as above defined solely for purposes of transportation or while being operated ely for locomotion, but not otherwise:  If of the non-crawler type, any power crane or shovel, ch or trench digger, and any air-compressing, building or vacuum cleaning, spraying or ding equipment or well drilling machinery.

SEMITRAILER.   The word "trailer" includes semitrailer.

PRIVATE PASSENGER AUTOMOBILE.   The term "private passenger automobile" means a private passenger, station wagon or jeep type automobile, and also includes any automobile the purposes of use of which are stated in the declarations as "pleasure and business".

TWO OR MORE AUTOMOBILES.   The terms of this policy apply separately to each automobile insured hereunder, but a motor vehicle and a trailer or trailers attached thereto shall be held to be one automobile as respects limits of liability.

PURPOSES OF USE.   The term "pleasure and business" is defined as personal, pleasure, family and business use.   The term "commercial" is defined as use principally in the business occupation of the named insured as stated in the declarations, including occasional use for personal, pleasure, family and other business purposes.   Use of an automobile includes the loading and unloading thereof.

RODUCTS—COMPLETED OPERATIONS HAZARD.   The term "products hazard" means

1) Goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, if the occurrence happens after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name and if such occurrence happens away from premises owned, rented or con-

trolled by the named insured; provided such goods or products shall be deemed to include any container thereof, other than a vehicle, but shall not include any vending machine or any property, other than such container, rented to or located for use of others but not sold;

(2) Operations, if the occurrence happens after such operations have been completed or abandoned and happens away from premises owned, rented or controlled by the named insured; provided—operations shall not be deemed incomplete because improperly or defectively performed or because further operations may be required pursuant to an agreement; provided further, the following shall not be deemed to be "operations" within the meaning of this paragraph:  (i) pick-up or delivery, except from or onto a railroad car, (ii) the maintenance of vehicles; owned or used by or in behalf of the insured, (iii) the existence of tools, uninstalled equipment and abandoned or unused materials.

(h) PERSONAL INJURY.   The words "personal injury" mean bodily injury, sickness, disease, or if arising out of the foregoing, mental anguish and mental injury;

(I) OCCURRENCE.   The word "occurrence" as used in this policy shall mean either an accident or a continuous or repeated exposure to conditions which result during the policy period in personal injury, including death at any time resulting therefrom, or injury to or destruction of tangible property, including the loss of use thereof, which is accidentally caused.   All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

4. LIMITS OF LIABILITY.   COVERAGES A and B.   The limit of personal injury liability stated in the declarations as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of personal injury, including death at any time resulting therefrom, sustained by one person in any one occurrence; the limit of such liability stated in the declarations as applicable to "each occurrence" is, subject to the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services, arising out of personal injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons as the result of any one occurrence.

5. LIMITS OF LIABILITY.   COVERAGES C and D.   The limit of property damage liability stated in the declarations as applicable to "each occurrence" is the total limit of the company's liability for all damages arising out of injury to or destruction of all property of one or more persons or organizations, including the loss of use thereof, as the result of any one occurrence.

6. LIMITS OF LIABILITY.   PRODUCTS.   COVERAGES B and D.   Subject to the limit of liability with respect to "each occurrence", the limits of personal injury liability and property damage liability stated in the declarations as "aggregate products" are respectively the total limits of the company's liability for all damages arising out of the products hazard.   All such damages arising out of one lot of goods or products prepared or acquired by the named insured or by another trading under his name shall be considered as arising out of one occurrence.

7. LIMITS OF LIABILITY.   COVERAGE D.   Subject to the limit of liability with respect to "each occurrence", the limit of property damage liability stated in the declarations as "aggregate operations" is the total limit of the company's liability for all damages arising out of injury to or destruction of tangible property, including the loss of use thereof, caused by the ownership, maintenance or use of premises or operations rated upon a remuneration premium basis or by contractors' equipment rated on a receipts premium basis.

Subject to the limit of liability with respect to "each occurrence", the limit of property damage liability stated in the declaration as "aggregate protective" is the total limit of the company's liability for all damages arising out of injury to or destruction of tangible property, including the loss of use thereof, caused by operations performed for the named insured by independent contractors or omissions or supervisory acts of the insured in connection therewith, except maintenance or ordinary alterations and repairs on premises' owned or rented by the named insured.

Subject to the limit of liability with respect to "each occurrence", the limit of property damage liability stated in the declarations as "aggregate contractual" is the total limit of the company's liability for all damages arising out of injury to or destruction of tangible property, including the loss of use thereof, with respect to each contract.

The limits of property damage liability stated in the declarations as "aggregate operations", "aggregate protective" and "aggregate contractual" apply separately to each project with

respect to operations being performed away from premises... d by or rented to the named insured.

**8. SEVERABILITY OF INTERESTS.** The term "the insured" is used severally and not collectively, but the inclusion herein of more than one insured shall not operate to increase the limits of the company's liability.

**9. FINANCIAL RESPONSIBILITY LAWS. COVERAGES A and C.** When this policy is certified as proof of financial responsibility for the future under the provisions of the motor vehicle financial responsibility law of any state or province, such insurance as is afforded by this policy for bodily injury liability or for property damage liability shall comply with the provisions of such law which shall be applicable with respect to any such liability arising out of the ownership, maintenance or use during this policy period of any automobile insured hereunder, to the extent of the coverage and limits of liability required by such law, but in no event in excess of the limits of liability stated in this policy. The insured agrees to reimburse the company for any payment made by the company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

**10. NOTICE TO THE COMPANY.** In the event of personal injury, death; injury to or destruction of property, written notice shall be given by or on behalf of the insured to the company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the insured and also reasonably obtainable information respecting the time, place and circumstances of such injury, the names and addresses of the injured and of available witnesses.

**11. NOTICE OF CLAIM OR SUIT.** If claim is made or suit is brought against the insured, the insured shall immediately forward to the company every demand, notice, summons or other process received by him or his representative.

**12. ASSISTANCE AND COOPERATION OF THE INSURED.** The insured shall cooperate with the company and, upon the company's request, shall attend hearings and trials and shall assist in effecting settlements, securing and giving evidence, obtaining the attendance of witnesses and in the conduct of suits. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of injury.

**13. ACTION AGAINST COMPANY.** No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company.

Any person or organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. Nothing contained in this policy shall give any person or organization any right to join the company as a codefendant in any action against the insured to determine the insured's liability.

Bankruptcy or insolvency of the insured or of the insured's estate shall not relieve the company of any of its obligations hereunder.

**14. OTHER INSURANCE.** If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance under this policy with respect to any hired automobile or any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise.

All insurance under this policy shall be excess insurance with respect to loss against which the named insured has other insurance disclosed to the company as in effect on the effective date of this policy and... the basis of which premium credit for other insurance is given t shall apply only in the ... t by which the applicable limit of liability stated in the dec rations exceeds the total applicable limits of liability of all valid and collectible insurar upon the basis of which premium credit is given.

**15. SUBROGATION.** In the event of any payment under this policy, the company shall be s rogated to all the insured's rights of recovery therefor against any person or organization r the insured shall execute and deliver instruments and papers and do whatever else is necess. to secure such rights. The insured shall do nothing after loss to prejudice such rights.

**16. THREE ·YEAR POLICY.** A policy period of three years is comprised of three consecut annual periods. Rates for hazards are subject to amendment for the second and third ann periods in accordance with the company's rules and rating plans. Amended rates shall stated by endorsement issued to form a part of the policy. Computation and adjustment earned premium shall be made at the end of each annual period. Aggregate limits of liabi as stated in this policy shall apply separately to each annual period.

**17. CHANGES.** Notice to any agent or knowledge possessed by any agent or by any ot person shall not effect a waiver or a change in any part of this policy or estop the comp: from asserting any right under the terms of this policy; nor shall the terms of this policy waived or changed, except by endorsement issued to form a part of this policy.

**18. ASSIGNMENT.** Assignment of interest under this policy shall not bind the company u its consent is endorsed hereon; if, however, the named insured shall die, this policy shall co (1) the named insured's legal representative as the named insured, and (2) under Coverage: and C, subject otherwise to the provisions of Insuring Agreement III, any person having pro temporary custody of any owned automobile or hired automobile, as an insured, until the pointment and qualification of such legal representative; provided that notice of cancelat addressed to the insured named in the declarations and mailed to the address shown in t policy shall be sufficient notice to effect cancelation of this policy.

**19. CANCELATION.** This policy may be canceled by the named insured by surrender ther to the company or any of its authorized agents or by mailing to the company written not stating when thereafter the cancelation shall be effective. This policy may be canceled by company by mailing to the named insured at the address shown in this policy written not stating when not less than ten days thereafter such cancelation shall be effective. The mai of notice as aforesaid shall be sufficient proof of notice. The time of the surrender or effective date and hour of cancelation stated in the notice shall become the end of the pol period. Delivery of such written notice either by the named insured or by the company sl be equivalent to mailing.

If the named insured cancels, earned premium shall be computed in accordance with customary short rate table and procedure. If the company cancels, earned premium shall computed pro rata. Premium adjustment may be made either at the time cancelation is effec or as soon as practicable after cancelation becomes effective, but payment or tender of earned premium is not a condition of cancelation.

**20. JOINT INSURED.** If more than one insured is covered under this policy, the first nas insured shall act for itself and for each and all of the insureds for all purposes of this pol If the first named insured ceases for any reason to be covered under this policy, then the sured next named shall thereafter be considered as the first named insured for all the purp of this policy.

**21. DECLARATIONS.** By acceptance of this policy the named insured agrees that the st ments in the declarations are his agreements and representations, that this policy is issue reliance upon the truth of such representations and that this policy embodies all agreem existing between himself and the company or any of its agents relating to this insurance.

IN WITNESS WHEREOF, the AGRICULTURAL INSURANCE COMPANY OF WATERTOWN, NEW YORK has executed and attested these presents, but this Policy shall not be valid unless coun signed by a duly authorized representative of the Company.

SECRETARY

PRESIDENT

# Exhibit B

Part two of the Declaration—Page 2 of Company Copy Part(s) with Policy Provisions-Part One completes the below numbered.

EXPIRES AT NOON, STANDARD TIME AUDIT BASIS
LLA 77893 **ANNUAL**

# GENERAL—AUTOMOBILE
## LIABILITY POLICY

XX **A**GRICULTURAL **I**NSURANCE **C**O.
☐ **A**MERICAN **E**MPIRE **I**NS. **C**O.

COVERAGE is provided in Company Checked

| Item | DECLARATIONS | POLICY NUMBER 3GA 26 24 22 |
|---|---|---|
| 1. | *Named Insured* | DIOCESE OF DULUTH AND CHURCHES NAMED ON CERTIFICATES |

ADDRESS:
(Number & Street, Town, County, State & Zip No.)

| 2. | Policy Period— From 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN | FEBRUARY 1, 1967 To FEBRUARY 1, 1970 |
|---|---|---|

REPRESENTATIVE:
Agent or Broker — F. I. SALTER AGENCY, INC.
Office Address — 812 ALWORTH BUILDING
Town and State — DULUTH, MINNESOTA

171900

**A**GRICULTURAL **I**NSURANCE **C**O.

HOME OFFICE
215 WASHINGTON STREET
WATERTOWN, NEW YORK 13601

**A**MERICAN **E**MPIRE **I**NS. **C**O.
of South Dakota
SIOUX FALLS, S.D.

BUSINESS OFFICE
215 WASHINGTON STREET
WATERTOWN, NEW YORK 13601

3. The insurance afforded is only with respect to such of the following Parts designated by an "X" in [ ] and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

Comprehensive General Liability Insurance ......... XX
Owners', Landlords' and Tenants' Liability Insurance ☐
Manufacturers' and Contractors' Liability Insurance ☐
Contractual Liability Insurance ...........
Completed Operations and Products Liability Insurance ☐

ADVANCE PREMIUM

LIMITS OF LIABILITY

|  | EACH PERSON | EACH OCCURRENCE | AGGREGATE |
|---|---|---|---|
| Bodily Injury Liability | $ 50,000. | $ 100,000. | $ 100,000. |
| Property Damage Liability | XXXXXX | $ 5,000. | $ 25,000. |

|  | EACH PERSON | EACH ACCIDENT |  |
|---|---|---|---|
| Premises Medical Payments Insurance ..... XX | $ 250.00 | $ 10,000.00 |  |

Comprehensive Personal Insurance
Farmer's Comprehensive Personal Insurance ☐

|  | EACH PERSON | EACH OCCURRENCE | EACH ACCIDENT |
|---|---|---|---|
| Personal Liability | XXXXXX | $ | XXXXXX |
| Personal Medical Payments | | XXXXXX | |
| Physical Damage to Property | XXXXXX | $ | XXXXXX |
| (Applicable to Farmer's Comprehensive Personal Insurance only) Animal Collision | Market value not exceeding $300 each animal | | |

Comprehensive Automobile Liability Insurance ...... XX
**EMPLOYERS NON—OWNERSHIP** Bodily Injury Liability
**ONLY** Property Damage Liability

|  | EACH PERSON | EACH OCCURRENCE |
|---|---|---|
| Bodily Injury Liability | $ 50,000.00 | $ 100,000.00 |
| Property Damage Liability | XXXXXX | $ 5,000.00 |

|  | EACH PERSON | EACH ACCIDENT |
|---|---|---|
| Automobile Medical Payments Insurance ...... ☐ | $ | XXXXXX |
| Uninsured Motorists Insurance ........... ☐ | $ | |

Garage Insurance .................. ☐
Automobile Physical Damage Insurance (Non-Fleet) ..... ☐
Automobile Physical Damage Insurance (Fleet Automatic) ☐

See Coverage Part for Limits of Liability
See Coverage Part for Limits of Liability

Endorsements and Additional Coverage Parts # 26620-26628-26626-24369-L9141-32637B
(IDENTIFY BY FORM NUMBERS)

†If Policy Period more than one year and the premium is to be paid in installments, premium is payable: On effective date of policy $
Audit Period: Annual, unless otherwise stated.**

| 4. | The named insured is: individual ☐ | partnership ☐ | corporation XXXX |
|---|---|---|---|
|  | joint venture ☐ | other ☐ | |

5. During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein.**

**ABSENCE OF AN ENTRY MEANS "NO EXCEPTION".

Not applicable in Texas

Countersigned by _Leonard R Rozanek_
*Authorized Representative*

Form D26616 Ed. 10-1-66



**AGRICULTURAL INSURANCE CO.**
**AMERICAN EMPIRE INS. CO.**
of South Dakota

General—Automobile Liability Policy No. 36A 262422

## CERTIFICATE # 1 - DIOCESE OF DULUTH

### GENERAL LIABILITY HAZARDS

| DESCRIPTION OF HAZARDS | CODE NO. | PREMIUM BASES (a) Area (sq. ft.) (b) Frontage (c) Remuneration | RATES BODILY INJURY (a) Per 100 sq. ft. of Area (b) Per linear ft. (c) Per $100 of Remuneration | RATES PROPERTY DAMAGE | ADVANCE PREMIUM BODILY INJURY | ADVANCE PREMIUM PROPERTY DAMAGE |
|---|---|---|---|---|---|---|
| **Premises — Operations** | | | | | | |
| 215-19 West 4th Street, Duluth, Minn. | | | | | | |
| Buildings or Premises - Bank or Office | | | | | | |
| N.O.C. | 0122 | 5760 | .716 | .020 | 41.00 | 1.00 |
| Gymnasium | 0321s | 1 | | | 41.00 | 1.00 |
| Medical | | | | | 16.00 | |
| Howard Gnesen Road | | | | | | |
| Cemeteries - including all buildings on | | | | | | |
| the property except private residences. | 0348 | 70 | .524 | .024 | 37.00 | 2.00 |
| Medical | | | | | 7.00 | |
| N½ of NW 1/4 of SE 1/4 of Sec. 3, Twsp. | | | | | | |
| 50, N Rge. 14 & the NE 1/4 of SE 1/4 of | | | | | | |
| Sec. 3, Twsp. 50, N., Rge. 14, St. Louis | | | | | | |
| County, Minn. - Vacant Land in Hartley | | | | | | |
| Field Duluth.  Real Estate Development | | | | | | |
| Property | 0342 | 52 acres | | | | |
| | | 1st 10 | 3.00 | .750 | 30.00 | 8.00 |
| | | Next 15 | 1.53 | .375 | 23.00 | 6.00 |
| | | Next 25 | .765 | .188 | 19.00 | 5.00 |
| | | Next 2 | .408 | .094 | 1.00 | Incl. |
| Medical | | | | | 15.00 | |
| 605-611 No. Central Avenue, Duluth, Minn. | | | | | | |
| Youth Center - rated as: Y.M.C.A. and | | | | | | |
| Y.W.C.A. institutions - excluding auto- | | | | | | |
| mobile schools-excluding goods or products | | | | | | |
| manufactured, sold, handled or distributed | | | | | | |
| by the named insured or by others trading | | | | | | |
| under his name after possession of such | | | | | | |
| goods or products has been relinquished | | | | | | |
| to others by the named insured or by | | | | | | |
| others trading under his name. | 0162 | 3150 | .927 | .013 | 29.00 | 4.00 |
| Medical | | | | | 20.00 | |
| Swimming Pool | 0332s | 1 | | | 54.00 | 1.00 |
| Medical | | | | | 9.00 | |
| Parking Lot at rear of Youth Center | | | | | Incl. | Incl. |
| Private Residences - N.O.C. | 0770 | 1 | | | 5.00 | Incl. |
| Additional Residence - UMDM campus | | | | | 1.00 | |
| Medical | | | | | | |
| | | | Total Advance B.I. and P.D. Premiums | | CONTINUED......... | |

CONTINUED.........

Form 26674 Ed. 10-1-66

SCH

**GENERAL LIABILITY SCHEDULE**

 **AGRICULTURAL INSURANCE CO.**
**AMERICAN EMPIRE INS. CO.**

**CERTIFICATE # 1 CONTINUED ........**        General—Automobile Liability Policy No. 3GA  262422

| GENERAL LIABILITY HAZARDS | | | | | | |
|---|---|---|---|---|---|---|
| DESCRIPTION OF HAZARDS | CODE NO. | PREMIUM BASES | RATES | | ADVANCE PREMIUM | |
| | | | BODILY INJURY | PROPERTY DAMAGE | BODILY INJURY | PROPERTY DAMAGE |
| Premises — Operations | | (a) Area (sq. ft.) (b) Frontage (c) Remuneration | (a) Per 100 sq. ft. of Area (b) Per linear ft. (c) Per $100 of Remuneration | | | |
| PARKING RAMP AT REAR OF THE CHANCERY OFFICE. | | | | | INCL. | INCL. |
| 2215 E. 2ND STREET, DULUTH, MINNESOTA BISHOP'S RESIDENCE RATED AS: PRIVATE RESIDENCES — WITH INCIDENTAL OFFICE, PROFESSIONAL, PRIVATE SCHOOL OR STUDIO OCCUPANCY BY AN INSURED. | 07738 | 1 | | | 9.00 | 1.00 |
| MEDICAL | | | | | 1.00 | |
| REAR OF 2215 E. 2ND STREET, DULUTH, MINN. CARETAKER RESIDENCE AND GARAGE RATED AS PRIVATE RESIDENCES-N.O.C. | 0770 | 1 | | | 5.00 | INCL. |
| MEDICAL | | | | | 1.00 | |
| | | | | | 364.00 | 29.00 |
| * AUTOMOBILE — | | | | | | |
| EMPLOYERS NON-OWNERSHIP  — CLASS I | | 4 | 3.90 | 1.50 | 16.00 | 6.00 |
| CLASS II | | IF ANY | .221 | .100 | | |
| | | | | | 16.00 | 6.00 |
| TOTAL ANNUAL PREMIUM —  $ 415.00 | | | | | | |
| TOTAL 3 YR. PREMIUM —  $1245.00 | | | | | | |
| | | | | Total Advance B.I. and P.D. Premiums | | |

**SCH**

Form 26674 Ed. 10-1-66



THIS ENDORSEMENT MODIFIES SUCH INSURANCE AS IS AFFORDED BY
THE PROVISIONS OF THE POLICY RELATING TO THE FOLLOWING:

COMPREHENSIVE GENERAL LIABILITY INSURANCE

EXCLUSION OF MEDICAL PAYMENTS FOR STUDENTS ENDORSEMENT

IN CONSIDERATION OF THE PREMIUM AT WHICH THIS POLICY IS WRITTEN:

IT IS UNDERSTOOD AND AGREED THAT COVERAGE PROVIDED BY THE "MEDICAL PAYMENTS
COVERAGE PART" SHALL NOT APPLY TO OR FOR PUPILS OF THE INSURED WHILE SUCH
PUPILS ARE IN OR UPON THE SCHOOL PREMISES;

IT IS FURTHER UNDERSTOOD AND AGREED THAT THE COVERAGE AFFORDED BY THIS POLICY
AS RESPECTS THE INSURED'S SCHOOL INCLUDES (A) THE USE OF BICYCLES ON SCHOOL
BUSINESS, AND (B) THE TRANSPORTATION HAZARD OF OTHER VEHICLES, INCLUDING
WATERCRAFT, NOT OWNED OR HIRED BY OR FOR THE INSURED, ANY MEMBER OF THE
TEACHING, SUPERVISING OR ADMINISTRATIVE STAFF, OFFICER OR EMPLOYEE OF THE
INSURED;

IT IS FURTHER UNDERSTOOD AND AGREED THAT NO COVERAGE IS AFFORDED BY THIS
POLICY FOR CLAIMS DUE TO THE RENDERING OF ANY PROFESSIONAL SERVICE OR
OMISSION THEREOF.



# ENDORSEMENT



IT IS HEREBY UNDERSTOOD AND AGREED THAT NO INSURANCE IS AFFORDED BY
THIS POLICY AS RESPECTS ANY PARISH WITHIN THE ROMAN CATHOLIC DIOCESE
OF DULUTH UNLESS SUCH PARISH IS SPECIFICALLY DESCRIBED IN A SCHEDULE
FORMING A PART OF THIS POLICY.

SUBJECT IN ALL OTHER RESPECTS TO THE LIMITS OF LIABILITY, EXCLUSIONS AND OTHER
CONDITIONS OF THE POLICY. THIS ENDORSEMENT SHALL TAKE EFFECT ON THE INCEPTION
DATE OF THE POLICY TO WHICH IT IS ATTACHED UNLESS OTHERWISE STATED BELOW. THE
FOLLOWING SPACES ARE TO BE COMPLETED ONLY IF THIS ENDORSEMENT IS NOT ATTACHED
TO THE POLICY WHEN ISSUED:

ENDORSEMENT NO. _____

ISSUED TO_____ OF _____

EFFECTIVE DATE OF THIS ENDORSEMENT _____    POLICY NO.   3GA 262422

COUNTERSIGNED AT_____        AGENT

OF THE _____
(INSERT NAME OF COMPANY)                          AUTHORIZED REPRESENTATIVE

1/30/67

DIOCESE OF DULUTH, 215 West 4th Street, Duluth, Minnesota

PREMIUM BREAKDOWN

CHANCERY:
~~130 West 4th Street (gym)~~                          450.00
215-219 West 4th Street                                72.00
Vacant Land — Hartley Field                           107.00

CEMETERY:
Howard Gnesen Road                                     46.00

YOUTH CENTER:
605-11 North Central Avenue                           117.00

RESIDENCE:
UMD Campus                                              6.00

BISHOP'S RESIDENCE:
2215 East 2nd Street                                   11.00
Rear 2215 East 2nd Street                               6.00

Total                                                 415.00



**A**GRICULTURAL **I**NSURANCE **C**O.
**A**MERICAN **E**MPIRE **I**NS. **C**O.
of South Dakota

| SCHEDULE | | General—Automobile Liability Policy No. 3GA | |
|---|---|---|---|
| | **COVERAGE** | | **ADVANCE PREMIUM** |
| (a) Premises and operations | See attached certificates | | $ |
| (b) Elevators | | | $ |
| (c) Sports activities | | | $ |
| | | Total Advance Premium | $ |

## I. COVERAGE E—PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains bodily injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the insured premises or (b) operations with respect to which the named insured is afforded coverage for bodily injury liability under this policy.

### Exclusions

This insurance does not apply:

(a) to bodily injury

(1) arising out of the ownership, maintenance, operation, use, loading or unloading of any elevator unless a premium charge is entered for elevators in the policy with respect to Premises Medical Payments Coverage;

(2) arising out of the ownership, maintenance, operation, use, loading or unloading of

    (i) any automobile or aircraft owned or operated by or rented or loaned to the named insured, or

    (ii) any other automobile or aircraft operated by any person in the course of his employment by the named insured;

but this exclusion does not apply to the parking of an automobile on the insured premises, if such automobile is not owned by or rented or loaned to the named insured;

(3) arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if the bodily injury occurs away from the insured premises; or

(4) arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to the named insured;

(b) to bodily injury

(1) included within the completed operations hazard or the products hazard;

(2) arising out of operations performed for the named insured by independent contractors other than (i) maintenance and repair of the insured premises or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person; but this exclusion (b) (3) applies only if the named insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or is an owner or lessor of premises used for such purposes;

(4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to bodily injury

(1) to the named insured, any partner therein, any tenant or other person regularly residing on the insured premises or any employee of any of the foregoing if the bodily injury arises out of and in the course of his employment therewith;

(2) to any other tenant if the bodily injury occurs on that part of the insured premises rented from the named insured or to any employee of such a tenant

if the bodily injury occurs on the tenant's part of the insured premises and arises out of and in the course of his employment for the tenant;

(3) to any person who engaged in maintenance and repair of the insured premises or alteration, demolition or new construction at such premises;

(4) to any person if any benefits for such bodily injury are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sport activities in the policy with respect to Premises Medical Payments Coverage;

(d) to any medical expense for services by the named insured, any employee thereof or any person or organization under contract to the named insured to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the declarations as applicable to "each person" is the limit of the company's liability for all medical expense for bodily injury to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all medical expense for bodily injury to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the declarations as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"insured premises" means all premises owned by or rented to the named insured with respect to which the named insured is afforded coverage for bodily injury liability under this policy, and includes the ways immediately adjoining on land;

"medical expense" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

### Medical Reports; Proof and Payment of Claim

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

PM

Form 26628 Ed. 10-1-66

*(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)*

**LIABILITY**

**G 304**

L 8141
(Ed. 7-66)

### EXCLUSION
**(Completed Operations Hazard and Products Hazard)**

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
**COMPREHENSIVE GENERAL LIABILITY INSURANCE**

This endorsement, effective _____ , forms a part of policy No. _____

(12:01 A. M., standard time)

issued to

by

Authorized Representative

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to **bodily injury or property damage** included within the **Completed Operations Hazard or the Products Hazard.**





# ENDORSEMENT

General Liability Advance Premium: $337.17

First and Second Installment:   $337.17

Automobile portion to be rated annually.

SUBJECT IN ALL OTHER RESPECTS TO THE LIMITS OF LIABILITY, EXCLUSIONS AND OTHER CONDITIONS OF THE POLICY. THIS ENDORSEMENT SHALL TAKE EFFECT ON THE INCEPTION DATE OF THE POLICY TO WHICH IT IS ATTACHED UNLESS OTHERWISE STATED BELOW. THE FOLLOWING SPACES ARE TO BE COMPLETED ONLY IF THIS ENDORSEMENT IS NOT ATTACHED TO THE POLICY WHEN ISSUED:

ISSUED TO_____

EFFECTIVE DATE OF THIS ENDORSEMENT_____

COUNTERSIGNED AT_____

OF THE _____
(INSERT NAME OF COMPANY)

AGENT_____

OF_____

POLICY NO._____

ENDORSEMENT NO._____ Cert. #1

_____
AUTHORIZED REPRESENTATIVE

FORM 32637B 8-63

## AGRICULTURAL INSURANCE GROUP

Home Office, Watertown, New York

Western Division, St. Paul 14, Minnesota

# Exhibit C

Part Two. This Declarations page and Coverage
Part(s) with "Policy Provisions-Part One"
completes the below numbered

| EXPIRED | AUDIT BASIS |
|---|---|
| 3GA262422 | Annual |

**GENERAL—AUTOMOBILE**
**LIABILITY POLICY**

☒ **A**GRICULTURAL **I**NSURANCE **C**O.
☐ **A**MERICAN **E**MPIRE **I**NS. **C**O.
of South Dakota

COVERAGE is provided
in Company Checked

| Item | DECLARATIONS | POLICY NUMBER 3GA 29 96 59 |
|---|---|---|
| 1. | *Named Insured* | DIOCESE OF DULUTH AND CHURCHES NAMED ON CERTIFICATES |

ADDRESS:
(Number & Street, Town, County, State & Zip No.)

| 2. | Policy Period: 12:01 A. M., STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN. From: February 1, 1970 To: February 1, 1973 |
|---|---|

REPRESENTATIVE:   Agent or Broker   Office Address   Town and State

F. I. Salter Agency, Inc.
812 Alworth Building
Duluth, Minnesota                                    171900

**A**GRICULTURAL **I**NSURANCE **C**O.        **A**MERICAN **E**MPIRE **I**NS. **C**O.
of South Dakota
SIOUX FALLS, S.D.

HOME OFFICE                                    BUSINESS OFFICE
215 WASHINGTON STREET                    215 WASHINGTON STREET
WATERTOWN, NEW YORK 13601              WATERTOWN, NEW YORK 13601

3. The insurance afforded is only with respect to such of the following Parts designated by an "X" in ☒ and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy having reference thereto.

| | LIMITS OF LIABILITY | | | ADVANCE PREMIUM |
|---|---|---|---|---|
| Comprehensive General Liability Insurance ........ ☒ | | | | |
| Owners', Landlords' and Tenants' Liability Insurance .... ☐ | | | | |
| Manufacturers' and Contractors' Liability Insurance .... ☐ | | | | |
| Contractual Liability Insurance ...................... ☐ | | | | |
| Completed Operations and Products Liability Insurance .. ☐ | EACH PERSON | EACH OCCURRENCE | AGGREGATE | |
| Bodily Injury Liability | $ 50,000. | $ 100,000. | $ 100,000. | $ |
| Property Damage Liability | XXXXXX | $ 5,000. | $ 25,000. | $ |
| | EACH PERSON | | EACH ACCIDENT | |
| Premises Medical Payments Insurance ................ ☒ | $ 250. | | $ 10,000. | $ |
| Comprehensive Personal Insurance .................... ☐ | EACH PERSON | EACH OCCURRENCE | EACH ACCIDENT | |
| Farmer's Comprehensive Personal Insurance .......... ☐ | | | | |
| Personal Liability | XXXXXX | $ | XXXXXX | |
| Personal Medical Payments | $ | XXXXXX | $ | $ |
| Physical Damage to Property | XXXXXX | $ | XXXXXX | $ |
| (Applicable to Farmer's Comprehensive Personal Insurance only) Animal Collision | Market value not exceeding $300 each animal | | | $ |
| Comprehensive Automobile Liability Insurance .......... ☒ | EACH PERSON | EACH OCCURRENCE | | |
| Bodily Injury Liability | $ 50,000. | $ 100,000. | | $ |
| Property Damage Liability | XXXXXX | $ 5,000. | | $ |
| | EACH PERSON | EACH ACCIDENT | | |
| Automobile Medical Payments Insurance .............. ☐ | $ | XXXXXX | | $ |
| Uninsured Motorists Insurance ...................... ☐ | $ | $ | | $ |
| Garage Insurance .................................. ☐ | See Coverage Part for Limits of Liability | | | $ |
| Automobile Physical Damage Insurance (Non-Fleet) ...... ☐ | See Coverage Part for Limits of Liability | | | $ |
| Automobile Physical Damage Insurance (Fleet Automatic). ☐ | | | | $ |

Endorsements and Additional Coverage Parts # 26620 - 26626- 26628 - GU6831 - L9141
(IDENTIFY BY FORM NUMBERS)

††† Policy Period more than one year and the premium is to be paid in installments, premium is payable: On effective date of policy $ _____ and Anniversary $ _____

Total Advance Premium $ _____

Audit Period: Annual, unless otherwise stated.**

| 4. | The named insured is: individual | partnership | corporation | XX |
|---|---|---|---|---|
| | joint venture | other | | |

5. During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:**

**ABSENCE OF AN ENTRY MEANS "NO EXCEPTION".                    † Not applicable in Texas

Countersigned by *Gerard R Kozub*
                                                    *Authorized Representative*

Form D26616 Ed. 10-1-66



**AGRICULTURAL INSURANCE CO.**
**AMERICAN EMPIRE INS. CO.**
of South Omaha

GENERAL LIABILITY SCHEDULE

**CERTIFICATE NO. 1 – DIOCESE OF DULUTH**   General—Automobile Liability Policy No. 3GA **299659**

| DESCRIPTION OF HAZARDS | CODE NO. | PREMIUM BASES | RATES | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | | BODILY INJURY | PROPERTY DAMAGE | BODILY INJURY | PROPERTY DAMAGE |
| **GENERAL LIABILITY HAZARDS** | | | | | | |
| Premises — Operations | | (a) Area (sq. ft.) (b) Frontage (c) Remuneration | (a) Per 100 sq. ft. of Area (b) Per linear ft. (c) Per $100 of Remuneration | | | |
| 215-19 West 4th Street, Duluth, Minn. Buildings or Premises - bank or office N.O.C. | #0122 | 5760' | .881 | .020 | 41.00 | 1.00 |
| Medical | | | | | 6.00 | |
| 826 West Third St., Duluth, Minn. Buildings or Premises - Bank or office - N.O.C. | #0122 | 4750' | .881 | .020 | 51.00 | 1.00 |
| Medical | | | | | 7. | |
| Vacant Land - excluding real estate development property. | #0903 | | .014 | .003 | 2.00 wp. | 1.00 |
| Medical | | | | | incl. | |
| Howard Gnesen Road Cemeteries - including all buildings on the property except private residences. | #0348 | 70 | .817 | .024 | 57.00 | 2.00 |
| Medical | | | | | 8.00 | |
| N½ of NW 1/4 of SE 1/4 of Sec.3, Twsp. 50, N Rge, 14 & the NE 1/4 of SE 1/4 of Sec. 3, Twsp. 50, N., Rge.14,St.Louis County, Minn. - Vacant land in Hartley Field, Duluth. Real Estate Development property. | #0342 | 52 acres | | | | |
| First 10 acres | | | 3.00 | .75 | 30.00 | 8.00 |
| next 15 " | | | 1.53 | .375 | 23.00 | 6.00 |
| next 25 " | | | .765 | .188 | 19.00 | 5.00 |
| next 2 " | | | .408 | .094 | 1.00 | incl. |
| Medical | | | | | 11.00 | |
| 605-611 No.Central Avenue, Duluth,Minn. Youth Center - rated as: Y.M.C.A. and Y.W.C.A. Institutions- excluding automobile schools-excluding goods or products manufactured, sold, handled, or distributed by the named insuredor by others trading under his name after possession of such goods or products has been relinquished to others by the named insured or by others trading under his name. | #0162 | 3150' | 1.102 | .013 | 35.00 n.p. | 3.00 n.p. |
| Medical | | | | | 25.00 n.p. | |
| Swimming Pool | #0332s | 1 | | | 61.00 | 1.00 |
| Medical | | | | | 8.00 | |
| | | | | Total Advance B.I. and P.D. Premiums | | |

Form 26674 Ed. 10-1-66

SCH

GENERAL LIABILITY SCHEDULE

**AGRICULTURAL INSURANCE CO.**
**AMERICAN EMPIRE INS. CO.**
of South Dakota

General—Automobile Liability Policy No. 3GA

| | | | RATES | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| **GENERAL LIABILITY HAZARDS** | | | | | | |
| DESCRIPTION OF HAZARDS | CODE NO. | PREMIUM BASES | BODILY INJURY | PROPERTY DAMAGE | BODILY INJURY | PROPERTY DAMAGE |
| Premises — Operations | | (a) Area (sq. ft.)<br>(b) Frontage<br>(c) Remuneration | (a) Per 100 sq. ft. of Area<br>(b) Per linear ft.<br>(c) Per $100 of Remuneration | | | |
| **Parking lot at rear of Tough Center** | | | | | incl. | incl. |
| **Private Residence N.O.C.** # 0770<br>UMDM Campus | | 1 | | | 6.00 | incl. |
| Medical | | | | | 1.00 | |
| **Parking ramp at rear of the Chancery office** | | | | | incl. | incl. |
| 2215 E. 2nd Street, Duluth, Minnesota<br>Bishop's Residence rated as:<br>Private residences - with incidental<br>office, professional, private school<br>or studio occupancy by an insured. | # 0773b | | | | | |
| | # 0773b | 1 | | | 10.00 | 1.00 |
| Medical | | | | | 1. | |
| Rear of 2215 E. 2nd Street, Duluth, Minn.<br>Caretaker Residence and Garage rated<br>as: Private residence N.O.C. # 0770 | | | | | 6.00 | incl. |
| Medical | | | | | 1.00 | |
| | | | | | 410.00 | 29.00 |
| **AUTOMOBILE** | | | | | | |
| Employers Non-ownership - class I<br>class II | | 4<br>if any | 6.50<br>.221 | 3.00<br>.10 | 26.00 | 12.00 |
| **Total Annual Premium $477.00** | | | | | | |
| | | | | Total Advance B.I. and P.D. Premiums | | |

Form 26674 Ed. 10-1-66

SCH

PREMISES MEDICAL PAYMENTS INSURANCE COVERAGE PART

 **AGRICULTURAL INSURANCE CO.**
**AMERICAN EMPIRE INS. CO.**
at South Dakota

| SCHEDULE | | General—Automobile Liability Policy No. 3GA | |
|---|---|---|---|
| COVERAGE | | | ADVANCE PREMIUM |
| (a) Premises and operations | See attached certificates | | $ |
| (b) Elevators | | | $ |
| (c) Sports activities | | | $ |
| | | Total Advance Premium | $ |

## I. COVERAGE E—PREMISES MEDICAL PAYMENTS

The company will pay to or for each person who sustains **bodily injury** caused by accident all reasonable **medical expense** incurred within one year from the date of the accident on account of such bodily injury, provided such bodily injury arises out of (a) a condition in the **insured premises** or (b) operations with respect to which the **named insured** is afforded coverage for bodily injury liability under this policy.

### Exclusions

This insurance does not apply:

(a) to **bodily injury**

(1) arising out of the ownership, maintenance, operation, use, loading or unloading of any **elevator** unless a premium charge is entered for elevators in the policy with respect to Premises Medical Payments Coverage;

(2) arising out of the ownership, maintenance, operation, use, loading or unloading of

    (i) any **automobile** or aircraft owned or operated by or rented or loaned to the **named insured**, or

    (ii) any other **automobile** or aircraft operated by any person in the course of his employment by the named insured;

but this exclusion does not apply to the parking of an **automobile** on the insured premises, if such automobile is not owned by or rented or loaned to the named insured;

(3) arising out of the ownership, maintenance, operation, use, loading or unloading of any watercraft, if the **bodily injury** occurs away from the **insured premises;** or

(4) arising out of and in the course of the transportation of mobile equipment by an **automobile** owned or operated by or rented or loaned to the named insured;

(b) to **bodily injury**

(1) included within the **completed operations hazard** or the **products hazard;**

(2) arising out of operations performed for the **named insured** by independent contractors other than (i) maintenance and repair of the **insured premises** or (ii) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

(3) resulting from the selling, serving or giving of any alcoholic beverage (i) in violation of any statute, ordinance or regulation, (ii) to a minor, (iii) to a person under the influence of alcohol or (iv) which causes or contributes to the intoxication of any person; but this exclusion (b) (3) applies only if the named insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or is an owner or lessor of premises used for such purposes;

(4) due to war, whether or not declared, civil war, insurrection, rebellion or revolution, or to any act or condition incident to any of the foregoing;

(c) to **bodily injury**

(1) to the named insured, any partner therein, any tenant or other person regularly residing on the **insured premises** or any employee of any of the foregoing if the bodily injury arises out of and in the course of his employment therewith;

(2) to any other tenant if the bodily injury occurs on that part of the **insured premises** rented from the named insured or to any employee of such a tenant

if the **bodily injury** occurs on the tenant's part of the **insured premises** and arises out of and in the course of his employment for the tenant;

(3) to any person while engaged in maintenance and repair of the **insured premises** or alteration, demolition or new construction at such premises;

(4) to any person if any benefits for such **bodily injury** are payable or required to be provided under any workmen's compensation, unemployment compensation or disability benefits law, or under any similar law;

(5) to any person practicing, instructing or participating in any physical training, sport, athletic activity or contest unless a premium charge is entered for sport activities in the policy with respect to Premises Medical Payments Coverage;

(d) to any **medical expense** for services by the **named insured**, any employee thereof or any person or organization under contract to the named insured to provide such services.

## II. LIMITS OF LIABILITY

The limit of liability for Premises Medical Payments Coverage stated in the declarations as applicable to "each person" is the limit of the company's liability for all **medical expense** for **bodily injury** to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the company under Premises Medical Payments Coverage for all **medical expense** for **bodily injury** to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the declarations as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the company shall not be liable for more than the amount of the highest applicable limit of liability.

## III. ADDITIONAL DEFINITIONS

When used in reference to this insurance (including endorsements forming a part of the policy):

"**insured premises**" means all premises owned by or rented to the named insured with respect to which the **named insured** is afforded coverage for **bodily injury** liability under this policy, and includes the ways immediately adjoining on land;

"**medical expense**" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices, and necessary ambulance, hospital, professional nursing and funeral services.

## IV. POLICY PERIOD; TERRITORY

This insurance applies only to accidents which occur during the policy period within the United States of America, its territories or possessions, or Canada.

## V. ADDITIONAL CONDITION

**Medical Reports; Proof and Payment of Claim**

As soon as practicable the injured person or someone on his behalf shall give to the company written proof of claim, under oath if required, and shall, after each request from the company, execute authorization to enable the company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the company when and as often as the company may reasonably require. The company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the company.

PM

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
>
> COMPREHENSIVE GENERAL LIABILITY INSURANCE

EXCLUSION OF MEDICAL PAYMENTS FOR STUDENTS ENDORSEMENT

In consideration of the premium at which this policy is written:

It is understood and agreed that coverage provided by the "Medical Payments Coverage Part" shall not apply to or for pupils of the insured while such pupils are in or upon the school premises:

It is further understood and agreed that the coverage afforded by this policy as respects the insured's school includes (A) the use of bicycles on school business, and (B) the transportation hazard on other vehicles, including watercraft, not owned or hired by or for the insured, any member of the teaching, supervising or administrative staff, officer or employee of the insured:

It is further understood and agreed that no coverage is afforded by this policy for claims due to the rendering of any professional service or omission thereof.

(The Attaching Clause need be completed only when this endorsement is issued subsequent to preparation of the policy.)

LIABILITY

G 304                                                                              L 6141
(Ed. 7-66)

EXCLUSION
(Completed Operations Hazard and Products Hazard)

> This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:
>
> COMPREHENSIVE GENERAL LIABILITY INSURANCE

This endorsement, effective _____ (12:01 A. M., standard time) _____ , forms a part of policy No. _____

issued to

by

_____
Authorized Representative

It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the Completed Operations Hazard or the Products Hazard.



# Exhibit D

COVERAGE IS PROVIDED IN COMPANY CHECKED

[X] AMERICAN EMPIRE INSURANCE COMPANY
[ ] AMERICAN CONTINENTAL INSURANCE COMPANY
[ ] AGRICULTURAL INSURANCE COMPANY

**CASUALTY POLICY**

| Item | DECLARATIONS | POLICY NUMBER 4GA 12 60 79 |
|---|---|---|
| 1. | *Named Insured* | DIOCESE OF DULUTH AND CHURCHES NAMED ON THE CERTIFICATES Duluth, Mn. |

ADDRESS:
(Number & Street, Town, County, State & Zip No.)

| 2. | Policy Period: | 12:01 A.M. STANDARD TIME AT THE ADDRESS OF THE NAMED INSURED AS STATED HEREIN | From: 2-1-73 | To: 2-1-76 |
|---|---|---|---|---|

Agency Code:
Agent or Broker    F. I. Salter Agency Inc.
Office Address    812 Alworth Bldg.
Town and State    Duluth, Mn.   55802

# American Financial IIII insurance group

3. The insurance afforded is only with respect to such of the following Parts designated by an "X" in [X] and Coverages therein as are indicated by specific premium charge or charges. The limit of the company's liability against each such Coverage shall be as stated herein, subject to all the terms of this policy, having reference thereto.

| | | LIMITS OF LIABILITY | | ADVANCE PREMIUM |
|---|---|---|---|---|
| Comprehensive General Liability Insurance .............. [X] | | | | |
| Owners', Landlords' and Tenants' Liability Insurance ....... [ ] | | | | |
| Manufacturers' and Contractors' Liability Insurance ........ [ ] | | | | |
| Contractual Liability Insurance ................. [ ] | | | | |
| Completed Operations and Products Liability Insurance ..... [ ] | EACH OCCURRENCE | | AGGREGATE | $ |
| Bodily Injury Liability | $ 300,000. | | $ 300,000. | $ |
| Property Damage Liability | $ 25,000. | | $ 25,000. | $ |
| | EACH PERSON | | EACH ACCIDENT | |
| Premises Medical Payments Insurance .............. [X] | $ 250. | | $ 10,000. | $ Included |
| | EACH PERSON AGGREGATE | | GENERAL AGGREGATE | |
| Personal Injury Liability Insurance .................. [ ] | $ | | | |
| Comprehensive Personal Insurance .................. [ ] | EACH PERSON | EACH OCCURRENCE | EACH ACCIDENT | |
| Farmer's Comprehensive Personal Insurance ........... [ ] | | | | |
| Personal Liability | XXXXXX | | XXXXXX | |
| Personal Medical Payments | $ | $ XXXXXX | $ | } $ |
| Physical Damage to Property | XXXXXX | | XXXXXX | |
| (Applicable to Farmer's Comprehensive Personal Insurance only) Animal Collision | Market value not exceeding $300 each animal | | | $ |
| Comprehensive Automobile Liability Insurance .......... [X] | EACH PERSON | | EACH OCCURRENCE | |
| Bodily Injury Liability | $ 100,000. | | $ 300,000. | $ Included |
| Property Damage Liability | XXXXXX | | 25,000. | $ Included |
| | EACH PERSON | | EACH ACCIDENT | |
| Automobile Medical Payments Insurance .............. [ ] | $ | | XXXXXX | $ |
| Uninsured Motorists Insurance ................... [ ] | $ | | | $ |
| Garage Insurance ......................... [ ] | See Coverage Part for Limits of Liability | | | $ |
| Automobile Physical Damage Insurance(Non-Fleet) ....... [ ] | } See Coverage Part for Limits of Liability | | | $ |
| Automobile Physical Damage Insurance (Fleet Automatic) .... [ ] | | | | $ |
| Schedule Automobile Liability Insurance .............. [ ] | See Coverage Part for Limits of Liability | | | $ |

| Endorsements and Additional Coverage Parts # | L9259; GU9490, AL9584; L9479 |
|---|---|
| (IDENTIFY BY FORM NUMBERS) | 26674 |

† If Policy Period more than one year and the premium is to be paid in installments, premium is payable: On effective date of policy $ ____ 1st Anniversary $ to be det 2nd Anniversary $ to be determin

Total Advance Premium $ ____

Audit Period: Annual, unless otherwise stated.**

| 4. | The named insured is: individual | ; | partnership | ; | corporation | ; |
|---|---|---|---|---|---|---|
| | joint venture | ; | other | Church | | |

5. During the past three years no insurer has cancelled insurance, issued to the named insured, similar to that afforded hereunder, unless otherwise stated herein:**

** ABSENCE OF AN ENTRY MEANS "NO EXCEPTION".

† Not applicable in Texas

Form D 26786 Ed. 1-1-73
Printed 10-72

Countersigned by *Leonard CKgark*

*Authorized Representative*



General—Automobile Liability Policy No. 3GA

CERTIFICATE NO. 1 - DIOCESE OF DULUTH

| DESCRIPTION OF HAZARDS | CODE NO. | PREMIUM BASES | RATES | | ADVANCE PREMIUM | |
|---|---|---|---|---|---|---|
| | | | BODILY INJURY | PROPERTY DAMAGE | BODILY INJURY | PROPERTY DAMAGE |
| Premises — Operations | | (a) Area (sq. ft.)<br>(b) Frontage<br>(c) Remuneration | (a) Per 100 sq. ft. of Area<br>(b) Per linear ft.<br>(c) Per $100 of Remuneration | | | |
| 215-19 West 4th Street, Duluth, Minn.<br>Buildings or Premises-bank or<br>office N.O.C. | 0122 | 5760' | .964 | .023 | 56.<br>8. | 1. |
| Medical | | | | | | |
| 826 West Third St., Duluth, Minnesota<br>Buildings or Premises-Bank or<br>office N.O.C. | 0122 | 4750' | .964 | .023 | 46.<br>6. | 1. |
| Medical | | | | | | |
| Vacant Land-excluding real estate<br>development property | 0903 | | .016 | .004 | 2. MP<br>Incl. | 1. |
| Medical | | | | | | |
| 1312 Howard Gnesen Road (Calvary)<br>Cemeteries-including all buildings<br>on the property except private<br>residences. | 0348 | .70 | .884 | .028 | 62.<br>8. | 2. |
| Medical | | | | | | |
| N 1/2 of NW 1/4 of SE 1/4 of Sec. 3,<br>Twp 50, N.Rge. 14 & the NE 1/4 of SE<br>1/4 of Sec. 3, Twp. 50, N. Rge.14,<br>St. Louis County, Minn.-Vacant land in<br>Hartley Field, Duluth.<br>Real Estate Development property. | 0342 | 52 acres | | | | |
| First 10 acres | | | 3.321 | .870 | 33. | 9. |
| next 15 acres | | | 1.660 | .435 | 25. | 7. |
| next 25 acres | | | .831 | .218 | 21. | 5. |
| next 2 acres | | | .443 | .109 | 1. | 1. |
| Medical | | | | | 9. | |
| 605-611 No. Central Ave., Duluth, Minn.<br>Youth Center-rated as: Y.M.C.A. and<br>Y.W.C.A. Institutions-excluding auto-<br>mobile schools-excluding goods or<br>products manufactured, sold, handled,<br>or distributed by the named insured or<br>by others trading under his name after<br>possession of such goods or products<br>has been relinquished to others by the<br>named insured or by others trading<br>under his name. | 0162 | 3150' | 1.205 | .015 | 38. | 12. |
| Medical | | | | | 19. | |
| Swimming Pool | 0332s | 1 | | | 68. | 1. |
| Medical | | | | | 8. | |
| | | | | Total Advance B.I. and P.D. Premiums | | |

Form 26674 Ed. 10-1-66

SCH



General—Automobile Liability Policy No. 3GA

| GENERAL LIABILITY HAZARDS | | | | | | |
|---|---|---|---|---|---|---|
| DESCRIPTION OF HAZARDS | CODE NO. | PREMIUM BASES | RATES | | ADVANCE PREMIUM | |
| | | | BODILY INJURY | PROPERTY DAMAGE | BODILY INJURY | PROPERTY DAMAGE |
| Premises — Operations | | (a) Area (sq. ft.)<br>(b) Frontage<br>(c) Remuneration | (a) Per 100 sq. ft. of Area<br>(b) Per linear ft.<br>(c) Per $100 of Remuneration | | | |
| Parking lot at rear of Youth Center | | | | | Incl. | Incl. |
| Private Residence N.O.C.<br>UMDM Campus | 0770 | 1 | 5.944 | .392 | 6. | 1. |
| Medical | | | | | 1. | |
| Parking ramp at rear of the Chancery office | | | | | Incl. | Incl. |
| 2215 E. 2nd Street, Duluth, Minnesota<br>Bishop's Residence rated as:<br>Private residence–with incidental<br>office, professional, private school<br>or studio occupancy by an insured | 0773b | 1 | 10.844 | .783 | 11. | 1. |
| Medical | | | | | 1. | |
| Rear of 2215 E. 2nd Street, Duluth,Minn.<br>Caretaker Residence and Garage rated<br>as: Private residence N.O.C. | 0770 | 1 | 5.944 | .392 | 6. | 1. |
| Medical | | | | | 1. | |
| Products<br>Churches | 7171 | Flat Chg. | 6.025 | 2.475 | 6.<br>442. | 2.<br>45. Total |
| AUTOMOBILE | | | | | | |
| Employers Non-ownership-Class I<br>Class II | | 4<br>If any | 6.705<br>.257 | 3.78<br>.108 | 27. | 11. |
| | | Total Advance B.I. and P.D. Premiums | | | 469. | 56. |

Form 26674 Ed. 10-1-66

SCH

LIABILITY

0618
ISO 0618

L 0478
(Ed. 7-73)

CALCULATION OF PREMIUM—THREE YEAR POLICIES

This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPLETED OPERATIONS AND PRODUCTS LIABILITY INSURANCE
COMPREHENSIVE GENERAL LIABILITY INSURANCE
COMPREHENSIVE PERSONAL INSURANCE
CONTRACTUAL LIABILITY INSURANCE
DRUGGISTS' LIABILITY INSURANCE
ELEVATOR COLLISION INSURANCE
FARMER'S COMPREHENSIVE PERSONAL INSURANCE
MANUFACTURERS' AND CONTRACTORS' LIABILITY INSURANCE
OWNERS' AND CONTRACTORS' PROTECTIVE LIABILITY INSURANCE
OWNERS', LANDLORDS' AND TENANTS' LIABILITY INSURANCE
PREMISES MEDICAL PAYMENTS INSURANCE
STOREKEEPER'S INSURANCE

This endorsement, effective                                        forms a part of policy No.

                                    (12:01 A. M., standard time)

Issued to

by

                                        Authorized Representative

It is agreed that, if the premium for the three year period is not paid in advance, the premium shall be determined on the basis of the rates in effect at the inception of each year of the policy.

99

# Exhibit E

# F. I. SALTER AGENCY, INC.

*"Insurance and Bonds"*

DULUTH, MINN 55802

ALWORTH BUILDING

PROPERTY MANAGEMENT · MORTGAGE LOANS · REAL ESTATE · INSURANCE · BONDS

INSURED — Diocese of Duluth
ADDRESS — 215 West 4th Street
— Duluth, Minnesota 55806

DATE   7/6/73

| EFFECTIVE | COMPANY | POLICY NO. | COVERAGE | TERM | EXPIRATION | PREMIUM |
|---|---|---|---|---|---|---|
| 2/1/73 | Am. Empire | 4GA-126079 (Cert. #1) | Comprehensive General Liability, cancelled 4/24/73 | 3 yrs (1st inst.) | 2/1/74 | $410.00 |

A—123

## CREDIT MEMO

YOUR ACCOUNT HAS BEEN CREDITED FOR THE ABOVE AMOUNT. PLEASE TAKE INTO CONSIDERA-
TION IN THE PAYMENT OF YOUR ACCOUNT. IF YOU WISH CHECK TO BALANCE, KINDLY ADVISE.

## BLANK ENDORSEMENT

IN CONSIDERATION OF THE NET PREMIUM RETURN PREMIUM OF $ _____ 410. IT IS UNDERSTOOD AND AGREED THAT

Certificate # 1 DIOCESE OF DULUTH, is cancelled effective 4-24-73

SUBJECT IN ALL OTHER RESPECTS TO THE LIMITS OF LIABILITY, EXCLUSIONS AND OTHER CONDITIONS OF THE POLICY. ENDORSEMENT NO. 2
ISSUED TO   DIOCESE OF DULUTH & CHURCHES, NAMED ON CERT.
POLICY NO. 4GA 126079   EFFECTIVE DATE _____ Duluth, Mn.
AGENT.   F. I. Salter Agency   COUNTERSIGNED AT _____ Duluth, Mn.
OF THE   American Empire Insurance Company

OF ENDORSEMENT   4-24-73