## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:

Diocese of Duluth,

Debtor-in-Possession.

BKY 15-50792

Chapter 11

Diocese of Duluth,

Plaintiff,

v.

LIBERTY MUTUAL GROUP, a
Massachusetts corporation; CATHOLIC
MUTUAL RELIEF SOCIETY OF
AMERICA, a Nebraska corporation;
FIREMAN'S FUND INSURANCE
COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE
COMPANY, a Wisconsin corporation and
THE CONTINENTAL INSURANCE
COMPANY, an Illinois corporation,

Defendants.

ADV 16-5012

## AFFIDAVIT OF CHRISTIAN PREUS IN SUPPORT OF
## CHURCH MUTUAL'S OPPOSITION TO THE DIOCESE' MOTION
## FOR PARTIAL SUMMARY JUDGMENT

Pursuant to 28 U.S.C. § 1746, I, Christian A. Preus, attorney for Defendant Church

Mutual Insurance Company, declare the following:

1.      I am a shareholder with the law firm of Bassford Remele, P.A., counsel in

the above-captioned matter for Defendant Church Mutual Insurance Company.

2.     I submit this Affidavit in opposition to the Diocese' Motion for Partial Summary Judgment.  Further, I submit this Affidavit consistent with Fed. R. Civ. P. 56(d) and applicable case law, and submit that the Motion for Summary Judgment filed by the Diocese is premature.

3.     On June 24, 2016, Plaintiff, the Diocese of Duluth, commenced suit against Defendants.  (Docket ("Doc.") No. 1.)

4.     On August 25, 2016, before Defendants filed any Answer, the court stayed the adversary proceedings, including any responsive pleadings and all formal discovery. (Doc. No. 5.)

5.      On November 16, 2016, upon the demand of the Diocese of Duluth, the stay was lifted.  (Doc. No. 7.)

6.     On December 2, 2016, the Diocese of Duluth filed an Amended Complaint. (Doc. No. 8.)

7.     On December 19, 2016, before any defendant had filed an Answer, and before a scheduling order was issued, or any discovery had been conducted, the Diocese of Duluth filed a motion for partial summary judgment on the number of occurrences, seeking a declaration that "the number of occurrences corresponds to the number of times a victim was abused limited to one such occurrence per-victim, per-priest, per-policy year."  (Doc. No. 10.)

8.     Church Mutual has not issued any insurance policy to the Diocese of Duluth.

9.    Church Mutual has issued two multi-peril policies to St. Joseph's Catholic Church, Chisholm, Minnesota, a parish within the Diocese of Duluth.  The first insurance policy was in effect from May 14, 1978, to May 14, 1981 ("1978-81 Policy").  The second insurance policy was initially issued for a three-year period on May 14, 1981, and was subsequently cancelled effective date of April 1, 1982 ("1981-82 Policy").  The Diocese is an additional insured under the 1978-81 Policy and the 1981-82 Policy, but only for limited circumstances described in and Additional Insured endorsement.  The policies are attached as Exhibits A and B to this affidavit.

10.    Church Mutual has been put on notice of four claimants (Doe 335, Doe 530, Doe 346, and Doe 322) alleging abuse by a priest assigned to St. Joseph's.  In a September 1, 2016, email to counsel for the Diocese of Duluth, I asked for confirmation that these are the only claims for which the Diocese is seeking coverage from Church Mutual.  I received no response.  See Exhibit C attached hereto.

11.    Because the limited circumstances under which the Diocese could qualify as an additional insured under insurance policies issued to St. Joseph's do not apply to the four claims of which Church Mutual has been put on notice, my September 1, 2016, email also asked the Diocese to explain the basis for its claim for coverage from Church Mutual.  See Exhibit C attached hereto.  Again, I received no response.

12.    Church Mutual has been provided with a Proof of Claim (Proof of Claim Numbers 59, 81, 86, 93) with respect to each of the four claimants (Doe 335, Doe 530, Doe 346, and Doe 322) whose claims appear to be the basis for which the Diocese seeks coverage from Church Mutual.  The Proof of Claims do not describe the legal basis upon

3

which the Diocese is claimed to be liable. Each Proof of Claim provides limited information and uses the word "approximately" to describe the dates of alleged sexual abuse and the age of the claimants. The Proof of Claims also use words such as "numerous" and "at least" to describe the number of alleged sexual abuse events.

13. With respect to one of the claimants, the first alleged abuse occurred approximately five years after the latter Church Mutual policy expired. The Diocese has failed to explain why this claim is being submitted to Church Mutual.

14. Factual discovery is needed in order to fully respond to the Diocese of Duluth's motion for summary judgment on the number of occurrences. This discovery includes inquiry into:

a.    The theories of liability being alleged against the Diocese by the claimants in the bankruptcy proceeding;

b.    The damages alleged by the claimants in the bankruptcy proceeding, and whether claimants allege the damage is caused by any specific act of abuse;

c.    The facts and conditions surrounding each act of alleged abuse, including when the abuse allegedly occurred, the type of abuse being alleged, the location where the abuse allegedly occurred, and the number of times the abuse occurred; and

d.    How the Diocese supervised its priests, including whether the Diocese supervised priests on a district-wide basis, a per-priest basis, or a per-child basis, and how it handled claims of abuse.

15.     This litigation is in its early stages, and the parties have just started to conduct discovery in the case.  Church Mutual intends to serve discovery upon the Diocese in the near future.

16.     The information sought on these issues may only be obtained through discovery and is essential to Church Mutual's ability to defend against the Diocese of Duluth's Motion for Partial Summary Judgment. The information sought is all relevant to whether the claims against the Diocese of Duluth allege a single or multiple "occurrences."

I declare under penalty of perjury that the foregoing is true and correct, to the best of my knowledge, information, and belief.


Date:  February 3, 2017            /e/Christian A. Preus_____
                                   Christian A. Preus (#173617)

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

In re:                                                    BKY 15-50792

     Diocese of Duluth,                               Chapter 11

          Debtor-in-Possession.

---

Diocese of Duluth,                                         ADV 16-5012

     Plaintiff,

v.

LIBERTY MUTUAL GROUP, a
Massachusetts corporation; CATHOLIC
MUTUAL RELIEF SOCIETY OF
AMERICA, a Nebraska corporation;
FIREMAN'S FUND INSURANCE
COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE
COMPANY, a Wisconsin corporation and
THE CONTINENTAL INSURANCE
COMPANY, an Illinois corporation,

     Defendants.

---

### DEFENDANT CHURCH MUTUAL INSURANCE COMPANY'S OPPOSITION TO THE DIOCESE' MOTION FOR PARTIAL SUMMARY JUDGMENT ON NUMBER OF OCCURRENCES

---

### <u>INTRODUCTION</u>

The Diocese of Duluth is not entitled to partial summary judgment on the number

of occurrences.  First, under Fed. R. Civ. P. 56(c)(2), the motion should be denied,

because it is not supported by admissible evidence.  Second, the motion should also be

denied, because it is contrary to Minnesota law, and the arguments directly conflict with the language of the insurance policies issued by Church Mutual.  Finally, under Fed. R. Civ. P. 56(d), the motion should be denied, or consideration of the motion should be deferred, so that the parties can conduct necessary discovery regarding material factual issues raised in the motion.

The Diocese' memorandum in support of its motion for partial summary judgment on the number of occurrences makes reference to insurance policies issued by Fireman's Fund and The Continental Insurance Company; it makes no reference to insurance policies issued by Church Mutual.  As such, it is unclear whether the Diocese' motion is intended to be directed at and apply to the insurance policies issued by Church Mutual. However, as explained below, the Diocese is claiming it is entitled to coverage under insurance policies that Church Mutual issued to a parish within the Diocese.  These policies contain a definition of "occurrence."  Thus, Church Mutual has an interest in the outcome of the Diocese' motion.

## SUMMARY OF FACTUAL BACKGROUND

Church Mutual has not issued any insurance policy to the Diocese of Duluth. (Preus Aff. at ¶8.)  Church Mutual has asked the Diocese for clarification as to why Church Mutual has been named as a defendant in this lawsuit, but the Diocese has not responded.  (*Id.* at ¶¶10-11, Ex. C.)

Church Mutual did insure St. Joseph's Catholic Church, Chisholm, MN, a parish within the Diocese of Duluth, under multi-peril policies in effect from May 14, 1978, to May 14, 1981 ("1978-81 Policy"), and May 14, 1981, to the cancelled effective date of

April 1, 1982 ("1981-82 Policy").  The Diocese is an additional insured under the 1978-81 Policy and the 1981-82 Policy, but only for limited circumstances.  (Preus Aff. at ¶9, Exs. A and B.)

Church Mutual has been put on notice of four claimants (Doe 335, Doe 530, Doe 346, and Doe 322) who are alleging abuse by a priest assigned to St. Joseph's.  (*Id.* at ¶10.)  Church Mutual has attempted to confirm with the Diocese that these are the only claims for which the Diocese is seeking coverage from Church Mutual, but the Diocese has responded.  (*Id.* at ¶10, Ex. C.)  Because the limited circumstances under which the Diocese could qualify as an additional insured under insurance policies issued to St. Joseph's do not apply to these claims, based on information provided, Church Mutual has asked the Diocese to explain the basis for its claim for coverage from Church Mutual. (*Id.* at ¶11.)  Again, the Diocese failed to respond. (*Id.* at ¶11, Ex. C.)

The Diocese filed its Motion for Partial Summary Judgment on the Number of Occurrences on December 19, 2016, before any of the defendant insurers had even filed Answers to the Amended Complaint.  (*Id.* at ¶17; Docket Nos. 10, 14-18.)  Continental Insurance served discovery requests on the Diocese on February 1, 2017.  (Doc. No. 39, Ex. 3, at pg. 16-26.)  Church Mutual intends to serve discovery of its own in the near future.  (*Id.* at ¶15.)

Church Mutual has been provided with a Proof of Claim (Proof of Claim Numbers 59, 81, 86, 93) with respect to each of the four claimants (Doe 335, Doe 530, Doe 346, and Doe 322) whose claims appear to be the basis for which the Diocese seeks coverage from Church Mutual.  (*Id.* at ¶12.)  Each Proof of Claim provides limited information and

uses the word "approximately" when describing dates of alleged sexual abuse and the age of the claimants. (*Id.*) Further, words such as "numerous" and "at least" are used to describe the number of alleged sexual abuse events. (*Id.*)

None of the Proof of Claims described the legal theory upon which the Diocese is claimed to be liable. (*Id.*)

With respect to one of the claimants, the first alleged abuse occurred approximately five years after the latter Church Mutual policy expired. (*Id.* at ¶13.) The Diocese has failed to explain why this claim is being submitted to Church Mutual. (*Id.*)

## INSURANCE POLICY LANGUAGE

Church Mutual issued two multi-peril policies to St. Joseph's Catholic Church, Chisholm, MN, which is a parish within the Diocese of Duluth. Both policies were initially issued for a three-year policy period. The first policy was in effect from May 14, 1978, to May 14, 1981. The second policy was in effect from May 14, 1981, until it was cancelled effective date of April 1, 1982. Both policies define "occurrence" as:

> an accident, including injurious exposure to conditions, which results, during the policy period, in bodily injury or property damage neither expected nor intended from the standpoint of the insured;

(Preus Aff. at ¶9, Exs. A and B.) The "Limits of Liability" section of both policies also provides:

### IV.  LIMITS OF LIABILITY – COVERAGE C

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

4

A.      The limit of liability for Coverage C stated in the Declarations as applicable to "each occurrence" is the total limit of the Company's liability for all damages as the result of any one occurrence ….

B.      Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of all bodily injury or property damage which occurs during each annual period while this policy is in force commencing from its effective date and is described in any of the numbered subparagraphs below shall not exceed the limit of liability stated in the Declarations as "aggregate":

. . . .

…. For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

(Preus Aff. at ¶9, Exs. A and B.)   The Diocese of Duluth is named as an Additional

Insured in the St. Joseph's multi-peril policies.   The Additional Insured coverage form

provides:

It is agreed that with respect to such insurance as is afforded by Section II, Coverage C of the policy:

1. The "Persons Insured" provision is amended to include as an insured the person or organization designated below; but only with respect to the liability arising out of the ownership, maintenance or use of that part of the premises designated below, occupied by the Named Insured, and subject to the following additional exclusions.

This insurance does not apply:

a. to any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;
b. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

Name of Person or Organization: Diocese of Duluth, 215 West Fourth Street, Duluth, Minnesota 55806

(Preus Aff. at ¶9, Exs. A and B.)   The coverage identifies four premises:

5

- Church, Apt., & Parish Hall – 113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota.
- Garage & Boiler Building – 113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota.
- Bell Tower – 113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota.
- Convent – 102 S.W. Fifth St., Chisholm, St. Louis County, Minnesota.

## ARGUMENT

The Diocese' motion for summary judgment should be denied.  It is not supported by admissible evidence, and is contrary to Minnesota law and to the provisions of the 1978-81 Policy and the 1981-82 Policy.  Alternatively, the motion should be denied or consideration of the motion deferred under Fed. R. Civ. P. 56(d).

**I.    The Diocese' motion for summary judgment should be denied, because it is not supported by admissible evidence.**

Federal Rule of Civil Procedure 56(c)(2) provides that a party may object to summary judgment on the basis that "the material cited to support … a fact cannot be presented in a form that would be admissible in evidence."  "[W]hen such an objection is made, the burden is on the proponent of the evidence to show that the material is admissible as presented or to explain the admissible form that is anticipated."  *Gannon Int'l., Ltd. v. Blocker*, 684 F.3d 785, 793 (8th Cir. 2012) (citing Rule 56 advisory committee's note).

The Diocese, in moving for summary judgment at this early stage, relies on superficial assumptions in an effort to avoid examination of the actual facts.  Indeed, the Diocese' motion for summary judgment relies upon multiple assumptions of facts, including facts that yet to be inquired about in discovery or established as undisputed.

6

Attempting to rule on summary judgment at this early stage of the litigation nothing more than superficial assumptions will only lead to confusion later, when assumptions offered by the Diocese are found to include disputed facts or absence of supporting evidence.

For example, the Diocese' motion for summary judgment assumes the underlying claims against it are all premised on negligent supervision. However, the Diocese has not produced evidence that the claims against it are limited to negligent supervision. Indeed, the Diocese cannot provide such evidence at this time, because most of the claimants have only provided proofs of claim, and these proofs of claim do not identify the theories of liability that the claimants may pursue.

Also, the Diocese' central argument is that *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386 (8th Cir. 1996), is no longer controlling precedent on the number of "occurrences." (Diocese Mem. at 7-12.) Key to the Diocese' argument is its unsupported assertion that the claimants against the Diocese are alleging injury that "can be traced to discrete and identifiable events, namely acts of abuse." (Diocese Mem. at 10.) However, many of the individuals making claims against the Diocese allege multiple acts of abuse – not a single act of abuse. And many claimants use vague and general terms such as "approximately" and "at least" to describe when or the number of times the alleged abuse occurred. The claimants have not alleged specific damages attributable to each specific act of abuse. The Diocese has not produced any evidence attributing each specific damage claim to specific acts of discrete and identifiable act of abuse. The Diocese' argument rejecting *Diocese of Winona* is unsupported by any facts, and fails as a matter of law.

7

**II.   The Diocese motion for summary judgment should be denied, because Minnesota courts and Church Mutual's policies consider the *cause* of the bodily injury to determine the number of "occurrences".**

In lieu of reiterating the legal analysis set forth by Fireman's Fund Insurance Company and The Continental Insurance Company as to Minnesota's application of the "cause test" to determine the number of "occurrences"—and why the Diocese' advancement of the "effects test" to determine the number of "occurrences" fails as a matter of law—Church Mutual incorporates herein the legal arguments as contained in the opposition memorandums of these other insurers.

In addition, the Limits of Insurance provision in the 1978-81 Policy and 1981-82 Policy issued by Church Mutual to St. Joseph's uses language that implements the "cause test," providing that the determinative question is whether the alleged bodily injury is "arising out of continuous or repeated exposure to substantially the same general conditions."   If it is, then all bodily injury arises out of a single "occurrence," "[r]egardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage."   The Limits of Insurance provision controls the definition of an "occurrence," and unambiguously provides that—contrary to the Diocese' argument—the number of "occurrences" is <u>not</u> determined on a per-claimant basis – it applies "[r]egardless of the number of … persons … who sustain bodily injury."   The Limits of Insurance provision establishes the "cause test," providing that the determinative question is whether the alleged bodily injury is "arising out of continuous or repeated exposure to substantially the same general conditions."

8

In addition, the Diocese is only an insured under the St. Joseph's policies "with respect to the liability arising out of the ownership, maintenance or use of that part of the premises designated below …."  Therefore, a holding that the Diocese is an additional insured under the St. Joseph's policies necessarily also requires a holding that the alleged abuse arose out of "continuous or repeated exposure to substantially the same general conditions," because the abuse would have had to all arise "out of the ownership, maintenance or use of that part of the [designated] premises."

Further, the Additional Insured provision states that it does not apply to any "occurrence which takes place after the Named Insured ceases to be a tenant in said premises."  Directly connecting the Diocese's status as an insured to an "occurrence" and the Named Insured's continuing status as a tenant of the premises makes the Diocese arguments regarding the number of occurrences untenable with respect to the insurance policies issued by Church Mutual.  The Diocese's proposed method for calculating the number of occurrences fails to consider the Additional Insured provision in the policies issued by Church Mutual.

III.   **The claims against the Diocese allege a single "occurrence," not a single "occurrence" each year.**

Both policies issued by Church Mutual to St. Joseph's were initially issued for a three-year policy period.  The first policy was in effect from May 14, 1978, to May 14, 1981.  The second policy was initially in effect from May 14, 1981, to May 14, 1984, but was to the cancelled effective April 1, 1982.

9

Based on the unambiguous "Limits of Insurance" language in the policies, as analyzed above, all bodily injury "arising out of continuous or repeated exposure to substantially the same general conditions" is a single "occurrence."  This definition of "occurrence" does not limit itself to applying to a specific policy year or policy period.  Rather, a single "occurrence" limit applies regardless of whether the "occurrence" extends over one or more years and/or one or both policy periods of the policies issued by Church Mutual.  Nothing in the language of either policy can reasonably justify imposing a separate "each occurrence" limit of insurance for every year.

Even viewing the Diocese' arguments without consideration of the controlling insurance policy language, a review of the case law on which the Diocese relies contradicts the Diocese' argument that an "occurrence" limit applies to each year of a multi-year policy.  (Diocese Mem. at 13-16.)  To the contrary, these cases hold a single "occurrence" limit applies to each policy *period*, not to each policy *year*.

In *Interstate Fire & Cas. Co. v. Archdiocese of Portland in Oregon*, the Ninth Circuit held that claims of sexual molestation allege a single "occurrence" during each policy period, and not each policy year, in which they occur.  35 F.3d 1325, 1329 (9th Cir. 1994).  The court noted that "[i]nsurers charge different rates for policies with different applicable policy periods precisely because the extent of the risk varies with the duration of the policy."  *Id.*  The Ninth Circuit relied on *Soc'y of the Roman Catholic Church v. Interstate Fire & Cas. Co.*, 26 F.3d 1359, 1366 (5th Cir. 1994).  In that case, when determining allocation, one insurer that had issued a one-year policy argued that the insurers that issued "three-year policies should bear the same burden as if they had issued

10

three one-year policies, thus allocating the loss on a per year basis." The court rejected

this argument as ignoring the language of the policy and violating the intent of the

parties. It noted that "[c]learly, a three-year 'occurrence' policy provides less coverage

than three one-year policies, because an occurrence could last longer than one year." *See

also W. World Ins. Co. v. Lula Belle Stewart Ctr., Inc.*, 473 F. Supp. 2d 776, 782-83 (E.D.

Mich. 2007) (same); *CSX Trans., Inc. v. Commercial Union Ins. Co.*, 82 F.3d 478, 483

(D.C. Cir. 1996) ("The coverage limitation is devoid of any language suggesting that

'each occurrence' should be read as 'each occurrence each year.'"); *Goodyear Tire &

Rubber Co. v. Hartford Accident & Indem. Co.*, No. 97-933, 2005 U.S. Dist. LEXIS

48834, at \*24-28 (W.D. Pa. Mar. 11, 2005) (policy provided coverage on an "each

occurrence" basis, not an "each occurrence, each year" basis).

   The "Limits of Insurance" language in the 1978-81 Policy and the 1981-82 Policy

controls the definition of "occurrence," and provides that all bodily injury "arising out of

continuous or repeated exposure to substantially the same general conditions" is a single

"occurrence." The policies provide coverage on an "each occurrence" basis – not an

"each occurrence, each year" basis. Therefore, applying the "Limits of Insurance"

provision, if the alleged bodily injury is "arising out of continuous or repeated exposure

to substantially the same general conditions," then a single "occurrence" limit applies

regardless of the duration of the "occurrence." Further, even if more than one

"occurrence" is alleged, the "occurrence" limit applies to each policy period, not to each

year of each policy period. The Diocese's request for a ruling as a matter of law that the

each occurrence limit applies to each year of a multi-year policy is unsupported, and

should be rejected, and the Diocese motion denied.

## IV.   **The Diocese' motion for summary judgment should be denied, because it is premature and deprives Defendants of a fair chance to oppose it.**

Summary judgment is proper "'only after the nonmovant has had adequate time

for discovery.'" *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 530 (8th Cir.

1999). Further, summary judgment should be denied where a failure to allow discovery

deprives a party of a fair chance to respond to the motion. *Palmer v. Tracor, Inc.*, 856

F.2d 1131 (8th Cir. 1988). Federal Rule of Civil Procedure 56(d) provides:

> (d)    WHEN FACTS ARE UNAVAILABLE TO THE NONMOVANT. If a
> nonmovant shows by affidavit or declaration that, for specified
> reasons, it cannot present facts essential to justify its opposition, the
> court may:
>
> (1)    defer considering the motion or deny it;
> (2)    allow time to obtain affidavits or declarations or to take
> discovery; or
> (3)    issue any other appropriate order.

"[A]s a general matter, motions for additional discovery should be granted if the party

seeking additional discovery (i) requested extended discovery prior to the court's ruling

on summary judgment; (ii) placed the district court on notice that further discovery

pertaining to the summary judgment motion was being sought; and (iii) demonstrated to

the district court with reasonable specificity how the requested discovery pertained to the

pending motion." *PNY Techs. Inc. v. Polaroid Corp. (In re Polaroid Corp.)*, 527 B.R.

335, 347 (D. Minn. 2015) (citing *CenTra, Inc. v. Estrin*, 538 F.3d 402, 420 (6th Cir.

2008) ("Typically, when the parties have no opportunity for discovery, denying the Rule

56([d]) motion and ruling on a summary judgment motion is likely to be an abuse of discretion."); *Thomason v. Amalgamated Local No. 863*, 438 F. App'x 358, 361 (6th Cir. 2011) (finding that where "the district court permitted no discovery whatsoever" the factors relevant to granting a Rule 56(d) motion largely weighed in the nonmoving party's favor)).

The Diocese filed its motion for summary judgment before any of the defendant insurers had even filed an Answer. (Preus Aff. at ¶7; Docket Nos. 10, 14-18.) Discovery is necessary in order to respond to the Diocese's arguments for summary judgment on the number of occurrences, and the parties have just started to conduct discovery. (*Id.* at ¶15-16.) On February 1, 2017, Continental served discovery requests on the diocese. (Doc. No. 39, Jones Decl., Ex. A.) These initial discovery requests seek documents and information that are necessary to a full and fair consideration of this motion. Church Mutual also intends to serve discovery of its own in the near future. (Preus Aff. at ¶15.)

Also, the "Limits of Liability" section in the 1978-81 Policy and 1981-82 Policy defines a single "occurrence" to include "all bodily injury … arising out of continuous or repeated exposure to substantially the same general conditions." This definition applies "[r]egardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage…." The policy's definition of "occurrence" thus necessitates discovery into the facts and conditions surrounding each act of alleged abuse to determine if the abuse is one or more than one "occurrence." This includes discovery into the details of abuse being alleged, including when the abuse occurred, the

13

circumstances of the abuse, the location of the abuse (in order to determine whether the

Diocese could qualify as an additional insured under insurance policies issued by Church

Mutual to St. Joseph's), the nature of the abuse, the number of times the abuse allegedly

occurred, and the legal theories upon which the Diocese is claimed to be liable.

Discovery also is necessary to determine how the Diocese' supervised priests within the

Diocese, including whether the Diocese supervised priests on a district-wide basis, a per-

priest basis, or a per-child basis.   Only after this discovery is completed, can the

determination be made of whether the claimants are alleging more than one "occurrence."

## CONCLUSION

The Diocese Motion for Summary Judgment should be denied.  The motion is not

supported by admissible evidence, and is contrary to Minnesota law, and to the

provisions of any insurance policy issued by Church Mutual.  Alternatively, under Fed.

R. Civ. P. 56(d), the motion should be denied or deferred pending necessary discovery.

**BASSFORD REMELE**
*A Professional Association*

Date:  February 3, 2017          /e/Christian A. Preus                           
                                 Christian A. Preus (#173617)
                                 Beth A. Jenson Prouty (#389275)
                                 100 South 5th Street, Suite 1500
                                 Minneapolis, MN 55402-1254
                                 Telephone:   (612) 333-3000
                                 Facsimile:    (612) 333-8829

                                 Attorneys for Defendant Church Mutual Insurance
                                 Company

14



Listening. Learning. Leading.®

**CERTIFICATION**

MAY 24, 2016

INSURED:
ST. JOSEPH'S CATHOLIC CHURCH
113 S.W. FOURTH STREET
CHISHOLM, MINNESOTA 56719

RE:     POLICY NUMBER 036211-02-210535

THIS IS TO CERTIFY THAT THE POLICY OF INSURANCE ATTACHED HERETO IS A TRUE COPY OF THE
POLICY OF INSURANCE ISSUED TO THE NAMED INSURED.

ROBERT M. BUCKLEY, CPCU, AAI, ARM, CIC
VICE PRESIDENT - UNDERWRITING
CHURCH MUTUAL INSURANCE COMPANY

EXHIBIT A

3000 Schuster Lane, P.O. Box 357, Merrill, WI 54452-0357  |  715.536.5577  800.554.2642  fax: 715.539.4650  |  www.churchmutual.com

National Customer Service Center: P.O. Box 505, Merrill, WI 54452-0505  800.554.2642  toll-free fax: 855.264.2329
Claims: P.O. Box 342, Merrill, WI 54452-0342  800.554.2642  fax: 715.539.4651

POLICY CANCELLATION & NON-RENEWAL TRANSACTION

204 MAY 1 1982

End. No. _____    Agent No. 91-093   Policy No. 83-310335
Effective Date _____ 4-1-82 _____    Trans. _____ Comm. _____    ☒ Policy Cancelled
                                                                   ☐ Policy Not Renewed

REASON FOR CANCELLATION OR NON-RENEWAL
☒ 1. Competition
☐ 2. Non Payment
☐ 3. Underwriting
☐ 4. Property Sold, Disbanded, Merged, etc.
☐ 5. Re Written
☐ 6. All Others (Indicate specific reason)

| Term | Exp. Mo. | Yr. |
|------|----------|-----|
| 1 | 5 | 82/83 |

| ACCOUNTING INSTRUCTIONS | | | | TOTAL RETURN Amount | Reinsurance - Actual Premiums | | | |
|---|---|---|---|---|---|---|---|---|
| Policy # | Trans. | Amount | | 82-93 | | | | |
| NT | | | | | N | -383.500 | | -280 |
| CR. A/R | | | | | N | | | |
| CR. A/R | | | | | N | | | 30 |
| CR. PMT. PLAN | | | | | | Reinsurance - Original Premiums | | |
| CK | | TOTAL | 305.00 | 3674.00 | N | | | |
| Premium Payment or Finance Plan Cancelled ☐ | | 72x90 | .118 | | | | | |
| Agents Memo ☐ | | 93drya | | 10090 | | | | -260 |
| | | TOTAL ORIG. PREM. | 3674.90 | 3894 | DENOM. | T | STATE-TERR. | CITY | DEV. | VAR. |

| | DENOM. | T | STATE-TERR. | CITY | DEV. | VAR. |
|---|---|---|---|---|---|---|
| Line-Peril | Class | Premium | Orig. Prem. | Limit | Exposure | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Pol. to Assured ( ) Pol. to Mtgee. ( )
Memo & Inv. to Assured ( )
All to _____
Memo to _____
Daily to _____
Invoice to Mtgee. ( )
FM: ACCT. 123 Rev. 3-72   P.W. 5-6-82         OVER

EXHIBIT A

Policy No.   036211-02-210535

# Church Mutual Insurance Company
3000 Schuster Lane, Merrill, Wis. 54452

## DECLARATIONS

## MULTI-PERIL POLICY

Mutual Company
Nonassessable Policy

CHURCH MUTUAL
INSURANCE COMPANY
Merrill Wisconsin

**Item 1.** Named Insured and Mailing Address:
St. Joseph's Catholic Church
113 S.W. Fourth Street
Chisholm, MN  56719

**Item 2.** Policy Period:
From   May 14, 1981   To   May 14, 1984
12:01 A. M. Standard Time at location of designated premises.

036211-02-059037
(Renewal of Policy No.)

**Item 3.** The Named Insured is:   ☐ Individual  ☐ Partnership  ☒ Corporation  ☐ Joint Venture  ☐ Other:

**Item 4.** Location and Description of premises: (See schedule(s) attached).

**Item 5.** In consideration of the premium, insurance is provided the Named Insured with respect to those premises described in the attached schedule(s) and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof:

| SECTION I PROPERTY COVERAGE | Building(s) | Personal Property of the Insured | Coinsurance Applicable | DEDUCTIBLE | |
|---|---|---|---|---|---|
| | | | | each occurrence | aggregate each occurrence |
| Limit of Liability | $ 2,238,115. | $ 42,000. | 90 % | $ | $ |
| Coverage (Specify) M 102(5-80)   All Risk (With Unltd. Glass) | | | | If no deductible stated above, the deductible shall be $100 each occurrence | $500 aggregate each occurrence |

| SECTION II LIABILITY COVERAGE | Personal Injury and Property Damage Liability Combined Single Limit | | Medical Payments | | Applicable to Section II only:  The Declarations as completed herein and on the attached schedules; if any, describe all hazards insured hereunder known to exist at the effective date of this policy. |
|---|---|---|---|---|---|
| | each occurrence | aggregate | each person | each accident | |
| Limit of Liability | $ 300,000. | $ 300,000. | $ 2,000. | $ 10,000. | |
| Coverage (Specify) M 200(5-78)   Liability and Medical Payments | | | | | |

| SECTION III CRIME & FIDELITY COVERAGE | Limit of Liability | Crime | Fidelity |
|---|---|---|---|
| | $ | 8,000. | $ |
| Coverage (Specify) M 300(1-80)   Church Theft | | | |

| SECTION IV AUTO COVERAGE | Bodily Injury and Property Damage Liability Combined Single Limit | | Medical Payments | |
|---|---|---|---|---|
| Limit of Liability (Non-Owned Auto only) | each occurrence | aggregate | each person | each accident |
| | $ 300,000. | $ 300,000. | $ | $ |
| Additional Cov. (Specify) M 401(5-78)   Employers Non-Ownership Auto Liab. | | | | |

**Item 6.** Basic Forms and Endorsements made a part of this Policy at time of issue: M 500(5-78), M 501(5-78), M 502(5-78), M 503(5-78), M 504(5-78), M 612(5-79), M 613(5-79), M 506(5-78)

**Item 7.** Mortgagee(s):

**Item 8.** The Total Advance Premium is: $  8,374.  , and is payable $  8,374.  at inception, and at each anniversary.

Agency at:   Minneapolis, MN   MAY 13 1981
nk
Authorized Representative          Countersignature Date

2   M 503 (6-78) DECLARATIONS -- HOME OFFICE COPY

EXHIBIT A

## MULTI-PERIL INSTITUTIONAL FORM
### SECTION II -- LIABILITY COVERAGE

### I. COVERAGE C -- PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

#### EXCLUSIONS

This insurance does not apply:

1. To liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner.

2. To personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
   a. any snowmobile owned or operated by or rented or loaned to any insured, or
   b. any automobile or aircraft owned or operated by or rented or loaned to any insured, or
   c. any other automobile or aircraft operated by any person in the course of his employment by any insured;
   but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the Named Insured or ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured.

3. To personal injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated or rented or loaned to any insured.

4. To personal injury or property damage arising out of the ownership, maintenance, operation, use, loading, or unloading of any watercraft, if the bodily injury or property damage occurs away from premises owned by, rented to or controlled by the Named Insured; but this exclusion does not apply to personal injury or property

damage included within the products hazard or the completed operations hazard or resulting from operations performed for the Named Insured by independent contractors or to liability assumed by the insured under an incidental contract.

5. To bodily injury or property damage for which the insured or his indemnitee may be held liable
   a. as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or
   b. if not so engaged, as an owner or lessor of premises used for such purposes,
   if such liability is imposed
   (1) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
   (2) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
   but part (2) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in b. above.

6. To any obligation for which the insured or any carrier as his insurer may be held liable under any Workers' Compensation, unemployment compensation or disability benefits law, or under any similar law.

7. To personal injury to any employee of the insured arising out of and in the course of his employment by the insured; but this exclusion does not apply to liability assumed by the insured under an incidental contract.

8. To personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.

9. To personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured.

10. To personal injury arising out of any publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy if the first injurious publications or utterance of the name or similar material by or on behalf of the Named Insured was made prior to the effective date of this insurance.

EXHIBIT A

11. To personal injury arising out of a publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or utterance in violation of an individual's right of privacy concerning any person, organization or business enterprise or his or its products or services made by or at the direction of any insured with knowledge of the falsity thereof.

12. To property damage to:
    a. property owned or occupied by or rented to the insured;
    b. property used by the insured, or
    c. property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

    but parts b. and c. of this exclusion do not apply with respect to liability under a written sidetrack agreement and part c. of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of elevators at premises owned by, rented to or controlled by the Named Insured.

13. To property damage to premises alienated by the Named Insured arising out of such premises or any part thereof.

14. To personal injury or property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purpose intended by the Named Insured, if such failure is due to a mistake or deficiency

in any design, formula, plan, specifications or advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to personal injury or property damage resulting from the active malfunctioning of such products or work.

15. To property damage to the Named Insured's products arising out of such products or any part of such products.

16. To property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

17. To damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work forms a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

18. To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

1. If the Named Insured is designated in the Declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor.

2. If the Named Insured is designated in the Declarations as a partnership or a joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such.

3. If the Named Insured is designated in the Declarations as other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director, fiduciary or stockholder thereof while acting within the scope of his duties as such.

4. If the Named Insured is a religious or educational

institution:
    a. any elder, deacon, vestryman, councilman, clergyman, or any member of the Board of Trustees, governors or Board of Education, but only while acting within the scope of his duties as such; and
    b. any organization controlled by the Named Insured; and
    c. any other member of the Named Insured but only while acting on behalf of the Named Insured.

5. Any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured.

6. With respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,
    a. an employee of the Named Insured while operating any such equipment in the course of his employment, and

EXHIBIT A

b. any other person while operating with the permission of the Named Insured any such equipment registered in the name of the Named Insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization; provided that no person or organization shall be an insured under this paragraph 6. with respect to:

(1)personal injury to any fellow employee of such person

injured in the course of his employment, or

(2)property damage to property owned by, rented to, in charge of or occupied by the Named Insured or the employer of any person described in subparagraph b. This insurance does not apply to personal injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a Named Insured.

## III. SUPPLEMENTARY PAYMENTS

Except with respect to paragraph 6., the Company will pay, in addition to the applicable limit of liability:

1. All expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon.

2. Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds.

3. Expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies, except for injuries sustained by any person while practicing for, instructing for or participating in any "regularly scheduled athletic contest" as defined in paragraph VII 1. b. additional definitions.

4. Reasonable expenses incurred by the insured at the Company's request, including actual loss of wages or salary (but not loss of other income) not to exceed $50 per day because of his attendance at hearings or trials at such request.

5. For loss to property of others, not to exceed $250., caused by persons participating in an organized activity of the Named Insured. Loss shall mean damage or destruction, but does not include disappearance, wrongful abstraction or loss of use. This insurance does not apply:
   a. if insurance is otherwise provided in Section I of this

policy; or

b. if the loss is covered by any other insurance of the Named Insured or by any insurance of such person who causes such loss.

6. For a loss not to exceed $100,000 to structures or portions thereof, to which the insured shall become legally obligated to pay as damages because of injury to or destruction of such property, including the loss of use thereof, arising out of the perils of fire, lightning, windstorm and hail, explosion, sudden and accidental damage from smoke, vehicles or aircraft, riot, riot attending a strike and civil commotion, damage by burglars and sonic boom.
   a. All of the exclusions of the policy other than the Nuclear Energy Liability Exclusion are deleted and replaced by the following.
      (1)This insurance does not apply:
         (a)to liability assumed by the insured under any contract or agreement; or
         (b)if insurance is provided in Section I of this policy; or
         (c)to any claim or judgment or the defense of any suit where the applicable limit of the Company's liability has been exhausted by payment of judgment or settlement.
   b. The fire legal liability coverage - real property shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof), available to the insured, such as but not limited to, fire, extended coverage, builders' risk coverage or installation risk coverage, and the other insurance condition of the policy is amended accordingly.
   c. This coverage shall cease 180 days from the date the structure or portion thereof was rented, leased or occupied by the Named Insured or on the date reported to the Company, whichever occurs first. Additional premium for this coverage shall be due and payable for such exposure so reported, computed from the date the exposure began.
   d. This insurance shall not be in addition to the limit of liability as stated in the Declarations of this policy.

EXHIBIT A

## IV. LIMITS OF LIABILITY — COVERAGE C

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain personal injury or property damage, or (3) claims made or suits brought on account of personal injury or property damage, the Company's liability is limited as follows:

1. The limit of liability for Coverage C stated in the Declarations as applicable to "each occurrence" is the total limit of the Company's liability for all damages as a result of any one occurrence provided that with respect to any occurrence for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility under the provisions of the Motor Vehicle Financial Responsibility Law of any state or province such limit of liability shall be applied to provide the separate limits required by such law for personal injury liability and property damage liability to the extent of the coverage required by such law, but the separate application of such limit shall not increase the total limit of the Company's liability.

2. Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of all personal injury and property damage which occurs during each annual period while this policy is in force commencing from its effective date and is described in any of the numbered subparagraphs below shall not exceed the limit of liability stated in the Declarations as "aggregate":

   a. all property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including prop-

erty damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph b. below;

   b. all property damage arising out of and occurring in the course of operations performed for the Named Insured by independent contractors and general supervision thereof by the Named Insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph b. does not include property damage arising out of maintenance or repairs at premises owned by or rented to the Named Insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

   c. all personal injury and property damage included within the completed operations hazard and all personal injury and property damage included within the products hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraph a. and b. and separately with respect to each project away from the insured premises. Such aggregate limit shall apply separately to the personal injury and property damage described in subparagraph c. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## V. COVERAGE D — MEDICAL PAYMENTS

The Company will pay to or for each person who sustains personal injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such personal injury, provided such personal injury arises out of:

1. a condition in the insured's premises; or
2. operations with respect to which the Named Insured is afforded coverage for Personal Injury Liability under this policy.

### EXCLUSIONS

This insurance does not apply:

1. To personal injury
   a. arising out of the ownership, maintenance, operation, use, loading or unloading of
      (1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or

   (2) any other automobile or aircraft operated by any person in the course of his employment by any insured,

but this exclusion does not apply to the parking of an automobile on the insured premises if such automobile is not owned by or rented or loaned to any insured;
   b. arising out of the ownership, maintenance, operation, use, loading, or unloading of any watercraft, if the personal injury occurs away from the insured premises,
   c. arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to any insured, or
   d. any snowmobile owned or operated by or rented or loaned to any insured.

2. To personal injury
   a. included within the completed operations hazard or the products hazard;

EXHIBIT A

b. arising out of operations performed for the Named Insured by independent contractors other than (1)maintenance and repair of the insured premises or (2)structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

c. resulting from the selling or giving of any alcoholic beverage

(1)in violation of any statute, ordinance or regulation,
(2)to a person under the influence of alcohol or
(3)which causes or contributes to the intoxication of any person, but this exclusion 2. c. applies only if the Named Insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or is an owner or lessor of premises used for such purposes.

3. To personal injury

a. to the Named Insured, any partner therein, any tenant or other person regularly residing on the insured premises or any employee of the foregoing if the personal injury arises out of and in the course of his employment therewith;

b. to any other tenant if the personal injury occurs on that part of the insured premises rented from the Named Insured or to any employee of such a tenant if the personal injury occurs on the tenant's part of the insured premises and arises out of and in the course of his employment for the tenant;

c. to any person if any benefits for such personal injury are payable or required to be provided under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law;

d. to any person, except volunteer workers, while engaged in maintenance and repair of the insured premises or alteration, demolition or new construction at such premises;

e. to any person practicing for, instructing for or participating in any regularly scheduled athletic contest.

4. To any medical expense for services by the Named Insured, any employee thereof or any person or organization under contract to the Named Insured to provide such services.

## VI. LIMITS OF LIABILITY — COVERAGE D

The limit of liability for Coverage D stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all medical expenses for personal injury to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the Company under Medical Payments Coverage for all medical expense for bodily injury to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the Declarations as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the Company shall not be liable for more than the amount of the highest applicable limit of liability.

## VII. ADDITIONAL DEFINITIONS

1. When used in reference to Coverage D:

a. "insured premises" means all premises owned by or rented to the Named Insured with respect to which the Named Insured is afforded coverage for bodily injury liability under Coverage C — liability of this policy, and includes the ways immediately adjoining on land.

b. "regularly scheduled athletic contest" is one sponsored, organized, managed, or controlled by or on behalf of the insured or on the premises of the insured on a prescheduled basis, and shall include organization, sponsorship, management or control of teams engaged, on a regular competitive basis, in the following sports, to wit:  football, baseball, basketball, softball, hockey, la crosse, soccer, curling, wrestling, boxing and volleyball.

EXHIBIT A

## CONDITIONS AND DEFINITIONS APPLICABLE TO SECTION II AND IV

### 1. POLICY PERIOD, TERRITORY

Section II and IV of this policy applies only to bodily injury, personal injury and property damage which occurs during the policy period within the policy territory; "Policy territory" means:

a. The United States of America, its territories or possessions, or Canada, or

b. International waters or air space provided the personal injury does not occur in the course of travel or transportation to or from any other country, state or nation, or

c. Anywhere in the world with respect to damages because of personal injury arising out of a product which was sold for use or consumption within the territory described in Subparagraph a. above, provided the original suit for such damages is brought within such territory.

### 2. FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for personal injury liability or property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

### 3. THE INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

a. In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable. The Named Insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

b. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

c. The insured shall cooperate with the Company and, upon the Company's request, assist in making settlements, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of personal injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining evidence and obtaining the attendance of witnesses. The insured shall not, accept at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

### 4. ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.

Any person, organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the insured to determine the insured's liability, nor shall the Company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estates shall not relieve the Company of any of its obligations hereunder.

### 5. MEDICAL REPORTS: PROOF AND PAYMENT OF CLAIM — COVERAGE D

As soon as practicable, the injured person or someone on his behalf shall give to the Company written proof of claim, for medical expense, under oath if required, and shall, after each request from the Company, execute authorization to enable the Company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the Company when and as often as the Company may reasonably require. The Company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the Company.

EXHIBIT A

## 6. OTHER INSURANCE

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance. When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

a. **CONTRIBUTION BY EQUAL SHARES.**   If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the losses paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

b. **CONTRIBUTION BY LIMIT.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss. This provision does not apply to any medical expense insurance afforded by the policy.

## 7. NUCLEAR EXCLUSION

This policy does not apply:

a. Under any liability coverage, to personal injury or property damage

  (1) with respect to which an insured under this policy is also an insured under a Nuclear Energy Liability Policy issued by a Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;or

  (2) resulting from the hazardous properties of nuclear material and with respect to which

    (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

    (b) the insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

b. Under any medical payments coverage, or under any supplementary payments provision relating to first aid, to expenses incurred with respect to personal injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

c. Under any liability coverage to personal injury or property damage resulting from the hazardous properties of nuclear material, if

  (1) the nuclear material

    (a) is that any nuclear facility owned by, or operated by or on behalf of, an insured, or

    (b) has been discharged or dispersed therefrom;

  (2) the nuclear material is contained in spent fuel or waste at any time, possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

  (3) the personal injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

d. As used in this exclusion **"hazardous properties"** include radioactive, toxic or explosive properties; **"nuclear material"** means source material, special nuclear material or by-product material; **"source material", "special nuclear material" and "by-product material"** have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; **"spent fuel"** means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; **"waste"** means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (1) or (2) thereof; **"nuclear facility"** means

  (1) any nuclear reactor,

  (2) any equipment or device designed or used for
    (a) separating the isotopes of uranium or plutonium,

    (b) processing or utilizing spent fuel, or

    (c) handling, processing or packaging waste,

### EXHIBIT A

(3)any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(4)any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing

is located, all operations conducted on such site and all premises used for such operations; **"nuclear reactor"** means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; **"property damage"** includes all forms of radioactive contamination of property.

## 8. ANNUAL AGGREGATE

If this policy is issued for a period in excess of one year, any limit of the Company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period.

## DEFINITIONS APPLICABLE TO SECTION II AND IV

When used in the Conditions Applicable To Section II and IV of this policy (including endorsements forming a part hereof):

1. **"Automobile"** means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment.

2. **"Personal injury"** means

   a. Bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom and loss of services resulting from bodily injury or if arising out of bodily injury, mental anguish.

   b. It also includes injury arising out of one or more of the following offenses:

      Group A — False arrest, detention or imprisonment, or malicious prosecution.

      Group B — The publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publication or utterance in the course of or related to advertising, broadcasting, publishing, or telecasting activities conducted by or on behalf of the Named Insured;

      Group C — Wrongful entry or eviction, or other invasion of the right of private occupancy.

3. **"Completed operations hazard"** means personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. **"Operations"** include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

   a. when all operations to be performed by or on behalf of the Named Insured under the contract have been completed;

   b. when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

   c. when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principle as part of the same project.

   Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

   The completed operation hazard does not include personal injury or property damage arising out of:

   a. operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

   b. the existence of tools, uninstalled equipment or abandoned or unused materials, or

   c. operations for which the classifications stated in the policy or in the Company's manual specifies "including completed operations".

4. **"Elevator"** means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

EXHIBIT A

5. "**Incidental contract**" means any written
   a. lease of premises,
   b. easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad,
   c. undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality,
   d. sidetrack agreement, or
   e. elevator maintenance agreement.

6. "**Insured**" means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the Company.

7. "**Mobile equipment**" means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled,
   a. not subject to motor vehicle registration, or
   b. maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining, or
   c. designed for use principally off public roads, or
   d. designed or maintained for the sole purpose of affording mobility to equipment of the following types, forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers, and drills; concrete mixers (other than the mix and transit type): graters, scrapers, rollers and other road construction or repair equipment; air compressors, pumps and generators, including spraying, welding and building cleaning equipment; geophysical exploration and well-servicing equipment.

8. "**Named Insured**" means the person or organization named in Item 1 of the Declarations of this policy.

9. "**Named Insured's products**" means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but, "**Named Insured's products**" shall not include a vending machine or any property other than such container rented to or located for use of others, but not sold.

10. "**Occurrence**" means an accident, including continuous or repeated exposure to conditions which result in personal injury or property damage neither expected nor intended from the standpoint of the insured.

11. "**Products hazard**" includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury and property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

12. "**Insured premises**" means
    a. the premises designated in the Declarations,
    b. premises alienated by the Named Insured (other than premises constructed for sale by the Named Insured), if possession has been relinquished to others,
    c. premises as to which the Named Insured acquires ownership or control; and includes the ways immediately adjoining such premises on land.

13. "**Medical expenses**" means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services.

14. "**Property damage**" means physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom or loss of use of tangible property which has been physically injured or damaged provided such loss of use is caused by an occurrence during the policy period.

15. "**Damages**" includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

16. "**Bodily injury**" means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

EXHIBIT A

Attached to and forming part of Policy No. 036211-02-210535 of the Church Mutual Insurance Company.

## NAMED INSUREDS – SECTION I
### (Designated Premises Only)

It is agreed that with respect to such coverage as is afforded by Section I of the policy, the Named Insured is amended to read as follows for the premises designated below:

Named Insured: "NOT APPLICABLE"

_____ as their interests may appear.

| Location No. | Bldg. No. | Location of Premises |
|---|---|---|
| | | |

## ADDITIONAL INSUREDS – SECTION II
### (Designated Premises Only)

It is agreed that with respect to such insurance as is afforded by Section II, Coverage C of the policy:

1. The "Persons Insured" provision is amended to include as an insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below, occupied by the Named Insured, and subject to the following additional exclusions.

The insurance does not apply:

a. to any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

b. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below:

Name of Person or Organization: Diocese of Duluth, 215 West Fourth Street, Duluth, Minnesota 55806

| Location No. | Bldg. No. | Location of Premises |
|---|---|---|
| 1 | 1 | Church, Apartment, & Parish Hall:  113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota |
| 1 | 2 | Garage & Boiler Building:  113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota |
| 1 | 3 | Bell Tower:  113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota |
| 1 | 4 | Convent:  102 S.W. Fifth Street, Chisholm, St. Louis County, Minnesota |

All other provisions and conditions of the policy remain unchanged.

M 506  (5-78)  ADDITIONAL INSUREDS

PAGE 1 OF 1

EXHIBIT A



Listening. | Learning. | Leading.®

**CERTIFICATION**

MAY 24, 2016

INSURED:
ST. JOSEPH'S CATHOLIC CHURCH
113 S.W. FOURTH STREET
CHISHOLM, MINNESOTA  56719

RE:     POLICY NUMBER  036211-02-210535

THIS IS TO CERTIFY THAT THE POLICY OF INSURANCE ATTACHED HERETO IS A TRUE COPY OF THE
POLICY OF INSURANCE ISSUED TO THE NAMED INSURED.

*Robt Bu*

ROBERT M. BUCKLEY, CPCU, AAI, ARM, CIC
VICE PRESIDENT - UNDERWRITING
CHURCH MUTUAL INSURANCE COMPANY

# EXHIBIT B

3000 Schuster Lane, P.O. Box 357, Merrill, WI 54452-0357 | 715.536.5577  800.554.2642  fax: 715.539.4650 | www.churchmutual.com

National Customer Service Center: P.O. Box 505, Merrill, WI 54452-0505  800.554.2642  toll-free fax: 855.264.2329
Claims: P.O. Box 362, Merrill, WI 54452-0342  800.554.2642  fax: 715.539.4651

**POLICY CANCELLATION & NON-RENEWAL TRANSACTION**

204 MAY 11 1982

End. No: _____
Effective Date ___4-1-82___

Agent No. 01-092   Policy No. 03-210535
Trans. _____ Comm. _____   ☒ Policy Cancelled
☐ Policy Not Renewed

REASON FOR CANCELLATION OR NON-RENEWAL
☒ 1. Competition
☐ 2. Non-Payment
☐ 3. Underwriting
☐ 4. Property Sold, Disbanded, Merged, etc.
☐ 5. Re-Written
☐ 6. All Others (indicate specific reason)

|  | Term | Mo. | Yr. |
| --- | --- | --- | --- |
| EXP. | 1 | 5 | 82/83 |

| ACCOUNTING INSTRUCTIONS | ADD'L RETURN | Reinsurance - Actual Premium | |
| --- | --- | --- | --- |
| Policy # Trans. Amount | Amount | | |
| NT | 81.82 | 82.83 | N -233500 | -240 |
| CR. A/R | | | | |
| CR. A/B | | | N | 30 |
| CR. PMT. PLAN | | | Reinsurance - Original Premium | |
| CK | TOTAL 305.00 3674 00 | | N Same | Same |
| Premium Payment or Finance Plan Cancelled ☐ | 12×90 .118 | | | |
| Agents Memo ☐ | 13 days 100% | 10090 | N Same | |
| | TOTAL ORIG. PREM. 3874.0 3674 | | 240 | |

| | DENOM. | T | STATE-TERR. | CITY | DEV. | VAR. |
| --- | --- | --- | --- | --- | --- | --- |
| | Line Peril | Class | Premium | Orig. Prem. | Limit | Exposure |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |
| | | | | | | |

Pol. to Assured ( ) Pol. to Mtgee. ( )
Memo & Inv. to Assured ( )
All to _____
Memo to _____
Daily to _____
Invoice to Mtgee. ( )
FM: ACCT. 123 Rev. 1-72    P.W. 8-6-82    OVER

EXHIBIT B

Policy No. 036211-02-210535

## Church Mutual Insurance Company
3000 Schuster Lane, Merrill, Wis. 54452

### DECLARATIONS
## MULTI-PERIL POLICY

**Item 1.** Named Insured and Mailing Address:
St. Joseph's Catholic Church
113 S.W. Fourth Street
Chisholm, MN 56719

**Item 2.** Policy Period: From May 14, 1981 To May 14, 1984 12:01 A.M. Standard Time at location of designated premises. (Renewal of Policy No.) 036211-02-059037

**Item 3.** The Named Insured is: [ ] Individual [ ] Partnership [XX] Corporation [ ] Joint Venture [ ] Other

**Item 4.** Location and Description of premises: (See schedule[s] attached).

**Item 5.** In consideration of the premium, insurance is provided with respect to those premises described in the attached schedule[s] and with respect to those coverages and kinds of property for which a specific limit of liability is shown, subject to all the terms of this policy including forms and endorsements made a part hereof.

### SECTION I — PROPERTY COVERAGE

| Limit of Liability | Building[s] | Personal Property of the Insured | Coinsurance Applicable | DEDUCTIBLE each occurrence | each occurrence | aggregate each occurrence |
|---|---|---|---|---|---|---|
| $ | 2,238,115. | 42,000. | 90 % | $ | $100 each occurrence | $500 aggregate each occurrence |

If no deductible is stated above, the deductible shall be:

Coverage (Specify): M 102(5-80) All Risk (With Unltd. Glass)

### SECTION II — LIABILITY COVERAGE

| Limit of Liability | Personal Injury and Property Damage Liability Combined Single Limit | Medical Payments | | |
|---|---|---|---|---|
| | | each person | each accident | |
| each occurrence $ 300,000 | $ 300,000 | $ 2,000 | $ 10,000 | |
| aggregate $ 300,000 | | | | |

Coverage (Specify): M 200(5-78) Liability and Medical Payments

*Applicable to Section II only: The Declarations as completed herein and on the attached schedule[s], if any, describe all hazards insured hereunder known to exist at the effective date of this policy.*

### SECTION III — CRIME & FIDELITY COVERAGE

| Limit of Liability | Crime | Fidelity |
|---|---|---|
| $ | 8,000. | $ |

Coverage (Specify): M 300(1-80) Church Theft

### SECTION IV — AUTO COVERAGE

| Limit of Liability (Non-Owned Auto only) | Bodily Injury and Property Damage Liability Combined Single Limit | Medical Payments | |
|---|---|---|---|
| | | each person | each accident |
| each occurrence $ 300,000 | $ 300,000 | $ | $ |
| aggregate $ 300,000 | | | |

Additional Cov. (Specify): M 401(5-78) Employers Non-Ownership Auto Liab.

**Item 6.** Basic Forms and Endorsements made a part of this Policy at time of issue: M 500(5-78), M 501(5-78), M 502(5-78), M 503(5-78), M 504(5-78), M 612(5-79), M 613(5-79), M 506(5-78),

**Item 7.** Mortgagee(s):

**Item 8.** The Total Advance Premium is: $ 8,374. and is payable $ 8,374. at inception, and thereafter

Agency at: Minneapolis, MN
n/k
MAY 1 3 1981

## EXHIBIT B

Authorized Representative

Countersignature Date

M 903 (6-78) DECLARATIONS – HOME OFFICE COPY    2.

## MULTI-PERIL INSTITUTIONAL FORM
### SECTION II — LIABILITY COVERAGE

### I. COVERAGE C — PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY

The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or property damage to which this insurance applies, caused by an occurrence, and the Company shall have the right and duty to defend any suit against the insured seeking damages on account of such personal injury or property damage, even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the Company shall not be obligated to pay any claim or judgment or defend any suit after the applicable limit of the Company's liability has been exhausted by payment of judgments or settlements.

#### EXCLUSIONS

This insurance does not apply:

1. To liability assumed by the insured under any contract or agreement except an incidental contract; but this exclusion does not apply to a warranty of fitness or quality of the Named Insured's products or a warranty that work performed by or on behalf of the Named Insured will be done in a workmanlike manner.

2. To personal injury or property damage arising out of the ownership, maintenance, operation, use, loading or unloading of:
   a. any snowmobile owned or operated by or rented or loaned to any insured, or
   b. any automobile or aircraft owned or operated by or rented or loaned to any insured, or
   c. any other automobile or aircraft operated by any person in the course of his employment by any insured;
   but this exclusion does not apply to the parking of an automobile on premises owned by, rented to or controlled by the Named Insured or ways immediately adjoining, if such automobile is not owned by or rented or loaned to any insured.

3. To personal injury or property damage arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated or rented or loaned to any insured.

4. To personal injury or property damage arising out of the ownership, maintenance, operation, use, loading, or unloading of any watercraft, if the bodily injury or property damage occurs away from premises owned by, rented to or controlled by the Named Insured; but this exclusion does not apply to personal injury or property

damage included within the products hazard or the completed operations hazard or resulting from operations performed for the Named Insured by independent contractors or to liability assumed by the insured under an incidental contract.

5. To bodily injury or property damage for which the insured or his indemnitee may be held liable
   a. as a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages, or
   b. if not so engaged, as an owner or lessor of premises used for such purposes,
   if such liability is imposed
   (1) by, or because of the violation of, any statute, ordinance or regulation pertaining to the sale, gift, distribution or use of any alcoholic beverage, or
   (2) by reason of the selling, serving or giving of any alcoholic beverage to a minor or to a person under the influence of alcohol or which causes or contributes to the intoxication of any person;
   but part (2) of this exclusion does not apply with respect to liability of the insured or his indemnitee as an owner or lessor described in b. above.

6. To any obligation for which the insured or any carrier as his insurer may be held liable under any Workers' Compensation, unemployment compensation or disability benefits law, or under any similar law.

7. To personal injury to any employee of the insured arising out of and in the course of his employment by the insured; but this exclusion does not apply to liability assumed by the insured under an incidental contract.

8. To personal injury arising out of the willful violation of a penal statute or ordinance committed by or with the knowledge or consent of any insured.

9. To personal injury sustained by any person as a result of an offense directly or indirectly related to the employment of such person by the Named Insured.

10. To personal injury arising out of any publication or utterance of a libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy if the first injurious publications or utterance of the name or similar material by or on behalf of the Named Insured was made prior to the effective date of this insurance.

EXHIBIT B

11. To personal injury arising out of a publication or utterance of a libel or slander or other defamatory or disparaging material or a publication or utterance in violation of an individual's right of privacy concerning any person, organization or business enterprise or his or its products or services made by or at the direction of any insured with knowledge of the falsity thereof.

12. To property damage to:
   a. property owned or occupied by or rented to the insured,
   b. property used by the insured, or
   c. property in the care, custody or control of the insured or as to which the insured is for any purpose exercising physical control;

   but parts b. and c. of this exclusion do not apply with respect to liability under a written sidetract agreement and part c. of this exclusion does not apply with respect to property damage (other than to elevators) arising out of the use of elevators at premises owned by, rented to or controlled by the Named Insured.

13. To property damage to premises alienated by the Named Insured arising out of such premises or any part thereof.

14. To personal injury or property damage resulting from the failure of the Named Insured's products or work completed by or for the Named Insured to perform the function or serve the purpose intended by the Named Insured, if such failure is due to a mistake or deficiency

in any design, formula, plan, specifications or advertising material or printed instructions prepared or developed by any insured; but this exclusion does not apply to personal injury or property damage resulting from the active malfunctioning of such products or work.

15. To property damage to the Named Insured's products arising out of such products or any part of such products.

16. To property damage to work performed by or on behalf of the Named Insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.

17. To damages claimed for the withdrawal, inspection, repair, replacement, or loss of use of the Named Insured's products or work completed by or for the Named Insured or of any property of which such products or work forms a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

18. To bodily injury or property damage arising out of the discharge, dispersal, release or escape of smoke, vapors, soot, fumes, acids, alkalis, toxic chemicals, liquids or gases, waste materials or other irritants, contaminants or pollutants into or upon land, the atmosphere or any watercourse or body of water; but this exclusion does not apply if such discharge, dispersal, release or escape is sudden and accidental.

## II. PERSONS INSURED

Each of the following is an insured under this insurance to the extent set forth below:

1. If the Named Insured is designated in the Declarations as an individual, the person so designated but only with respect to the conduct of a business of which he is the sole proprietor.

2. If the Named Insured is designated in the Declarations as a partnership or a joint venture, the partnership or joint venture so designated and any partner or member thereof but only with respect to his liability as such.

3. If the Named Insured is designated in the Declarations as other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director, fiduciary or stockholder thereof while acting within the scope of his duties as such.

4. If the Named Insured is a religious or educational

institution:
   a. any elder, deacon, vestryman, councilman, clergyman, or any member of the Board of Trustees, governors or Board of Education, but only while acting within the scope of his duties as such; and
   b. any organization controlled by the Named Insured; and
   c. any other member of the Named Insured but only while acting on behalf of the Named Insured.

5. Any person (other than an employee of the Named Insured) or organization while acting as real estate manager for the Named Insured.

6. With respect to the operation, for the purpose of locomotion upon a public highway, of mobile equipment registered under any motor vehicle registration law,
   a. an employee of the Named Insured while operating any such equipment in the course of his employment, and

## EXHIBIT B

b. any other person while operating with the permission of the Named Insured any such equipment registered in the name of the Named Insured and any person or organization legally responsible for such operation, but only if there is no other valid and collectible insurance available, either on a primary or excess basis, to such person or organization; provided that no person or organization shall be an insured under this paragraph 6, with respect to:

(1)personal injury to any fellow employee of such person

injured in the course of his employment, or

(2)property damage to property owned by, rented to, in charge of or occupied by the Named Insured or the employer of any person described in subparagraph b. This insurance does not apply to personal injury or property damage arising out of the conduct of any partnership or joint venture of which the insured is a partner or member and which is not designated in this policy as a Named Insured.

## III. SUPPLEMENTARY PAYMENTS

Except with respect to paragraph 6., the Company will pay, in addition to the applicable limit of liability:

1. All expenses incurred by the Company, all costs taxed against the insured in any suit defended by the Company and all interest on the entire amount of any judgment therein which accrues after entry of the judgment and before the Company has paid or tendered or deposited in court that part of the judgment which does not exceed the limit of the Company's liability thereon.

2. Premiums on appeal bonds required in any such suit, premiums on bonds to release attachments in any such suit for an amount not in excess of the applicable limit of liability of this policy, and the cost of bail bonds required of the insured because of accident or traffic law violation arising out of the use of any vehicle to which this policy applies, not to exceed $250 per bail bond, but the Company shall have no obligation to apply for or furnish any such bonds.

3. Expenses incurred by the insured for first aid to others at the time of an accident, for bodily injury to which this policy applies, except for injuries sustained by any person while practicing for, instructing for or participating in any "regularly scheduled athletic contest" as defined in paragraph VII 1. b. additional definitions.

4. Reasonable expenses incurred by the insured at the Company's request, including actual loss of wages or salary (but not loss of other income) not to exceed $50 per day because of his attendance at hearings or trials at such request.

5. For loss to property of others, not to exceed $250, caused by persons participating in an organized activity of the Named Insured. Loss shall mean damage or destruction, but does not include disappearance, wrongful abstraction or loss of use. This insurance does not apply:
   a. if insurance is otherwise provided in Section I of this

policy; or
b. if the loss is covered by any other insurance of the Named Insured or by any insurance of such person who causes such loss.

6. For a loss not to exceed $100,000 to structures or portions thereof, to which the insured shall become legally obligated to pay as damages because of injury to or destruction of such property, including the loss of use thereof, arising out of the perils of fire, lightning, windstorm and hail, explosion, sudden and accidental damage from smoke, vehicles or aircraft, riot, riot attending a strike and civil commotion, damage by burglars and sonic boom.
   a. All of the exclusions of the policy other than the Nuclear Energy Liability Exclusion are deleted and replaced by the following.
      (1)This insurance does not apply:
         (a)to liability assumed by the insured under any contract or agreement; or
         (b)if insurance is provided in Section I of this policy; or
         (c)to any claim or judgment or the defense of any suit where the applicable limit of the Company's liability has been exhausted by payment of judgment or settlement.
   b. The fire legal liability coverage - real property shall be excess insurance over any valid and collectible property insurance (including any deductible portion thereof), available to the insured, such as but not limited to, fire, extended coverage, builders' risk coverage or installation risk coverage, and the other insurance condition of the policy is amended accordingly.
   c. This coverage shall cease 180 days from the date the structure or portion thereof was rented, leased or occupied by the Named Insured or on the date reported to the Company, whichever occurs first. Additional premium for this coverage shall be due and payable for such exposure so reported, computed from the date the exposure began.
   d. This insurance shall not be in addition to the limit of liability as stated in the Declarations of this policy.

## EXHIBIT B

## IV. LIMITS OF LIABILITY — COVERAGE C

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain personal injury or property damage, or (3) claims made or suits brought on account of personal injury or property damage, the Company's liability is limited as follows:

1. The limit of liability for Coverage C stated in the Declarations as applicable to "each occurrence" is the total limit of the Company's liability for all damages as a result of any one occurrence provided that with respect to any occurrence for which notice of this policy is given in lieu of security or when this policy is certified as proof of financial responsibility under the provisions of the Motor Vehicle Financial Responsibility Law of any state or province such limit of liability shall be applied to provide the separate limits required by such law for personal injury liability and property damage liability to the extent of the coverage required by such law, but the separate application of such limit shall not increase the total limit of the Company's liability.

2. Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of all personal injury and property damage which occurs during each annual period while this policy is in force commencing from its effective date and is described in any of the numbered subparagraphs below shall not exceed the limit of liability stated in the Declarations as "aggregate":

   a. all property damage arising out of premises or operations rated on a remuneration basis or contractor's equipment rated on a receipts basis, including prop-

erty damage for which liability is assumed under any incidental contract relating to such premises or operations, but excluding property damage included in subparagraph b. below;

   b. all property damage arising out of and occurring in the course of operations performed for the Named Insured by independent contractors and general supervision thereof by the Named Insured, including any such property damage for which liability is assumed under any incidental contract relating to such operations, but this subparagraph b. does not include property damage arising out of maintenance or repairs at premises owned by or rented to the Named Insured or structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

   c. all personal injury and property damage included within the completed operations hazard and all personal injury and property damage included within the products hazard.

Such aggregate limit shall apply separately to the property damage described in subparagraph a. and b. and separately with respect to each project away from the insured premises. Such aggregate limit shall apply separately to the personal injury and property damage described in subparagraph c. For the purpose of determining the limit of the Company's liability, all personal injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

## V. COVERAGE D — MEDICAL PAYMENTS

The Company will pay to or for each person who sustains personal injury caused by accident all reasonable medical expense incurred within one year from the date of the accident on account of such personal injury, provided such personal injury arises out of:

1. a condition in the insured's premises; or
2. operations with respect to which the Named Insured is afforded coverage for Personal Injury Liability under this policy.

### EXCLUSIONS

This insurance does not apply:

1. To personal injury
   a. arising out of the ownership, maintenance, operation, use, loading or unloading of
      (1) any automobile or aircraft owned or operated by or rented or loaned to any insured, or

      (2) any other automobile or aircraft operated by any person in the course of his employment by any insured,

   but this exclusion does not apply to the parking of an automobile on the insured premises if such automobile is not owned by or rented or loaned to any insured;

   b. arising out of the ownership, maintenance, operation, use, loading, or unloading of any watercraft, if the personal injury occurs away from the insured premises,

   c. arising out of and in the course of the transportation of mobile equipment by an automobile owned or operated by or rented or loaned to any insured, or

   d. any snowmobile owned or operated by or rented or loaned to any insured.

2. To personal injury
   a. included within the completed operations hazard or the products hazard;

## EXHIBIT B

b. arising out of operations performed for the Named Insured by independent contractors other than (1) maintenance and repair of the insured premises or (2) structural alterations at such premises which do not involve changing the size of or moving buildings or other structures;

c. resulting from the selling or giving of any alcoholic beverage

(1) in violation of any statute, ordinance or regulation,

(2) to a person under the influence of alcohol or

(3) which causes or contributes to the intoxication of any person, but this exclusion 2. c. applies only if the Named Insured is a person or organization engaged in the business of manufacturing, distributing, selling or serving alcoholic beverages or is an owner or lessor of premises used for such purposes.

3. To personal injury

a. to the Named Insured, any partner therein, any tenant or other person regularly residing on the insured premises or any employee of the foregoing if the personal injury arises out of and in the course of his employment therewith;

b. to any other tenant if the personal injury occurs on that part of the insured premises rented from the Named Insured or to any employee of such a tenant if the personal injury occurs on the tenant's part of the insured premises and arises out of and in the course of his employment for the tenant;

c. to any person if any benefits for such personal injury are payable or required to be provided under any workers' compensation, unemployment compensation or disability benefits law, or under any similar law;

d. to any person, except volunteer workers, while engaged in maintenance and repair of the insured premises or alteration, demolition or new construction at such premises;

e. to any person practicing for, instructing for or participating in any regularly scheduled athletic contest.

4. To any medical expense for services by the Named Insured, any employee thereof or any person or organization under contract to the Named Insured to provide such services.

## VI. LIMITS OF LIABILITY — COVERAGE D

The limit of liability for Coverage D stated in the Declarations as applicable to "each person" is the limit of the Company's liability for all medical expenses for personal injury to any one person as the result of any one accident; but subject to the above provision respecting "each person", the total liability of the Company under Medical Payments Coverage for all medical expense for bodily injury to two or more persons as the result of any one accident shall not exceed the limit of liability stated in the Declarations as applicable to "each accident".

When more than one medical payments coverage afforded by this policy applies to the loss, the Company shall not be liable for more than the amount of the highest applicable limit of liability.

## VII. ADDITIONAL DEFINITIONS

1. When used in reference to Coverage D:

a. "insured premises" means all premises owned by or rented to the Named Insured with respect to which the Named Insured is afforded coverage for bodily injury liability under Coverage C — liability of this policy, and includes the ways immediately adjoining on land.

b. "regularly scheduled athletic contest" is one sponsored, organized, managed, or controlled by or on behalf of the insured or on the premises of the insured on a prescheduled basis, and shall include organization, sponsorship, management or control of teams engaged, on a regular competitive basis, in the following sports, to wit: football, baseball, basketball, softball, hockey, la crosse, soccer, curling, wrestling, boxing and volleyball.

# EXHIBIT B

## CONDITIONS AND DEFINITIONS APPLICABLE TO SECTION II AND IV

### 1. POLICY PERIOD, TERRITORY

Section II and IV of this policy applies only to bodily injury, personal injury and property damage which occurs during the policy period within the policy territory; "Policy territory" means:

a. The United States of America, its territories or possessions, or Canada, or

b. International waters or air space provided the personal injury does not occur in the course of travel or transportation to or from any other country, state or nation, or

c. Anywhere in the world with respect to damages because of personal injury arising out of a product which was sold for use or consumption within the territory described in Subparagraph a. above, provided the original suit for such damages is brought within such territory.

### 2. FINANCIAL RESPONSIBILITY LAWS

When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, such insurance as is afforded by this policy for personal injury liability or property damage liability shall comply with the provisions of such law to the extent of the coverage and limits of liability required by such law. The insured agrees to reimburse the Company for any payment made by the Company which it would not have been obligated to make under the terms of this policy except for the agreement contained in this paragraph.

### 3. THE INSURED'S DUTIES IN THE EVENT OF OCCURRENCE, CLAIM OR SUIT

a. In the event of an occurrence, written notice containing particulars sufficient to identify the insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the insured to the Company or any of its authorized agents as soon as practicable. The Named Insured shall promptly take at his expense all reasonable steps to prevent other bodily injury or property damage from arising out of the same or similar conditions, but such expense shall not be recoverable under this policy.

b. If claim is made or suit is brought against the insured, the insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative.

c. The insured shall cooperate with the Company and, upon the Company's request, assist in making settle-ments, in the conduct of suits and enforcing any right of contribution or indemnity against any person or organization who may be liable to the insured because of personal injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining evidence and obtaining the attendance of witnesses. The insured shall not, accept at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid to others at the time of accident.

### 4. ACTION AGAINST COMPANY

No action shall lie against the Company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the Company.

Any person, organization or the legal representative thereof who has secured such judgment or written agreement shall thereafter be entitled to recover under this policy to the extent of the insurance afforded by this policy. No person or organization shall have any right under this policy to join the Company as a party to any action against the insured to determine the insured's liability, nor shall the Company be impleaded by the insured or his legal representative. Bankruptcy or insolvency of the insured or of the insured's estates shall not relieve the Company of any of its obligations hereunder.

### 5. MEDICAL REPORTS: PROOF AND PAYMENT OF CLAIM — COVERAGE D

As soon as practicable, the injured person or someone on his behalf shall give to the Company written proof of claim, for medical expense, under oath if required, and shall, after each request from the Company, execute authorization to enable the Company to obtain medical reports and copies of records. The injured person shall submit to physical examination by physicians selected by the Company when and as often as the Company may reasonably require. The Company may pay the injured person or any person or organization rendering the services and the payment shall reduce the amount payable hereunder for such injury. Payment hereunder shall not constitute an admission of liability of any person or, except hereunder, of the Company.

# EXHIBIT B

## 6. OTHER INSURANCE

The insurance afforded by this policy is primary insurance, except when stated to apply in excess of or contingent upon the absence of other insurance. When this insurance is primary and the insured has other insurance which is stated to be applicable to the loss on an excess or contingent basis, the amount of the Company's liability under this policy shall not be reduced by the existence of such other insurance. When both this insurance and other insurance apply to the loss on the same basis, whether primary, excess or contingent, the Company shall not be liable under this policy for a greater proportion of the loss than that stated in the applicable contribution provision below:

a. **CONTRIBUTION BY EQUAL SHARES.**    If all of such other valid and collectible insurance provides for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than would be payable if each insurer contributes an equal share until the share of each insurer equals the lowest applicable limit of liability under any one policy or the full amount of the losses paid, and with respect to any amount of loss not so paid the remaining insurers then continue to contribute equal shares of the remaining amount of the loss until each such insurer has paid its limit in full or the full amount of the loss is paid.

b. **CONTRIBUTION BY LIMIT.** If any of such other insurance does not provide for contribution by equal shares, the Company shall not be liable for a greater proportion of such loss than the applicable limit of liability under this policy for such loss bears to the total applicable limit of liability of all valid and collectible insurance against such loss. This provision does not apply to any medical expense insurance afforded by the policy.

## 7. NUCLEAR EXCLUSION

This policy does not apply:

a. Under any liability coverage, to personal injury or property damage
   (1) with respect to which an insured under this policy is also an insured under a Nuclear Energy Liability Policy issued by a Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability;or
   (2) resulting from the hazardous properties of nuclear material and with respect to which
      (a) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof, or

      (b) the insured is, or had this policy not been issued would be entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

b. Under any medical payments coverage, or under any supplementary payments provision relating to first aid, to expenses incurred with respect to personal injury resulting from the hazardous properties of nuclear material and arising out of the operation of a nuclear facility by any person or organization.

c. Under any liability coverage to personal injury or property damage resulting from the hazardous properties of nuclear material, if
   (1) the nuclear material
      (a) is that any nuclear facility owned by, or operated by or on behalf of, an insured, or

      (b) has been discharged or dispersed therefrom;
   (2) the nuclear material is contained in spent fuel or waste at any time, possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or
   (3) the personal injury or property damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any nuclear facility, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (3) applies only to property damage to such nuclear facility and any property thereat.

d. As used in this exclusion "hazardous properties" include radioactive, toxic or explosive properties; "nuclear material" means source material, special nuclear material or by-product material; "source material", "special nuclear material" and "by-product material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof; "spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a nuclear reactor; "waste" means any waste material (1) containing by-product material and (2) resulting from the operation by any person or organization of any nuclear facility included within the definition of nuclear facility under paragraph (1) or (2) thereof; "nuclear facility" means

   (1) any nuclear reactor,
   (2) any equipment or device designed or used for
      (a) separating the isotopes of uranium or plutonium,
      (b) processing or utilizing spent fuel, or
      (c) handling, processing or packaging waste,

## EXHIBIT B

(3) any equipment or device used for the processing, fabricating or alloying of special nuclear material if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235,

(4) any structure, basin, excavation, premises or place prepared or used for the storage or disposal of waste,

and includes the site on which any of the foregoing

is located, all operations conducted on such site and all premises used for such operations; "nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material; "property damage" includes all forms of radioactive contamination of property.

## 8. ANNUAL AGGREGATE

If this policy is issued for a period in excess of one year, any limit of the Company's liability stated in this policy as "aggregate" shall apply separately to each consecutive annual period.

## DEFINITIONS APPLICABLE TO SECTION II AND IV

When used in the Conditions Applicable To Section II and IV of this policy (including endorsements forming a part hereof):

1. "Automobile" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include mobile equipment.

2. "Personal injury" means
   a. Bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom and loss of services resulting from bodily injury or if arising out of bodily injury, mental anguish.
   b. It also includes injury arising out of one or more of the following offenses:
   
   Group A — False arrest, detention or imprisonment, or malicious prosecution.
   
   Group B — The publication or utterance of a libel or slander or of other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy; except publication or utterance in the course of or related to advertising, broadcasting, publishing, or telecasting activities conducted by or on behalf of the Named Insured;
   
   Group C — Wrongful entry or eviction, or other invasion of the right of private occupancy.

3. "Completed operations hazard" means personal injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the Named Insured. "Operations" include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

a. when all operations to be performed by or on behalf of the Named Insured under the contract have been completed;

b. when all operations to be performed by or on behalf of the Named Insured at the site of the operations have been completed; or

c. when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principle as part of the same project.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.

The completed operation hazard does not include personal injury or property damage arising out of:

a. operations in connection with the transportation of property, unless the personal injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

b. the existence of tools, uninstalled equipment or abandoned or unused materials, or

c. operations for which the classifications stated in the policy or in the Company's manual specifies "including completed operations".

4. "Elevator" means any hoisting or lowering device to connect floors or landings, whether or not in service, and all appliances thereof including any car, platform, shaft, hoistway, stairway, runway, power equipment and machinery; but does not include an automobile servicing hoist, or a hoist without a platform outside a building if without mechanical power or if not attached to building walls, or a hod or material hoist used in alteration, construction or demolition operations, or an inclined conveyor used exclusively for carrying property or a dumbwaiter used exclusively for carrying property and having a compartment height not exceeding four feet.

EXHIBIT B

5. **"Incidental contract"** means any written

a. lease of premises,
b. easement agreement, except in connection with construction or demolition operations on or adjacent to a railroad,
c. undertaking to indemnify a municipality required by municipal ordinance, except in connection with work for the municipality,
d. sidetrack agreement, or
e. elevator maintenance agreement.

6. **"Insured"** means any person or organization qualifying as an insured in the "Persons Insured" provision of the applicable insurance coverage. The insurance afforded applies separately to each insured against whom claim is made or suit is brought, except with respect to the limits of the Company.

7. **"Mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled,

a. not subject to motor vehicle registration, or
b. maintained for use exclusively on premises owned by or rented to the Named Insured, including the ways immediately adjoining, or
c. designed for use principally off public roads, or
d. designed or maintained for the sole purpose of affording mobility to equipment of the following types, forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers, and drills; concrete mixers (other than the mix and transit type): graters, scrapers, rollers and other road construction or repair equipment; air compressors, pumps and generators, including spraying, welding and building cleaning equipment; geophysical exploration and well-servicing equipment.

8. **"Named Insured"** means the person or organization named in Item 1 of the Declarations of this policy.

9. **"Named Insured's products"** means goods or products manufactured, sold, handled or distributed by the Named Insured or by others trading under his name, including any container thereof (other than a vehicle), but **"Named Insured's products"** shall not include a vending machine or any property other than such

container rented to or located for use of others, but not sold.

10. **"Occurrence"** means an accident, including continuous or repeated exposure to conditions which result in personal injury or property damage neither expected nor intended from the standpoint of the insured.

11. **"Products hazard"** includes personal injury and property damage arising out of the Named Insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the personal injury and property damage occurs away from premises owned by or rented to the Named Insured and after physical possession of such products has been relinquished to others.

12. **"Insured premises"** means

a. the premises designated in the Declarations,
b. premises alienated by the Named Insured (other than premises constructed for sale by the Named Insured), if possession has been relinquished to others,
c. premises as to which the Named Insured acquires ownership or control; and includes the ways immediately adjoining such premises on land.

13. **"Medical expenses"** means expenses for necessary medical, surgical, x-ray and dental services, including prosthetic devices and necessary ambulance, hospital, professional nursing and funeral services.

14. **"Property damage"** means physical injury to or destruction of tangible property which occurs during the policy period, including the loss of use thereof at any time resulting therefrom or loss of use of tangible property which has been physically injured or damaged provided such loss of use is caused by an occurrence during the policy period.

15. **"Damages"** includes damages for death and for care and loss of services resulting from personal injury and damages for loss of use of property resulting from property damage.

16. **"Bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom.

# EXHIBIT B

Attached to and forming part of Policy No. 036211-02-210535 of the Church Mutual Insurance Company,

## NAMED INSUREDS – SECTION I
### (Designated Premises Only)

It is agreed that with respect to such coverage as is afforded by Section I of the policy, the Named Insured is amended to read as follows for the premises designated below:

Named Insured: "NOT APPLICABLE"

_____ as their interests may appear

| Location No. | Bldg. No. | Location of Premises |
|---|---|---|
| | | |

## ADDITIONAL INSUREDS – SECTION II
### (Designated Premises Only)

It is agreed that with respect to such insurance as is afforded by Section II, Coverage C of the policy:

1. The "Persons Insured" provision is amended to include as an insured the person or organization designated below, but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises designated below, occupied by the Named Insured, and subject to the following additional exclusions.

   The insurance does not apply:

   a. to any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;

   b. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below:

Name of Person or Organization: Diocese of Duluth, 215 West Fourth Street, Duluth, Minnesota 55806

| Location No. | Bldg. No. | Location of Premises |
|---|---|---|
| 1 | 1 | Church, Apartment, & Parish Hall: 113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota |
| 1 | 2 | Garage & Boiler Building: 113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota |
| 1 | 3 | Bell Tower: 113 S.W. Fourth Street, Chisholm, St. Louis County, Minnesota |
| 1 | 4 | Convent: 102 S.W. Fifth Street, Chisholm, St. Louis County, Minnesota |

All other provisions and conditions of the policy remain unchanged.

M 506 (5-78) ADDITIONAL INSUREDS          **EXHIBIT B**          PAGE 1 OF 1

## Beth A. Prouty

| | |
|---|---|
| **From:** | Christian A. Preus |
| **Sent:** | Thursday, September 1, 2016 1:21 PM |
| **To:** | Murray, James |
| **Cc:** | Christian A. Preus |
| **Subject:** | Diocese of Duluth Bankruptcy. |

Hello Jim,

I trust your Summer is going well.

I am writing to follow-up on our conversation at the July 19, 2016 mediation. As you know, Church Mutual has been provided with very little information regarding the Diocese of Duluth's claim for insurance coverage from Church Mutual. When we discussed this matter, I indicated that the only claims that Church Mutual understood the Diocese was pursuing coverage for involved St. Joseph's Catholic Church. Those claims are as follows:

*Doe 322* ▇▇▇▇▇ *v. St. Joseph's Catholic Church*
*Doe 530* ▇▇▇▇▇ *v. St. Joseph's Catholic Church*
*Doe 346* ▇▇▇▇▇ *v. St. Joseph's Catholic Church*
*Doe 335* ▇▇▇▇▇ *v. St. Joseph's Catholic Church*

Please confirm that Church Mutual's understanding is correct. If there are other claims for which the Diocese of Duluth is seeking coverage from Church Mutual, please let me know what those claims are and provide the Proof of Claims and other information.

For all claims for which the Diocese of Duluth is seeking coverage from Church Mutual, we would appreciate an explanation of the basis for coverage. Our initial review, although based upon limited factual information, indicates no potential for coverage under the policies issued by Church Mutual.

Thank you for your attention to this matter.

Christian



**Christian A. Preus,** *Attorney*
Licensed in MN, WI and ND
**BASSFORD REMELE, A Professional Association**

33 South Sixth Street, Suite 3800
Minneapolis, MN 55402-3707
Main: 612.333.3000
Direct: 612.376.1649
Fax: 612.746.1249
cpreus@bassford.com | www.bassford.com

# EXHIBIT C

CONFIDENTIALITY NOTICE: THIS INFORMATION IS INTENDED ONLY FOR THE USE OF THE ADDRESSEE AND MAY CONTAIN INFORMATION THAT IS PRIVILEGED, CONFIDENTIAL, AND EXEMPT FROM DISCLOSURE UNDER APPLICABLE LAW.  IF YOU ARE NOT THE INTENDED RECIPIENT, OR THE EMPLOYEE OR AGENT RESPONSIBLE FOR DELIVERING THIS MESSAGE TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISSEMINATION, DISTRIBUTION OR COPYING OF THE COMMUNICATION IS STRICTLY PROHIBITED.

IF YOU HAVE RECEIVED THIS COMMUNICATION IN ERROR, PLEASE NOTIFY US IMMEDIATELY AT cpreus@bassford.com OR BY TELEPHONE AT 612.333.3000.

THANK YOU.

2

EXHIBIT C