## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:

                       Bankruptcy Case No.: 15-50792

Diocese of Duluth,

                       Chapter 11

      Debtor-in-Possession.

---

Diocese of Duluth,

      Plaintiff,

v.                           Adversary Proceeding No.: 16-05012

LIBERTY MUTUAL GROUP *et. al*,

      Defendants.

---

## DEFENDANT THE CONTINENTAL INSURANCE COMPANY'S
## RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT
## ON NUMBER OF OCCURRENCES

---

## INTRODUCTION AND BACKGROUND

Prior to any discovery in this case, the Diocese has moved this court for a ruling as a matter of law on matters that are unavoidably intertwined with essential—and as yet unproven or even alleged—facts of this case and the underlying sex abuse claims. Namely, the Diocese asks for a ruling interpreting language in insurance policies that it has yet to locate as applied to factual contexts reaching back more than fifty years. In seeking a ruling as a matter of law, the Diocese asks the court to take its word on such

matters as (1) what missing alleged policies say; (2) what the confidential sex abuse claimants would allege in litigation they have not yet brought; and (3) what acts or omissions gave rise to the claims alleged against the Diocese.

Due process requires that in the absence of supporting admissible evidence as required by Rule 56(c)(2), this motion should either be denied outright for failure to meet the burden of proof or, at a minimum, stayed pending discovery.

But even if the court were to credit the Diocese's unsupported speculations, the Diocese could not meet its burden.  First, the weight of Minnesota law rejects the "effects test" advanced by the Diocese, which asks the court to simply determine how many people were impacted by the Diocese's allegedly wrongful conduct.  The effects test is not controlling law in Minnesota, as Judge Tunheim recently ruled in *H. B. Fuller v. United States Fire Insurance.*  No. 09-cv-02827, 2012 WL 12894484, at *13 n.5 (D. Minn. March 2, 2012), ("Minnesota has not adopted the 'effects' test.")

Instead, as discussed below, the dominant test in Minnesota asks what is the *insured's action* that allegedly *caused* the harm.  Focusing on this cause from the perspective of the insured seeking coverage—the alleged negligent supervision of perpetrator priests—the Diocese's motion must fail because the Diocese has provided the court *no* factual basis to conclude that the supervision was conducted on a per-child basis.

Second, policy language directing that repeated exposure to conditions constitutes a single occurrence precludes summary judgment for the Diocese and indeed supports the conclusion that all abuse claims are a single occurrence, or, at a minimum, an occurrence per-bishop or per-priest.

Finally, the Diocese provides no legal or factual basis to support its argument that the occurrence should be calculated on a per-policy year basis.  This argument also should be rejected.

## ARGUMENT

### A.    The Motion Fails To Provide This Court With A Factual Basis To Award Summary Judgment

As the moving party, the Diocese bears the burden of proving there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  A fact is material if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Rule 56 requires the movant to provide support for its factual allegations by citing to "particular parts of materials in the record including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials."  *Id.* at 56(c)(1)(A).  This court must view all facts in the light most favorable to the non-movants and give those parties the benefit of all reasonable inferences that can be drawn from those facts.  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Here, the Diocese utterly failed to meet this burden, supplying only a three-*paragraph* declaration of counsel and short excerpts from six of the nearly-sixty years of coverage at issue in this case.  Indeed, this motion was filed before the insurer defendants had even filed their answers and without the benefit of any discovery.  The Diocese's rush to file this motion has left the court without the raw materials necessary for summary judgment, and for that reason alone, this motion should be denied.

### 1.  The Motion Fails To Prove The Policy Language

This motion asks for a ruling on a contractual term, "occurrence," as defined in policies issued to the Diocese.  This is a contractual question.  Thus, any motion for summary judgment regarding number of occurrences must, at a minimum, prove the existence of the contract and the content of the occurrence language in that policy.  *See Travelers Indem. Co. v. Bloomington Steel & Supply Co.*, 718 N.W.2d 888, 894 (Minn. 2006); *Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 736 (Minn. 1997) (policyholder bears the burden of proving the existence, terms and conditions of the coverage).  Anything less would require this court to speculate.  The Diocese did not meet this most basic requirement.

In the First Amended Complaint, filed only seventeen days before the instant motion, the Diocese alleges:

> 17.    *Upon information and belief*, at various times from at least 1958 to the present, . . . the Insurers, among others, sold or acquired responsibility for primary general liability insurance policies and certificate sold to the

Diocese, as well as certain umbrella and/or excess liability policies and certificates (the "Insurance Policies and Certificates").

18.    *Upon information and belief*, each of the Insurance Policies and Certificates requires the Insurers to pay on behalf of the Diocese all sums that the Diocese becomes legally obligated to pay as a result of bodily injury, as long as any part of the injury took place during the policy period.

(Doc. 8 at 4 (emphasis added).)

Barely more than two weeks before filing this motion, the Diocese could do no better than make vague allegations regarding "various times from at least 1958 to the present" upon information and belief.   The Diocese has attached only portions of one Liberty Mutual and one Fireman's Insurance Company of Newark, N.J.  policy[1] to the Motion, covering 1964-67 and 1973-76—six total years of coverage.  (Doc. 10-1 at 7-21.) And yet, with that scant record, the Diocese seeks partial summary judgment in its favor on all policies covered by the First Amended Complaint:  alleged policies spanning 1958-2016.

### 2.   The Motion Fails To Prove The Factual Context

Even with respect to the six years for which the Diocese has provided portions of policies, this motion lacks a factual basis.  Most prominently, the Diocese fails to identify the occurrence at issue, let alone provide evidentiary support for that position. As discussed below in Section B and as recently recognized by Judge Tunheim,

---

[1] Continental is successor to Fireman's Insurance Company of Newark, N.J.

Minnesota law identifies the occurrence by examining the insured's actions that allegedly caused the injury.  *See infra.* at 8-12.

Judge Tunheim observed "Minnesota courts' *pragmatic sensitivity to the facts underlying the meaning of 'occurrence' in each particular case . . . ." H.B. Fuller*, 2012 WL 12894484, at *10 (emphasis added).  Applying that pragmatic sensitivity to this matter, it becomes clear that to determine the number of occurrences, the Diocese must first present the court with some evidence regarding the actions *of the insured* that are at issue in each of the underlying claims.

The Diocese's two-paragraph Statement of Facts (Doc. 10-1 at 3) makes no mention of the nature of the underlying claims–nor does the three-paragraph affidavit of James Murray.  Without any evidence in support, the court is left to speculate regarding the specific nature of the claims at issue.

With rare exception, the confidential claimants have not filed complaints. Instead, they have completed proofs of claim that, by their nature, articulate no legal theories.  It may well be that some are basing their entire claims on negligent supervision for failing to adequately supervise perpetrators.  In such cases, the occurrence would relate to diocesan leaders' decisions relating to supervision.  Some may be asserting claims based on a general nuisance theory, as we have seen in other Minnesota clergy abuse cases, for failing to warn the community about perpetrators in their midst.  In such cases, the occurrence might relate to decisions about disclosure and

publication.  And yet others may be pursuing claims based on vicarious liability, for simply employing abusive perpetrators.[2]  In such cases, the occurrence would relate to the acts of the employee.[3]

In sum, the pursuit of the negligent supervision theory is little more than the Diocese's assumption and speculation.  And even if the claimants are, indeed, pursuing the negligent supervision theory, the Diocese provides no factual basis for concluding that the faulty supervision was conducted at the per-claimant, per-year basis.  In other words, the Diocese provides no factual basis for the theory that Father Doe would have been  supervised differently when he was with one child than he was when he was with another (or any of the other dozens of children in the parish).  Without supporting evidence for that position, this court cannot rule as a matter of law that the occurrence is measured per-claimant, per-year.

The Diocese has presented the barest of records.  The Diocese has given this court thirteen pages of policy excerpts, while seeking expansive rulings that would

---

[2] The existence of legal defenses that might defeat these underlying claims is not relevant.  The duty to defend extends to even false or fraudulent claims.  The question for the instant motion is purely focused on what are the insured's acts (or omissions) at issue in the underlying claim.

[3] In this brief, Continental does not concede that there is coverage for any individual claim or any particular theory of liability.  Those questions of law and fact have not yet been developed, and we do not understand the Diocese's motion to be seeking a ruling that they are entitled to coverage for the claims submitted by the Unsecured Creditor Claimants.  In the event that understanding is incorrect, Continental objects that the Diocese has failed to prove the terms and conditions of the policies, satisfaction of the conditions of coverage, or entitlement to coverage for the sexual abuse claims.

apply to more than 150 underlying claims and almost sixty years of insurance coverage.

The motion should be denied because the Diocese has failed to meet its burden;

alternatively, the motion should be stayed while the defendants pursue discovery

regarding these issues. *See* Declaration of Laura McNally, attached as Exhibit 1. *See*

*also, In re Polaroid Corp.*, 527 B.R. 335, 346 (D. Minn. 2015) (holding that the bankruptcy

court abused its discretion pursuant to F.R.C.P. 56(d) by denying claimant's request to

conduct discovery prior to ruling on trustee's motion for summary judgment regarding

claim objection); *Iverson v. Johnson Gas Appliance Co.*, 172 F.3d 524, 531 (8th Cir. 1999)

(Minnesota law) (holding that summary judgment was premature, because Iverson did

not have adequate opportunity to conduct discovery of the relevant information that

was entirely within Johnson Gas Appliance Company's control).

**B.      Minnesota Law Rejects The Diocese's Effects Test**

The Diocese argues that the occurrence is defined by the harm—an approach

known as the "effects test." As Judge Tunheim noted in footnote 5 of *H.B. Fuller*, 2012

WL 12894484, at *13 n.5, that is simply not the law in Minnesota. Instead, as discussed

below, Minnesota law examines the policyholder's conduct that allegedly caused the

injury.

The Minnesota Supreme Court addressed the scope of the occurrence in *Northern*

*States Power Co. v. Fid. Cas. Co. of N.Y.*, 523 N.W.2d 657, 664 (Minn. 1994). In that case,

the Minnesota Supreme Court held that the insured's negligent discharge of coal into

groundwater was a single occurrence, even though the repeated discharges occurred from two separate coal facilities and caused two separate contaminated sites. *Id.* at 657-59. The Minnesota Supreme Court analyzed the occurrence by examining the actions of the insured, and concluded that those actions constituted a single occurrence. *Id.* Had the Diocese's theory been correct, the Minnesota Supreme Court would have simply tallied up the number of impacted sites to determine the number of occurrences.

More recently, in *H. B. Fuller,* the district court followed *Northern States Power* and opined that a Minnesota tribunal would determine the number of occurrences by looking at the underlying cause of the thousands of asbestos bodily-injury claims:  the insured's decision to use the same manufacturing process of asbestos-containing products at approximately nine plants.  2012 WL 12894484, at *11.  Using the same manufacturing process "was the ultimate, singular cause of the injuries alleged" rather than the more immediate effect of the injuries resulting from exposure to the asbestos-containing products.  The court held that the cause was the insured's singular, continuous manufacture of asbestos-containing materials.  *Id*.

Similarly, in *Domtar, Inc. v. Niagara Fire Ins. Co.*, No. A03-630, 2004 WL 376951, at *3-4 (Minn Ct. App. March 2, 2004), the Minnesota Court of Appeals recognized that negligent operations at multiple sites could constitute a single occurrence when there is

sufficient evidence of uniformity of operations.  *Id.*  at 7.[4]  *See also Cargill, Inc. v. Liberty Mut. Ins. Co.*, 488 F. Supp. 49, 53 (D. Minn. 1979), *aff'd per curiam*, 621 F.2d 275 (8th Cir. 1980) (holding that insured's change in the formula that contaminated a nutrient used in an antibiotic was a single occurrence, even though numerous batches of the antibiotic were damaged by the change).

In light of this case authority, which focuses on the insured's actions that allegedly caused the injury, the Diocese's position—that the occurrence should be determined solely by calculating the number of injured individuals—is simply wrong.

The Diocese attempts to avoid these clear rulings by importing theories relating to trigger into the occurrence analysis.  "Trigger" and "occurrence" are separate and distinct issues, however.  The occurrence analysis determines the scope of coverage by examining the insured's actions that ultimately give rise to the injury, and the trigger analysis determines which potential policies must respond to the claim by evaluating which insurers were on the risk at the time of injury.  As the court in *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386 (8th Cir. 1996) observed, "The abuse is the actual injury, not the occurrence . . . . The 'occurrence' and the 'injury' it produces need not have any relationship to each other in time or place."  89 F.3d at 1390 n.5.

To be fair, the Minnesota Courts have at times confused trigger and occurrence as well–a situation the Diocese tries to exploit in its motion.  The Diocese's reliance on *In*

---

[4] Ultimately, the Minnesota Court of Appeals rejected the policyholder's claim of a single occurrence theory because it failed to prove a uniformity of operations.  *Id*. at *4.

*re Silicone Implant Ins. Coverage Litigation*, 667 N.W.2d 405, 415 (Minn. 2003) (*SBI 2*) is a

good example of such exploitation.  *SBI 2* involves trigger, as the issue of number of

occurrences was not before the Minnesota Supreme Court.  The Minnesota Court of

Appeals had determined that each implantation was a separate occurrence, but it did so

by applying the trigger analysis from the Minnesota Supreme Court's *Singaas v.*

*Diedrich*, 238 N.W.2d 878, 880 (Minn. 1976).  *In re Silicone Implant Ins. Coverage Lit.*, 652

N.W.2d 46, 67-68 (Minn. Ct. App. 2002) (*SBI 1*).  In *SBI 2*, however, the Minnesota

Supreme Court held that *Singaas* only relates to trigger, not number of occurrences.  In

*H.B. Fuller*, Judge Tunheim analyzed the trigger/occurrence confusion in *SB-1* and

*Singaas* and ultimately concluded that Minnesota has not adopted the "effects" test.

*H.B. Fuller,* 2012 WL 12894484, at *13 n.15.  *Cf. Jenoff, Inc. v. New Hampshire Ins. Co.*, 558

N.W.2d 260 (Minn. 1997) (cited by Diocese as an occurrence case, but the court

addresses only trigger).

In the end, the controlling Minnesota case law of *Northern States Power* as well as

the recent ruling from the district court in *H.B. Fuller*, provide the proper analysis for

the occurrence issue.  The Diocese's motion should be denied.

### C. <u>Negligent Supervision Claims Suggest A Single Occurrence, Or, At Most, A Per-Bishop or Per-Priest Occurrence</u>

As the Diocese acknowledges on page 3 of the Memorandum, the two

incomplete policies attached to the Memorandum provide that "All damages arising

out of such exposure to substantially the same general conditions shall be considered as

arising out of one occurrence."  (Doc. 10-1 at 24.)  The Diocese's brief refers to this term

as the "deemer clause" and concedes that it applies.  (*Id*. at 38.)

Contrary to the Diocese's belief that deemer clauses exist solely to broaden

coverage (*Id*. at 36.), Minnesota law consistently enforces deemer clauses as written,

even when doing so limits available limits.  For example, in

*Farmers Insurance Exchange v. Hallaway*, 564 F. Supp. 2d 1047, 1053 (D. Minn. 2008), the

district court addressed a similar deemer clause in a case regarding coverage for

defamation.  Akin to what the Diocese proposes here, the insured in *Hallway* argued

that each defamatory e-mail was a discrete event that gave rise to damages during three

separate policy periods.  The court rejected this analysis.  In determining whether each

of the defamatory emails was related and constituted one occurrence, the court

evaluated whether the acts were connected by time, place, opportunity, pattern and

"modus operandi."  *Id., citing American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire

and Cas. Co.*, 551 N.W.2d 224 (Minn. 1996).  The defamatory emails were found to be a

series of related acts that arose out of soccer parents' concern regarding an individual

acting suspiciously at their children's soccer practice, and thus, one occurrence, in

accordance with the deemer clause.  *Id.* at 1045.

Similarly, in *American Commerce Ins. Brokers, Inc. v. Minnesota Mut. Fire and Cas.

Co.*, 551 N.W.2d 224 (Minn. 1996), the Minnesota Supreme Court held that 155 separate

acts of theft constituted only two occurrences, because there were only two "series of

related acts of theft" or types of theft, the issuance of unauthorized checks and misappropriating funds received from customers as insurance premiums.

The situation here is easily analogous:  the Diocese's alleged negligent, continuous, and systemic failure of supervision should be treated as one occurrence. Viewed from the standpoint of the policyholder, the injuries alleged by the claimants all arise from the same condition or cause—the Diocese's decision (negligent or otherwise) to permit perpetrators to have access to children.

If that decision were made through a consistent policy of the Diocese, Minnesota law would consider the exposure to the condition of the Diocese permitting predatory priests to remain in ministry as a single occurrence (per policy).  If that decision were revisited and continued by each supervising bishop, Minnesota law would consider the occurrence to be calculated per-bishop.  At the very most, if the Diocese independently supervised each priest with respect to predatory conduct, Minnesota law would view the occurrence at the per-priest level.

While the defendants are not (at this time) seeking summary judgment that there is a single occurrence or even a per-bishop or per-priest occurrence, the existence of the deemer clause precludes the summary judgment sought by the Diocese.  The Diocese cannot establish, as a matter of law, that the claimants were not subject to a continuous and repeated condition that caused their injuries.

### D. **The Diocese Provides No Basis For A Per-Year Occurrence**

The Diocese argues that the occurrence limits are calculated on a per-year basis.
In support of this, the Diocese cites to the deemer clause, which is puzzling, given that
the clause is entirely silent on time limits.  The Diocese appears to offer the annualized
limits as a means to curb the logical conclusion of their occurrence argument, which is
that every unauthorized touch is its own occurrence.  (Doc. 10-1 at 38.)  Yet while we
certainly applaud the Diocese's recognition that the logic of their argument leads to an
absurd result, the deemer clause provides no legal basis for imposing annual occurrence
limits.  *See Diocese of Winona*, 89 F.3d at 1391, n. 5 ("a single, continuous occurrence to
avoid the absurd situation where a condition causing hundreds of thousands of injuries
would constitute hundreds of thousands of occurrences. . . .")

The occurrence limits are provided in the various policies.  As discussed above,
for most of the years at issue in this litigation, the Diocese has provided the court no
evidence of coverage, let alone evidence regarding specific terms.  For these years, the
court simply cannot speculate about the terms regarding limits of liability.

The Fireman's Insurance Company policy excerpts attached to Exhibit B of the
Diocese's Memorandum do not support a per-year occurrence limit.  Indeed, the policy
clearly precludes that result.

For occurrence limits, the policy provides:

> [A]ll bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one *occurrence*.

(Doc. 10-1 at 18 (emphasis added).)  For aggregate limits,[5] on the other hand, the policy provides:

> Any limit of the company's liability stated in this endorsement as '*aggregate*' shall apply separately to each consecutive annual period comprising the policy period.

(*Id.* (emphasis added).)

Under the *expressio unius est exclusio alterius* rule of construction, the fact that the policy provides for per-year for aggregate limits but not occurrence limits precludes any reasonable construction that occurrence limits would also be calculated per-year.  At most, on summary judgment, where all reasonable inferences are drawn in favor of the non-movant, *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), the Diocese cannot prevail on its unsupported claim of annual limits.  This argument also must be rejected.

## CONCLUSION

The Diocese has failed to provide the court with an evidentiary basis for the sweeping and premature partial summary judgment it seeks.  For the foregoing

---

[5] Aggregate only apply to bodily injury arising out of the products hazard or the completed operations hazard and so do not apply to the underlying abuse claims.  (*See id.*)

reasons, this motion should either be denied outright, without prejudice, or it should, at

a minimum, be stayed pending discovery.

February 3, 2017

/s/ Laura McNally
Laura McNally
LOEB & LOEB, LLP
321 North Clark Street, Suite 2300
Chicago, IL  60610
Telephone:  (312) 464-3155
Fax:  (312) 464-3111
e-mail:  lmcnally@loeb.com

Jeanne Unger
Jeffrey Klobucar
BASSFORD REMELE
100 South Fifth Street, Suite 1500
Minneapolis, MN  55402-1254
Telephone:  (612) 333-3000
Fax:  (312) 746-1239
e-mail:  junger@bassford.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
3515 West 75th Street, Suite 208
Prairie Village, KS  66208
Telephone:  (913) 674-8215
e-mail:  dchristian@dca.law

*Counsel for Defendant*
*The Continental Insurance Company*

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:

                                  Bankruptcy Case No.: 15-50792

Diocese of Duluth,

                                  Chapter 11

       Debtor-in-Possession.

---

Diocese of Duluth,

       Plaintiff,

v.                                  Adversary Proceeding No.: 16-05012

LIBERTY MUTUAL GROUP, *et al.*,

       Defendants.

---

## DECLARATION OF LAURA K. MCNALLY PURSUANT TO
## FEDERAL RULE OF CIVIL PROCEDURE 56(d)
## IN SUPPORT OF THE CONTINENTAL INSURANCE COMPANY'S OPPOSITION
## TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON NUMBER
## OF OCCURRENCES

---

I, Laura K. McNally, declare as follows:

      1.      I am a partner in the law firm of Loeb & Loeb, LLP and am a member in

good standing of the State Bar of Illinois.  I represent The Continental Insurance

Company.  I submit this declaration on personal knowledge pursuant to Fed. R. Civ. P.

**EXHIBIT 1**

1

56(d) in support of Continental's response to the Diocese's motion for partial summary

judgment on number of occurrences.

## Continental Has Had No Opportunity to Conduct Discovery

2.      On December 2, 2016, plaintiff Diocese of Duluth filed its first amended

complaint.  On December 19, 2016, before defendants filed their answers, the Diocese

filed its motion for partial summary judgment on the number of occurrences.

3.      Continental did not have the opportunity to conduct discovery prior to

the Diocese filing the motion.

## Grounds For And Topics of Continental's Discovery Requests

4.      The areas of discovery that are essential to Continental's defense and its

opposition to the motion include:  the material terms and conditions of lost and missing

policies; the alleged cause of the underlying claims; the Diocese's policies and

procedures regarding evaluation and responses to the claims of sexual misconduct

allegedly committed by the Diocese personnel.

### *The Material Terms And Conditions Of Policies*

5.      The Diocese bears the burden of proving coverage under the policies.

*Domtar, Inc. v. Niagara Fire Ins. Co.*, 563 N.W. 2d 724, 736 (Minn. 1997).  A vital part of

the initial burden is proving the essential terms and conditions of coverage under the

policies.  *Id*.; *citing American States v. Mankato & Metal, Inc.*, 848 F. Supp. 1436, 1441-46

(D. Minn. 1993).  The Diocese's motion argues the legal standard for calculating the

number of occurrences pursuant to alleged policies spanning 1958 to 2016.  However,

the Diocese has attached only portions of the Liberty Mutual and Fireman's Insurance

Company of Newark, N.J.'s policies from 1964-67 and 1973-76–six total years of

coverage.  (Doc. 10-1 at 7-21).  Discovery is needed to determine the contents of policies

issued for the remaining fifty-two years of coverage, including the definition of

"occurrence" in those policies.

<em><u>The Alleged Cause of The Underlying Claims</u></em>

6.      To determine the number of occurrences, it is necessary to understand the

legal claims being made in the underlying actions.  For example, the occurrence at issue

in a nuisance action is entirely distinct from the occurrence at issue in a negligence case.

While the Diocese appears to assume that the underlying claims are grounded in a

theory of negligent supervision, the Diocese has presented no factual record to support

that assumption.  (Doc. 10-1 at 2).  Discovery of the claimants is needed to determine the

nature of their legal claims.[1]

<em><u>Acts and Omissions of the Diocese</u></em>

7.      To determine the number of occurrences, Minnesota law requires an

understanding of the insured's conduct that caused the alleged injury.  *See H. B. Fuller v.*

*United States Fire Insurance.*  No. 09-cv-02827, 2012 WL 12894484, at *10 (D. Minn. March

---

[1] Continental is not proposing full discovery of the claimants about their underlying
abuse claims for purposes of this motion.  That discovery may be required as this case
proceeds, but for present purposes, Continental only seeks discovery directed toward
elucidating the legal nature(s) of the underlying claims.

2, 2012).  Assuming the claims are based on a negligent supervision theory, the

underlying facts relating to the Diocese's policies and procedures regarding perpetrator

priests are essential in order to understand (1) whether there was a uniform policy, and

if so, what was it; (2) who crafted, implemented, and enforced that policy; (3) who

supervised the perpetrator priests; and (4) who determined how notice of abusive

conduct would be handled.  Evidence of the Diocese's business practices, record

keeping policies, perpetrator interviews, or governmental or law enforcement agency

intervention, in relation to the sexual abuse claims for which the Diocese seeks

coverage, are necessary to answer these questions.

## Continental's Request For Production Of Documents

8.    Attached as Exhibit A is a true and correct copy of The Continental

Insurance Company's Request for Production, as served on the Diocese of Duluth on

February 1, 2017.  The requests in this document are all directed toward the issues

presented in the Motion for Summary Judgment.

## Summary of Request

10.    Continental requests that the motion be denied.  Alternatively,

Continental requests that the court stay any ruling or further proceedings on the motion

and allow time for sufficient discovery to address the issues raised in the motion for

summary judgment.  That discovery likely would include responses to the document

requests attached as Exhibit A as well as deposition testimony and potential third-party

discovery.  Finally, Continental seeks an opportunity to supplement its response brief to include information learned through the discovery process.

I declare under penalty of perjury that the statements in this declaration are true and correct.

Executed on February 3, 2017, Chicago, Illinois.

By:  /s/ Laura K. McNally
      Laura K. McNally (admitted *pro hac vice)*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

---

In re:                                    Bankruptcy Case No.: 15-50792

Diocese of Duluth,                        Chapter 11

                    Debtor-in-Possession.

---

Diocese of Duluth,

                    Plaintiff,

v.                                        Adversary Proceeding No.: 16-05012

LIBERTY MUTUAL GROUP, *et al.*,

                    Defendants.

---

## THE CONTINENTAL INSURANCE COMPANY'S
## REQUEST FOR PRODUCTION

---

Pursuant to Rule 34 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by the Federal Rule of Bankruptcy Procedure 7034, defendant The Continental Insurance Company hereby requests that the plaintiff Diocese of Duluth produce the following documents for inspection and copying at the office of counsel for the defendant, Jeanne Unger, Basford Remele, 100 South Fifth Street, Suite 1500, Minneapolis, Minnesota 55402-1254, within thirty (30) days of service of these Requests for Production.

**EXHIBIT A**

## I.    INSTRUCTIONS

1.      Each Request set forth herein refers to documents in the custody, control,

and possession of the Plaintiff or known to the Plaintiff, as well as in the custody,

control, and possession of or known to the Plaintiff's counsel, representatives, agents,

servants, investigators, and consultants, and unless otherwise privileged, their counsel,

employees, representatives, agents, servants, investigators and consultants.

2.      All documents are to be produced as kept in the usual course of business,

or organized and labeled to correspond with the categories in this request, pursuant to

Fed. R. Civ. P. 34(b).

3.      With respect to any of the requested documents, if any such document is

unavailable because it was lost or destroyed by the Plaintiff or its agents, or for any

other reason, after fully identifying the document, state when and where it was

destroyed or why it is otherwise unavailable, the name and address of the person who

destroyed it or lost it, the name and address of the person(s) who directed, approved, or

knew of its destruction, and the name and address of any persons who have knowledge

of such document.

4.      If there is a claim of privilege with respect to any document requested,

please identify every such document in the response, and include in the identification a

description of the document, the date of the document, the names of any addressees

and addressors, the identity and address of every person to whom a copy was given or

its contents were communicated, the general subject matter of the document, a

statement of the facts constituting the basis for any claim of privilege, and the specific

basis on which the privilege is claimed.

5.      If you cannot produce documents for any other reason, respond to the

extent possible, stating your reasons for your inability to respond in full.

6.      These Requests shall be deemed continuing, to the full extent required or

permitted under the Federal Rules of Civil Procedure, so as to require supplementary

production when the Plaintiff obtains access, custody, possession or control of any

document not previously produced, which is responsive to any of these Requests.

7.      Unless otherwise specified, these Requests are not limited as to time.

## II.    DEFINITIONS

1.      "Plaintiff," "You," and "Diocese" refers to the plaintiff, Diocese of Duluth

and its clergy, employees, officers, predecessors, successors, corporate parents,

subsidiaries, related or affiliated entities, and all others acting at its behest and/or

direction.

2.      "Sexual abuse" means conduct falling under the definition of "sexual

abuse" in the Minnesota Child Victims Act.  Minn. Stat. § 541.073.1(1).

3.      "Document" means any medium which intelligence or information can be

recorded on or retrieved from, and includes, but is not limited to, the original,

handwritten, printed or otherwise, and any non-identical copy, regardless of origin and

location, of any correspondence, communication, e-mail, check, check stub, payment

record of any kind, financial record of any kind, any book, pamphlet, brochure,

periodical, letter, memorandum (including any memorandum or report of a meeting or

conversation), minutes, invoice, bill, order form, purchase order, receipt, financial

statement, ledger, accounting entry, diary, calendar, agenda, bulletin, summary,

announcement, instruction manual, telex, facsimile, telegram, cable, report, contract,

agreement, notebook, draft, working paper, handwritten note, notice, chart, printout,

print, map, drawing, blueprint, design, survey, sketch, graph, index, outline, script,

photograph, microfilm, movie, data sheet or data processing card, computer file, data

file, electronically stored information, sound recording, voicemail, text message, instant

message, or any other written, recorded, transcribed, punched, taped, finned, or graphic

material or matter, however produced or reproduced, which is in the Plaintiff's

possession, custody, or control or which was, but is no longer, in her possession,

custody or control.

   4.  "Communication" means the transmittal of information between two or

more persons, including any of their agents, employees, or representatives, and

includes without limitation, transmittal of information by letters, memoranda, e-mail,

telegrams, faxes, telex, or by any other documents, or by face-to-face meetings or

telephone conversations.

5.       "Underlying sex abuse claims" shall mean the sex abuse claims reflected in the Proofs of Claim.

6.       "Any" means "each and every" as well as "any one."

7.       "And" and "or" shall be construed conjunctively or disjunctively, as necessary to make the interrogatory inclusive rather than exclusive.

8.       The singular includes the plural and vice versa, as necessary to make the interrogatory broader rather than narrower.

## III.    REQUEST FOR PRODUCTION

1.       All policies of insurance that you contend are responsive to the underlying sex abuse claims.

2.       To the extent that you are unable to produce policies of insurance in response to Request 1, documents sufficient to show the material terms and conditions of any policy of insurance that you contend is responsive to the underlying sex abuse claims.

3.       Documents that refer to or reflect the purchase of any policy of insurance that you contend is responsive to the underlying sex abuse claims.

4.       All policies and procedures that refer to or reflect the protection of minors from sexual abuse by personnel of the Diocese prior to 1984.

5.      All documents and communications that refer to or reflect the development and implementation of any policies or procedures for the protection of minors from sexual abuse by personnel of the Diocese prior to 1984.

6.      All policies and procedures that refer to or reflect reporting instances or suspicions of sexual abuse of a minor by personnel of the Diocese.

7.      All documents and communications that refer to or reflect the development and implementation of any policies or procedures regarding reporting instances, and/or suspicions, of sexual abuse of a minor by personnel of the Diocese.

8.      All record keeping policies and procedures, including Canon 489, concerning claims of sexual abuse of a minor by personnel of the Diocese.

9.      All documents and communications that refer to or reflect the development and implementation of record keeping policies and procedures, including Canon 489, concerning claims of sexual abuse of a minor by personnel of the Diocese.

10.      All policies and procedures that refer to or reflect the methods by which the Diocese investigates, evaluates and responds to claims of sexual abuse of a minor by personnel of the Diocese.

11.      All documents and communications that refer to or reflect the development and implementation of any policies or procedures concerning how the Diocese investigates, evaluates and responds to claims of sexual abuse of a minor by personnel of the Diocese.

12.    All documents and communications that refer to or reflect the notice to the Diocese of any sexual abuse by any alleged perpetrator of sexual abuse.

13.    All documents and communications that refer to or reflect the first indication (including any suggestion or basis for suspicion) to the Diocese of any sexual abuse by any alleged perpetrator of sexual abuse.

14.    All documents and communications that refer to or reflect any investigation, evaluation and response by the Diocese  to any claim of sexual abuse by any alleged perpetrator identified in a Proof of Claim.

15.    All documents and communications, including, but not limited to, transcripts, summaries, minutes, memoranda and/or notes, that refer to or reflect any interview of any alleged perpetrator identified in a Proof of Claim.

16.    All personnel file(s) for any alleged perpetrator identified in the Proofs of Claim. This request includes, but should not be limited to, any and all records of any complaints, disciplinary warnings or actions taken (including Canonical Penalties and Administrative Actions), any transfers, and any psychiatric, psychological and/or other treatments or evaluations.

17.    All "secret archives" or "Canon 489"- file(s) concerning any alleged perpetrator identified in the Proofs of Claim, including all notes, correspondence or documents of whatever nature made or received by the Diocese.

18.     All documents and communications released, produced or provided by the Diocese (whether voluntarily or pursuant to subpoena or court order) to any civil authority, or governmental or law enforcement agency, concerning sexual abuse of minors.

19.     A copy of any Canon law, rule or doctrine you intend to rely upon in this action.

20.     All documents, charts and/or communications evidencing the corporate organizational structure of the Diocese from January 1, 1956 to the present.

Dated:  February 1, 2017

DEFENDANT,
THE CONTINENTAL INSURANCE
COMPANY

**LOEB & LOEB, LLP**

By: */s/ Laura McNally*

     Laura McNally
     LOEB & LOEB, LLP
     321 North Clark Street, Suite 2300
     Chicago, IL  60610
     Telephone:  (312) 464-3155
     Fax:  (312) 464-3111
     e-mail:  lmcnally@loeb.com

     Jeanne Unger
     Jeffrey Klobucar
     BASSFORD REMELE
     100 South Fifth Street, Suite 1500
     Minneapolis, MN  55402-1254
     Telephone:  (612) 333-3000
     Fax:  (312) 746-1239
     e-mail:  junger@bassford.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
3515 West 75th Street, Suite 208
Prairie Village, KS  66208
Telephone:  (913) 674-8215
e-mail:  dchristian@dca.law

<u>**CERTIFICATE OF SERVICE**</u>

I, Laura K. McNally, hereby certify that on this 1st day of February, 2017, caused the foregoing **THE CONTINENTAL INSURANCE COMPANY'S REQUEST FOR PRODUCTION** to be served on the following counsel of record:

<u>**Via Federal Express and E-mail**</u>

James R. Murray
Blank Rome LLP
1825 Eye St NW
Washington, DC 20006
jmurray@blankrome.com

<u>**Via E-mail Only**</u>

Christopher J. Knapp
Barnes & Thornburg LLP
225 S 6th St
Ste 2800
Minneapolis, MN 55502
christopher.knapp@btlaw.com

Kristi K. Brownson
Brownson & Linnihan, PLLP
225 South 6th Street
Suite 4800
Minneapolis, MN 55402
kbrownson@brownsonlinnihan.com

Christian A. Preus
Bassford Remele
33 South Sixth Street, Suite 3800
Minneapolis, MN 55082
cpreus@bassford.com

Charles E. Jones
Moss & Barnett, P.A.
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
charles.jones@lawmoss.com

February 1, 2017

/s/ Laura McNally
Laura McNally
LOEB & LOEB, LLP
321 North Clark Street, Suite 2300
Chicago, IL  60610
Telephone:  (312) 464-3155
Fax:  (312) 464-3111
e-mail:  lmcnally@loeb.com

Jeanne Unger

Jeffrey Klobucar
BASSFORD REMELE
100 South Fifth Street, Suite 1500
Minneapolis, MN  55402-1254
Telephone:  (612) 333-3000
Fax:  (312) 746-1239
e-mail:  junger@bassford.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
3515 West 75th Street, Suite 208
Prairie Village, KS  66208
Telephone:  (913) 674-8215
e-mail:  dchristian@dca.law

*Counsel for Defendant The Continental Insurance Company*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

---

In re:

Diocese of Duluth,

     Debtor-in-Possession.

Bankruptcy Case No.: 15-50792

Chapter 11

---

Diocese of Duluth,

     Plaintiff,

v.

LIBERTY MUTUAL GROUP, *et al.*,

     Defendants.

Adversary Proceeding No.: 16-05012

---

## CERTIFICATE OF SERVICE

---

I, Laura K. McNally, hereby certify that on the 3rd day of February 2017, I caused a true and correct copy of the foregoing **Defendant The Continental Insurance Company's Response to Motion for Partial Summary Judgment on Number of Occurrences** to be filed electronically with the Clerk of the Bankruptcy Court through ECF, and that ECF will send an e-notice of the electronic filing to the following counsel of record registered to receive the same:

James R. Murray
Blank Rome LLP
1825 Eye St NW
Washington, DC 20006
jmurray@blankrome.com

Bruce A. Anderson
Elsaesser Jarzabek Anderson Elliott &
Ma
320 East Neider Avenue, Suite 102
Coeur d'Alene, ID 83815
baafiling@ejame.com


J. Ford Elsaesser
Elsaesser Jarzabek Anderson Elliott
& Ma
123 South Third Avenue, Suite 24
Sandpoint, ID 83864
ford@ejame.com

Phillip Kunkel
Gray Plant Mooty
1010 West Street Germain
Suite 600
St Cloud, MN 56301
phillip.kunkel@gpmlaw.com


Abigail M McGibbon
Gray Plant Mooty Mooty & Bennett
PA
80 S 8th St
500 IDS Center
Minneapolis, MN 55402
abigail.mcgibbon@gpmlaw.com

Jared Zola
Blank Rome LLP
Chrysler Building 405 Lexington
New York, NY 10174-0208
jzola@blankrome.com


Christopher J. Knapp
Barnes & Thornburg LLP
225 S 6th St
Ste 2800
Minneapolis, MN 55402
christopher.knapp@btlaw.com

Kristi K. Brownson
Brownson & Linnihan, PLLP
225 South 6th Street
Suite 4800
Minneapolis, MN 55402
kbrownson@brownsonlinnihan.com


Christian A. Preus
Bassford Remele
33 South Sixth Street, Suite 3800
Minneapolis, MN 55082
cpreus@bassford.com

Charles E. Jones
Moss & Barnett, P.A.
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
charles.jones@lawmoss.com


Dated:  February 3, 2017

/s/ Laura McNally
Laura McNally
LOEB & LOEB, LLP

321 North Clark Street, Suite 2300
Chicago, IL  60610
Telephone:  (312) 464-3155
Fax:  (312) 464-3111
e-mail:  lmcnally@loeb.com

Jeanne Unger
Jeffrey Klobucar
BASSFORD REMELE
100 South Fifth Street, Suite 1500
Minneapolis, MN  55402-1254
Telephone:  (612) 333-3000
Fax:  (312) 746-1239
e-mail:  junger@bassford.com

David Christian
DAVID CHRISTIAN ATTORNEYS LLC
3515 West 75th Street, Suite 208
Prairie Village, KS  66208
Telephone:  (913) 674-8215
e-mail:  dchristian@dca.law

*Counsel for Defendant The Continental Insurance Company*