# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No.: 15-50792 |
| Diocese of Duluth, | Chapter 11 |
|     Debtor-in-Possession. | |

Diocese of Duluth,

    Plaintiff,

                                                                           Adversary Proceeding No.: 16-05012

v.

LIBERTY MUTUAL GROUP, a Massachusetts
Corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

    Defendants.

## PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION
## FOR PARTIAL SUMMARY JUDGMENT ON THE NUMBER OF OCCURRENCES

      Plaintiff Diocese of Duluth submits this reply in further support of its motion for partial summary judgment that the legal standard for determining the number of occurrences corresponds to the number of victims abused by each priest per year.

      Only four of the five insurers oppose the Diocese's Motion (the "Opposing Insurers"). The remaining insurer, Catholic Mutual, agrees with the Diocese's "bottom-line conclusion,"

200947.00001/105068898v.2

although it disagrees with the Diocese's analysis. *See* Dkt. No. 40 at 1. As demonstrated below, the Diocese is entitled to summary judgment based on three grounds. First, the test for determining the number of occurrences raises a question of law appropriate for summary judgment. Second, the leading cases nationwide determine the number of occurrences on a per victim, per priest, per year basis, and Minnesota law is consistent with the reasoning of such cases. Third, at best for the insurers, the term "occurrence" is ambiguous and, in accordance with Minnesota law, must be construed in favor of the Diocese. Accordingly, the Diocese is entitled to partial summary judgment.

I. **THE COURT SHOULD REJECT THE INSURERS' EFFORTS TO DELAY THE COURT'S RULING ON THE LEGAL TEST FOR THE NUMBER OF OCCURRENCES**

A. **The Test for Determining the Number of Occurrences Presents A Pure Question of Law**

The Opposing Insurers contend that the test for calculating the number of occurrences is a factual issue unsuitable for summary judgment. That is incorrect and there is not agreement even as between the defendant insurers in this case. Catholic Mutual notes that "[t]his Court can resolve this issue as a matter of law, based on the plain terms and applicable judicial decisions construing these terms." Dkt. #40 at 1. Courts in similar cases have resolved this issue as a matter of law. *See, e.g.*, *H.E. Butt Grocery Co. v. Nat'l Union Fire Ins.*, 150 F.3d 526, 528-29 (5th Cir. 1998) ("*H.E.B.*"); *Roman Catholic Diocese of Brooklyn v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 991 N.E.2d 666, 672 (N.Y. 2013). Cases cited by the insurers treat the issue as a matter of law. *See H.B. Fuller Co. v. U.S. Fire Ins. Co.*, 2012 WL 12894484, at *12 n. *18 (D. Minn. Mar. 2, 2012) ("The Court's decision is rooted in the language of the policy as interpreted in light of Minnesota law").

2

Even a cursory review of the insurers' briefs demonstrates no real dispute concerning the salient information necessary to rule on the motion:

- The policies at issue are standard commercial general liability ("CGL") policies.
- The relevant policy term is the definition of "occurrence."
- And the Diocese is alleged to have negligently supervised multiple clergy members who abused multiple minor victims.

Accordingly, no factual development is needed for the Court to rule on the Diocese's motion.

### B. The Insurers' Request for Discovery Does Not Justify Delay.

With the exception of Catholic Mutual, the insurers seek to delay resolution of the test for number of occurrences with pending discovery that CNA served two nights before its opposition to the Diocese's motion was due. Discovery is not necessary to determine the legal test itself. In fact, deciding now which test applies will help clarify the scope of discovery and streamline the issues.

### C. The Insurers' Attempt to Raise Ancillary Issues Does Not Justify Delay.

The Opposing Insurers raise a host of ancillary issues. None of those issues bear on this motion and all can be resolved at a later date, if necessary.

#### 1. Missing or Incomplete Policies

Some insurers assert that certain policies are incomplete or missing. But no insurer denies that its policies are standard CGL polices that provide occurrence-based coverage for bodily injury. No insurer disputes that the definition of occurrence in its policies differs

materially from the definition in any other CGL policies. And no insurer distinguishes the Diocese's case law on the basis that its policies contain unique language.

### 2. "Annualization" of Policy Limits

Some insurers who sold the Diocese policies with periods spanning more than one year contend that the multi-year policies cover occurrences on a "per period," rather than "per year" basis. The Diocese disagrees, contending that the per occurrence limits apply to each policy year separately, as if each year were a separate policy. Whether the per occurrence limits of the multiyear policies are "annualized" is a distinct issue from the test for determining the number of occurrences, and will be resolved, if necessary, by separate motion. But the Court may decide the legal test for the number of occurrences now and defer ruling on whether it applies (in the case of multi-year policies) on a "per year" or "per period" basis.

### 3. Expected or Intended and the Existence of Coverage

Finally, Liberty Mutual seeks the most extreme delay, contending that a ruling on the test for the number of occurrences must wait until every other issue in the case is resolved, including the following: (1) whether the occurrence was subjectively expected or intended by the insured, and (2) the ultimate issue of whether the Diocese is entitled coverage. Courts frequently grant partial summary judgment because it narrows issues. *See* Fed. R. Civ. P. 56 (permitting partial summary judgment). If Liberty Mutual's position were correct, no court would grant summary judgment on number of occurrences until after a full trial on the merits (be it a sexual abuse, pollution, asbestos or any other type of similar case). This is contrary to the letter and purpose of Rule 56. *See* William W. Schwarzer, *Summary Judgment and Case Management*, 56 *Antitrust L.J.* 213 (1987) ("Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are

designed 'to secure the just, speedy and inexpensive determination of every action. . . . Rule 56(d) also permits a court to decide a pivotal issue which, even if not conclusive of the entire controversy, may substantially narrow it.").[1]

## II. MINNESOTA LAW FAVORS A PER VICTIM, PER PRIEST, PER YEAR APPROACH TO THE NUMBER OF OCCURRENCES

### A. Minnesota Law Deems the Victim's Exposure to the Abuse As the Occurrence

The Opposing Insurers contend that Minnesota has adopted the "cause test" for determining the number of occurrences and that, under that test, the number of occurrences should be calculated based on the Diocese's alleged negligent supervision. As Catholic Mutual's Response highlights, the insurers disagree amongst themselves on how the cause test might apply in this case. In any event, the case law that the insurers cite demonstrates that Minnesota takes a context-specific approach to the test for the number of occurrences -- "courts do not blindly apply a 'cause test' or an 'effect test.'" *See, e.g.*, *H.B. Fuller*, 2012 WL 12894484, at *10 (applying the cause test in the product liability context).[2]

In the context of negligent supervision and sexual abuse, "most courts . . . have concluded that the sexual molestation of different children constitutes separate occurrences." *H.E.B.*, 150 F.3d at 532. The term "occurrence" is defined as an accident or a continuous or repeated *exposure* to conditions which results in injury. As demonstrated in the Diocese's

---

[1] *See also Bell Lumber and Pole Co. v. U.S. Fire Ins. Co.*, 60 F.3d 437, 441 (8th Cir. 1995) (the Eighth Circuit reviewed the district court's holding that the insurers were entitled to summary judgment based on a policy exclusion by "assuming, without deciding, that Bell Lumber established a prima facie case of insurance coverage under its CGL and umbrella liability policies issued by the carriers. Thus, the burden shifts to the carriers to prove the applicability of the pollution exclusion."); *In re Westerhoff*, 14 B.R. 472 (Bankr. D. Minn. 1981) ("Judicial economy requires the court resolve this legal question prior to any trial on the merits.").

[2] The insurers take the quote in *H.B. Fuller* that "Minnesota has not adopted the 'effects' test" out of context. 2012 WL 12894484 at *10 n.15. *H.B. Fuller* stands for the proposition that Minnesota has not made a "wholesale adoption of one 'test' or another." *Id.* at *10.

opening brief, these courts reason that negligent supervision alone would not trigger any obligation on the part of the insurers; rather, it is the victim's exposure to abuse that results in bodily injury. *See Interstate Fire & Casualty Co. v. Archdiocese of Portland*, 35 F.3d 1325, 1329 (9th Cir. 1994) ("The occurrence is not the Archdiocese's negligent supervision . . . but the 'exposure' of the boy to the negligently supervised priest[.]"); *H.E.B.*, 150 F.3d at 531 ("when the underlying basis for liability is negligent supervision, yet the damage is caused by an intervening intentional tort, the court cannot look past the immediate cause of the damage for purposes of the insurance policy.") These courts calculate the number of occurrences on a per victim, per priest, per year basis.

Consistent with these authorities, Minnesota law recognizes that the act of abuse is the occurrence. *See Redeemer Covenant Church v. Church Mutual Ins. Co.*, 567 N.W.2d 71, 81-82 (Minn. Ct. App. 1997) ("as a matter of law one is injured if one is sexually abused"). Accordingly, Minnesota law would determine the number of occurrences in this case based on the number of victims abused by each priest, per year.

### B. The Diocese's Approach Does Not Conflate Trigger of Coverage with Number of Occurrences

The trigger of coverage refers to the bodily injury that must happen during the policy period to implicate a policy. Trigger is interwoven with what constitutes an occurrence in the abuse context. But contrary to the insurers, the Diocese's approach does not confuse these concepts. The Diocese's position is not that the injury is the occurrence, but, rather, the exposure to the abuse that caused the injury is the occurrence. This is consistent with the plain wording of the policies, leading case law from other jurisdictions, and Minnesota law.

### C. Alternatively, Even if the Cause Test Applies, It Leads to the Same Result As the Diocese's Approach

Alternatively, if the Opposing Insurers were correct that the cause test applies, *Diocese of Winona v. Interstate Fire & Casualty Co.* ("*Winona*"), 89 F.3d 1386 (8th Cir. 1996), would still compel the conclusion that the number of occurrences is determined on a per victim, per priest, per year basis. As Catholic Mutual's Response demonstrates, *Winona* found that the abuse of one victim by a one priest constituted one occurrence per policy period. By extension, *Winona*'s reasoning would yield multiple occurrences per policy period if there were more than one victim or priest. Dkt. # 40 at 8 ("the inescapable logic of Winona is that each victim's injurious exposure to a negligently supervised abuser would constitute a separate occurrence").

### D. At Best for The Insurers, the Term "Occurrence" is Ambiguous and Must Be Construed in Favor of the Diocese

That the insurers cannot agree amongst themselves on the proper interpretation of "occurrence" demonstrates that the only other alternative is that the term "occurrence" is ambiguous. Policy language is ambiguous if it is subject to two or more reasonable interpretations. Although the Diocese does not concede the reasonableness of the insurers' interpretations, the parties in this case have presented at least three potential interpretations of the pivotal term "occurrence."

Indeed, CNA concedes in its opposition brief that there are multiple possible interpretations of the word "occurrence" as it is used in the policies, including "per policy," "per-bishop," or "per priest." Dkt. #42 at 13. In accordance with settled Minnesota law, the term

"occurrence" must be construed in favor of the Diocese. *See Eng'g & Const. Innovations, Inc. v. LH Bolduc Co.*, 825 N.W.2d 695, 705 (Minn. 2013).[3]

### E. The Insurers' Case Law Is Distinguishable On Its Face

The Opposing Insurers urge the Court to follow cases involving ground water contamination and asbestos product liability. Not only are these cases factually inapposite, but they do not all apply the same test, thus confirming Minnesota's context-specific approach to number of occurrences.

*Northern States Power Co. v. Fidelity & Casualty Co.*, 523 N.W.2d 657 (Minn. 1994) ("*NSP*"), for instance, found that groundwater contamination at two "adjacent sites" gave rise to one occurrence because "the discharge or escape of . . . contaminates has been so continuous and repetitive that the unidentified individual instances have merged into one continuing occurrence." *Id.* at 664. The continuous nature of this contamination is not analogous to the discrete and identifiable acts of abuse, which involve different victims and different priests. Notably, *NSP* did not consider the insured's *supervision* of the adjacent sites; rather, it grounded its decision in the continuous and repetitive nature of the *discharge*.

Additionally, as case law cited by the insurers notes, *NSP* does not represent a "sweeping" adoption of the cause test. *H.B. Fuller*, 2012 WL 12894484 at *9. This is confirmed by another case cited by the insureds, *Domtar, Inc. v. Niagra Fire Insurance Co.*, 2004 WL 376951 (Minn. Ct. App. Mar. 2, 2004), which involved groundwater contamination at six distinct

---

[3] Notably, *Winona* did not consider ambiguity because the parties agreed that there was one occurrence. *Diocese of Winona v. Interstate Fire & Cas. Co.*, 858 F. Supp. 1407, 1421 (D. Minn. 1994) ("The parties agree that Mrozka's abuse constitutes a single occurrence.").

8

sites. Instead of following *NSP*, *Domtar* found separate occurrences for each of the six sites, thus demonstrating that Minnesota does not unequivocally follow the cause test.[4]

Finally, *H.B. Fuller*, 2012 WL 12894484 found that the manufacture of asbestos-containing products at approximately nine plaints using the same formulas constituted one occurrence for the purpose of coverage with a $100,000 per occurrence self-insured retention. *Id*. at *11. Analogizing to *NSP*, the court reasoned that the insured's manufacture of asbestos was "the same kind of singular, continuous, and repetitive cause as chemical discharge . . . . the same manufacturing process was the ultimate, singular cause of the injuries in the products case." *Id*.[5] *H.B. Fuller* did not involve discrete and identifiable acts of abuse, as is the case here.

## **CONCLUSION**

For the reasons stated, the Diocese's motion should be granted and the Court should hold as a matter of law that the legal standard for determining the number of occurrences corresponds to the number of times a victim was abused limited to one such occurrence per-victim, per-priest, per-policy year.

---

[4]    The insurers may contend that *Domtar* indicates that number of occurrences is a factual issue. The *Domtar* court rejected the insured's contention that discovery established that the six sites were operated as a single unit and thus there was one occurrence. But the *Domtar* court did not conclude that the issue was factual. Instead, it found that the insured's factual contention was unsupported and failed on its merits.

[5]    CNA also relies on *Farmers Insurance Exchange v. Hallaway*, 564 F. Supp. 2d 1047 (D. Minn. 2008), which found that three defamatory e-mails constituted a single occurrence. Dkt. No. 42 at 12. In addition to being factually inapposite, the *Hallaway* court relied on *American Commerce Insurance Brokers, Inc. v. Minnesota Mutual Fire and Casualty Co.*, 551 N.W.2d 224 (Minn. 1996), without recognizing that *American Commerce* construed a "related" act provision in an employee dishonest policy. The reasoning of these cases should not be extended to this case because CGL policies lack related act provisions. CNA also cites *Cargill, Inc. v. Liberty Mutual Insurance Co.*, 488 F. Supp. 49, 53 (D. Minn. 1979), *aff'd per curium*, 621 F.2d 275 (8th Cir. 1980), which involved a product defect. Dkt. No. 42 at 10. Not only did *Cargill* involve a different situation than here, subsequent decisions have refused to follow it. *See H.B. Fuller*, 2012 WL 12894484 at *9 ("*Cargill* is not precedential on this question of Minnesota law").

Dated: February 7, 2017

        Respectfully submitted,
        **BLANK ROME LLP**

By: /s/ *James R. Murray*
    James R. Murray (admitted *pro hac vice*)
    1825 Eye Street NW
    Washington, DC 20006
    Telephone: (202) 420-3409
    Facsimile: (202) 420-2201
    jmurray@blankrome.com

    Jared Zola (admitted *pro hac vice*)
    The Chrysler Building
    405 Lexington Avenue
    New York, New York 10174
    Telephone: (212) 885-5209
    Facsimile: (917) 591-8538
    jzola@blankrome.com

    -and-

    **GRAY PLANT MOOTY**
     **MOOTY & BENNETT, P.A.**

By: /s/ *Phillip L. Kunkel*
    Phillip L. Kunkel (#058981)
    Nicholas N. Nierengarten (#079169)
    1010 West Germain Street, Suite 500
    Saint Cloud, MN 56301
    Telephone: (320) 202-5335
    Facsimile: (320) 252-4482
    Phillip.kunkel@gpmlaw.com
    Nicholas.nierengarten@gpmlaw.com

    *Counsel for Diocese of Duluth*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No.: 15-50792 |
| Diocese of Duluth, | Chapter 11 |
| Debtor-in-Possession. | |

| | |
|---|---|
| Diocese of Duluth, | |
| Plaintiff, | |
| | Adversary Proceeding No.: 16-05012 |
| v. | |
| LIBERTY MUTUAL GROUP, a Massachusetts Corporation; CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA, a Nebraska corporation; FIREMAN'S FUND INSURANCE COMPANY, a California corporation; CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin corporation and THE CONTINENTAL INSURANCE COMPANY, an Illinois corporation, | |
| Defendants. | |

## CERTIFICATE OF SERVICE

I, Abigail M. McGibbon, hereby certify that on the 7th day of February 2017, I caused a true and correct copy of the foregoing *Plaintiff's Reply In Support of Its Motion for Partial Summary Judgment on the Number of Occurrences* to be served on the following parties in the manner indicated below.

VIA US Mail
**Catholic Mutual Relief Society of America**
Everett J. Cygal
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 600
Chicago, IL 60606
ecygal@shiffhardin.com

VIA CM/ECF
**Catholic Mutual Relief Society of America**
Christopher J. Knapp
BARNES & THORNBURG LLP
225 S 6th Street
STE 2800 Minneapolis, MN 55402
Chirstopher.knapp@btlaw.com

VIA US Mail
**Fireman's Fund Insurance Company**
Charles E. Jones
MOSS & BARNETT
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
Charles.jones@lawmoss.com

VIA CM/ECF
**The Diocese of Duluth**
BLANK ROME LLP
James R. Murray
1825 Eye Street NW
Washington, DC 20006
Jmurray@blankrome.com

VIA CM/ECF
**The Diocese of Duluth**
BLANK ROME LLP
Jared Zola
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
jzola@blankrome.com

VIA US Mail
**The Continental Insurance Company**
Laura McNally
LOEB & LOEB LLP
2321 North Clark Street
Suite 2300
Chicago, IL 60654
lmcnally@loeb.com

VIA CM/ECF
**The Diocese of Duluth**
ELSAESSER JARZABEK ANDERSON
ELLIOTT & MACDONALD, CHTD
Bruce A. Anderson
320 East Neider Ave., Suite 102
Coeur d'Alene, ID 83815
baafiling@ejame.com
brucea@ejame.com

VIA US Mail
**Church Mutual Insurance Company**
Christian A. Preus
BASSFORD REMELE, P.A.
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
cpreus@bassford.com

VIA CM/ECF
**The Continental Insurance Company**
BASSFORD REMELE, P.A.
Jeanne H. Unger
Jeffrey D. Klobucar
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
junger@bassford.com
jklobucar@bassford.com

VIA CM/ECF
**Liberty Mutual Insurance Company**
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Nancy D. Adams
One Financial Center
Boston, Massachusetts 02111
nadams@mintz.com

VIA CM/ECF
**Liberty Mutual Insurance Company**
BROWNSON AND BROWNSON &
LINNIHAN, PLLP
Kristi K. Brownson
225 South Sixth Street, Suite 4800
Minneapolis, MN 55402
kbrownson@brownsonlinnihan.com

VIA CM/ECF
**The Diocese of Duluth**
ELSAESSER JARZABEK ANDERSON
ELLIOTT & MACDONALD, CHTD
J. Ford Elsaesser
123 South Third Avenue, Suite 24
Sandpoint, ID 83864
ford@ejame.com

Dated: February 7, 2017

/s/ Abigail M. McGibbon
Abigail M. McGibbon (#393263)
80 South 8th Street, STE 500
Minneapolis, MN 55402
Telephone: 612-632-3009
Fax: 612-632-4009
Abigail.mcgibbon@gpmlaw.com

13