UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No.:  15-50792 |
| Diocese of Duluth, | Chapter 11 |
| Debtor-in-Possession. | |

| | |
|---|---|
| Diocese of Duluth, | |
| Plaintiff, | |
| v. | Adversary Proceeding No.: 16-05012 |
| LIBERTY MUTUAL GROUP, a Massachusetts Corporation; CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA, a Nebraska corporation; FIREMAN'S FUND INSURANCE COMPANY, a California corporation; CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin corporation and THE CONTINENTAL INSURANCE COMPANY, an Illinois corporation, | |
| Defendants. | |

**PLAINTIFF'S REPLY IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT THAT THE PROFESSIONAL SERVICES EXCLUSION IN LIBERTY MUTUAL'S POLICIES DOES NOT APPLY TO THE DIOCESE'S CLAIMS FOR COVERAGE**

The Diocese's motion seeks partial summary judgment that the professional services exclusion on its face applies solely to claims made for coverage pursuant to the Policies' Premises Medical Payments Insurance Coverage Part, and not the Diocese's claims for bodily

200947.00001/105074006v.1

injury coverage. Liberty Mutual devotes the last page and a half of its 25-page brief to the Diocese's argument.

1. **The Professional Services Exclusion Applies Solely to Premises Medical Payments.**

Liberty Mutual fails to demonstrate that the exclusionary language found in the Policies' Exclusion of Medical Payments For Students Endorsement applies to anything other than claims for medical payments coverage that Liberty Mutual agreed to pay in the Premises Medical Payments Insurance Coverage Part.

First, Liberty Mutual is unequivocally seeking to avoid its coverage obligations to the Diocese by invoking the professional service language found in the Policies' Exclusion of Medical Payments For Students Endorsement. *See* Liberty Mutual Counterclaim (Dkt. 263) ¶¶ 32, 43. Liberty Mutual's response regarding form numbers and physical proximity of two forms is a confusing discussion of the Policies. Irrespective of the form number, the endorsement's plain language controls.

Second, Liberty Mutual's argument that the page heading on the Policies' Exclusion of Medical Payments For Students Endorsement stating that it modifies the Comprehensive General Liability Insurance coverage part is unavailing. Liberty Mutual's conclusory statement that "there can be no dispute" that the Comprehensive General Liability Insurance and the Medical Payments Insurance are separate and distinct coverages is wrong because the Premises Medical Payments coverage was part of the Comprehensive General Liability Insurance.

The Policies' declarations page states that the Premises Medical Payments coverage is added to the Policies by endorsement. *See, e.g.*, Declarations (Dkt. 43-4 at 2 of 6). The insuring

2

agreement providing Premises Medical Payments coverage is stated in the endorsement as "Coverage E." *See, e.g.*, Form 26628 (Dkt. 43-4 at 5 of 6). This coverage is "Coverage E" because Coverages A, B, C and D are standard form coverages for bodily injury coverage and property damage coverage for general liability and auto liability. In other words, the Premises Medical Payments coverage is part of and subsumed by the Comprehensive General Liability Insurance. Other policy documents confirm this. The Premises Medical Payments coverage was made part of the "General-Automobile Liability Policy" as stated on the upper right corner of policy form 26628. *See, e.g.*, Form 26628 (Dkt. 43-4 at 5 of 6). It also states that the premium charged for and premises covered by the Premises Medical Payment Coverage is set forth on the "attached certificates." *Id.* The certificates explicitly referenced in the Premises Medical Payment Coverage form are stated on a "General Liability Schedule." *Id.* at 3 of 6, 4 of 6.

By modifying the Premise Medical Payments Insurance coverage, the Policies' Exclusion of Medical Payments For Students Endorsement is modifying the Comprehensive General Liability Insurance because the Premise Medical Payments Insurance coverage was added to the Comprehensive General Liability Insurance coverage.[1] Accordingly, the so-called professional services exclusion in the Policies' Exclusion of Medical Payments For Students Endorsement solely modifies and limits medical payments coverage that Liberty Mutual agreed to pay in the Premises Medical Payments Insurance Coverage Part.

On these grounds alone, the Court should grant the Diocese's motion and does not need to consider the remaining points below.

---

[1] Liberty Mutual failed to address the Diocese's uncontroverted assertion that other of the Policies' endorsements explicitly state that they are modifying the Bodily Injury Coverage (also part of the Policies' Comprehensive General Liability Insurance) when that was Liberty Mutual's intent. *See* Opening Brief at 11. Nor did Liberty Mutual refute that the Policies are, at best, ambiguous and must be read in the Diocese's favor. *See id.*

**2.    The Claims Against The Diocese Are Not Due To The Rendering of Professional Services.**

Liberty Mutual did not, because it could not, cite a single authority in any jurisdiction interpreting an Exclusion of Medical Payments For Students Endorsement as limiting Bodily Injury Coverage. Rather, it cited cases addressing insurance policies that included standalone Professional Service Exclusions, or affirmatively provided Professional Services Coverage. Not a single case involved exclusionary language stated in an Exclusion of Medical Payments For Students Endorsement and apply to Bodily Injury Coverage.

As predicted in the Diocese's opening brief, Liberty Mutual is forced to rely heavily on the inapposite decision in *Houg v. State Farm Fire & Cas. Co.*, 509 N.W.2d 590, 592 (Minn. Ct. App. 1993). Liberty Mutual states in footnote 36 that the professional service exclusionary language in the Exclusion of Medical Payments For Students Endorsement "contains the same language as that analyzed in the Houg decision." *See* Opp. Br. at fn. 36. That is not correct. The salient policy language in *Houg* is in the business liability portion of the policy and states that coverage does not apply: "to ***bodily injury*** or property damage due to rendering of or failure to render any professional service or treatments." *Houg*, 509 N.W.2d at 591. Liberty Mutual could have, but did not, state that the exclusion in the Policies applies to bodily injury coverage. Additionally, unlike here, *Houg* involved a wife who began seeing Houg (a pastor) for "family, marital, emotional and spiritual counseling," claimed that Houg was her "minister, counselor and therapist," and "her claimed harm arose out of tainted professional services" rendered by someone the church hired. *Id.* at 591, 593. Houg undertook a professional role as a therapist and the underlying claimant alleged harm arising from tainted professional services.

4

Liberty Mutual cites *Houg* in an effort to analogize the marital therapy professional services provided by a priest in that case with the Diocese's "religious, educational and youth programs" and then concludes without support that these activities were "professional services." *See* Opp. Br. at 19. Liberty Mutual has done nothing to refute the Diocese's assertion in its opening brief that the Diocese and its priests were not "professionals" as that term is described in Minnesota case law and did not engage in professional services.[2] Its attempt to distinguish the Diocese's case law fares no better.[3] The most glaring example of this is Liberty Mutual's treatment of *Mork Clinic v. Fireman's Fund Ins. Co.*, 575 N.W.2d 598 (Minn. Ct. App. 1998) (despite Liberty Mutual's failed attempt to distinguish *Smith* as applying solely to "perpetrator cases," *Mork* involves alleged negligent hiring and supervision of a wrongdoer committing sexual abuse and cites *Smith* as the governing authority).

Liberty Mutual contends that *Mork* does not control because the clinic's negligence in that case was in the nature of "administrative actions not directly affecting the work of a physician in his office." *See id.* at 604; Opp. Br. at 22. Liberty Mutual omits the immediately following citations in the *Mork* decision, which make clear that the negligent hiring and supervision of the alleged wrongdoer are the administrative actions of the insured and are not due to the rendering of professional services even if the wrongdoer's conduct was committed in the course of a professional service. *See Mork*, 575 N.W.2d at 604 (involving a coverage claim asserted by an insured medical clinic for negligent hiring and supervision arising from the acts of

---

[2] Liberty Mutual's case law is inapposite because it involves professionals. *See Safeco Ins. Co. v. Skar,* No. 10-CV-4789, 2011 U.S. Dist. LEXIS 82548 (D. Minn. 2011) (Skar was a "state-licensed professional real estate agent" and "does not explicitly contest the characterization of his former job as a 'professional service.'"); *Capitol Indem. Corp. v. Especially For Children*, Inc., No. 01-2425, 2002 U.S. Dist. LEXIS 17121 (D. Minn. Aug. 29, 2002) (finding for the insured on the duty to defend under a professional liability policy because the day care provider purported to provide care "by qualified teachers and aides" who failed to provide care).

[3] Liberty Mutual does not even attempt to distinguish *Shelter Ins. Co. v. Hildreth*, 255 F.3d 921, 925 (8th Cir. 2001), which describes the significant professional activity required for an insured to have provided "professional services."

an allergist employed by the clinic who allegedly had sexually abused patients during the course of medical examinations).[4]  *Mork* is controlling authority for the Diocese's contention that negligent hiring and supervision of alleged sexual abuse perpetrators are not professional services as a matter of Minnesota law.

Liberty Mutual attempts to create a fact issue by alleging that "but for the immersion" in religious training, education and youth services, the abuse would not have occurred.  This begs the question whether these religious activities are performed by professionals and are professional services.  In an attempt to prove this, Liberty Mutual cites the definition of "Chaplain or Priest Malpractice" insurance policies that are available on the marketplace.  Liberty Mutual cites only the first and not the second sentence of the definition.  *See* Opp. Br. at 18.  The second sentence states:  "This coverage is especially necessary for any counseling activities performed by these individuals, as suits against religious counselors for mental anguish have become more prevalent."  *See* Glossary of Insurance & Risk Management Terms, Chaplain or Priest Malpractice, IRMI ONLINE (Feb. 6, 2017), https://www.irmi.com/online/insurance-glossary/terms/c/chaplain-or-priest-malpractice.aspx.  This is precisely the type of insurance policy that would cover the pastor in the *Houg* case for counseling that Houg undertook as a therapist.  It has no relevance, however, to the claims asserted against the Diocese.

The claims against the Diocese are not *due to* the rendering of *professional services*.

---

[4]  Liberty Mutual omitted the following citations from the *Mork* decision:

> "*See Community Hosp. at Glen Cove v. American Home Assurance Co*., 171 A.D.2d 639, 567 N.Y.S.2d 122, 123 (1991) (claims of negligent hiring, training and supervision of physician did not "arise out of" rendering of professional services); *Propis v. Fireman's Fund Ins. Co*., 112 A.D.2d 734, 492 N.Y.S.2d 228, 230 (1985) (acts relating to hiring and firing were not professional activities). This view of the case is sustained by *Redeemer*, 567 N.W.2d at 77 [567 N.W.2d 71 (Minn.App.1997)], where unsupervised intentional torts of an employee were examined independently of alleged wrongdoing by the tortfeasor's employer."

### 3. The Exclusion Asserted in Liberty Mutual's Counterclaim Should Be Resolved on Partial Summary Judgment.

Liberty Mutual goes to great lengths asserting that the resolution of this issue is premature, in part because discovery is lacking. The Diocese filed this motion on December 19, 2016 and did not receive any discovery requests until 7:45 p.m. on February 1, 2017—two nights prior to the date the insurers' opposition briefs were due. Liberty Mutual has yet to propound any discovery in this matter.

Liberty Mutual cannot dispute that it asserted a counterclaim against the Diocese seeking to ***avoid coverage*** under the Policies relying on the so-called professional services exclusion. *See* Liberty Mutual Counterclaim (Dkt. 263) ¶¶ 32, 43. Adjudication of that aspect of its counterclaim is ripe for summary judgment. *See, e.g.*, *Bell Lumber and Pole Co. v. U.S. Fire Ins. Co.*, 60 F.3d 437, 441 (8th Cir. 1995) (the Eighth Circuit reviewed the district court's holding that the insurers were entitled to summary judgment based on a policy exclusion by "assuming, without deciding, that Bell Lumber established a prima facie case of insurance coverage under its CGL and umbrella liability policies issued by the carriers. Thus, the burden shifts to the carriers to prove the applicability of the pollution exclusion."). In other words, when a liability insurer seeks to bar coverage with a policy exclusion, the court may assume without deciding that the insured proved its *prima facie* case for purposes of determining whether the policy exclusion applies, or not. *See In re Westerhoff*, 14 B.R. 472 (Bankr. D. Minn. 1981) ("Judicial economy requires the court resolve this legal question prior to any trial on the merits.").[5]

---

[5] Courts frequently grant partial summary judgment because it narrows issues. *See* Fed. R. Civ. P. 56 (permitting partial summary judgment). If Liberty Mutual's position were correct, no court would grant summary judgment on a policy exclusion until after a full trial on the merits (be it a sexual abuse, pollution, asbestos or any other type of similar case). *See* Fed. R. Civ. P. 56 (permitting partial summary judgment); *see also* William W. Schwarzer, *Summary Judgment and Case Management*, 56 *Antitrust L.J.* 213 (1987) ("Summary judgent procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action. . . .

4. **Although Immaterial to this Motion, the Diocese's Claims Are Covered.**

There can be no serious dispute that that the underlying claims against the Diocese are covered by the standard form occurrence-based general liability policies at issue in this lawsuit. Defendant Catholic Mutual says it best:

> The underlying claims assert that the Diocese is liable for the claimants' injurious exposure to negligently supervised agents of the Diocese. There is no dispute that Catholic Mutual's occurrence-based coverage applies to such negligent supervision claims, if the injury is unexpected and unintended by the Diocese, because the Certificate promises that Catholic Mutual will cover the Diocese's obligation to pay damages for bodily injury caused by an "occurrence," defined in standard terms as "an accident, including continuous or repeated exposure to conditions, which results in bodily injury . . . neither expected nor intended from the standpoint of the [Diocese]."

*See* Catholic Mutual Br. (Dkt. 40) at 5.

All of the policies at issue in this case involve similar standard-form insuring language, including the 1964-1967 Liberty Mutual policy. *See* policy (Dkt. 43-2) at Insuring Agreement B. The words are not identical, but any differences are immaterial. It is undisputed that the Policies' declarations pages provide Bodily Injury coverage on a per occurrence basis. *See* Declarations Pages, (Dkt. 12-1 at DD_INS_00183; Dkt. Dkt. 12-1 at DD_INS_00184).

**CONCLUSION**

Based on the foregoing, the Court should hold, as a matter of law, that the professional services exclusion in the Policies' Exclusion of Medical Payments For Students Endorsement applies solely to claims made for coverage pursuant to the policies' Premises Medical Payments Insurance Coverage Part, and not the Diocese's claims for coverage under the Bodily Injury Liability Coverage. Even if it does not, the Court should hold, as a matter of law, that the

---

Rule 56(d) also permits a court to decide a pivotal issue which, even if not conclusive of the entire controversy, may substantially narrow it.").

Diocese's claims are not due to the rendering of a professional service or omission thereof. The Court should grant partial summary judgment in the Diocese's favor.

Dated: February 7, 2016

                                          Respectfully submitted,

                                          **BLANK ROME LLP**

By: /s/ *James R. Murray*
     James R. Murray (admitted *pro hac vice*)
     1825 Eye Street NW
     Washington, DC 20006
     Telephone: (202) 420-3409
     Facsimile: (202) 420-2201
     jmurray@blankrome.com

     Jared Zola (admitted *pro hac vice*)
     The Chrysler Building
     405 Lexington Avenue
     New York, New York 10174
     Telephone: (212) 885-5209
     Facsimile: (917) 591-8538
     jzola@blankrome.com

     -and-

     **GRAY PLANT MOOTY**
      **MOOTY & BENNETT, P.A.**

By: /s/ *Phillip L. Kunkel*
     Phillip L. Kunkel (#058981)
     Nicholas N. Nierengarten (#079169)
     1010 West Germain Street, Suite 500
     Saint Cloud, MN 56301
     Telephone: (320) 202-5335
     Facsimile: (320) 252-4482
     Phillip.kunkel@gpmlaw.com
     nicholas.nierengarten@gpmlaw.com

     *Counsel for the Diocese of Duluth*

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No.: 15-50792 |
| Diocese of Duluth, | Chapter 11 |
| Debtor-in-Possession. | |

Diocese of Duluth,

      Plaintiff,

                                                                          Adversary Proceeding No.: 16-05012

v.

LIBERTY MUTUAL GROUP, a Massachusetts
Corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

      Defendants.

## CERTIFICATE OF SERVICE

      I, Abigail M. McGibbon, hereby certify that on the 7th day of February 2017, I caused a true and correct copy of the foregoing *Plaintiff's Reply In Support of Its Motion for Partial Summary Judgment that the Professional Services Exclusion In Liberty Mutual's Policies Does Not Apply to The Diocese's Claims for Coverage* to be served on the following parties in the manner indicated below.

10

VIA US Mail
**Catholic Mutual Relief Society of America**
Everett J. Cygal
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 600
Chicago, IL 60606
ecygal@shiffhardin.com

VIA CM/ECF
**Catholic Mutual Relief Society of America**
Christopher J. Knapp
BARNES & THORNBURG LLP
225 S 6th Street
STE 2800 Minneapolis, MN 55402
Chirstopher.knapp@btlaw.com

VIA US Mail
**Fireman's Fund Insurance Company**
Charles E. Jones
MOSS & BARNETT
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
Charles.jones@lawmoss.com

VIA CM/ECF
**The Diocese of Duluth**
BLANK ROME LLP
James R. Murray
1825 Eye Street NW
Washington, DC 20006
Jmurray@blankrome.com

VIA US Mail
**The Continental Insurance Company**
Laura McNally
LOEB & LOEB LLP
2321 North Clark Street
Suite 2300
Chicago, IL 60654
 lmcnally@loeb.com

VIA CM/ECF
**The Diocese of Duluth**
ELSAESSER JARZABEK ANDERSON
ELLIOTT & MACDONALD, CHTD
Bruce A. Anderson
320 East Neider Ave., Suite 102
Coeur d'Alene, ID 83815
baafiling@ejame.com
brucea@ejame.com

VIA US Mail
**Church Mutual Insurance Company**
Christian A. Preus
BASSFORD REMELE, P.A.
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
cpreus@bassford.com

VIA CM/ECF
**The Continental Insurance Company**
BASSFORD REMELE, P.A.
Jeanne H. Unger
Jeffrey D. Klobucar
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
 junger@bassford.com
jklobucar@bassford.com

11

| | |
|---|---|
| VIA CM/ECF<br>**The Diocese of Duluth**<br>BLANK ROME LLP<br>Jared Zola<br>The Chrysler Building<br>405 Lexington Avenue<br>New York, NY 10174<br>jzola@blankrome.com | VIA CM/ECF<br>**Liberty Mutual Insurance Company**<br>MINTZ, LEVIN, COHN, FERRIS,<br>GLOVSKY AND POPEO, P.C.<br>Nancy D. Adams<br>One Financial Center<br>Boston, Massachusetts 02111<br>nadams@mintz.com |
| VIA CM/ECF<br>**Liberty Mutual Insurance Company**<br>BROWNSON AND BROWNSON &<br>LINNIHAN, PLLP<br>Kristi K. Brownson<br>225 South Sixth Street, Suite 4800<br>Minneapolis, MN 55402<br>kbrownson@brownsonlinnihan.com | VIA CM/ECF<br>**The Diocese of Duluth**<br>ELSAESSER JARZABEK ANDERSON<br>ELLIOTT & MACDONALD, CHTD<br>J. Ford Elsaesser<br>123 South Third Avenue, Suite 24<br>Sandpoint, ID 83864<br>ford@ejame.com |

| | |
|---|---|
| Dated: February 7, 2017 | /s/ Abigail M. McGibbon<br>Abigail M. McGibbon (#393263)<br>80 South 8th Street, STE 500<br>Minneapolis, MN 55402<br>Telephone: 612-632-3009<br>Fax: 612-632-4009<br>Abigail.mcgibbon@gpmlaw.com |