**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MINNESOTA**

---

| | |
|---|---|
| In re: | Bankruptcy Case No.: 15-50792 |
| Diocese of Duluth, | Chapter 11 |
|     Debtor-in-Possession. | |

---

Diocese of Duluth,

    Plaintiff,

                                                           Adversary Proceeding No.: 16-05012

v.

LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

    Defendants.

---

**PLAINTIFF'S REPLY IN SUPPORT**
**OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING**
**THE EXISTENCE OF THE GREAT AMERICAN INSURANCE POLICY**
_____

The Diocese's motion seeks partial summary judgment that the Great American Policy (the "Policy") exists. Liberty Mutual contends that it is "unrebutted" that Great American did not sell the Diocese a policy in the 1964 to 1967 policy period. To the contrary, the contemporaneous evidence that the Diocese received from Great American at the time is dispositive. Liberty Mutual's defense that the contemporaneous coverage letter and claim payment it made under the Policy were "mistakes," is insufficient to defeat the Diocese's motion.

1. **Liberty Mutual's Attempt to Disown the Contemporaneous Evidence Fails.**

Liberty Mutual's opposition hinges on its conclusion that Great American's six-page reservation of rights letter to the Diocese in 2005 setting forth every requisite element to prove the material terms and conditions of the Policy, and its subsequent claim payment of $250,000 (two and a half times the Agricultural Insurance Co. policy limit) were mistakes. As described in the Diocese's opening memorandum of law, Great American sent the Diocese a letter in September 2005 quoting several pages of policy language, including all material terms and conditions of the Policy, including the limits of $1 million of coverage per occurrence. *See* Letter (Dkt. 11-1 at 25-30 of 74). In 2006, Great American paid a claim well in excess of the Agricultural Insurance Co. $100,000 limits that Liberty Mutual asserts existed at the time of the loss, but well within the Policy's $1 million limits of liability stated in its reservation of rights letter. *See* Letter Enclosing Check (Dkt. 11-1 at 38 of 74). Liberty Mutual's attempt to explain away these contemporary admissions by fails as a matter of law.

2. **Liberty Mutual Misstates Case Law.**

Liberty Mutual asserts that the Diocese must first establish that the Policy existed ***before it may present secondary evidence that the Policy existed***. The case law on which Liberty Mutual relies does not make any such holding. In *Continental Insurance Co. v. Catholic Bishop of N. Alaska*, 414 B.R. 552 (Bankr. D. Alaska 2009), the court did not, as Liberty Mutual suggests, prevent the church from presenting secondary evidence to prove a missing policy. The Court stated the applicable legal standard, as follows:

> When an insurance policy has been lost or is missing through no fault of the insured, and the insurer cannot produce copies of the policy, the insured may prove the existence of the policy and its terms through the offer of "secondary evidence."

*Catholic Bishop of N. Alaska*, 414 B.R. at 555.

The court ultimately held, in part, that the documents on which the church relied "fail to constitute sufficient secondary evidence of the nature, conditions or terms of a liability policy." *Id.* at 567. Unlike here, the documents there did not include a six-page letter from the insurer stating all material policy terms, conditions and limits. The insured there also did not proffer the insurer's payment records evidencing that it paid claims under the policy in excess of the limits Liberty Mutual suggests existed at the time.

Liberty Mutual's reliance on a footnote in *Durabla Mfg. Co. v. Continental Cas. Co.*, 2000 U.S. Dist. LEXIS 12373 (D. Minn. June 9, 2000) is equally unavailing. The court did not "decline to consider missing policies," as Liberty Mutual asserts. *See* Opp. Br. at 10. The court noted that the insured failed to present direct or sufficient circumstantial evidence of the missing policies and that the insured had previously advised the court in legal pleadings that it "was not pursuing coverage under any 'lost policies.'" *See id.* at fn. 13. Nothing in *Durabla* suggests that had the insured not made such a representation to the court and had presented sufficient circumstantial evidence, the court would decline to consider that evidence.

3.     **Liberty Mutual's Attempt to Distinguish the Diocese's Case Law Falls Short.**

Liberty Mutual fails to distinguish *Bell Lumber and Pole Co. v. U.S. Fire Ins. Co.*, 847 F. Supp. 738, *aff'd* 60 F.3d 437 (8th Cir. 1995). Liberty Mutual notes that Bell's evidence in that case included a declarations page indicating that a CGL policy was issued, providing the policy number and the effective dates of coverage, together with other secondary evidence that the coverage was on a standard, pre-printed form. *See* Opp. Br. at 13. Liberty Mutual then states without citation that "the only evidence that the Diocese has provided is a declarations page for policy number CLA 770553 issued by Agricultural Insurance Company; the Diocese has not provided any evidence of a second policy, with a policy number of XOV 0770553." *Id.* at 13.

3

That is not true. The Diocese offered nearly identical evidence as did the prevailing policyholder in *Bell* and, in addition, offered proof that Great American paid $250,000 toward a claim asserted under the Policy. Great American's 2005 letter states the Policy's "XOV" policy number, the limits and the terms and conditions—which terms and conditions, the Diocese demonstrated in its opening memorandum of law, are identical to Great American's standard, pre-printed CGL forms. *See* Opening Br. at 4-9. Based on *Bell* alone, the Diocese has submitted the requisite proof to prevail on this motion as a matter of law.

Unable to distinguish *American States Insurance Co. v. Mankato Iron & Metal, Inc.*, 848 F. Supp. 1436 (D. Minn. 1993) on any material ground, Liberty Mutual makes much of the fact that the insured in that case submitted affidavits from its employees stating that the insured purchased the coverage at issue. *See* Opp. Br. at 12. Liberty Mutual extrapolates from the facts of that case a new element of proving a missing policy under Minnesota law, which the case law does not require. It asserts that the Diocese is required to proffer affidavits from its employees stating that the Diocese purchased the Policy. The Policy was issued more than 50 years ago. Accordingly, any such requirement is not only nonexistent under Minnesota law, it is impractical because many missing policies at issue in long-tail liability cases are from decades earlier.

4. **Liberty Mutual's Purported Facts In Dispute Are Immaterial.**

Liberty Mutual asserts several facts in an effort to cloud the elements of proving the missing policy that the Diocese has met. The following are examples:

- The "XOV" prefix. Even if a Great American computer program automatically changed the prefix on all policies and added a number to the existing policy number (Opp. Br. at 4-6), this does not detract from the undisputed fact that an individual authorized by Great American to reserve the company's right to deny an insured coverage authored a letter to the Diocese, citing six-pages of standard-form CGL policy language and a $1 million per occurrence limit.

4

- The Unknown Author. Liberty Mutual notes that Ms. Dickie did not have the Policy, she was relying on claim notes authored by Scott McElroy of Great American and that outside coverage counsel drafted the 2005 reservation of rights letter. *See* Opp. Br. at 8-9. ***None of these asides alter the uncontested facts***: Great American ***conceded*** the policy's terms, conditions, number and limits in that letter and then paid a quarter of a million dollars from the Policy. It is immaterial that someone other than Ms. Dickie wrote the letter and that Mr. McElroy's claims notes apparently support the existence of the Policy, as well.

- The Policy Form Number. At her deposition, Ms. Dickie was handed a Great American specimen form policy (by her own counsel), looked at number printed on the form and stated that the "66" at the end of the form number means it was first used in 1966. That testimony does not suggest that Great American used different language prior to 1966 in any material provisions cited in the 2005 letter. If it had, the Diocese would have expected an affidavit from Great American stating as much.

- Ms. Dickie Agrees With Her Lawyers. Liberty Mutual's opposition brief suggests that Ms. Dickie testified at her deposition that she had made a mistake. Her own counsel showed Ms. Dickie a letter written by another lawyer at her lawyer's law firm stating that Ms. Dickie's letter was written in error. *See* Dickie Tr. (Dkt. 46-9 at 15 of 17) 83:4-22. When asked "why" Ms. Dickie agreed with her lawyer, Ms. Dickie responded that her lawyer had shown her a copy of the Agricultural Insurance Co. policy and the limits of *that* policy were $100,000 per occurrence and not the Policy's $1,000,000 per occurrence limits—so her attorney was correct that the letter was wrong. This testimony falls well short of creating a disputed issue of material fact and, if anything, shows that Ms. Dickie was doing nothing more than reading the documents that her lawyer presented to her. Liberty Mutual's opposition does not even attempt to refute Ms. Dickie's testimony that she did not recall any situation in her career where she paid a settlement that was in excess of limits and would never recommend doing do. *See* Opening Br. at 10-11.

Liberty Mutual's injection of immaterial facts does not preclude summary judgment in the Diocese's favor.

    **5.** **Liberty Mutual's Purported Fact Dispute Is Not Genuine.**

Liberty Mutual's purported facts in dispute are not only immaterial, the dispute is not genuine. Conclusory statements of "mistake" made more than a decade after contemporaneous admissions are insufficient to defeat the Diocese's properly supported motion for partial summary judgment. Liberty Mutual failed to offer any evidence regarding origin of the Policy's

5

terms and conditions quoted in its 2005 reservation of rights letter, nor did it proffer a single fact explaining the Policy's $1 million limit of liability as quoted in the letter.  This evidence, if it existed, would be solely in Liberty Mutual's possession.  Liberty Mutual's opposition brief, however, is bereft of any fact that would allow a jury to conclude that it paid a $250,000 claim for any reason other than the policy limits exceeded that amount.

Summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  In *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253 (1968), the Supreme Court affirmed a grant of summary judgment for an antitrust defendant where the issue was whether there was a genuine factual dispute as to the existence of a conspiracy.  The Court noted Rule 56(e)'s provision that a party opposing a properly supported motion for summary judgment "'may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial.'"  *Id.* at 288-89.  Here, merely alleging "mistake" without specific facts to support it is insufficiently "genuine" to defeat summary judgment as a matter of law.  Under that logic, an insurer could always plead "mistake" and demand a jury on the issue as a last resort.

## CONCLUSION

The Diocese has offered sufficient secondary evidence to prove the existence of the Great American Policy as a matter of law.  The Court should grant partial summary judgment in the Diocese's favor.

Dated:  February 8, 2017

        Respectfully submitted,

        **BLANK ROME LLP**

By:  /s/ *James R. Murray*
     James R. Murray (admitted *pro hac vice*)
     1825 Eye Street NW
     Washington, DC 20006
     Telephone: (202) 420-3409
     Facsimile: (202) 420-2201
     jmurray@blankrome.com

     Jared Zola (admitted *pro hac vice*)
     The Chrysler Building
     405 Lexington Avenue
     New York, New York 10174
     Telephone: (212) 885-5209
     Facsimile: (917) 591-8538
     jzola@blankrome.com

     -and-

     **GRAY PLANT MOOTY**
      **MOOTY & BENNETT, P.A.**

By:  /s/ *Phillip L. Kunkel*
     Phillip L. Kunkel (#058981)
     Nicholas N. Nierengarten (#079169)
     1010 West Germain Street, Suite 500
     Saint Cloud, MN 56301
     Telephone: (320) 202-5335
     Facsimile: (320) 252-4482
     Phillip.kunkel@gpmlaw.com
     Nicholas.nierengarten@gpmlaw.com

     *Counsel for the Diocese of Duluth*

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

In re:                                                    Bankruptcy Case No.: 15-50792

Diocese of Duluth,                                        Chapter 11

      Debtor-in-Possession.


Diocese of Duluth,

      Plaintiff,

                                            Adversary Proceeding No.: 16-05012

v.

LIBERTY MUTUAL GROUP, a Massachusetts
Corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California corporation;
CHURCH MUTUAL INSURANCE COMPANY,
a Wisconsin corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois corporation,

      Defendants.


## CERTIFICATE OF SERVICE

      I, Abigail M. McGibbon, hereby certify that on the 8th day of February 2017, I caused a true and correct copy of the foregoing *Plaintiff's Reply In Support of Its Motion for Partial Summary Judgment Regarding the Existence of the Great American Policy* to be served on the following parties in the manner indicated below.

VIA US Mail
**Catholic Mutual Relief Society of America**
Everett J. Cygal
SCHIFF HARDIN LLP
233 South Wacker Drive
Suite 600
Chicago, IL 60606
ecygal@shiffhardin.com

VIA CM/ECF
**Catholic Mutual Relief Society of America**
Christopher J. Knapp
BARNES & THORNBURG LLP
225 S 6th Street
STE 2800 Minneapolis, MN 55402
Chirstopher.knapp@btlaw.com

VIA US Mail
**Fireman's Fund Insurance Company**
Charles E. Jones
MOSS & BARNETT
150 South Fifth Street
Suite 1200
Minneapolis, MN 55402
Charles.jones@lawmoss.com

VIA CM/ECF
**The Diocese of Duluth**
BLANK ROME LLP
James R. Murray
1825 Eye Street NW
Washington, DC 20006
Jmurray@blankrome.com

VIA US Mail
**The Continental Insurance Company**
Laura McNally
LOEB & LOEB LLP
2321 North Clark Street
Suite 2300
Chicago, IL 60654
lmcnally@loeb.com

VIA CM/ECF
**The Diocese of Duluth**
ELSAESSER JARZABEK ANDERSON
ELLIOTT & MACDONALD, CHTD
Bruce A. Anderson
320 East Neider Ave., Suite 102
Coeur d'Alene, ID 83815
baafiling@ejame.com
brucea@ejame.com

VIA US Mail
**Church Mutual Insurance Company**
Christian A. Preus
BASSFORD REMELE, P.A.
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
cpreus@bassford.com

VIA CM/ECF
**The Continental Insurance Company**
BASSFORD REMELE, P.A.
Jeanne H. Unger
Jeffrey D. Klobucar
33 South Sixth Street, Suite 3800
Minneapolis, MN 55402
junger@bassford.com
jklobucar@bassford.com

VIA CM/ECF
**The Diocese of Duluth**
BLANK ROME LLP
Jared Zola
The Chrysler Building
405 Lexington Avenue
New York, NY 10174
jzola@blankrome.com

VIA CM/ECF
**Liberty Mutual Insurance Company**
MINTZ, LEVIN, COHN, FERRIS,
GLOVSKY AND POPEO, P.C.
Nancy D. Adams
One Financial Center
Boston, Massachusetts 02111
nadams@mintz.com

VIA CM/ECF
**Liberty Mutual Insurance Company**
BROWNSON AND BROWNSON &
LINNIHAN, PLLP
Kristi K. Brownson
225 South Sixth Street, Suite 4800
Minneapolis, MN 55402
kbrownson@brownsonlinnihan.com

VIA CM/ECF
**The Diocese of Duluth**
ELSAESSER JARZABEK ANDERSON
ELLIOTT & MACDONALD, CHTD
J. Ford Elsaesser
123 South Third Avenue, Suite 24
Sandpoint, ID 83864
ford@ejame.com

Dated: February 8, 2017

/s/ Abigail M. McGibbon_____
Abigail M. McGibbon (#393263)
80 South 8th Street, STE 500
Minneapolis, MN 55402
Telephone: 612-632-3009
Fax: 612-632-4009
Abigail.mcgibbon@gpmlaw.com