# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| In re: | Bankruptcy Case No.: 15-50792 |
| Diocese of Duluth, | Chapter 11 |
| Debtor-in-Possession. | |

| | |
|---|---|
| Diocese of Duluth, | |
| Plaintiff, | |
| | Adversary Proceeding No.: 16-05012 |
| | Civil Action No. 0:17-cv-00549-SRN-LIB |
| v . | |
| LIBERTY MUTUAL GROUP, a Massachusetts corporation; CATHOLIC MUTUAL RELIEF SOCIETY OF AMERICA, a Nebraska corporation; FIREMAN'S FUND INSURANCE COMPANY, a California corporation; CHURCH MUTUAL INSURANCE COMPANY, a Wisconsin corporation and THE CONTINENTAL INSURANCE COMPANY, an Illinois corporation, | |
| Defendants. | |

## NOTICE OF HEARING AND LIBERTY MUTUAL INSURANCE COMPANY'S MOTION FOR LEAVE TO APPEAL INTERLOCUTORY ORDER TO THE DISTRICT COURT

TO: The Debtor and other entities specified in Local Bankruptcy Rule 9013-3:

1.    Liberty Mutual Insurance Company[1/] ("Liberty Mutual"), pursuant to 28 U.S.C. 158(a)(3) and Federal Rule of Bankruptcy Procedure 8004, hereby requests that the Court certify for interlocutory appeal the United States Bankruptcy Court for the District

---

[1/]    The First Amended Complaint incorrectly names Liberty Mutual Insurance Company as Liberty Mutual Group.

of Minnesota's (the "Bankruptcy Court") *Order Granting Plaintiff's Motion for Partial Summary Judgment on the Professional Service Exclusion* (the "Order") entered on March 2, 2017.

2.     The court will hold a hearing on this motion at a time to be determined by the District Court at the United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota.

3.     Any response to this motion must filed and served no later than five days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A RESPONSE OPPOSING THE MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

4.     The petition commencing this chapter 11 case was filed on December 7, 2015. The case is now pending before the Bankruptcy Court.

5.     This court has jurisdiction over this motion pursuant to 28 U.S.C. § 158. Venue of the motion is proper pursuant to 28 U.S.C. § 1409(a).[2]

6.     Liberty Mutual seeks to appeal two questions of law addressed in the Order: (1) whether the Diocese must satisfy its *prima facie* burdens before turning to the applicability of the Professional Services Exclusion (defined in the supporting memorandum of law); and (2) whether the Professional Services Exclusion applies to the claims asserted by the Diocese.

---

[2]     Liberty Mutual Insurance Company has moved to withdraw the reference to the bankruptcy court of the adversary proceeding. Accordingly, the foregoing statement concerning jurisdiction and venue are subject to the arguments contained in the motion to withdraw the reference.

7.     For the reasons set forth in the supporting memorandum of law filed concurrently herewith and hereby incorporated by reference, the Court should grant the motion for leave to appeal the Order because: (1) the Order involves controlling questions of law; (2) there is substantial ground for difference of opinion regarding the issues decided in the Order; and (3) certification of the Order will materially advance the ultimate termination of the litigation.  A copy of the Order is attached as Exhibit 1 to the supporting memorandum of law.

WHEREFORE, Liberty Mutual respectfully requests that this Court enter an order certifying the Bankruptcy Court's Order for interlocutory appeal, and granting such other relief as the court deems just and proper.

**LIBERTY MUTUAL INSURANCE COMPANY**

By its attorneys,

*/s/ Kristi K. Brownson*

Kristi K. Brownson, Esq. (#259986)
Brownson & Linnihan, PLLP
225 South Sixth Street, Suite 4800
Minneapolis, MN 55402
(612) 332-4020
(612) 332-4025 (Facsimile)
kbrownson@brownsonlinnihan.com

*and*

*/s/ Nancy D. Adams*

Nancy D. Adams, Esq.  (*pro hac vice)*
Kevin J. Walsh, Esq.  (*pro hac vice*)
Mintz, Levin, Cohn, Ferris,
  Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 348-1865
(617) 542-2241 (Facsimile)
nadams@mintz.com
kjwalsh@mintz.com

Dated:  March 16, 2017

# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF MINNESOTA

---

In re:                                          Bankruptcy Case No.: 15-50792

Diocese of Duluth,                              Chapter 11

        Debtor-in-Possession.

---

Diocese of Duluth,

        Plaintiff,
                                                Adversary Proceeding No.: 16-
                                                05012

v.

LIBERTY MUTUAL GROUP, a Massachusetts
corporation; CATHOLIC MUTUAL RELIEF SOCIETY
OF AMERICA, a Nebraska corporation; FIREMAN'S FUND
INSURANCE COMPANY, a California
corporation; CHURCH MUTUAL
INSURANCE COMPANY, a Wisconsin
corporation and THE CONTINENTAL
INSURANCE COMPANY, an Illinois
corporation,

        Defendants.

---

## LIBERTY MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR LEAVE TO APPEAL INTERLOCUTORY ORDER TO THE DISTRICT COURT

Liberty Mutual Group[1/] ("Liberty Mutual"), pursuant to 28 U.S.C. § 158(a)(3) and

Federal Rule of Bankruptcy Procedure 8004, submits this memorandum of law in support

of its *Motion for Leave To Appeal Interlocutory Order to the District Court* (the "Motion")

---

[1/]    The First Amended Complaint incorrectly names Liberty Mutual Insurance Company as Liberty Mutual Group.

filed concurrently herewith.  Liberty Mutual requests that the Court certify for interlocutory appeal the Bankruptcy Court's *Order Granting Plaintiff's Motion for Partial Summary Judgment on Professional Service Exclusion* (the "Order") dated March 2, 2017, which is attached hereto as **Exhibit 1**.  Liberty Mutual seeks leave to appeal the Order because: (1) the Order involves controlling questions of law; (2) there is substantial ground for difference of opinion regarding the issues decided in the Order; and (3) certification of the Order will materially advance the ultimate termination of the litigation.

## PRELIMINARY STATEMENT

In December of 2015, the Diocese of Duluth (the "Diocese") filed for bankruptcy as a means of dealing with the financial consequences of alleged sexual abuse of children by Catholic priests and others associated with the Catholic Church from the early 1950s to the present.   One hundred and twenty-five Proofs of Claim have been filed in the Bankruptcy Court by persons who allege that they were subjected to such abuse.  In June 2016, the Diocese commenced an adversary proceeding against its alleged insurers, including Liberty Mutual, to determine the existence and scope of coverage available for these claims.  As such, the present adversary proceeding exclusively involves complex matters of state law insurance contract interpretation; the adversary proceeding does not raise issues of bankruptcy law.

Because the adversary proceeding is limited to state law contract interpretation and insurance coverage law, this action is a non-core proceeding in which the bankruptcy court may not enter a final order.  For this reason, as well as the fact that the parties asserted jury claims, Liberty Mutual and certain other insurers filed a motion requesting that the

Bankruptcy Court transfer the adversary proceeding to this Court, which the Bankruptcy Court denied.  Thereafter, certain insurers, including Liberty Mutual, sought to withdraw the reference of the adversary proceeding from the Bankruptcy Court.  The motion to withdraw the reference is currently pending with this Court and scheduled for hearing on April 17, 2017.

Meanwhile, prior to Liberty Mutual even filing an answer in the adversary proceeding, the Diocese filed three motions for partial summary judgment.  The Bankruptcy Court's resolution of one of the motions is the subject of the present motion for leave, namely the Diocese's motion for a declaration that the relevant policies' professional services exclusion does not apply to the pending claims (the "Professional Services SJ Motion").  More specifically, in the Professional Services SJ Motion, the Diocese sought a ruling, without first satisfying its *prima facie* burdens of proof regarding the existence of coverage, that the professional services exclusion did not apply.  However, before addressing the applicability of the professional services exclusion – or any exclusion for that matter – the Diocese must first demonstrate that coverage exists, which includes proving: (i) the terms and conditions of the alleged policies; and (ii) that the claims fall within the applicable policies' grant of coverage.  Absent a finding of coverage in the first instance, a ruling concerning the scope of the professional services exclusion is premature as it would necessarily be based upon hypothetical findings.  Even assuming that the Diocese could meet its burden, however, the policies' professional services exclusion bars coverage for the claims.

3

In the Order, the Bankruptcy Court made two errors of law. First, the Bankruptcy Court held that the Diocese was not required to satisfy its *prima facie* burdens of proof, including proving: (1) the terms and conditions of the applicable insurance policies; and (2) the satisfaction of the insuring agreement, before addressing the applicability of the exclusion. Second, the Bankruptcy Court held that claims for sexual abuse cannot involve the rendering of (or failure to render) a professional service and, to the extent that cases suggest otherwise, the court "adamantly disagree[s] with them." Order Granting Mot. Summ. J. March 2, 2017 at 8. Certifying the Bankruptcy Court's Order is appropriate because: (1) the issues raised involve controlling questions of law; (2) the decision expressly raises substantial ground for difference of opinion regarding the issues; and (3) certification of appeal of the Order will materially advance the ultimate termination of the litigation. Accordingly, the Court should grant this Motion.

## FACTUAL BACKGROUND

### A.   THE POLICIES

As the result of a corporate transaction between Great American Insurance Company (GAIC) and The Ohio Casualty Insurance Company, Liberty Mutual has accepted responsibility for three policies that are relevant to the Diocese's motion:[2]

  (i)   policy number CLA 770553 with a policy period of 2/1/1964 to 2/1/1967 issued by Agricultural Insurance Company (the 1964-1967 Policy);

  (ii)   policy number 3GA 26 24 22, with a policy period of 2/1/1967 to 2/1/1970 issued by Agricultural Insurance Company (the 1967-1970 Policy); and

---

[2] Liberty Mutual also assumed ownership of a fourth policy, policy number 4GA 12 60 79, with a policy period of 2/1/1973 to 2/1/1976 (cancelled on April 24, 1973) (the 1973 Policy). The Professional Services SJ Motion did not address or otherwise reference the 1973 Policy.

(iii)   policy number 3GA 29 96 59 with a policy period of 2/1/1970 to 2/1/1973
issued by Agricultural Insurance Company (the 1970-1973 Policy).

The 1967-1970 Policy and the 1970-1973 Policy contain a professional services exclusion
which bars coverage for "claims due to the rendering of any professional service or
omission thereof" (the "Professional Services Exclusion").  For ease of reference, Liberty
Mutual refers to the 1967-1970 Policy and the 1970-1973 Policy, collectively as the
"Policies".

The Diocese has admitted that it has not been able to locate complete copies of the
Policies and, as such, the Diocese has only provided Liberty Mutual with limited
information regarding the Policies' terms and conditions.   Although the Diocese has
provided Liberty Mutual with copies of the Policies' declarations pages, it has not provided
Liberty Mutual with copies of the Policies' insuring agreements.

**B.**   **THE UNDERLYING CLAIMS**

Numerous lawsuits have been filed against the Diocese arising out of the alleged
sexual abuse of parishioners.  Subject to a full and complete reservation of rights, Liberty
Mutual agreed to provide the Diocese with a defense against four of the lawsuits that were
pending prior to the Diocese's filing for bankruptcy protection.  Thereafter, in November
of 2015, Weis v. Diocese of Duluth, one of the pending lawsuits against the Diocese, went
to trial.[3]  Shortly after a jury returned a verdict against the Diocese, the Diocese filed a
voluntary Chapter 11 petition under the Bankruptcy Code.  To date, 125 proofs of claim

---

[3]   Liberty Mutual was not involved in this case because Mr. Weis' alleged bodily injury occurred
after the 1973 Policy expired.

have been filed in the bankruptcy case by claimants alleging sexual abuse, which includes the claims of the plaintiffs in the four lawsuits that Liberty Mutual is defending.  The four lawsuits and the proofs of claim alleging bodily injury during the Policies' effective dates are collectively referred to herein as the "Underlying Claims".

## PROCEDURAL BACKGROUND

As noted, on December 7, 2015, the Diocese filed for bankruptcy protection.  In June of 2016, the Diocese filed an adversary proceeding, seeking declaratory judgment of rights and duties of the Diocese and certain insurers[4/] under alleged insurance policies and certificates and also alleging breach of contract (the "DJ Action").  Thereafter, the DJ Action was stayed by agreement.  In November 2016, the Diocese requested that the insurers answer the complaint.  The following month, on December 2, 2016, the Diocese amended its complaint, correctly eliminating the breach of contract count. D.E. 8.

In the DJ Action, the Diocese raises issues regarding the existence and extent of insurance coverage for the consequences of certain sex abuse claims. D.E. 8, ¶¶ 18-19, 32-33.  The Diocese also seeks a determination of certain coverage issues that have arisen between the parties, including, but not limited to: (i) the number of occurrences; (ii) the applicable limits of liability; (iii) the applicability of the professional services exclusion; and (iv) the existence of an alleged policy. *Id.* at 33.  The Diocese requested a jury trial. *Id.*

---

[4/]     The insurers are: (1) Liberty Mutual Insurance Company; (2) Catholic Mutual Relief Society of America; (3) Church Mutual Insurance Company; (4) The Continental Insurance Company; and (5) Fireman's Fund Insurance Company.

On December 19, 2016, before Liberty Mutual filed its answer to the amended complaint, the Diocese filed three motions for partial summary judgment, including the Professional Services SJ Motion. *See* D.E. 10-12.[5] Later that same day, Liberty Mutual filed its answer to the amended complaint and, similar to the Diocese, made a demand for a jury trial.   In addition, in is answer, Liberty Mutual expressly states that it does not consent to the exercise of the jurisdiction of the Bankruptcy Court. *See* D.E. 14, 17-19.[6]

On February 3, 2017, Liberty Mutual filed its opposition to the Professional Services SJ Motion, arguing that the Professional Services SJ Motion should be denied for at least five reasons.  First, the Diocese had not provided the court with complete copies of the relevant policies, and the Diocese has failed to show that it made a diligent but unsuccessful search for the policies.  Second, the Diocese failed to sustain its *prima facie*

---

[5]      The other two motions for partial summary judgment are: (1) *Motion for Partial Summary Judgment Regarding the Existence of the Great American Insurance Policy*; and (2) *Motion for Partial Summary Judgment on the Number of Occurrences*.

[6]      Given that the DJ Action raises only state law claims and that the parties asserted a jury demand, on December 22, 2016, Liberty Mutual and certain other insurers moved the Bankruptcy Court to transfer the adversary proceeding to the District Court pursuant to local Bankruptcy Rule 5011-3(a). D.E. 23.  The Bankruptcy Court denied the motion. Thereafter, Liberty Mutual and certain other insurers filed a joint amended motion to withdraw the reference of the adversary proceeding (the "Motion to Withdraw the Reference"). D.E. 47.  Given the filing of the Motion to Withdraw the Reference, Liberty Mutual filed an expedited motion with the Bankruptcy Court to stay all matters in the adversary proceeding pending a ruling by the District Court on the withdrawal the reference. The Bankruptcy Court denied the motion.  D.E. 58.   This Court referred the Motion to Withdraw the Reference to Magistrate Judge Leo I. Brisbois.   After the Bankruptcy Court denied Liberty Mutual's motion to stay, Liberty Mutual filed a motion to stay the DJ Action with this Court.   Currently, the stay motion and the Motion to Withdraw the Reference are scheduled for a hearing on Monday, April 17, 2017.

burden of proof to demonstrate, with clear and convincing evidence, the terms and conditions of the policies.  Third, the Diocese failed to meet its *prima facie* burden of proof of establishing that the insuring agreements within the Policies have been satisfied.  Fourth, to the extent the alleged abuse was expected or intended, there is no "occurrence" under the Policies, and the record already establishes that there are material questions of fact as to whether, as the claimants themselves allege, the Diocese knew, or should have known, that the alleged abuse was substantially probable.   Fifth, even assuming that the Diocese could meet its burden, the Professional Services Exclusion bars coverage for the Underlying Claims.

On March 2, 2017, the Bankruptcy Court issued its Order, holding that the Professional Services Exclusion does not apply to the Underlying Claims.  In its decision, the Bankruptcy Court held that, among other things, the Professional Services Exclusion has no applicability to sexual abuse claims.

## ARGUMENT

The District Court has "jurisdiction to hear appeals [from the Bankruptcy Court]….with leave of court, from….interlocutory orders and decrees." 28 U.S.C. § 158(a)(3).  Section 158(a) does not identify the standard courts should use in deciding whether to grant an interlocutory appeal.  Typically, however, courts follow the standards set forth under 28 U.S.C. § 1292(b), which govern interlocutory appeals from a district court to a court of appeals.  *See General Elec. Capital Corp. v. Machinery, Inc. (In re Machinery, Inc.)*, 275 B.R. 303, 303 (B.A.P. 8th Cir. 2002) ("In deciding whether to grant

8

a motion for leave to appeal, we typically apply the standards found in 28 U.S.C. § 1292(b) which define the jurisdiction of the courts of appeal to review interlocutory orders.").

Under section 1292(b), an interlocutory appeal is permitted when the order at issue: (1) involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *Union Cnty., Iowa v. Piper Jaffray & Co., Inc.*, 252 F.3d 643, 646 (8th Cir. 2008); *White v. Nix*, 43 F.3d 374, 377 (8th Cir. 1994). Because Liberty Mutual meets this standard as recognized by the Eighth Circuit Court of Appeals, the Court should grant Liberty Mutual's motion for leave to appeal the Court's interlocutory Order.

### A.   The Bankruptcy Court's Order Is Based On A Controlling Question of Law

An interlocutory appeal from the Bankruptcy Court to this Court is appropriate if the appeal involves a controlling question of law. *Union Cnty*, 252 F.3d at 643. Under section 1292(b), a "controlling question of law" is a question regarding "the meaning of a statutory or constitutional provision, regulation or common law doctrine." *Saunders v. Ace Mortg. Funding, Inc.*, 2007 U.S. Dist. LEXIS 49109 (D. Minn. 2007) (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1258 (11th Cir. 2004)). The standard is met if the issue appealed deals with "a question of 'pure' law, or matters that can be decided 'quickly and cleanly without having to study the record.'" *McFarlin*, 381 F.3d at 1258. That is to say, "[t]he legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in same area of law." *McFarlin*, 381 F.3d at 1259. Additionally,

9

"[a] question of law may be deemed 'controlling' if its resolution is quite likely to affect the further course of the litigation, even if not certain to do so." *Sokaogon Gaming Enter. Corp. v. Tushi-Montgomery Assocs.*, 86 F.3d 656, 659 (7th Cir. 1996); *see also Katz v. Carte Blanche Corp.*, 496 F.2d 747, 755 (3d Cir. 1974) (holding that a question is controlling if its resolution on appeal could result in reversal of the lower court's subsequent final judgment).

Here, the questions presented for the Court's review are pure questions of law, and the issue on appeal does not require any factual review or combing of an extensive record. *See* Order Granting Mot. Summ. J. (March 2, 2017) at 6 ("Interpretation of an insurance policy is a question of law.")  First, the Diocese has the *prima facie* burden of proof to establish: (i) the Policies' terms and conditions; and (ii) and satisfaction of the insuring agreements with the Policies.   Whether the Diocese must satisfy its *prima facie* burdens before turning to the applicability of an exclusion is a question of law.   Second, the applicability (or not) of the Professional Services Exclusion to the Underlying Claims presents a question of law.  More specifically, in the Order, the Bankruptcy Court held that, as a matter of law, the Professional Services Exclusion does not apply to sexual abuse claims.  *See* Order Granting Mot. Summ. J. (March 2, 2017) at 8 ("The [Professional Services] exclusion has no applicability to the sexual abuse claims.").  The Bankruptcy Court, likewise, held that, as a matter of law, the Professional Services Exclusion is inapplicable to claims alleging negligent hiring, training and supervision.  *See* Order Granting Mot. Summ. J. (March 2, 2017) at 9 ("Claims of negligent hiring, training and supervision of [sic] physician or professional do not arise out of the rendering of

professional services."). Moreover, because the Professional Services Exclusion would effectively eliminate further litigation regarding the Policies, the resolution of these controlling issues of law will substantially impact the further course of the adversary proceeding. Stated differently, if, as Liberty Mutual contends, the Professional Services Exclusion bars coverage for the Underlying Claims, then the Policies are no longer the subject of the DJ Action. Accordingly, Liberty Mutual has satisfied the first factor.

### B. The Bankruptcy Court's Order Deviates Significantly From Other Courts On the Same Controlling Question Of Law

The second ground for an interlocutory appeal requires a substantial difference of opinion between the Bankruptcy Court's ruling and the rulings of other courts. "To determine if a substantial ground for difference of opinion exists under §1292(b), courts must examine to what extent the controlling law is unclear." *Bussing v. COR Clearing, LLC*, No. 12-238, 2014 U.S. Dist. LEXIS 98616, at *6 (D. Neb. July 17, 2014) (citing *Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010)). To satisfy this element of the analysis, a movant must normally demonstrate that at least two courts interpret the relevant legal principle differently." *Colonial Bank v. Freeman (In re Pac. Forest Prods. Corp.)*, 335 B.R. 910, 922 (S.D. Fla. 2005). Additionally, courts have recognized that demonstrating the existence of a "significant number of conflicting and contradictory opinions" satisfies the second prong of the interlocutory inquiry. *See, e.g., White v. Nix*, 43 F.d 374, 378 (8th Cir. 1994).

Here, the Bankruptcy Court held that:

> [e]ven assuming that priests are professionals who occasionally provide professionals services, in no world – legal or religious –

11

> would raping or sexually battering children be the rendering of
> professional service. To the extent there are cases that suggest
> otherwise, I adamantly disagree with them. The exclusion has no
> applicability to sexual abuse claims. Therefore, for any policy that
> has this professional services exclusion, the exclusion does not
> apply to sexual abuse claims.

Order Granting Mot. Summ. J. (March 2, 2017) at 8 (citations omitted). In so holding, the

Bankruptcy Court's decision both ignores and contradicts substantial authority from

Minnesota courts – both federal and state – holding that, under Minnesota law, claims of

sexual abuse can fall within the scope of the rendering, or failure to render, a professional

service. *See, e.g., Houg v. State Farm Fire Casualty Co.*, 509 N.W. 2d 590, 593 (Minn.

App. Ct. 1993) (holding that a general liability policy's professional service exclusion bars

coverage for claims against a church for respondeat superior, negligent employment and

negligent supervision of a minister who sexually abused a parishioner); *Capitol Indemn.*

*Corp. v. Especially for Children, Inc.*, No. 01-2425, 2002 U.S. Dist. LEXIS 17121 (D.

Minn. Aug. 29, 2002) (holding that claims against a day care center for negligently

supervising an employee who sexually abused a child fell within the scope of the failure to

render professional services); *St. Paul Fire & Marine Ins. Co. v. Love*, 459 N.W. 2d 698,

701 (Minn. 1990) (holding that the alleged sexual abuse of a patient related to the condition

for which she was seeking treatment); *NCMIC Ins. Co. v. Sammon,* No. 05-456, 2005 U.S.

Dist. LEXIS 24208 (D. Minn. Oct. 17, 2005) (holding that a chiropractor's alleged sexual

abuse of a patient arguably fell within the treatment provided and thus alleged a

professional service).

12

As support for the Bankruptcy Court's conclusion that claims of sexual misconduct can never constitute a professional service, the court cites *Smith v. St. Paul Fire & Marine Ins.,* 353 N.W.2d 130 (Minn. 1984). In *Smith,* the Minnesota Supreme Court held that a physician's sexual abuse of a patient had nothing to do with the patient's problems or prescribed medical treatment, and therefore, the claims did not constitute a professional service. Importantly, the Minnesota Supreme Court did not hold that sexual abuse claims cannot constitute a professional service. Indeed, six years later, in *St. Paul Fire &Marine Ins. Co. v. Love*, 459 N.W. 2d 698, the Minnesota Supreme Court explained that, in *Smith,* because the alleged sexual misconduct did not arise within the context of the patient's problem and prescribed treatment, the misconduct was not a professional service. In contrast, in *Love,* the Minnesota Supreme Court expressly found that the patient's claims of sexual misconduct were "inextricably related" to the treatment. The Minnesota Supreme Court explained

> The sexual conduct, to be sure, is aberrant and unacceptable, but it is so related to the treatment contemplated that it comes within the scope of the insurance coverage for professional services provided or withheld.

*Love,* 459 N.W. 2d at 702.

As for Liberty Mutual's reliance upon *Houg and Capitol,* the Bankruptcy Court held that neither decision applied to negligent supervision claims, but then commented that, "if they do, I disagree with them." In *Houg*, the Minnesota Appeals Court expressly wrote:

> The district court found that [the plaintiff's] claims of respondeat superior, negligent employment, and negligent supervision against [the church] did not involve professional services. We disagree.

13

509 N.W. 2d at 592.  As for *Capitol*, relying upon *Houg*, the federal court explained that,

> [i]n their negligence claims, Claimants allege that [the facility]
> failed to perform certain duties in the hiring and supervising of
> [the employee] as well as in the caring for [the abused child].
> These failures stem directly from the duties [the facility] should
> have performed, and accordingly, the negligence claims can only
> be described as falling within the scope of the failure to render
> professional services.

2002 U.S. Dist. LEXIS 17121, at *18.  Consequently, given that the Order and the case law regarding the applicability of the Professional Services Exclusion to sexual abuse claims is conflicting, there can be no meaningful dispute regarding the existence of a substantial difference of opinion between the Bankruptcy Court's ruling and the rulings of other courts on this issue.  Accordingly, the second element in support of Liberty Mutual's request for leave to appeal is satisfied.

### C.    An Immediate Appeal Will Advance The Ultimate Termination of the Adversary Proceeding

An interlocutory appeal advances the litigation if "resolution of a controlling legal question would serve to avoid trial or otherwise substantially shorten the litigation." *Pacific Forest*, 335 B.R. at 924 (citing *McFarlin*, 381 F.3d at 1259).  Courts in this Circuit have found that the "materially advance" element has been satisfied even when the ruling might only narrow the issues. *See, e.g., AT&T Communs. Of the Midwest, Inc. v. Qwest Corp.*, 2007 U.S. Dist. LEXIS 49102 (D. Minn. 2007) (granting motion to certify order where reversal would "preclude or substantially narrow further litigation"); *Sauders v. Ace Mortg. Funding, Inc.*, 2007 U.S. Dist. LEXIS 49109 (same).

14

In this case, an immediate appeal could narrow the scope of the issues and avoid a trial on whether the Policies afford coverage for the Underlying Claims.  Moreover, by conducting an immediate review of the legal questions presented here, the Court can prevent the parties from engaging in expansive and expensive discovery and a complex trial by deciding pure legal questions.   In the event the Policies are not applicable, as Liberty Mutual contends, any further proceedings regarding the Policies would constitute a waste of the parties' and the Court's resources.  Accordingly, the Court's immediate review of the issues discussed herein likely will ultimately save the parties' and the Court's resources, streamline the litigation, and avoid prolonging the issues between the parties. Accordingly, the Court should grant Liberty Mutual's Motion for leave to appeal the Order.

## CONCLUSION

The particular issues raised by this motion for leave present an exceptional case where an immediate appeal is warranted.  If, as Liberty Mutual believes, the appeal is certified and ultimately successful such that the professional services exclusion applies to the Policies, the appeal will have had the intended effect of avoiding prolonged and expensive litigation.  Accordingly, for the reasons set forth herein, Defendant Liberty Mutual respectfully requests that the Court certify the Bankruptcy Court's March 2, 2017 Order for interlocutory appeal.

**LIBERTY MUTUAL INSURANCE COMPANY**

By its attorneys,

15

*/s/ Kristi K. Brownson*

Kristi K. Brownson, Esq. (#259986)
Brownson & Linnihan, PLLP
225 South Sixth Street, Suite 4800
Minneapolis, MN 55402
(612) 332-4020
(612) 332-4025 (Facsimile)
kbrownson@brownsonlinnihan.com

*and*

*/s/ Nancy D. Adams*

Nancy D. Adams, Esq.  (*pro hac vice*)
Kevin J. Walsh, Esq.  (*pro hac vice*)
Mintz, Levin, Cohn, Ferris,
      Glovsky and Popeo, P.C.
One Financial Center
Boston, Massachusetts 02111
(617) 348-1865
(617) 542-2241 (Facsimile)
nadams@mintz.com
kjwalsh@mintz.com

Dated:  March 16, 2017

**EXHIBIT 1**

UNITED STATES BANKRUPTCY COURT

DISTRICT OF MINNESOTA

In re:

Diocese of Duluth,

      Debtor.                       BKY 15-50792

----------------------------

Diocese of Duluth,                   ADV 16-5012

      Plaintiff,

v.

Liberty Mutual Group, a Massachusetts      **ORDER GRANTING**
corporation; Catholic Mutual Relief           **PLAINTIFF'S MOTION FOR**
Society of America, a Nebraska               **PARTIAL SUMMARY**
corporation; Fireman's Fund Insurance      **JUDGMENT ON**
Company, a California corporation;          **PROFESSIONAL SERVICE**
Church Mutual Insurance Company, a       **EXCLUSION**
Wisconsin corporation and The
Continental Insurance Company, an
Illinois corporation,

      Defendants.

The Continental Insurance Company,
Fireman's Fund Insurance Company,
Liberty Mutual Group, Inc.,

      Counter-Claimants,

v.

Diocese of Duluth,

      Counter-Defendant.

The Continental Insurance Company,

      Cross-Claimant,

NOTICE OF ELECTRONIC ENTRY AND
FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/02/2017*
Lori Vosejpka, Clerk, by LH

v.

Catholic Mutual Relief Society of
America,

Church Mutual Insurance Company,
Fireman's Fund Insurance Company,
Liberty Mutual Group, Inc.,

      Cross-Defendants.

At Duluth, Minnesota, March 2, 2017.

      This adversary proceeding came on for a hearing on the plaintiff's motion for partial

summary judgment regarding the professional services exclusion in the Agricultural Insurance

policies. James R. Murray, Jared Zolla and Phillip Kunkel appeared for the plaintiff and Nancy

Adams and Kristi Brownson appeared for defendant, Liberty Mutual Insurance Company[1]. The

court has jurisdiction over this proceeding under 28 U.S.C. §§157 and 1334, and Local Rule

1070-1. For the reasons stated below, the motion is granted.

## FACTUAL BACKGROUND

      The Diocese filed a petition under chapter 11 on December 7, 2015. It filed this adversary

proceeding on June 24, 2016 against Liberty Mutual and four other insurance companies seeking

declaratory relief. This motion was filed by the Diocese on December 19, 2016 for partial

summary judgment determining that the professional exclusion provision of the Exclusion of

Medical Payments For Students Endorsement in the 1967 to 1970 and the 1970 to 1973

Agricultural Insurance company policies does not apply to the Diocese's claims for coverage.

---

[1] Incorrectly referred to as Liberty Mutual Group in the complaint.

2

The Diocese filed the chapter 11 petition because of the liabilities arising from

negligence claims asserted by victims of sexual abuse by priests within the Diocese. The Diocese

requested Liberty Mutual to cover its liability associated with these negligence claims. Liberty

Mutual denied coverage for a number of reasons. Among them is its argument that the

professional services exclusion contained in the Exclusion of Medical Payments for Students

Endorsement applies.

Liberty Mutual first argues that I should not decide the issues of this exclusion until it has

first been decided that there is coverage at all. However, one of purposes served by Rule 56 is the

narrowing of issues, a purpose which will be served here. Without deciding, I assume for

purpose of this motion that the policies would, but for the exclusion, provide coverage.

The policies at issue contains the following language.

ENDORSEMENT:

This endorsement modifies such insurance as is afforded by the
provisions of the policy relating to the following:
COMPREHENSIVE GENERAL LIABILITY INSURANCE.

EXCLUSION OF MEDICAL PAYMENTS FOR STUDENTS
ENDORSEMENT

In consideration of the premium at which this policy is written:

It is understood and agreed that coverage provided by the "Medical
Payments Coverage Part" shall not apply to or for pupils of the
insured while such pupils are in or upon the school premises:

It is further understood and agreed that the coverage afforded by
this policy as respects the insured's school includes (A) the use of
bicycles on school business, and (B) the transportation hazard on
other vehicles, including watercraft, not owned or hired by or for
the insured, any member of the teaching, supervising or
administrative staff, officer or employee of the insured:

> It is further understood and agreed that no coverage is afforded by
> this policy for claims due to the rendering of any professional
> service or omission thereof.

The Diocese argues that the professional services exclusion appears at the last sentence of the endorsement page and applies only to claims made under the policies' Premises Medical Payments Insurance Coverage. It argues that it does not apply to its claims because it is seeking coverage under the policies' Bodily Injury Liability Coverage. The Diocese also argues in the alternative that, even if the professional service exclusion applies to bodily injury liability coverage, the claims for sexual abuse are not due to the rendering of the a professional service or omission thereof and the exclusion would still not apply. In support of its motion, the Diocese submitted copies of the Agricultural Insurance company policies for February 1, 1964 to February 1, 1967, the February 1, 1967 to February 1, 1970, and the February 1, 1970 to February 1, 1973 policy periods. The Diocese states that Liberty Mutual is not asserting that the professional services exclusion exists in its 1964 to 1967 policy but to the extent Liberty Mutual does, the exclusion would not apply to its claims for the same reasons.

Liberty Mutual argues that because the victims' alleged abuse is due to the very nature of the professional services embedded in the church, the policies' professional services exclusion bars coverage for the claims.

In support of its opposition to the Diocese's motion, Liberty Mutual submitted affidavits of attorney Nancy Adams attaching; (1) copies of policy documents issued by Agricultural insurance company for policy periods of February 1, 1964 to February 1, 1967, February 1, 1967 to February 1, 1970, and February 1, 1970 to February 1, 1973; (2) copies of the summons and complaints in four lawsuits filed in 2013 and 2015 against the Diocese by the underlying plaintiffs named Doe 5, 28, 68 and 70 for alleged bodily injury that occurred between 1964 and

4

1973; (3) copies of four letters issued in 2014 and 2015 by Liberty Mutual to the Diocese

concerning the four lawsuits and agreeing to defend the Diocese in those suits including analysis

of coverage and reservation of rights; (4) a copy of excerpt of the trial transcript in the *Weis v.*

*Diocese of Duluth* action on October 21 and 22, 2015; and (5) a copy of unpublished decision of

*C.W. Birch Run, LLC v. Jo-Ann Stores, Inc*.

## DISCUSSION

Federal Rule of Bankruptcy Procedure 7056, incorporating Federal Rule of Civil

Procedure 56, applies when a party moves for partial summary judgment in an adversary

proceeding. Rule 56(a) states that the "court shall grant summary judgment if the movant shows

that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-326 (1986); *Anderson v. Liberty

Lobby*, 477 U.S. 242, 255 (1986). "If, assuming all reasonable inferences favorable to the non-

moving party, there is no genuine issue as to any material fact, the moving party is entitled to

summary judgment as a matter of law." *Tudor Oaks Limited P'ship v. Cochrane*, 124 F.3d 978,

981 (8th Cir. 1987), cert. denied, 522 U.S. 1112 (1998).

Inquiries into materiality and genuineness must be done to determine the sufficiency of

the evidence. *Liberty Lobby*, 477 U.S. at 247. As for materiality, the substantive law identifies

which facts are material. *Id*. Only disputes over facts that might affect the outcome of the suit

will properly defend against entry of summary judgment. *Id*. In other words, factual disputes that

are irrelevant or unnecessary are not included. *Id*. A fact is a genuine issue if it is such that a

reasonable fact finder could find for the nonmoving party. *Id*. (quoting *First Nat'l Bank of

Arizona v. Cities Services Co.*, 391 U.S. 253, 288-289 (1968)).

The issue presented in this motion is whether the professional service exclusion in

Liberty Mutual's policies excludes coverage for the Diocese's underlying claims by the sexual

abuse claimants. State law applies when interpreting the provisions of an insurance policy.

*Shelter Ins. Companies v. Hildreth*, 255 F.3d 921, 925 (8th Cir. 2001) (citing *Bates v. Security*

*Benefits Life Ins. Co.*, 146 F.3d 600, 603 (8th Cir. 1998)). Interpretation of an insurance policy is

a question of law. *Houg v. State Farm Fire and Cas. Co.*, 509 N.W.2d 590,592 (Minn. App.

1993) (citing *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn. 1978)). This issue is

ripe for a summary judgment decision.  *Safeco Ins. Co. v. Skar*, No. 10-CV-4789, 2011 U.S.

Dist. Lexis 82548 (D. Minn. Jul. 17, 2001) (citing *Meadowbrook, Inc. v. Tower Ins*. Co., 559

N.W.2d 411, 415 (Minn. 1997)).

"General principles of contract interpretation apply to insurance policies." *Carlson v.*

*Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (citing *Lobeck v. State Farm Mut. Auto. Ins.*

*Co.*, 582 N.W.2d 246, 249 (Minn. 1998)). When a language in a policy is clear and

unambiguous, the policy is interpreted "according to plain, ordinary sense so as to effectuate the

intention of the parties." *Id.*; (citing *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258

N.W.2d 570, 572 (Minn. 1977)). "The language of the policy is ambiguous if it is susceptible to

two or more reasonable interpretations." *Id.*; (citing *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566

N.W.2d 74, 77(Minn. 1997)).

It is well-established that the party claiming coverage under an insurance policy has the

burden of proof to show coverage. *Boedigheimer v. Taylor*, 178 N.W.2d 610, 614 (Minn. 1970).

The Diocese has produced policies relevant to this partial summary judgment motion, including

the exclusion language Liberty Mutual alleges excuses it from covering the underlying claims.

6

The burden then shifts to the insurer to show the applicability of an exclusion provision in the policy to the claims. *Dakhue Landfill, Inc. v. Employers Ins. Of Wausau*, 508 N.W.2d 798, 802 (Minn. Ct. App. 1993) (citing *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.*, 239 N.W.2d 768, 770 (Minn. 1976)). "In interpreting policy exclusion, any ambiguity in the language of the policy must be construed in favor of the insured." *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 383 N.W.2d 645, 652 (Minn. 1986).

The Diocese argues that the professional service exclusion does not apply to its claims because it seeks coverage under the bodily injury liability coverage and the professional service exclusion only applies to claims under the premises medical payments insurance coverage. Liberty Mutual argues that the express language of the endorsements provide that they modify the insurance afforded under the comprehensive general liability insurance coverage. I agree with Liberty Mutual. Although the title of the endorsement is "Exclusion of Medical Payments For Students Endorsement" the endorsements are three different and separate exclusions that apply to the whole policy and not just the medical payments coverage.

But for the caption "Exclusion of Medical Payments For Students Endorsement," the endorsement would unambiguously provide three separate, distinct exclusions to the comprehensive general liability insurance. *See In re G-I Holdings, Inc.*, 755 F.3d 195, 203 (3d Cir. 2014). ("A court "may examine the [contract] heading 'as additional evidence tending to *support* the contract's substantive provisions.' " *Fulkerson v. MHC Operating Ltd.,* 01C–07–020, 2002 WL 32067510, at *5 (Del.Super.Ct. Sept. 24, 2002) (emphasis added) (quoting *Cantor Fitzgerald, L.P. v. Cantor,* 724 A.2d 571, 582 n. 35 (Del.Ch.1998)). The title of a section cannot contradict or rewrite the plain language of the contractual provisions within that section. "Contract headings do not constitute controlling evidence of a contract's substantive meaning."

7

*Id.*"). I hold that the professional service exclusion applies to the Diocese's policies coverage, not just the medical payments coverage.

The diocese then argues that, even if the professional service exclusion applies to its claims, the alleged sexual abuses by the priests are not "due to the rendering of any professional service" and the claims are therefore not excluded from coverage. Liberty Mutual argues that the professional service exclusion bars coverage for underlying claims because the sexual abuse took place as a result of the claimants' participation in church activities and because the claimants became dependent upon and trusted the Diocese and the abuser priests, due to the very nature of the professional service embedded in the church.

The cases struggle to decide when harm is "due to the rendering of any professional services." It is difficult to discern a clear rule for such a determination. Even assuming that priests are professionals who occasionally provide professional services, in no world- legal or religious-would raping or sexually battering children be the rendering of professional service. To the extent there are cases that suggest otherwise, I adamantly disagree with them. The exclusion has no applicability to the sexual abuse claims. Therefore, for any policy that has this professional service exclusion, the exclusion does not apply to sexual abuse claims. *See Smith v. St. Paul Fire & Marine Insurance Co.*, 353 N.W.2d 130 (Minn. 1984) (Holding that the acts of sexual contact involved neither the providing nor withholding of professional services); *Mork Clinic v. Fireman's Fund Ins. Co*. 575 N.W.2d 598 (Minn. App. Ct. 1998) (Finding that the sexual contact of clinic's allergist was not required for the medical services he was rendering).

Liberty Mutual then argues that, even if the sexual battery of children is not due to the rendering of professional service, the professional service exclusion applies to exclude coverage

8

because the Diocese's supervision of its priests is the rendering of professional services. Liberty

Mutual relies on *Houg*, 509 N.W.2d at 591; *Safeco Ins. Co. v. Skar*, No. 10-CV-4789, 2011 U.S.

Dist. Lexis 82548 (D. Minn. 2001); and *Capitol Indem. Corp. v. Especially for Children, Inc.*,

No. 01-2425, 2002 U.S. Dist. Lexis 17121 (D. Minn. Aug. 29, 2002).

However, supervising an employee or other subordinate is not the rendering of

professional services. For example, while a partner and an associate in a law firm are both

rendering professional services to their clients, the partner is not rendering professional services

to the associate he or she may be directing or supervising. The cases relied on by Liberty Mutual

do not hold otherwise and if they do, I disagree with them.

*Houg* does not support Liberty Mutual's argument. While the court held that a minister's

counseling of a member of his congregation was the rendering of professional services, it did not

hold that the church supervision of him was the rendering of a professional service. Similarly,

neither *Safeco* nor *Capitol* stands for the proposition that supervising an employee or other

subordinate is the rendering of professional services.

Claims of negligent hiring, training and supervision of physician or professional do not

arise out of the rendering of professional services. *See Mork Clinic v. Fireman's Fund Ins. Co*.

575 N.W.2d at 604. (Citing *Community Hosp. at Glen Cove v. American Home Assurance Co*.,

171 A.D.2d 639, 567 N.Y.S.2d 122, 123 (1991) (claims of negligent hiring, training and

supervision of physician did not "arise out of" rendering of professional services); *Propis v.

Fireman's Fund Ins. Co*., 112 A.D.2d 734, 492 N.Y.S.2d 228, 230 (1985) (acts relating to hiring

and firing were not professional activities); *Redeemer v. Church Mutual Insurance Co.*, 567

N.W.2d 71, 77 (Ct. App. Minn. 1997).

THEREFORE, IT IS ORDERED:

1.   The plaintiff's motion for partial summary judgment is granted.

2.   The professional service exclusion does not apply to the sexual abuse claims against

the Diocese.


/e/ Robert J. Kressel
_____
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE