UNITED STATES BANKRUPTCY COURT

DISTRICT OF MINNESOTA

In re:

Diocese of Duluth,

    Debtor.

BKY 15-50792

-----------------------------

Diocese of Duluth,

    Plaintiff,

v.

Liberty Mutual Group, a Massachusetts corporation; Catholic Mutual Relief Society of America, a Nebraska corporation; Fireman's Fund Insurance Company, a California corporation; Church Mutual Insurance Company, a Wisconsin corporation and The Continental Insurance Company, an Illinois Corporation,

    Defendants.

ADV 16-5012

**ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE NUMBER OF OCCURRENCES**

The Continental Insurance Company, Fireman's Fund Insurance Company, Liberty Mutual Group, Inc.,

    Counter-Claimants,

v.

Diocese of Duluth,

    Counter-Defendant.

The Continental Insurance Company,

    Cross-Claimant,

NOTICE OF ELECTRONIC ENTRY AND FILING ORDER OR JUDGMENT
Filed and Docket Entry made on *03/30/2017*
Lori Vosejpka, Clerk, by LH

v.

Catholic Mutual Relief Society of
America, Church Mutual Insurance
Company, Fireman's Fund Insurance
Company, Liberty Mutual Group, Inc.,

    Cross-Defendants.

At Duluth, Minnesota, March 30, 2017.

    This adversary proceeding came on for a hearing on the plaintiff's motion for partial summary judgment to establish a legal standard for determining the number of occurrences in the defendants' occurrence based policies. James R. Murray and Phillip L. Kunkel appeared for the plaintiff. Nancy D. Adams and Kristi K. Brownson appeared for Liberty Mutual Insurance Company[1]. Louis Delucia, Everett Cygal and Connie Lahn appeared for Catholic Mutual Relief Society of America. Charles E. Jones appeared for Fireman's Fund Insurance Company. Beth A. Jenson Prouty and Christian A. Preus appeared for Church Mutual Insurance Company. Laura K. McNally and Jeanne H. Unger appeared for The Continental Insurance Company.

    The court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§157 and 1334 and Local Rule 1070-1. For the reasons stated below, the motion is granted.

**FACTUAL BACKGROUND**

    The Diocese filed a petition under chapter 11 on December 7, 2015 as a result of liabilities arising from negligence claims asserted by victims of sexual abuse by priests within the Diocese. It filed this adversary proceeding on June 24, 2016 against Liberty Mutual, Catholic

---

[1] Incorrectly referred to as Liberty Mutual Group in the complaint.

2

Mutual Relief Society of America, Fireman's Fund Insurance Company, Church Mutual Insurance Company, and The Continental Insurance Company seeking declaratory relief. The Diocese seeks from its insurers coverage for liabilities associated with these claims. This motion was filed on December 19, 2016 against these insurers for partial summary judgment to establish a legal standard to determine the number of occurrences under its commercial general liability insurance policies.

The Diocese asks me to establish the legal standard because it involves interpreting the language of the policies and is therefore a question of law. The Diocese argues that Minnesota courts have adopted the "actual-injury" or "injury-in-fact" rule which establishes an occurrence at the time the complaining party was actually damaged, not at the time the wrongful act was committed. In order to determine which insurance policies have been triggered by an occurrence, the Diocese argues that the time of actual-injury is significant. It states, in cases of sexual abuse, there is an occurrence when the sexual abuse occurs.

It argues that each act of abuse constitutes a separate occurrence. It states however, the "occurrence deemer" clause in these policies, limits "the number of occurrences of each victim repeatedly abused by the same priest in any one policy year to once occurrence," it is reasonable "to treat multiple instances of abuse of a victim by the same priest in a given year as one occurrence."[2]

---

[2] The one-year period was based on the Diocese's view that the policy period was one year. The defendants dispute that, arguing that the policy period is three years. The Diocese modifies its request, leaving the issue of the length of the policy period for another day.

The Diocese attached two insurance policies in support of its motion. The Agricultural Insurance Company (Liberty Mutual) insurance policy for the 1964 to 1967 period contains the following:

> Coverage A. Personal injury liability - Automobile.
> Coverage B. Personal Injury Liability - Except Automobile.
> (i) OCCURRENCE. The word "occurrence" as used in this policy shall mean either an accident or a continuous or repeated exposure to conditions which result during the policy period in personal injury, including death at any time resulting therefrom, or injury to or destruction of tangible property, including the loss of use thereof, which is accidentally caused. All damages arising out of such exposure to substantially the same general conditions shall be considered as arising out of one occurrence.
> 4. LIMITS OF LIABILITY. COVERAGES A and B. The limit of personal injury liability stated in the declaration as applicable to "each person" is the limit of the company's liability for all damages, including damages for care and loss of services, arising out of personal injury, including death at any time resulting therefrom, sustained by one person in any one occurrence, the limit of such liability stated in the declarations as applicable to "each occurrence" is subject to the above provision respecting each person, the total limit of the company's liability for all damages, including damages for care and loss of services arising out of personal injury, sickness or disease, including death at any time resulting therefrom, sustained by two or more persons as the result of any one occurrence.

The Firemen's Insurance Company of Newark, N. J. insurance policy for the 1973 to 1976 policy period provides:

> **Coverages A and B**- For the purpose of determining the limit of the company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.
>
> **"Bodily injury"** means bodily injury, sickness or disease sustained by any person which occurs during the policy period, including death at any time resulting therefrom;
>
> **"occurrence"** means an accident, including continuous or repeated exposure to conditions, which results in bodily injury or property damages neither expected nor intended from the standpoint of the insured;

4

*Liberty Mutual*

Liberty Mutual argues that the court should deny this motion since the Diocese failed to meet its burden of proof for coverage because it did not produced complete copies of policies and it did not meet a *prima facie* case for relevant policy terms and conditions. It also argues that even assuming that the Diocese meet this burden of proof, there are still factual issue that are material, such as whether the sexual abuse was expected or intended by the Diocese, if so excusing Liberty Mutual from coverage.

Liberty Mutual states that the Diocese's argument has been rejected in this circuit. It states that consistent with the *Diocese of Winona v. Interstate Fire & Cas. Co., et al.*, 89 F.3d 1386 (8th Cir. 1996) case, there is only one occurrence, the continuous and repeated exposure of the victims to the negligent supervision of the priests by the Diocese. It states that this standard also applies in this case where there are multiple victims and multiple priests. It argues that there is only one occurrence because the liability arose from one ongoing act of alleged negligence by the Diocese.

Liberty Mutual also argues that the Diocese conflates the issue of trigger with occurrence. It states that whether a policy is triggered and the occurrence are two distinct legal matters and timelines. It states that the trigger is used to determine which policies are activated by an occurrence, and the occurrence describes the type of event covered by the policy.

Liberty Mutual also attached the same policy as the Diocese to support its argument. It points to the following additional language.

> II. DEFENSE, SETTLEMENT, SUPPLEMENTARY PAYMENTS. With respect
> to such insurance as is afforded by this policy, the company shall:

5

    (a)    Defend any suit against the insured alleging such personal injury, death or destruction and seeking damages on account thereof, even if such suit is groundless, false or fraudulent; but the company may make such investigation, negotiation and settlement of any claim or suit as it deems expedient;…
POLICY PERIOD, TERRITORY. This policy applies only to occurrences which take place during the policy period…
THIS POLICY DOES NOT APPLY…
(k) under Coverage [] … B… to personal injury, or death or damage to property caused intentionally by or at the direction of the insured; …

*Catholic Mutual Relief Society of America*

Catholic Mutual states that it agrees with the Diocese's conclusion in defining the number of occurrences as per-victim, per-priest, per-year however disagrees with how the Diocese reaches its conclusion. It states that it issued primary liability coverage and umbrella-excess coverage to the Diocese from April 1, 1982 to the present, it calls the coverage "certificates". It states that the certificates were "occurrence" based from 1982 until 1990 and "claim-based" after 1990.

Catholic Mutual agrees with the Diocese that its occurrence-based coverage certificates applies to the Diocese's underlying negligent supervision claims, provided that the sexual abuses were unexpected and unintended by the Diocese. It also asserts that the *Diocese of Winona*, 89 F.3d 1386 case is still binding Minnesota law on the issue of determining the number of occurrence. It states that occurrence is the continuous and repeated exposure of the claimant to the negligent supervision of the abuser and the abuse is the actual injury and not the occurrence, however, limited to per-victim and per priest. It argues that in Minnesota, when there is a single continuous injury spanning multiple policy periods, there is a single continuous occurrence at time of the actual injury at each policy period.

6

Catholic Mutual also argues that there is one occurrence in each policy year for each injured victims. It states that *Diocese of Winona*, 89 F.3d 1386 established the rule that a continuous and repeated sexual abuse merged into one continuous occurrence per policy year for each individual victim. Following this reasoning, it argues that each injured claimant individually experienced injurious exposure to a negligently supervised abuser and individually has an actual injury. It states that injuries to multiple victims were as a result of multiple occurrences

Catholic Mutual states the relevant coverage language of the primary liability and the umbrella-excess coverage are substantially the same and include the following.

> Catholic Mutual agreed to pay on behalf of [the Diocese] all sums which [the Diocese] shall become legally obligated to pay as damages because of bodily injury… to which this coverage applies, caused by an occurrence.
>
> "**Occurrence**" means an accident, including continuous or repeated exposure to conditions, which result in bodily injury or property damage neither expected nor intended from the standpoint of the Assured.
>
> This coverage applies only to accident which occur during the certificate period.
>
> "**Bodily injury**" means bodily injury sickness or disease sustained by any person which occurs during the certificate period, including death at any time resulting therefrom.
> For the purpose of determining the limit of [Catholic Mutual's] liability, all bodily injury… arising out of continuous or repeated exposure to substantially the same general condition shall be considered as arising out of one occurrence.

*Fireman's Fund Insurance Company*

Fireman's fund argues that the court should deny this motion or otherwise delay it until discovery is complete because there are material facts, such as details of the abuse, the nature and extent of the Diocese's supervision of the perpetrators or the Diocese's knowledge of the

alleged abuse that must be determined before deciding this motion. It states that the court should also deny this motion because it is not properly supported by facts essential to the motion.

Fireman's Fund also states that the Diocese confused the legal standard of "trigger" with occurrence. It states that Minnesota used the "actual injury" rule to determine whether a policy is triggered. It argues that based on *Northern States Power Co. v. Fid. & Cas. Co. of N.Y.*, 523 N.W.2d 657 (Minn. 1994), *SCSC v. Allied Mut. Ins. Co.*, 536 N.W.2d 305 (Minn. 1995), *Domtar v. Niagara Fire Ins. Co.*, 563 N.W.2d 724, 732-33 (Minn. 1997), and *In re Sillicone Breast Implant Ins. Litg.*, 667 N.W.2d 405 (Minn. 2003), cases, determination of the proper scope of coverage and which policies were triggered at certain time will depend on important facts involving the damage and causes of such damage.

Fireman's Fund also states that the only case on point as to how to determine the number of occurrences is the *H.B. Fuller Co. v. United Fire Ins. Co*., 2012 WL 12894484 (D. Minn. Mar. 2, 2012) case which was based on the *NSP* and applied the "cause" test to hold that the insured's manufacture of asbestos-containing products was the singular cause of the many injuries and thus consisted of one "occurrences." It argues that based on this principle, the court should rule that the Diocese's alleged failure to supervise its priests was analogous to the manufacture of asbestos-containing products and therefore the alleged negligence supervision is one "occurrence."

*Church Mutual Insurance Company*

Church Mutual argues that this motion should be denied as against it because it has not issued any insurance policy to the Diocese and the Diocese does not refer to Church Mutual in its motion. It states that it issued a multi-peril policies to St. Joseph's Catholic Church, a parish

8

within the Diocese and the Diocese was an additional insured only for limited circumstances under the 1978 to 1981 and the 1981 to 1981 policy.

Church Mutual states that it has received notice for only four victims alleging abuse by a priest assigned to the St. Joseph's. It states that it requested and did not receive additional information from the Diocese about additional claimants. It states that the claims of these four claimants do not qualify for coverage.

Church Mutual also argues that this motion should be denied or that it should be allowed to make factual discovery to fully respond to the motion. It states that the proofs of claims are not specific enough as to the dates of the alleged abuse or the number of abuses.

Church Mutual states that it is incorporating legal arguments from Fireman's Fund Insurance Company and the Continental Insurance company regarding Minnesota's application of "cause test" to determine "occurrence" and rejecting the Diocese's "effect test."

Church Mutual asserts that the limit of liability provision in its policy uses language that establishes the "cause test."  It states that "occurrence" is not determined on a per-claimant basis but applies regardless of the number of persons who sustained bodily injury arising out of continuous or repeated exposure to substantially the same general conditions. It also argues that the limits of the insurance provision also provide a single occurrence that extends over one or more years or one or both policy periods.

Church Mutual also argues that since the Diocese is only insured under the St. Joseph's policies with respect to liability arising out of ownership, maintenance or use of that part of the premises, there must be a holding that the alleged abuse arose out of the ownership, maintenance or use of the designated premises. It also states that the Diocese's argument in regards to its

9

status as an insured to an "occurrence" fails because its Additional Insured provision provides that it doesn't apply to any occurrence which takes place after the named insured ceases to be a tenant in said premises.

Church Mutual states that both of its policies have the following relevant language.

MULTI-PERIL INSTITUTIONAL FORM
SECTION II- LIABILITY COVERAGE
I.  COVERAGE C- PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY

The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or property damage to which this insurance applies, caused by an occurrence…
"Occurrence" is defined as:
an accident, including continuous or repeated exposure to conditions which result in personal injury or property damage neither expected nor intended from the standpoint of the insured.

IV. LIMITS OF LIABILITY – COVERAGE C

Regardless of the number of (1) insureds under this policy, (2) persons or organizations who sustain bodily injury or property damage, or (3) claims made or suits brought on account of bodily injury or property damage, the Company's liability is limited as follows:

1. The limit of liability for Coverage C stated in the Declarations as applicable to "each occurrence" is the total limit of the Company's liability for all damages as the result of any one occurrence...
2. Subject to the above provision respecting "each occurrence", the total liability of the Company for all damages because of all personal injury or property damage which occurs during each annual period while this policy is in force commencing from its effective date and is described in any of the numbered subparagraphs below shall not exceed the limit of liability stated in the Declarations as "aggregate":

…For the purpose of determining the limit of the Company's liability, all bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence.

THE ADDITIONAL INSUREDS- SECTION II
(Designated Premises Only)
It is agreed that with respect to such insurance as is afforded by Section II, Coverage C of the policy:
1. The "Persons Insured" provision is amended to include as an insured the person or organization designated below; but only with respect to the liability arising out

10

of the ownership, maintenance or use of that part of the premises designated below, occupied by the Named Insured, and subject to the following additional exclusions.
This insurance does not apply:
a. to any occurrence which takes place after the Named Insured ceases to be a tenant in said premises;
b. to structural alterations, new construction or demolition operations performed by or on behalf of the person or organization designated below.

Name of Person or Organization: Diocese of Duluth, 215 West Fourth Street, Duluth, Minnesota 55806.

*The Continental Insurance Company*

The Continental argues that the court should deny this motion because the Diocese failed to satisfy its burden of proof to show coverage. It also argues that the court should deny the motion because the Diocese fails to provide important facts to support its position that certain actions allegedly caused the injury. It states that Minnesota law determines occurrence based on the insured's conduct that allegedly caused the injury.

The Continental relies on the Minnesota District court case, *H.E. Fuller*, 2012 WL 12894484 for the proposition that the insured's conduct was the ultimate, singular cause of injuries alleged and not the immediate effect of the injuries. It also points out the Diocese mixing the issue of trigger with occurrence. It states that an occurrence determines the scope of coverage by examining the insured's action that gave rise to the injury while trigger determines which potential policies must respond to the claim by evaluating which insurers were on the risk at the time of injury.

The Continental argues that the Diocese's negligent supervision claims are one occurrence or at most a per-bishop or per-priest occurrence because the alleged injuries all arose from the same condition or cause, the Diocese's decision to permit perpetrators to have access to

11

children. It also argues that occurrence limits are not calculated on per-year basis but per-policy period.

## DISCUSSION

### Summary Judgment

Federal Rule of Bankruptcy Procedure 7056, incorporating Federal Rule of Civil Procedure 56, applies when a party moves for partial summary judgment in an adversary proceeding. Rule 56(a) states that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-326 (1986); *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986). "If, assuming all reasonable inferences favorable to the non-moving party, there is no genuine issue as to any material fact, the moving party is entitled to summary judgment as a matter of law." *Tudor Oaks Limited P'ship v. Cochrane*, 124 F.3d 978, 981 (8th Cir. 1987), cert. denied, 522 U.S. 1112 (1998).

Inquiries into materiality and genuineness must be done to determine the sufficiency of the evidence. *Celotex Corp.*, 477 U.S. at 322. As for materiality, the substantive law identifies which facts are material. *Id.*; *Lobby*, 477 U.S. at 247. Only disputes over facts that might affect the outcome of the suit will properly defend against entry of summary judgment. *Id*. In other words, factual disputes that are irrelevant or unnecessary are not included. *Id*. A fact is a genuine issue if it is such that a reasonable fact finder could find for the nonmoving party. *Id*. (quoting *First Nat'l Bank of Arizona v. Cities Services Co.*, 391 U.S. 253, 288-289 (1968)). The key inquiry is whether the evidence offered is probative to the fact to which it is intended to prove. *Id*, at 256.

**General**

The issue presented in this motion involves interpretation of insurance policies, specifically whether the occurrence based policies provide that an occurrence is the number of times a victim was abused limited to one such occurrence per-victim, per-priest, per-policy period. State law applies when interpreting the provisions of an insurance policy. *Shelter Ins. Companies v. Hildreth*, 255 F.3d 921, 925 (8th Cir. 2001) (citing *Bates v. Security Benefits Life Ins. Co.*, 146 F.3d 600, 603 (8th Cir. 1998)). In this motion, there are no issues of fact, material or otherwise. Interpretation of an insurance policy is a question of law. *Houg v. State Farm Fire and Cas. Co.*, 509 N.W.2d 590,592 (Minn. App. 1993) (citing *Iowa Kemper Ins. Co. v. Stone*, 269 N.W.2d 885, 887 (Minn. 1978)). Insurance coverage issue is a question of law and is ripe for a summary judgment decision. *State Farm Ins. Co. v. Seefeld*, 481 N.W.2d. 62, 64 (Minn. 1992); *Safeco Ins. Co. v. Skar*, No. 10-CV-4789, 2011 U.S. Dist. Lexis 82548 (D. Minn. Jul. 17, 2001) (citing *Meadowbrook, Inc. v. Tower Ins. Co.*, 559 N.W.2d 411, 415 (Minn. 1997)).

"General principles of contract interpretation apply to insurance policies." *Carlson v. Allstate Ins. Co.*, 749 N.W.2d 41, 45 (Minn. 2008) (citing *Lobeck v. State Farm Mut. Auto. Ins. Co.*, 582 N.W.2d 246, 249 (Minn. 1998)). When a language in a policy is clear and unambiguous, the policy is interpreted "according to plain, ordinary sense so as to effectuate the intention of the parties." *Id*.; (citing *Canadian Universal Ins. Co. v. Fire Watch, Inc.*, 258 N.W.2d 570, 572 (Minn. 1977)). The language of the policy is ambiguous if it is susceptible to two or more reasonable interpretations. *Id*.; (citing *Medica, Inc. v. Atl. Mut. Ins. Co.*, 566 N.W.2d 74, 77(Minn. 1997)).

It is well-established that the party claiming coverage under an insurance policy has the burden of proof to show coverage. *Boedigheimer v. Taylor*, 178 N.W.2d 610, 614 (Minn. 1970). The burden then shifts to the insurer to show the applicability of an exclusion provision in the policy to the claims. *Dakhue Landfill, Inc. v. Employers Ins. Of Wausau*, 508 N.W.2d 798, 802 (Minn. Ct. App. 1993) (citing *Caledonia Community Hosp. v. St. Paul Fire & Marine Ins. Co.*, 239 N.W.2d 768, 770 (Minn. 1976)). In interpreting policy exclusion, any ambiguity in the language of the policy must be construed in favor of the insured. *Henning Nelson Const. Co. v. Fireman's Fund Am. Life Ins. Co.*, 3883 N.W.2d 645, 652 (Minn. 1986).

The fact that all of the insurers in this case have comprehensive general liability (CGL) policies with a standard occurrence-based language is not disputed, with the exception of Church Mutual's multi-peril policy and Catholic Mutual's certificate of coverage both of which contain similar relevant language as the CGL policies.[3] The policies provide coverage for damages of personal injury caused by an occurrence. It also provides a definition of 'occurrence' as an accident including continuous or repeated exposure to conditions which results in bodily injury neither expected nor intended from the standpoint of the insured.

The complaint by the defendants that the burden is on the plaintiff to demonstrate the existence of coverage, while true, misses the point. For the purpose of this motion, I am not deciding the issue of whether any of the policies at issue provides coverage at all or whether the Diocese expected or intended the sexual abuse. Their argument that the issues need to be decided in a certain order is not supported by Rule 56. I am also not deciding the issue of whether a policy period is one year or three.

---

[3] To the extent that an insurer does not have an occurrence-based CGL policy, this analysis does not apply to it.

**Cases**

It is clear that the word 'occurrence' in occurrence based insurance policies "is one of the least understood and most misunderstood word in today's insurance language… even the insurance industry itself could not agree on any one consistent interpretation of this language in the CGL policy." James F. Hogg, *The Tail of a Tail*, 24 Wm. Mitchell L. Rev. 515, 530 (1998) (discussing the history of the definition for 'occurrence'); *See also Stonewall Ins. Co. v. Asbestos Claims Mgt. Corp.*, 73 F.3d 1178, 1192-93 (2nd Cir. 1995).

In *Singsaas v. Diederich*, the Minnesota Supreme Court first established the "actual-injury" rule for the occurrence based insurance policies. 238 N.W.2d 878, 880, (Minn. 1976); *See Donnely Brothers Const. Co. v. State Auto Property and Cas. Ins. Co.,* 759 N.W.2d 651, 656 (Minn. Ct. App. 2009). It held that under the actual-injury rule, an insurance coverage applies only to bodily injury which occurs during the policy period. 238 N.W.2d at 880. It stated that "the time of occurrence is not the time the wrongful act was committed but the time the complaining party was actually damaged." *Id*.

The actual-injury rule was later refined in *Industrial Steel Container Co. v. Fireman's Fund Ins. Co.* 399 N.W.2d 156 (Minn. Ct. App. 1987). The court relied on *Singsaas* and held that in cases where there is a long exposure to a toxic substance, there are more parties that possibly caused the damages, and where there can be more than one insurance policy affording coverage, there can be more than one occurrence. *Id*. at 159.

Minnesota again looked at the actual-injury rule in 1994 in the *Northern States Power Company v. Fidelity and Casualty Co. of N.Y.*, case (*NSP*) in dealing with allocation issue between successive insurers once coverage has been found. 523 N.W.2d 657. *NSP* was an

Case 16-05012   Doc 77   Filed 03/30/17   Entered 03/30/17 16:01:09   Desc Main
Document      Page 16 of 20

environmental pollution case involving soil and groundwater contamination by coal tars resulting in damages from 1946 to 1985. The case established an allocation method that was pro rata by the time on the risk, holding that when the damages are continuous over different policy periods, each insurer will be held liable for only those damages which occurred during its policy period. *Id*. at 662. This rule assumes that the damages are evenly distributed or continuous through each policy period. *Id*. The court reasoned that certain injuries such as continuous environmental damages pose nearly insuperable problems of proof with respect to allocation of precise amounts of damages to specific policy periods. *Id*. It also held that because the discharge and contamination has been so continuous and repetitive, the unidentifiable individual instances have merged into a continuing occurrence and there is one occurrence during the policy period of each applicable policy. *Id*. It stated that it "recognizes that damages are by nature fact-dependent and that trial courts must be given the flexibility to apportion them in manner befitting each case." *Id*. at 663.

The next year the court looked at the actual-injury rule in *SCSC Corp.*, a case involving again soil and ground water contamination. 536 N.W.2d 305. It stated that according to the actual-injury rule, the casual link of the policy in an occurrence based policy require the insured to establish that the damage was caused by an occurrence. *Id*. at 318. The court distinguished *NSP* and held that unlike *NSP* when there is sufficient evidence indicating that damage arose from a single event, which was the 1977 spill, the only covered occurrence was that spill and only the insurers in 1977 were on the risk of coverage, consistent with the actual-injury rule. *Id*.

*Diocese of Winona v. Interstate Fire & Cas. Co., et al.*, was a case from the 8th Circuit Court of Appeals dealing with whether the sexual abuse by the Diocese's priest was "expected" by the insured and therefore exclude coverage. 89 F.3d at 1388. The court relied on *NSP* and

16

used the actual-injury rule pro rata by the time on the risk method to hold that "each triggered policy bears a share of total damage proportionate to the time period it was on the risk relative to the time period coverage was triggered, except for times when the insured knew about the abuse." *Id*. at 1398. The court held that "the district court concluded that [the priest's] abuse constituted a number of occurrences which merged into "one continuing occurrence."" *Id*. at1390. The sole issue on appeal was at what point the abuse was expected by the insured, thus excluding coverage. *Id*. at 1389. In a footnote relied upon by the insurers, the court states "…the occurrence is the continuous and repeated exposure of [the victim] to the negligent supervision of [the priest] by both the Diocese and the Archdiocese. The abuse is the actual injury, not the occurrence…" Since the footnote was not the issue on the appeal, it is dictum and contradicts what the district court held in that case. Most importantly, it is inconsistent with Minnesota law that occurrence is the time of actual injury not the time of the wrongful act. *See Redeemer Covenant Church of Brooklyn Park v. Church Mutual Ins. Co. et al*., 567 N.W.2d 71, 81-82 (Minn. Ct. App.1997) (Citing *Blackwiak v. Kemp*, 546 N.W.2d 1, 3 (Minn. 1996) (Holding that "as a matter of law, one is injured if one is sexually abused")); *In re Silicone Implant Ins.*, 667 N.W.2d at 416.

In *Jenoff, Inc. v. New Hampshire Ins. Co.*, the Minnesota Supreme Court again restated the actual-injury rule by holding that an occurrence is not the time when the wrongful act was committed but the time when the complaining party was actually injured. 558 N.W.2d 260, 263 (Minn. 1997). It denied coverage for liability when an alleged negligent act occurs during the period of the policy coverage, but the negligence does not result in damages until after the policy has expired. *Id*.

In *Domtar, Inc., v. Niagra Fire Ins. Co. et al.,* the court established guidelines for the district court for allocating liability when there is a continuing injury using the actual injury rule. 563 N.W.2d at 732-33. It stated that allocation is appropriate between policies that are on the risk and triggered only if the triggering injury arose from continuous and intermingled events as in *NSP*. *Id*. When damages arise from discrete and identifiable events, the policies on the risk at that time are liable for all sums of damages arising from that event. *Id*. at 733.

*In re Silicone Implant Ins. Coverage Litigation*, the Minnesota Supreme Court again applied the actual-injury rule established in *NSP* in a case involving damages caused by breast implants, discrete and identifiable events from which all of the plaintiffs' injuries arose. 667 N.W.2d at 415. It stated that "an injury can occur even though the injury is not "diagnosable," "compensable" or manifest during the policy period as long as it can be determined, even retroactively, that some injury did occur during the policy period." *Id*. It held that the damages occurred on or about the time of implantation therefore the policies in effect at or about the time of implantation are triggered and liable from that implantation. *Id*. at 416.

*Domtar, Inc., v. Niagra Fire Ins. Co. et al.*, consisted of different set of insurers from the first Domtar case in 1994. No. A03-630, 2004 WL 376951 (Minn. Ct. App. May 18, 2004). The court rejected Domtar's position and held that when environmental contamination damages are due to varies activities and at multiple geographical sites, it cannot be aggregated and therefore there can be more than one occurrence. *Id*. at 4.

**Summary**

Minnesota law has remained consistent that, beginning with *Singsaas v. Diederich, Supra*, the time of occurrence is when the complaining party was injured. When damages are as a result of occurrences that are discrete and identifiable events, *SCSC* and *In re Silicone Implant* apply and the only policies that are triggered are those that were in effect when the damages occur. Second, when both the damages and the occurrence events are continuous over a period of time and are so intermingled and unidentifiable, *NSP* applies and there is one continuous occurrence. Allocation of liability between policies that are in effect during this time period is appropriate.

The underlying facts in this case are not in dispute. There are numerous victims who were sexually abused by several priests.

Similar to *SCSC* and *In re Silicone Implant* cases, there are specific occurrences that are discrete and identifiable events; the priests' sexual abuse of the victims. Each victim suffered an injury and has readily identifiable damage on each separate occasion of sexual abuse. The sexual abuse is what caused the damages to the victims. Therefore under the actual-injury rule, the occurrence is the time when the victims were sexually abused by the priests. *Redeemer Covenant Church of Brooklyn Park*, 567 N.W.2d at 81-82. There are separate occurrences for each separate sexual abuse for each victim and each priest. The victims each suffered separate abuse and it is this occurrence that triggers an insurance policy that is at risk at that time.

The attempt by the defendants to equate the "exposure" in *H.B. Fuller Co. v. United Fire Ins. Co.*, 2012 WL 12894484 with the Diocese's "exposure" of children to priests who were prone to sexually abuse children is inapt. In the latter situation, no injury results from this so

called exposure. The injury is the result of the rape or sexual battery of a particular child. Those are the occurrences which triggered coverage.

The defendants also argue that the occurrence and the trigger are different events. The cases do not support their argument. It is clear that it is the occurrence that triggers coverage.

### The Occurrence Deemer Clause

The Diocese concedes that the 'occurrence deemer' clause which states "all bodily injury … arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one occurrence" and because only bodily injuries that occur during a policy period are covered, each victim's injury is limited to one occurrence during a policy period. However, injury is from the perspective of the victim. If a victim was injured by two priests in a policy period, there are two occurrences even though there may be repeated injury in that policy period. *See Domtar, Inc.*, 2004 WL at 4; *Industrial Steel Container Co.*, 399 N.W.2d 156.

THEREFORE, IT IS ORDERED:

1. The plaintiff's motion for partial summary judgment is granted.

2. If a policy provides coverage, each occurrence is determined per-victim, per-priest and per-policy period, subject to other contractual limitations on the definition of occurrence.

/e/ Robert J. Kressel
ROBERT J. KRESSEL
UNITED STATES BANKRUPTCY JUDGE